UNITED STATES DISTRICT COURT

for the

Western District of Wisconsin

Civil Division

| | |
|---|---|
| MICHELLE R GILBANK, et al., | Case No.: 20-cv-601-jdp |
| Plaintiffs, | |
| vs. | **PLAINTIFF'S STATEMENT ON APPEAL** |
| WOOD COUNTY DHS, et al., | |
| Defendants. | |

## SUMMARY OF CASE AND ARGUMENTS FOR APPEAL

On August 21, 2018, Defendant Heinzen-Janz and Defendant Iverson interfered in Plaintiff's right to the care, custody, and control of her daughter T.E.H.

On August 21, 2018, Defendant Heinzen-Janz intentionally confined Plaintiff from returning to her home and dwelling.

On August 21, 2018, the false imprisonment caused by Defendant Heinzen-Janz substantially interfered with Plaintiff's access to her personal property (conversion).

On August 22, 2018, Defendant Heinzen-Janz and Defendant Iverson created, submitted, and signed false documents with Wood County Circuit Court implying that Plaintiff was under the influence and left her daughter without care on August 21, 2018. Neither of these statements were true.

On September 13, 2018, Defendant Heinzen-Janz filed more documents with the court containing false claims that she had no evidence of. Her evidence of Plaintiff's neglect was Plaintiff's denial of this neglect. Defendant Heinzen-Janz made false claims of Plaintiff being uncooperative and left out important information regarding Plaintiff's many requests for assistance, Plaintiff's successful actions in seeking safety for her child. This intentional omission of extremely important information constitutes fraud on the court.

There was no judicial involvement in the violation of these rights until August 23, 2018. Plaintiff received no notice or opportunity to be heard on this date.  Plaintiff continually requested that she be heard in this matter from August 21, 2018 until September 19, 2018, when her request to be heard was denied.  Plaintiff was told that the probable cause hearing was held without her and would not be reheard. Plaintiff requested a Writ of Certiorari to this denial and that was also denied.

Defendants' violations of law on August 21 and 22, 2018 led to intentional emotional distress and trauma to both Plaintiff and her child.  Knowing that one's child is being traumatized and is in danger of sexual assault is additionally traumatizing to a parent.

1    Defendants' violations of law on August 21 and 22, 2018 caused the court to take action

2    which caused the Plaintiff and her daughter severe trauma and injury for 504 days.  Plaintiff

3    could find not a single juvenile court case in which Wood County Court ruled against Wood

4    County DHS recommendation when a child's primary caregiver was not present for the initial

5    hearing.

6

7    But for Defendants' actions, Plaintiff's trauma and injuries would not have occurred.

8

9

10   Plaintiff's right to the care, custody, and control of her child is a Fundamental Right.

11   - *"The liberty interest at issue in this case — the interest of parents in the care, custody,*
12   *and control of their children — is perhaps the oldest of the fundamental liberty interests*
     *recognized by this Court."  Troxel v. Granville*, 530 U.S. 57 (U.S. 2000)

13

14   Fundamental Rights are rights that are so "implicit in the concept of ordered liberty" that

15   "neither liberty nor justice would exist if they were sacrificed."

16   - *See Palko v. Connecticut*, 302 U.S. 319, 325, 326, 58 S. Ct. 149, 152, 82 L. Ed. 288
17   (1937); *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc). The Supreme
     Court has recognized that fundamental rights include those guaranteed by the Bill of
18   Rights as well as certain liberty, associational and privacy interests implicit in the due
     process clause and the penumbra of constitutional rights. See *Glucksberg*, 521 U.S. at
19   720, 117 S. Ct. at 2267; *Paul v. Davis*, 424 U.S. 693, 712-13, 96 S. Ct. 1155, 1166, 47 L.
     Ed. 2d 405 (1976). These special "liberty" interests include "the rights to marry, to have
20   children, to direct the education and upbringing of one's children, to marital privacy, and
     to bodily integrity." *Glucksberg*, 521 U.S. at 720, 117 S. Ct. at 2267.

21

22   Fundamental rights must adhere to the **Strict Scrutiny Standard**.  Unless it is necessary for

23

24

the government to interfere with the right in order to achieve some compelling governmental objective the action will be prohibited.  The burden of proof is on **Defendants**.

- As the Court stated in *Bowers v. Hardwick*, 478 U.S. 186, 189 (1986), "*to prevail, the State would have to prove that the statute is supported by a compelling interest and is the most narrowly drawn means of achieving that end.*"

Strict Scrutiny requires that there be a warrant or emergency so imminent that immediate removal is required in order for Defendants to violate Plaintiff's Fundamental Rights.

Defendants must agree that:

1. They took temporary custody of Plaintiff's child without a warrant.
2. Plaintiff faced no criminal accusations regarding her care for her child.
3. Plaintiff's child was in adequate care.
4. Defendants attempted to 'safety plan' with Plaintiff after Plaintiff had placed her child in adequate care. Defendants informed Plaintiff that they were working with her so that she could retain custody.
5. After Plaintiff's child had been in safe care arranged for by Plaintiff for over two hours, Defendants made the decision to take emergency temporary custody of Plaintiff's child and forbid Plaintiff from returning to her home and possessions. They did this without warrants or emergencies of any kind.
6. Defendants were aware that Plaintiff was being arrested and taken to county jail. If they had any evidence at all to verify their claims, they had at least 24 hours to bring their concerns before a judge and request a warrant.
7. Defendants did not 'remove' Plaintiff's child from where Plaintiff had placed her for care.
8. Once Defendants illegally interfered in Plaintiff's custody, they had an obligation to provide for the care and safety of Plaintiff's child.
9. Defendants placed Plaintiff's 4-year-old daughter in the care of a registered sex offender who had been convicted of penetration of a 6-year-old girl.  Visitation with this man was required by prior court order to be supervised at a local center or allowed by Plaintiff. Defendants ignored this prior court ruling without warrant or cause.
10. Removal of any child from the custody of her primary caregiver causes trauma to both the child and the parent.
11. Defendants were aware that Plaintiff was a vulnerable adult with a diagnosis of C-PTSD.

PLAINTIFF'S BRIEF IN OPPOSITION                                                                          - 4

These events occurred **prior to** any court involvement in Plaintiff's custody or individual liberty.  Although their unlawful actions **greatly affected** judicial decisions regarding Plaintiff's custody and individual liberty in Wood County Court, Plaintiff seeks no reversal of Wood County Court rulings.

In the interest of justice and safety for her child, and in order to be heard and receive due process,  Plaintiff agreed to the closure of the juvenile court case denying Plaintiff custody of her child 504 days after August 21, 2018.  Plaintiff then returned to family court and regained sole custody of her daughter.  Due to Plaintiff's agreement to the closure, the juvenile court decisions are not appealable and are not at issue in this case.

Defendants have not been party to **any other legal action** involving Plaintiff except for the present action before this Court.  Defendants actions which violated the Fundamental Rights of the Plaintiff have not been brought to cause by any other court.

Plaintiff believes that the honorable Judge Peterson has made a mistake in applying the Rooker-Feldman doctrine and issue preclusion to this case.

Plaintiff respectfully requests that the 7th Circuit Appellate Court reverse his decision and remand this case back to the Western District of Wisconsin Federal Court for jury trial.



Thank you,

/s/ *Michelle R Gilbank*

Michelle R Gilbank, pro se

PLAINTIFF'S BRIEF IN OPPOSITION                                                                          - 5

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHELLE R. GILBANK and
T.E.H., a minor, by next friend and mother,
Michelle R. Gilbank,

               Plaintiffs,

     v.

WOOD COUNTY DEPARTMENT OF HUMAN
SERVICES, MARSHFIELD POLICE DEPARTMENT,
CHILDREN'S HOSPITAL OF WISCONSIN,
THERESA HEINZEN-JANZ, DEREK IVERSON,
MARY CHRISTENSEN, ANNE LACHAPELLE,
MARY SOLHEIM, GREGORY POTTER, NICHOLAS
BRAZEAU, JR., and DOES 1-10,

               Defendants.

OPINION and ORDER

20-cv-601-jdp

---

      Pro se plaintiff Michelle R. Gilbank filed this lawsuit against two government agencies, a hospital, four social workers, a police detective, and two judges, contending that defendants violated her and her minor daughter's constitutional rights when T.E.H. was removed from her custody for more than a year. Several motions are pending before the court.

      First, the defendant judges (Gregory Potter and Nicolas Brazeau, Jr.) have filed motions to dismiss on several grounds. Dkt. 4 and Dkt. 7. I will grant those motions because plaintiffs' claims against the judges are barred by the Eleventh Amendment and the doctrine of judicial immunity.

      Second, the Wood County defendants (Wood County Department of Human Services and social workers Theresa Heinzen-Janz, Mary Christensen, Anne La Chappelle, and Mary Solheim) have filed a motion to dismiss some of plaintiffs' claims. Dkt. 17. The Department argues that it cannot be sued, and the individual defendants argue that plaintiffs' conspiracy

claims under 42 U.S.C. § 1986 should be dismissed. Defendants' arguments are persuasive, so I will grant the motion.

Third, defendant Children's Hospital of Wisconsin filed a motion to dismiss plaintiffs' claims against it, arguing that plaintiffs' allegations do not state any claim for relief against it. Dkt. 19. I agree and will grant that motion as well.

Fourth, the Wood County defendants filed a motion to dismiss T.E.H.'s claims on the ground that she is not represented by counsel or a guardian ad litem. Dkt. 31. Plaintiffs responded to the motion by requesting that the court assist them in recruiting counsel or a guardian ad litem to represent T.E.H. Dkt. 37. Gilbank also filed motion to be exempted from paying PACER fees. Dkt. 16. For the reasons below, I will grant the county defendants' motion to dismiss T.E.H.'s claims without prejudice, and I will deny Gilbank's motions without prejudice.

## ALLEGATIONS OF FACT

Gilbank alleged the following facts in her amended complaint, which I accept as true for purposes of evaluating defendants' motions to dismiss.

In June 2018, plaintiff Michelle Gilbank and her minor child, T.E.H., who was four years old at the time, were living temporarily with T.E.H.'s father, Ian Hoyle. Hoyle had been convicted of first-degree sexual assault of a six-year-old girl, and he was permitted to have only supervised visits with T.E.H. Hoyle drank alcohol and used drugs on a regular basis, and sometimes his behavior became inappropriate or dangerous, causing Gilbank and T.E.H. to leave the residence frequently.

On June 29, 2018, one of Hoyle's neighbors reported to the police that Hoyle had been yelling at Gilbank and T.E.H. and had locked them out. Defendant Theresa Heinzen-Janz, a social worker from Wood County Human Services, and two officers from the Marshfield Police Department came to Hoyle's residence to perform a welfare check. Gilbank told Heinzen-Janz and the officers that she and T.E.H. were safe at the moment because Hoyle was at work, but that Gilbank needed help finding housing and accessing mental health care. Heinzen-Janz said that she would return to see Gilbank on July 3. Before July 3, Heinzen-Janz and defendant Derek Iverson, a detective from Marshfield Police Department, spoke with Hoyle about Gilbank. Hoyle apparently reported that Gilbank had drug problems.

On July 3, Heinzen-Janz and Iverson went to see Gilbank at Hoyle's residence. Iverson asked Gilbank about her drug use. Gilbank stated that she had used street drugs in the past to alleviate her PTSD symptoms. She also said that living with Hoyle made it hard to maintain sobriety because he was always high or drunk. Iverson made Gilbank take a drug test, and Heinzen-Janz forged Gilbank's signature on a paper stating that the test was voluntary. Heinzen-Janz and Iverson left, but they surveilled Gilbank over the next couple of weeks.

On July 26, Hoyle punched holes in the walls of his residence and ripped his phone in half while yelling at Gilbank. Hoyle then called the police and asked them to remove Gilbank from his residence. Defendant Iverson and defendant Doe 1, a social worker with Wood County Department of Human Services, arrived at Hoyle's residence. Hoyle left to go drink at a bar. Iverson told Gilbank and T.E.H. to sleep in the garage that night to be safe. Gilbank found out later that Iverson did not file a report of the incident.

A few weeks later, Gilbank woke up during the middle of the night because Hoyle was attempting to remove her clothes. She fought him off and he left the room. The next morning,

Gilbank found Hoyle in the living room, where he was unclothed and masturbating while watching pornography on the television. T.E.H. was sitting next to him. Gilbank took T.E.H. and left.

Three days later, on August 21, 2018, Gilbank told Hoyle that she and T.E.H. were moving out and that she had an appointment for housing assistance that morning. Unbeknownst to Gilbank, Hoyle then contacted defendants Heinzen-Janz, Iverson, and Anne La Chappelle, another social worker with Wood County Department of Human Services, about removing T.E.H. from Gilbank's custody. Heinzen-Janz, Iverson, La Chappelle, and others from Marshfield Police Department and Human Services planned to seize T.E.H. from Gilbank. They did not obtain a warrant or talk to a judge about their plan.

After Gilbank and T.E.H. finished their housing appointment, a Marshfield police officer stopped Gilbank in her car. The officer told Gilbank that her license had been suspended for failure to pay a previous ticket. A K9 unit arrived, and Gilbank and T.E.H. were ordered to leave the vehicle. Gilbank called Hoyle, Hoyle's mother, and a friend, and asked them to pick up T.E.H. at the traffic stop.

After receiving Gilbank's call, Hoyle immediately went to his lawyer's office and directed his lawyer to file a motion for sole custody of T.E.H. and termination of his child support obligations. The motion stated that Gilbank had been arrested for possession of methamphetamine. The motion was filed before the search of Gilbank's car was complete and before she was arrested or charged.

Drugs and paraphernalia were found in Gilbank's car. (Gilbank says that the items belonged to Hoyle.) Gilbank was arrested and taken to Marshfield Police Department for questioning by defendants Iverson and Heinzen-Janz. Gilbank stated that she did not know

about any drugs in the vehicle and she asked for an attorney. Iverson declined to call an attorney for Gilbank and continued to question her, stating that if she did not admit guilt and cooperate, he would report that she was not cooperating with the "safety plan" and that she was a danger to her child. Iverson also stated that he would recommend placement of T.E.H. with Hoyle if she did not cooperate. Gilbank was not aware that there was a safety plan in place. Later that day, she was notified that T.E.H. had been placed with Hoyle. She was also told that she could not to contact T.E.H., that she could not return home, and that there would be a hearing regarding custody within 48 hours.

Gilbank posted bail on August 22, and she returned to the courthouse on August 23 to ask about the custody hearing. She was told that the hearing had taken place already, before defendant Judge Gregory Potter. Heinzen-Janz and Iverson gave false testimony at the hearing to justify the removal of T.E.H. without a warrant. Gilbank wrote to Judge Potter that she contested T.E.H.'s placement with Hoyle. Potter then recused himself from the case, and the case was transferred to defendant Judge Nicolas Brazeau, Jr. Gilbank filed motions requesting that the hearing be reopened, but Judge Brazeau denied her motions.

On September 6, 2018, Gilbank was interviewed at Children's Hospital of Wisconsin. Gilbank was given a release form to sign, which stated that information about her visits with T.E.H. would be released to Hoyle. Gilbank stated that she did not feel comfortable with Hoyle having information about her because he had abused her. Hospital staff told Gilbank that if she did not sign the release, she would not be able to see T.E.H.

On September 25, 2018, the court held an evidentiary hearing at which several witnesses testified that Gilbank was a good mother to T.E.H. and that T.E.H. was healthy and well cared for. Defendant Heinzen-Janz testified that because Gilbank had testified positive for

drugs on July 3, 2018, Gilbank obviously had an addiction problem that was out of control. Brazeau concluded that Gilbank was lying about her drug use, and he ordered that T.E.H. remain with Hoyle, even though Hoyle admitted at the hearing that he had used drugs.

Gilbank was upset about T.E.H. being taken from her and told Human Services about Hoyle's drug and alcohol use and addictions, but defendant Mary Christensen, another social worker with Wood County, told her that if she continued to complain that she would never get T.E.H. back. Whenever Gilbank complained about what had happened, Christensen would increase restrictions on Gilbank's visits with T.E.H. Christensen, Heinzen-Janz, and Iverson later shared Gilbank's urine test results and mental health prescriptions with Hoyle.

In February 2020, Gilbank regained full custody of T.E.H. after Hoyle admitted that he had been placing his fingers on T.E.H.'s vagina daily. T.E.H. received a sexual assault examination, and both Gilbank and T.E.H. have experienced ongoing trauma as a result of the incidents of the past two years.

## OPINION

Gilbank has sued Wood County Department of Human Services, Marshfield Police Department, Children's Hospital of Wisconsin, Detective Derek Iverson, Judges Gregory Potter and Nicholas Brazeau, Jr., and four social workers: Teresa Heinzen-Janz, Mary Christensen, Anne La Chapelle, and Mary Solheim. She discusses several legal theories in her complaint, including: interference with her and T.E.H.'s right to familial association; unlawful seizure of T.E.H.; violation of Gilbank's right to counsel and against self-incrimination; and violation of Gilbank's and T.E.H.'s due process rights.

**A. T.E.H.'s claims and Gilbank's motion requesting assistance in recruiting counsel**

T.E.H. is a minor, and minors can bring suit in federal court only through an appointed representative, a guardian ad litem, or a next friend. Fed. R. Civ. P. 17(c). Gilbank has identified herself as T.E.H.'s next friend, but a parent cannot sue as a next friend on behalf of a minor child unless the parent is represented by counsel. *See Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child.") (citation omitted). Acknowledging this rule, Gilbank has filed a motion requesting that the court recruit counsel to represent her or appoint a guardian ad litem to represent T.E.H. I will deny Gilbank's motion.

A pro se litigant does not have a right to counsel in a civil case, *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), but a district court has discretion to assist pro se litigants in finding a lawyer to represent them. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). A party who wants assistance from the court in recruiting counsel must meet certain requirements. *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010). First, she must show that she is unable to afford counsel. Gilbank has not filed any financial information with the court, so I cannot determine whether she is unable to afford counsel. I will attach to this order a financial affidavit that Gilbank can submit to the court. (The court will also use the financial affidavit to determine whether Gilbank can be exempt from paying PACER fees, as she has requested. Dkt. 16.)

Second, she must show that he made reasonable efforts on her own to find a lawyer to represent her. *Jackson v. County of McLean*, 953 F.2d 1070 (7th Cir. 1992). Gilbank has satisfied this requirement by submitting letters from several lawyers who declined to represent her in this case.

Third, Gilbank must show that the legal and factual difficulty of the case exceeds her ability to prosecute it. *Pruitt*, 503 F.3d at 654–55. The inquiry into a litigant's abilities to handle his own case is a practical one, made in light of "whatever relevant evidence" is available. *Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014). Courts generally consider the litigant's "literacy, communication skills, education level, and litigation experience in light of the complexities of the case." *Pruitt*, 503 F.3d at 655. "The question is not whether a lawyer would present the case more effectively than the pro se plaintiff" but instead whether the pro se litigant can "coherently present [her case] to the judge or jury" herself. *Id.* at 655. Almost all of this court's pro se litigants would benefit from the assistance of counsel, but there are not enough lawyers willing to take these types of cases to give each plaintiff one. I must decide for each case whether the particular plaintiff should be the beneficiary of the limited resources of lawyers willing to respond to courts' requests. *McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020).

Gilbank's filings in this case show that she is intelligent, articulate, and understands the basic facts and legal theories applicable to her case. She has not identified any any reason why this case would be too complex for her to handle on her own. She has requested counsel or a guardian ad litem only so that she can bring claims on behalf of T.E.H. Although I am sympathetic to Gilbank's desire to bring claims on behalf of her minor daughter, I decline to recruit counsel or a guardian ad litem for this purpose. The court has found that it is exceedingly difficult to find counsel or guardians ad litem who are willing and able to accept civil rights cases on a pro bono basis. This is particularly true if counsel would be required to handle the case from start to finish, as would be required in this case, rather than for a limited purpose.

In addition, this court generally does not attempt to recruit counsel until after a case has survived the summary judgment stage, as it is difficult to find counsel willing to accept a case that has undergone no merits review by the court. In this instance, some of Gilbank's claims concern custody and placement decisions taken by government officials, some of which were approved by state court judges. Some of Gilbank's claims may be barred by the *Rooker-Feldman* doctrine, the domestic relations doctrine, issue preclusion, or claim preclusion. *See Kowalski v. Boliker*, 893 F.3d 987, 996 (7th Cir. 2018); *Golden v. Helen Sigman & Assocs.*, Ltd., 611 F.3d 356, 362 (7th Cir. 2010); *Howell v. Dewey*, 817 F. App'x 268, 270 (7th Cir. 2020); *Weinhaus v. Cohen*, 773 F. App'x 314, 316 (7th Cir. 2019). I am not inclined to recruit counsel until this case has undergone additional merits review at the summary judgment stage.

In sum, I have no reason to think that Gilbank cannot represent herself in this case, and I decline to recruit counsel or a guardian ad litem so that T.E.H. may pursue claims. Therefore, I will dismiss T.E.H.'s claims without prejudice. If Gilbank is able to find a guardian ad litem or lawyer to represent T.E.H., she may ask that T.E.H.'s claims be reinstated.

**B. Judge Potter and Judge Brazeau's motion to dismiss**

Gilbank contends that Judge Potter violated her due process rights by refusing to reopen the initial custody hearing, by recusing himself, and by transferring Gilbank's case to Judge Brazeau. She contends that Judge Brazeau violated her due process rights by denying her motion to reopen or to dismiss her criminal case and by continuing the orders regarding T.E.H.'s placement with Hoyle and Gilbank's contact with T.E.H.

Potter and Brazeau have moved for dismissal of the claims against them on the grounds that the claims are barred by Eleventh Amendment sovereign immunity and judicial immunity. I will grant their motions. If Gilbank is suing the judges in their official capacities, her claims

are barred by the Eleventh Amendment. *See Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1009 (7th Cir. 2000) (federal suits against state officials in their official capacities are barred by Eleventh Amendment sovereign immunity). If Gilbank is suing the judges in their individual capacities, her claims are barred by the doctrine of judicial immunity because Gilbank is complaining about Potter's and Brazeau's judicial conduct. *See Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *Loubser v. Thacker,* 440 F.3d 439, 442 (7th Cir. 2006) (judges have absolute immunity for damages claims based on judicial conduct). Therefore, Gilbank's claims against Potter and Brazeau will be dismissed.

## C.  Wood County Defendants' motion to dismiss (Wood County Department of Human Services, Heinzen-Janz, Christensen, La Chappelle, and Mary Solheim)

Defendant Wood County Department of Human Services has moved to dismiss all claims against it on the ground that it is not an entity that may be sued under § 1983. I will grant that motion. State law determines whether a government entity may be sued. Fed. R. Civ. P. 17(b). Under Wisconsin law, municipal departments and subdivisions are arms of the municipality, and cannot be sued. *See, e.g., Whiting v. Marathon Cty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004) (sheriff's department is not a "legal entity separable from the county government" and thus is not subject to suit under § 1983). Wood County Department of Human Services is a department of Wood County, and it is not a separate entity that may be sued.

The four Wood County social workers—Heinzen-Janz, Christensen, La Chappelle, and Mary Solheim—have moved for dismissal of Gilbank's conspiracy claims brought under 42 U.S.C. § 1986 on the ground that the claims are untimely. Section 1986 creates a cause of action against individuals who conspire to interfere with a person's civil rights. But § 1986 has

a one-year statute of limitations. *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 700 (7th Cir. 2005). The county defendants argue that Gilbank's only conspiracy allegations are her allegations regarding Heinzen-Janz's and other social worker's actions to remove T.E.H. from Gilbank in August 2018. They argue that because Gilbank did not file this lawsuit until June 30, 2020, her § 1986 claims are untimely.

I agree with defendants. Although Gilbank alleges in her amended complaint that T.E.H. was not returned to to her until February 2020, and that Wood County social workers refused to help her between August 2019 and February 2020, her amended complaint includes no allegations suggesting that the county defendants engaged in conspiratorial acts within the year before she filed this lawsuit. Therefore, I will dismiss Gilbank's conspiracy claims.

**D. Children's Hospital of Wisconsin's motion to dismiss**

Gilbank contends that Children's Hospital of Wisconsin violated her constitutional rights when it required her to sign a release authorizing T.E.H.'s father, Ian Hoyle, to receive information about Gilbank's visits with T.E.H. Gilbank says that the Children's Hospital staff told her that signing the release was optional, but that she would not get to T.E.H. if she did not sign it. Children's Hospital has moved to dismiss any claims against it on the ground that Gilbank's allegations do not state a federal claim upon which relief may be granted.

I will grant the motion. Gilbank's allegations do not suggest that Children's Hospital was acting in a governmental capacity when it provided the release form to Gilbank, so Gilbank cannot sue Children's Hospital for constitutional violations under § 1983. And even if the hospital was acting in a government capacity, Gilbank's allegations do not suggest that the hospital violated any of her constitutional rights. Nor has Gilbank articulated any constitutional violation. Gilbank referred to HIPAA in her complaint, but individuals cannot

11

sue to enforce their rights under the Health Insurance Portability and Accountability Act. *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019). Gilbank also argues that Children's Hospital conspired to deprive her of her civil rights, in violation of 41 U.S.C. § 1986, but her allegations do not support a conspiracy claim against the hospital. And as discussed above, any conspiracy claims are untimely. Therefore, Gilbank's claims against Children's Hospital will be dismissed.

ORDER

IT IS ORDERED that:

1. The motions to dismiss filed by defendants Nicholas Brazeau, Jr. and Gregory Potter, Dkt. 4 and Dkt. 7, are GRANTED. Brazeau and Potter are DISMISSED from this case.

2. The motion to dismiss filed by defendants Wood County Department of Human Services, Mary Christensen, Theresa Heinzen-Janz, Anne La Chapelle, and Mary Solheim, Dkt. 17 and Dkt. 31, are GRANTED. Wood County Department of Human Services is DISMISSED from this case.

3. The motion to dismiss filed by defendant Children's Hospital of Wisconsin, Dkt. 19, is GRANTED. Children's Hospital is DISMISSED from this case.

4. Plaintiff Michelle Rene Gilbank's motion for an exemption from PACER fees, Dkt. 16, and motion for assistance in recruiting counsel or a guardian ad litem, Dkt. 37, are DENIED without prejudice. The clerk of court shall provide a financial affidavit form to Gilbank.

5. T.E.H.'s claims are DISMISSED without prejudice.

Entered December 15, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHELLE R. GILBANK,

                    Plaintiff,

    v.                                                              OPINION and ORDER

MARSHFIELD POLICE DEPARTMENT,
THERESA HEINZEN-JANZ, DEREK IVERSON,                              20-cv-601-jdp
MARY CHRISTENSEN, ANNE LACHAPELLE,
MARY SOLHEIM, and DOES 1-10,

                    Defendants.

---

Before the court is a motion filed by the Wood County defendants (Teresa Heinzen-Janz, Mary Christensen, Anne La Chapelle, and Mary Solheim) to dismiss Gilbank's claims against them under Rules 37(b)(2)(A)(v) and 41(b) as a sanction for her failure to comply with the court's prior discovery orders. Dkt. 48. In a previous order, I granted a motion to compel filed by the Wood County defendants, and I ordered pro se plaintiff Michelle R. Gilbank to respond to the discovery requests that defendants had sent to her on December 16, 2020. Dkt. 47. I warned Gilbank that if she did not respond to defendants' discovery requests by the April 5 deadline, I would consider imposing sanctions on her.

Gilbank did not comply with the court's order. Instead of responding to the Wood County defendants' discovery requests, Gilbank sent to Wood County her responses to discovery requests that the Marshfield Police Department defendants had served on her. Counsel for the Wood County defendants notified Gilbank that she had not responded to their discovery requests as ordered by the court. In various communications with counsel, Gilbank stated that she either had responded already, that she was working on her responses, that she needed more time to respond, or that she had not received any discovery requests from the

Wood County defendants. Then on April 14, Gilbank sent partial responses to the Wood County defendants. The Wood County defendants then filed the motion to dismiss.

I will deny the motion. In her opposition brief, Gilbank says that she mixed up the discovery requests and did not realize that there were separate requests from the two sets of defendants. She has now supplemented her discovery responses to the Wood County defendants twice, and she has answered most of their discovery requests in full. The Wood County defendants argue that Gilbank's explanation for her delays is incredible, and that her actions likely will create problems with the summary judgment and trial schedule. But I am not persuaded that Gilbank has acted intentionally to withhold information or delay the case. Gilbank is clearly trying to prosecute her case, but she has struggled to meet deadlines because she lacks legal training or experience. Under the circumstances, dismissal of Gilbank's claims would be too harsh a sanction. As for defendants' concern about the schedule, the court can address any scheduling problems if and when they arise.

That being said, Gilbank must comply with her discovery obligations and court deadlines going forward. As the party who initiated this lawsuit, Gilbank is responsible for prosecuting her claims according to the schedule set by the court and in compliance with the Federal Rules of Civil Procedure. If Gilbank is ever confused about her obligations, she should consult the Pretrial Conference Order. Dkt. 34. If she still has questions, she should ask defendants' counsel or the court for guidance. Gilbank also should review defendants' most recent communications and determine whether she can provide more information or clarify the responses she provided already. If defendants remain dissatisfied with Gilbank's responses, they can file a new motion to compel that identifies specific deficiencies in Gilbank's responses.

And if Gilbank continues to miss deadlines, I will reconsider whether dismissal or some other

sanction is appropriate.

ORDER

IT IS ORDERED that the motion to dismiss filed by defendants Mary Christensen,

Theresa Heinzen-Janz, Anne La Chapelle, and Mary Solheim, Dkt. 48, is DENIED.

Entered June 8, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHELLE R. GILBANK,

Plaintiff,

    v.

MARSHFIELD POLICE DEPARTMENT,
THERESA HEINZEN-JANZ, DEREK IVERSON,
MARY CHRISTENSEN, ANNE LACHAPELLE,
and MARY SOLHEIM,

Defendants.

OPINION and ORDER

20-cv-601-jdp

---

     Pro se plaintiff Michelle R. Gilbank lost custody of her minor daughter for more than a year after she was arrested for possession of methamphetamine. Gilbank filed this lawsuit against the individuals involved in arresting her and placing her daughter in protective custody. Gilbank contends that defendants violated her constitutional rights by falsifying evidence, removing her daughter without probable cause to believe that she was in danger, and denying Gilbank the opportunity to challenge the removal.

     All parties have filed motions for summary judgment that are ready for decision. Dkt. 58 (Gilbank's motion); Dkt. 75 (Wood County defendants' motion): Dkt. 66 (Marshfield defendants' motion). Gilbank argues in her numerous briefs that defendants violated her rights under the United States Constitution and Wisconsin law by taking various actions that resulted in her losing custody of her daughter.

     I understand Gilbank's frustration with aspects of the state proceedings. But Gilbank's primary injury—loss of custody of her daughter—was the result of the state juvenile court decision. For reasons explained in this opinion, this court does not have authority to review state court decisions. Gilbank's recourse is to appeal those decisions through the state court

system, and from there to the United States Supreme Court. The other injuries about which Gilbank complains—the warrantless urine test, denial of counsel, and denial of due process— were either already addressed by the state juvenile court or are not constitutional violations. Accordingly, I must deny Gilbank's motion for summary judgment and grant defendants' motions.

## UNDISPUTED FACTS

I find the following facts to be undisputed unless otherwise noted.

### A.  The parties

Michelle Gilbank is the mother of a minor daughter, T.E.H., who was born in 2014. Plaintiff had sole custody and placement of T.E.H. until November 2017, when Ian Hoyle, T.E.H.'s father, was granted supervised visitation rights. (Hoyle's visits were supervised because he has a prior conviction for first-degree sexual assault of a child.) Gilbank has a history of mental illness, including post-traumatic stress disorder, and methamphetamine use.

During the relevant time, defendant Derek Iverson was a detective with Marshfield Police Department in Marshfield, Wisconsin. The other defendants worked for Wood County Human Services Department: Theresa Heinzen-Janz was an initial assessment social worker; Anne LaChapelle was an initial response social worker supervisor; and Mary Solheim was the deputy director of the Human Services.

### B.  Gilbank's contact with Heinzen-Janz and Iverson

In February or March 2018, Gilbank and T.E.H. were living at a friend's house. When the house went into foreclosure, Gilbank and T.E.H. moved into Ian Hoyle's apartment. T.E.H. had her own room in Hoyle's apartment, and Gilbank slept either in the apartment or the

garage. Gilbank and Hoyle's relationship was tense. Hoyle did not like Gilbank living at the apartment, and Gilbank accused Hoyle of being an alcoholic with anger management problems.

Gilbank and T.E.H. were still living with Hoyle in June 2018, during a time of extremely hot weather. On June 29, 2018, an anonymous caller contacted Wood County Human Services and reported that she was worried about a woman and her child who appeared to be living in Hoyle's garage, which lacked air conditioning. Defendants Heinzen-Janz and Detective Iverson went to Hoyle's apartment and talked to Gilbank and T.E.H. Defendants noted that T.E.H. had her own room in the apartment and that she appeared to be well-cared for and in good health. But Gilbank told Heinzen-Janz that the apartment was not a good environment for T.E.H., and that she needed help finding better housing, access to prescription medications, and mental health care for herself. Heinzen-Janz told Gilbank that she would assist her, and they scheduled a meeting for the following week.

In preparation for the follow-up meeting, Heinzen-Janz reviewed Gilbank's history with Wood County Human Services. Heinzen-Janz learned that Gilbank had had contact with Human Services in the past. She also learned that Gilbank had a history of drug use, and that she had a pending charge for methamphetamine possession from August 2017. Heinzen-Janz and Detective Iverson also talked to Hoyle about Gilbank. Hoyle told them that he was concerned about Gilbank's drug use and that he wanted her to move out of his apartment.

Heinzen-Janz and Iverson met with Gilbank on July 3, 2018. Gilbank thought that Heinzen-Janz had come to talk to her about housing options, and she was upset that Iverson was present. Heinzen-Janz and Iverson asked Gilbank about her drug use. Gilbank admitted that she had used methamphetamine in the past, but she stated that she had not used it in approximately three weeks. Gilbank agreed to provide a urine sample.

Gilbank's urine sample was positive for amphetamines and methamphetamines. When Heinzen-Janz and Iverson shared the urinalysis results with Gilbank, Gilbank denied using drugs and insisted that the results were wrong. She told Heinzen-Janz and Iverson that she had recently used Hoyle's sinus inhaler, which might have caused a false positive. (Gilbank continues to insist that the results were wrong, but her dispute is immaterial to the summary judgment motions. In any case, Gilbank now admits that she smoked methamphetamine "residue" on July 1, 2018, two days before providing the urine sample.) Despite Gilbank's positive urinalysis, neither Heinzen-Janz nor Iverson threatened or attempted to arrest Gilbank or remove T.E.H. from Gilbank's custody.

## C. Gilbank's arrest and loss of custody

Between July and August 2018, Gilbank contacted a health clinic for mental health assistance, had found a lead on an apartment, and had obtained money for a security deposit from a community organization. But on August 21, 2018, Gilbank was pulled over for driving with a suspended license. The officer requested the assistance of K9 unit, which arrived and alerted to the presence of a controlled substance. T.E.H. was in the vehicle with Gilbank at the time, so Gilbank called Hoyle, who came with his mother and left with T.E.H. Officers searched Gilbank's vehicle and found 0.7 grams of methamphetamine, a glass pipe with white crystal-like residue, and three clear plastic bags containing a white crystal-like residue. Gilbank was then arrested for possession of methamphetamine and drug paraphernalia.

Gilbank was taken to the police department, where she was interviewed by Heinzen-Janz and Detective Iverson. (The parties submitted an audio and video recording of the interview with the court.) Iverson read Gilbank her *Miranda* rights, and Gilbank told Iverson that she did not want to answer questions without a lawyer present. Iverson responded that he

would not talk to her about the items that had been found in her vehicle, but that he needed to talk to her about her drug use as it related to T.E.H. Iverson stated that he thought that Gilbank was still using methamphetamine because she was associating with known drug dealers and users. Heinzen-Janz told Gilbank that she wanted to create a safety plan under which T.E.H. could stay with Gilbank, but that Gilbank needed to cooperate. Gilbank responded that she had never used methamphetamine around T.E.H., and she denied having a methamphetamine problem. She stated that she was trying to be a better person, had made some progress toward finding housing and health care, and that she needed help. Iverson questioned Gilbank's truthfulness, stating that drugs were found in the vehicle where T.E.H. had been a passenger, that Gilbank had admitted to medicating with methamphetamine, and that she had had a positive urine test for methamphetamine the previous month. Gilbank eventually refused to talk any further. Heinzen-Janz told her that the county would be taking temporary physical custody of T.E.H. and placing her with Hoyle, that a hearing would be held in a day or two, and that Heinzen-Janz would call Gilbank to tell her the time and date of the hearing. Gilbank was taken to the county jail.

Heinzen-Janz filed a request for temporary physical custody in Wood County Juvenile Court the following day. The request stated that Gilbank had been arrested and taken into custody for drug possession, that Gilbank had refused to cooperate with safety planning, and that T.E.H. would be subjected to neglect due to Gilbank's drug use. Heinzen-Janz also submitted a petition for a child in need of protective services under Wis. Stat. § 48.13(10), commonly referred to as a "CHIPS petition." The CHIPS petition stated that Gilbank could not care for T.E.H. because she continued to deny her drug use, had refused to cooperate with Human Services, and was consistently intoxicated or under the influence of drugs. The CHIPS

petition also stated that Gilbank had allowed individuals involved in selling and using drugs to interact regularly with her children, and that she refused to acknowledge the risks to T.E.H.'s safety. (Gilbank disputes the accuracy of Heinzen-Janz's statements in the CHIPS petition, noting that, among other things, she was not consistently under the influence, that she had not been offered any help or a plan from Heinzen-Janz or the county, and that she did not permit drug users or dealers to be around T.E.H.)

## D. Court proceedings

### 1. Temporary physical custody hearing

A temporary physical custody hearing was scheduled for August 23, 2018. Heinzen-Janz called the Wood County jail, and jail staff told her that they would notify Gilbank about the hearing. But Gilbank had been released, so she did not receive notice of the hearing.

The hearing was held in juvenile court without Gilbank. A guardian ad litem that had been appointed for T.E.H. was present, as was an assistant district attorney, Heinzen-Janz, and Ian Hoyle. The guardian ad litem had not yet met or spoken to Gilbank or T.E.H., but he gave the opinion that it was in the best interest of T.E.H. to be placed with Hoyle. The court concluded that the information in the temporary custody request provided by Heinzen-Janz established probable cause to find that Gilbank was neglecting T.E.H., or was unable to provide adequate supervision and care of T.E.H. The court ordered that T.E.H. should be placed with Hoyle until the next hearing. Heinzen-Janz and Iverson instructed Hoyle that if Gilbank came to his house to see T.E.H., he should tell her that visits had to be arranged and supervised by Human Services. They also told Hoyle to call the police if Gilbank refused to leave.

On August 24, 2018, Gilbank filed a motion to dismiss the temporary custody order. She argued that the order was not necessary because she had already placed T.E.H. in the

temporary custody of her father, Hoyle. She also argued that there was insufficient evidence to support taking her child, and that various government actors had violated her constitutional rights. She requested that the probable cause hearing be reopened because she had not received notice of it. The court denied Gilbank's motion.

### 2. CHIPS petition evidentiary hearings

An evidentiary hearing on the CHIPS petition was held on September 25, 2018. Heinzen-Janz filed a report with the court that described, among other things, T.E.H.'s current situation, Gilbank's history, and Human Service's recommendations regarding placement and visitation. Heinzen-Janz recommended that T.E.H. remain in the care of her father, Hoyle, based on Gilbank's continued denial of her drug use and her lack of cooperation with the Human Services.

Gilbank appeared at the hearing with an attorney. An assistant district attorney presented evidence from Hoyle, Iverson, Heinzen-Janz, and the police officer who had arrested Gilbank for possession of methamphetamine the previous month. Hoyle testified that the last time he saw Gilbank use drugs was in January 2017, and that he and Gilbank had used drugs together on that occasion, but that he suspected she might still use drugs. Hoyle also testified that Gilbank was meeting all of T.E.H.'s needs, and that he did not have concerns about T.E.H. being fed, clothed, housed, or well-nourished. Iverson testified that T.E.H. appeared to be clean, well-fed, and well-cared for in his interactions with her. But Heinzen-Janz gave the opinion that even though T.E.H. had been well-cared for, and that Gilbank had taken steps to secure housing and mental health treatment, Gilbank's ongoing methamphetamine use presented an unsafe situation for T.E.H. Heinzen-Janz also stated that Gilbank had refused to cooperate since her arrest, though she admitted that Gilbank had contacted Human Services

immediately after her release to find out what she needed to do to obtain visitation with T.E.H.

Heinzen-Janz also conceded that Gilbank might have been reluctant to discuss drug use after

being arrested because law enforcement was present, she had been read her *Miranda* rights, and

she did not want to incriminate herself.

Gilbank's attorney cross-examined the state's witnesses, but she did not present any

evidence or call witnesses on Gilbank's behalf. Her attorney argued that the state had failed to

meet its burden to show that T.E.H. was in danger or that Gilbank had neglected T.E.H. The

guardian ad litem gave the opinion that T.E.H. needed protective services, and that he did not

object to her placement with Hoyle. The court found that T.E.H. needed to be protected from

Gilbank's drug use, and it ordered supervision of T.E.H. for a period not exceeding one year.

Another hearing on placement was set for October 29, 2018.

At the October 29 hearing, Gilbank's attorney argued that T.E.H. should be placed with

Gilbank, and that Gilbank could comply with all of the court's and Human Service's

recommendations while retaining custody of T.E.H. Gilbank testified on her own behalf,

stating that she had not used methamphetamine since before August 2018, and that she

provided a more nurturing and attentive environment for T.E.H. than Hoyle did. A friend of

Gilbank's testified that Gilbank had been living with her, in a house, for approximately three

weeks, that T.E.H. could live there and have her own room, that she had no concerns about

unannounced visits from Human Services, and that she had never used methamphetamines.

Gilbank also presented letters written by Hoyle, Scott Gilbank (her husband, from whom she

was separated), and her daughter, all of whom described Gilbank's positive parenting.

Heinzen-Janz testified that T.E.H. should remain with Hoyle because Gilbank's drug

use and lack of cooperation made reunification impossible. The court agreed with Heinzen-

Janz, and it concluded that T.E.H. needed protection from Gilbank due to Gilbank's methamphetamine addiction. The court ordered that T.E.H. should remain with Hoyle for at least a year. Gilbank later filed a pro se motion to dismiss the CHIPS petition, arguing that the state had failed present evidence that T.E.H. had been neglected, that the court had refused to permit Gilbank to present evidence, and that T.E.H. should be placed with Gilbank. The court denied the motion.

### 3.  CHIPS closure hearing and Gilbank's appeal

On September 9, 2019, the Wood County Juvenile Court held a closure hearing on the CHIPS petition. All of the involved parties, including Gilbank and Hoyle, agreed that the CHIPS case should be closed because there was a separate case in family court addressing custody and physical placement of T.E.H. The court agreed, and it entered an order closing the CHIPS case.

On November 1, 2019, Gilbank filed a pro se appeal of the closure order. The Wisconsin Court of Appeals dismissed Gilbank's appeal in January 2020, noting that Gilbank had no standing to appeal because she had approved of the closure order in the circuit court. In addition, the CHIPS case no longer governed the custody and placement of T.E.H.

In March 2020, Gilbank regained sole custody of T.E.H.

### E.  Federal lawsuit

Gilbank filed this lawsuit in June 2020. In her complaint, Gilbank sued nearly everyone involved in the investigation and legal proceedings regarding the removal of T.E.H. from Gilbank's custody, including police officers, social workers, and the presiding judges in juvenile court. She raised numerous claims under the constitution and various statutory provisions. I dismissed several of her claims in a previous order, Dkt. 41, including her claims against the

9

state court judges, Children's Hospital of Wisconsin, and Wood County Department of Human Services. I also dismissed T.E.H. as a plaintiff.

During discovery and the briefing of the summary judgment motions, Gilbank withdrew a number of claims, including her claims under HIPPA and the First Amendment, Sixth Amendment, Seventh Amendment, and Eighth Amendment. Dkt. 115, ¶ 83 and Dkt. 118, at 2–3. Because Gilbank has withdrawn these claims, I need not discuss them further.

The remaining defendants are four Wood County social workers (Theresa Heinzen-Janz, Mary Christensen, Ann LaChappelle, and Mary Solheim), the Marshfield Police Department, and Marshfield police detective Derek Iverson. Gilbank's claims against Christensen, LaChappelle, and Soheim are largely based on their supervising and approving Heinzen-Janz's actions.

OPINION

Gilbank contends that the remaining defendants violated her constitutional rights by: (1) taking a urine sample without a warrant; (2) failing to provide a lawyer to her during her post-arrest interrogation; (3) temporarily placing T.E.H. with Hoyle without probable cause to believe that T.E.H. was in danger; (4) pursuing the CHIPS petition based on false and incomplete information about Gilbank and Hoyle; (5) failing to give Gilbank adequate notice and an opportunity to be heard regarding T.E.H.'s placement; (6) evicting Gilbank from her home at Hoyle's house and rendering her homeless; (7) restricting the visitation that Gilbank had with T.E.H.; and (8) violating numerous state statutes that govern protective custody.

I am sympathetic to Gilbank's arguments. By all accounts, Gilbank and T.E.H. had a strong bond, and T.E.H. was a happy and healthy child despite Gilbank's ongoing struggle with

methamphetamine. Gilbank was understandably devastated and angry when she lost custody of her daughter. She had only recently reached out to defendants for help with housing and mental health care, and she felt betrayed by the results of her efforts. To make matters worse, the juvenile court's order on the CHIPS petition essentially left Gilbank homeless, as it prohibited her from living with T.E.H. at Hoyle's apartment, where Gilbank had been staying prior to her arrest.

But most of the injuries about which Gilbank now complains were the result of the Wood County Juvenile Court's orders in the CHIPS case. Over the course of multiple hearings, the juvenile court considered Gilbank's claims that T.E.H. was seized without probable cause and was not in need of protection. The state court heard the arguments, weighed the evidence, determined credibility, and found probable cause that T.E.H. was in need of protection. The court considered and approved the requirements of the CHIPS petition regarding T.E.H.'s placement and Gilbank's visitation rights. The *Rooker-Feldman* doctrine prohibits this court from reviewing those orders or to issue a decision that would undermine the validity of those orders.

Under the *Rooker-Feldman* doctrine, lower federal courts lack jurisdiction over cases brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *See also Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16, (1923); *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 486 (1983); *Golden v. Helen Sigman & Assoc.*, 611 F.3d 356, 361–62 (7th Cir. 2010). The *Rooker-Feldman* doctrine also prohibits lower federal courts from deciding matters "inextricably related to state court decisions." *EOR Energy LLC v. Illinois Envtl. Prot. Agency*, 913 F.3d 660, 664 (7th Cir. 2019).

11

Gilbank argues that the juvenile court's decisions were the result of fraud and constitutional violations. She argues that defendants presented false evidence about her drug use and alleged neglect of T.E.H. She accuses defendants of meeting secretly with Hoyle, of using a warrantless urinalysis, and of pressuring her to talk about her drug use without an attorney, all in an effort to remove T.E.H. from her custody. She also complains that defendants and the juvenile court failed to follow state statutory requirements that would have given Gilbank greater notice and additional opportunities to present evidence during the CHIPS proceedings.

But Gilbank presents all of these arguments as a way to attack the juvenile court's decision to provide T.E.H. with protective services and place her with Hoyle. Because a finding in Gilbank's favor would contradict the state court's orders, this court does not have jurisdiction over her claims. *See Bauer v. Koester*, 951 F.3d 863, 866 (7th Cir. 2020) (lawsuit is barred by *Rooker-Feldman* doctrine if "any finding in favor of the [plaintiff] would require [the federal court] to contradict the state court's orders"); *Golden*, 611 F.3d at 362 (federal court lacked jurisdiction to hear claim based on injuries caused by state-court custody orders unfavorable to plaintiff); *Dillon v. Indiana Dep't of Child Servs.*, 841 F. App'x 1003, 1004 (7th Cir. 2021) (*Rooker-Feldman* barred claim "that serious constitutional violations produced the state court's adverse judgments"). Arguments like Gilbank's must be pursued on appeal through the state courts. Gilbank's only federal remedy would be to seek review of the state-court decisions in the United States Supreme Court.

Gilbank contends that some of her injuries occurred prior to, and exist independently of, the state court's custody decision. Specifically, she argues that, regardless of the state court's protection and custody decisions, she was injured by the following: (1) the warrantless

12

urinalysis; (2) the interrogation without an attorney at the police station; and (3) the denial of due process. If these injuries were actually independent of the state court's decisions, Gilbank might be able to recover for those injuries in federal court. *See Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015) ("[I]f a plaintiff contends that out-of-court events have caused injury that the state judiciary failed to detect and repair, then a district court has jurisdiction—but only to the extent of dealing with that injury."). But even if I assumed that Gilbank suffered injuries that were not caused by, or inextricably related to, the state court's decisions, Gilbank has not presented evidence to support any constitutional violations based on the above incidents.

First, Gilbank consented to the urinalysis. Although she says she felt pressured to consent, she does not say that defendants threatened her, bribed her, or otherwise suggested that she had no choice but to consent. Because she consented to the urinalysis, she cannot sustain a constitutional claim against defendants based on an unlawful search or seizure. *See United States v. White*, 781 F.3d 858, 860–61 (7th Cir. 2015) (Fourth Amendment protections do not apply when person consents to the search).

Second, defendants' questioning of Gilbank without an attorney did not violate her Fifth Amendment right against self-incrimination. The Fifth Amendment guarantees that no person "shall be compelled in any *criminal case* to be a witness against himself." U.S. Const. Amend. V (emphasis added). The Fifth Amendment does not apply to state child protection proceedings. *See Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (to assert viable § 1983 claim based on violation of the right against self-incrimination, the incriminating statement at issue must be used in a criminal case). Because Gilbank has not alleged that any statements that she made during the interview with Heinzen-Janz and Iverson after her arrest were used against her in a criminal proceeding, she has not stated a Fifth Amendment claim.

13

Third, Gilbank's due process arguments were either addressed and rejected by the state court already, they lack merit, or they are based solely on state statutes that do not support a federal constitutional claim. Gilbank argued in state juvenile court that she was denied improper notice and that the probable cause hearing should be reopened. The state court rejected her arguments. So Gilbank's due process claims based on improper notice and procedural flaws at the probable cause hearing are barred by the doctrine of issue preclusion, which bars relitigation of issues that have been litigated and decided in a previous action. *See Aldrich v. Labor & Industry Review Commission*, 2012 WI 53, ¶ 88, 341 Wis. 2d 36, 68, 814 N.W.2d 433, 449; *Jensen v. Foley*, 295 F.3d 745, 747 (7th Cir. 2002) (state court probable cause finding in child endangerment proceedings precluded relitigation of the issue).

In addition, Gilbank's due process arguments are not supported by evidence. The undisputed facts show that Gilbank, with the assistance of counsel, was given multiple opportunities to challenge the removal of T.E.H. from her custody. She was permitted to present witnesses and other evidence, testify on her own behalf, and cross-examine the state's witnesses. Although Gilbank was unsatisfied with the results of the state court hearings, she was provided process sufficient to satisfy federal constitutional standards.

Finally, Gilbank's arguments that defendants and the state court failed to adhere strictly to state statutory requirements for child protection hearings are not sufficient to state a federal due process violation. *See Wallace v. Tilley*, 41 F.3d 296, 301 (7th Cir. 1994) ("The denial of state procedures in and of itself does not create inadequate process under the federal constitution."); *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("[A] violation of state law . . . is not a denial of due process, even if the state law confers a procedural right.").

14

In sum, most of Gilbank's claims are based on injuries that were either caused by the state juvenile court's decision or were considered and rejected already by a state court. This court cannot provide Gilbank relief on those claims. Gilbank's other claims lack any evidentiary basis. Defendants are entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. Plaintiff Michelle Gilbank's motion for summary judgment, Dkt. 58, is DENIED.

2. The motion for summary judgment filed by defendants Derek Iverson and Marshfield Police Department, Dkt. 66, is GRANTED.

3. The motion for summary judgment filed by defendants Mary Christensen, Theresa Heinzen-Janz, Anne La Chapelle, and Mary Solheim, Dkt. 75, is GRANTED.

4. The clerk of court is directed to enter judgment for defendants and close this case.

Entered December 10, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHELLE RENE' GILBANK,

     Plaintiff,

                                        Case No.  20-cv-601-jdp

  v.

WOOD COUNTY DHS, MARSHFIELD POLICE
DEPARTMENT, CHILDREN'S HOSPITAL
OF WISCONSIN, THERESA HEINZEN-JANZ,
DEREK IVERSON, MARY CHRISTENSEN,
ANNE LACHAPELLE, MARY SOLHEIM
GREGORY POTTER, and NICHOLAS BRAZEAU, JR.,

     Defendants.

---

## JUDGMENT IN A CIVIL CASE

---

      IT IS ORDERED AND ADJUDGED that judgment is entered in favor of defendants

dismissing this case.


   /s/                                         December 10, 2021
Peter Oppeneer, Clerk of Court                      Date