## In the United States Court of Appeals for the Seventh Circuit

MICHELLE R. GILBANK,

*Plaintiff-Appellant,*

*v.*

WOOD COUNTY DEPARTMENT OF
HUMAN SERVICES, ET AL.,

*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
CASE NO. 3:20-CV-00601-JDP
THE HONORABLE JAMES D. PETERSON, PRESIDING

## RESPONSE BRIEF OF DEFENDANTS-APPELLEES WOOD COUNTY DEPARTMENT OF HUMAN SERVICES, THERESA HEINZEN-JANZ, MARY CHRISTENSEN, ANNE LA CHAPELLE, AND MARY SOLHEIM

Axley Brynelson, LLP
Lori M. Lubinsky, SBN 1027575
Aneet Kaur, SBN 1088063
2 E. Mifflin Street, Suite 200
Madison, WI 53703
(608) 257-5661

Attorneys for Wood County Department of Human Services, Theresa Heinzen-Janz, Mary Christensen, Anne La Chapelle, and Mary Solheim

# RULE 26.1 DISCLOSURE STATEMENT

Appellate Court Case No. 22-1037

Short Caption:  Michelle R. Gilbank v. Wood County DHS, et al.

The full name of every party that the attorney represents in this case: Wood County Department of Human Services, Theresa Heinzen-Janz, Mary Christensen, Anne La Chapelle, and Mary Solheim.

The names of all law firms whose partners or associates have appeared for the parties in this case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court: Axley Brynelson, LLP

If the party or amicus is a corporation:

    (i)     Identify all its parent corporations, if any; and

    (ii)    List any publicly held company that owns 10% or more of the party's or amicus stock: N/A

Attorney's Signature: */s/ Aneet Kaur*

Date: February 14, 2022

Attorney's Printed Name: Aneet Kaur

Address: 2 East Mifflin Street, Suite 200, Madison, Wisconsin 53703

## RULE 26.1 DISCLOSURE STATEMENT

Appellate Court Case No. <u>22-1037</u>

Short Caption: <u>Michelle R. Gilbank v. Wood County DHS, et al.</u>

The full name of every party that the attorney represents in this case: <u>Wood County Department of Human Services, Theresa Heinzen-Janz, Mary Christensen, Anne La Chapelle, and Mary Solheim.</u>

The names of all law firms whose partners or associates have appeared for the parties in this case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court: <u>Axley Brynelson, LLP</u>

If the party or amicus is a corporation:

(i)     Identify all its parent corporations, if any; and

(ii)    List any publicly held company that owns 10% or more of the party's or amicus stock: <u>N/A</u>

Attorney's Signature: <u>*/s/ Lori M. Lubinsky*</u>

Date: <u>February 14, 2022</u>

Attorney's Printed Name: <u>Lori M. Lubinsky</u>

Address: <u>2 East Mifflin Street, Suite 200, Madison, Wisconsin 53703</u>

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT.......................................................ii

RULE 26.1 DISCLOSURE STATEMENT.......................................................iii

TABLE OF CONTENTS............................................................................iv

TABLE OF AUTHORITIES .....................................................................vi

JURISDICTIONAL STATEMENT ............................................................ 1

    I.  Information required by Seventh Circuit Rule 28(a)(1)...............................1

    II.  Information required by Seventh Circuit Rule 28(a)(2)..............................1

    III. Information required by Seventh Circuit Rule 28(a)(3)..............................2

STATEMENT CONCERNING ORAL ARGUMENT ....................................... 3

STATEMENT OF THE ISSUES.................................................................. 4

    I.  Has Gilbank waived her arguments on appeal? ...........................................4

    II.  Did the District Court correctly determine that the *Rooker-Feldman* and Issue Preclusion doctrines barred Gilbank's claim? ............................4

    III. Are Gilbank's claims barred as a matter of law, on the merits, and on doctrine of qualified immunity? ...........................................................4

STATEMENT OF THE CASE..................................................................... 5

STANDARD OF REVIEW ........................................................................ 5

SUMMARY OF THE ARGUMENT ............................................................. 5

ARGUMENT ........................................................................................ 6

    I.  Gilbank Has Waived Some, If Not All, of Her Claims. ................................6

        a.  Law Regarding Waiver.........................................................................7

        b.  Gilbank Has Waived Any Challenge to the District Court's Prior Rulings. ......................................................................................8

        c.  Gilbank Has Waived Any Challenge to Many, If Not All, of the Claims Addressed in the District Court's Summary Judgment Decision. .................................................................. 10

    II. The *Rooker-Feldman* Doctrine and Issue Preclusion Bar Gilbank's Claims.............................................................................................13

        a.  Gilbank's Claims Are Barred by the *Rooker-Feldman* Doctrine. .........13

        b.  Issue Preclusion Bars Gilbank's Claims arising out of the Reasonableness of the Removal. ............................................................ 16

III. Gilbank's Fourth and Fourteenth Amendment Claims Fail as a Matter of Law, on the Merits, and on Immunity Grounds........................23

    a. Gilbank's Fourth Amendment Claim Premised on an Alleged Unlawful Seizure of T.E.H. Fails as a Matter of Law and on Immunity Grounds. ................................................................ 23

        i. *Gilbank's Fourth Amendment Claim Premised on an Alleged Unlawful Seizure of T.E.H. Fails as a Matter of Law.* ......................... 24

        ii. *Gilbank's Claim Relating to the Alleged Unlawful Seizure of T.E.H. is Barred by Qualified Immunity.* ............................................ 25

    b. Gilbank's Fourth Amendment Claim Premised on eviction fails as a matter of law and on immunity grounds. ........................... 30

    c. Gilbank's Fourteenth Amendment Claims Fails as a Matter of Law, on the Merits, and on Immunity Grounds.................................. 33

        i. *Gilbank's Claim that She Did Not Receive Procedural Due Process Has No Basis in Fact or Law.* .................................................... 33

        ii. *Absolute/Quasi-Judicial Immunity Bars Gilbank's Claims Procedural Due Process Claims.* .......................................................... 40

        iii. *Gilbank's Substantive Due Process Claim is Preempted by Her Fourth Amendment Claims; Alternatively, This Claim is Without Any Basis in Fact or Law.* ....................................................... 43

        iv. *Gilbank's Procedural and Substantive Due Process Claim is Also Foreclosed by The Doctrine of Qualified Immunity.* ............................. 45

CONCLUSION.............................................................................. 46

CERTIFICATE OF COMPLIANCE .............................................. 47

CERTIFICATE OF SERVICE ...................................................... 48

# TABLE OF AUTHORITIES

## Cases

*Aldrich v. Labor & Indus. Review Comm'n,*
   2012 WI 53, 814 N.W.2d 433. ........................................................ 18, 19, 20

*Anderson v. Creighton,*
   483 U.S. 635 (1987) .................................................................................. 26

*Andrade v. City of Hammond,*
   9 F.4th 947 (7th Cir. 2021) ...................................................................... 14

*Andrews v. Hickman County,*
   700 F.3d 845 (6th Cir. 2012) ................................................................... 11

*Bob Willow Motors, Inc. v. Gen. Motors Corp.,*
   872 F.2d 788 (7th Cir. 1989) ..................................................................... 7

*Brokaw v. Mercer County,*
   235 F.3d 1000 (7th Cir. 2000) .......................................................... passim

*Callahan v. City of New York,*
   90 F. Supp. 3d 60 (E.D.N.Y. 2015) ........................................................ 38

*Carpenter v. PNC Bank, Nat'l Ass'n,*
   633 F. App'x 346 (7th Cir. 2016) ........................................................... 15

*Chavez v. Martinez,*
   538 U.S. 760 (2003) .................................................................................. 11

*Coverdell v. Dep't of Soc. & Health Servs.,*
   834 F.2d 758, (9th Cir. 1987) ............................................................ 28, 29

*Dist. of Columbia Ct. App. v. Feldman,*
   460 U.S. 462 (1983) .................................................................................. 13

*Doe v. Louisiana,*
   2 F.3d 1412 (5th Cir. 1993) ..................................................................... 27

*Donald v. Polk County,*
   836 F.2d 376 (7th Cir. 1988) ............................................................. 18, 25

*Ernst v. Child & Youth Servs. of Chester Cnty.,*
   108 F.3d 486 (3d Cir. 1997) .................................................................... 41

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
   544 U.S. 280 (2005) .................................................................................. 14

*Frazier v. Bailey,*
   957 F.2d 920 (1st Cir. 1992) .................................................................... 27

*Gaetjens v. City of Loves Park,*
   4 F.4th 487 (7th Cir. 2021) ...................................................................... 12

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) .................................................................................. 26

*Hernandez v. Foster*,
   657 F.3d 463 (7th Cir. 2011) .................................................................34, 35, 43, 44
*Hoagland v. Town of Clear Lake*,
   415 F.3d 693 (7th Cir. 2005) ................................................................................. 9
*Hodorowski v. Ray*,
   844 F.2d 1210 (5th Cir. 1988) ............................................................................27
*Jensen v. Foley*,
   295 F.3d 745 (7th Cir. 2002) ...............................................................17, 18, 22
*Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*,
   547 F.2d 1 (1st Cir. 1976)....................................................................................29
*Kiser v. Garrett*,
   67 F.3d 1166 (5th Cir. 1995) .......................................................................27, 45
*Krowicki v. Sayemour*,
   No. 6:16CV1186DNHATB, 2016 WL 9227665 (N.D.N.Y. Oct. 5, 2016) ..............24
*Loertscher v. Anderson*,
   No. 14-CV-870-jdp, 2016 WL 3166599 (W.D. Wis. June 6, 2016) ...................41, 42
*Long v. Shorebank Dev. Corp.*,
   182 F.3d 548 (7th Cir. 1999) ...............................................................................13
*Lossman v. Pekarske*,
   707 F.2d 288 (7th Cir. 1983) ...............................................................................34
*Malley v. Briggs*,
   475 U.S. 335 (1986) .............................................................................................26
*Marshall v. Allen*,
   984 F.2d 787 (7th Cir. 1993) ...............................................................................26
*Mathews v. Eldridge*,
   424 U.S. 319 (1976).............................................................................................34
*Michael C. v. Gresbach*,
   526 F.3d 1008 (7th Cir. 2008) ............................................................................24
*Milestone v. City of Monroe*,
   665 F.3d 774 (7th Cir. 2011) ...............................................................................12
*Millspaugh v. Cnty. Dep't of Pub. Welfare*,
   937 F.2d 1172 (7th Cir. 1991) ...............................................................28, 40, 42
*Mitchell v. Forsyth*,
   472 U.S. 511 (1985).............................................................................................25
*N. States Power Co. v. Bugher*,
   525 N.W.2d 723 (Wis. 1995) ...............................................................................20
*Osteen v. Henley*,
   13 F.3d 221 (7th Cir. 1993) .................................................................................11
*Pearson v. Callahan*,
   555 U.S. 223 (2009)..............................................................................................26

*Piphus v. City of Chicago Police Dep't,*
No. 12 CV 7259, 2013 WL 3975209 (N.D. Ill. Aug. 1, 2013) ...................................... 9

*Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.,*
640 F.3d 716 (6th Cir. 2011) .............................................................. 41

*Rakovich v. Wade,*
850 F.2d 1180 (7th Cir. 1988) ............................................................. 26

*Ray v. Maher,*
662 F.3d 770 (7th Cir. 2011) .............................................................. 24

*Remer v. Burlington Area Sch. Dist.,*
205 F.3d 990 (7th Cir. 2000) ............................................................. 13

*Richardson v. Koch L. Firm, P.C.,*
768 F.3d 732 (7th Cir. 2014) ............................................................. 14

*Russ v. Watts,*
414 F.3d 783 (7th Cir. 2005) ............................................................. 24

*Saucier v. Katz,*
533 U.S. 194 (2001) ....................................................................... 26

*Siliven v. Ind. Dep't of Child Servs.,*
635 F.3d 921 (7th Cir. 2011) ............................................................. 44

*Tenenbaum v. Williams,*
193 F.3d 581 (2d Cir. 1999) ............................................................. 27

*Turney v. O'Toole,*
898 F.2d 1470 (10th Cir. 1990) .......................................................... 28

*United States v. Dunkel,*
927 F.2d 955 (7th Cir. 1991) ............................................................. 7

*United States v. Giovannetti,*
919 F.2d 1223 (7th Cir. 1990) ............................................................ 7

*United States v. Lanier,*
520 U.S. 259 (1997) ...................................................................... 27

*Unites States v. Webster,*
775 F.3d 897 (7th Cir. 2015) ............................................................. 7

*White v. City of Markham,*
310 F.3d 989 (7th Cir. 2002) .................................................... 31, 32, 33

*Whiting v. Marathon Cnty. Sheriff's Dep't,*
382 F.3d 700 (7th Cir. 2004) ............................................................. 9

*Wilson v. Layne,*
526 U.S. 603 (1999) ...................................................................... 26

*Xiong v. Wagner,*
700 F.3d 282 (7th Cir. 2012) ............................................................. 27

**Statutes**

Wis. Stat. § 808.03(2) ................................................................................................. 22

**Other Authorities**

7th Cir. R. 28(a)(1) ....................................................................................................... 1
Fed. R. App. P. 28(a) .................................................................................................... 7
Fed. R. App. P. 34(a)(2) ............................................................................................... 3
Seventh Circuit Rule 28(a)(2) ...................................................................................... 1
Seventh Circuit Rule 28(a)(3) ...................................................................................... 2

# JURISDICTIONAL STATEMENT

Gilbank's jurisdictional statement is **not** complete and correct. Below is a correct and complete jurisdictional statement pursuant to Seventh Circuit Rule 28(b).

## I.    Information required by Seventh Circuit Rule 28(a)(1).

The District Court had jurisdiction over Gilbank's federal-law claims under 28 U.S.C. § 1331 (federal question) and § 1343(a)(3) (civil rights). *See* 7th Cir. R. 28(a)(1). The Amended Complaint raised claims under the First, Fourth through Ninth, and Fourteenth Amendments to the United States Constitution. (Dkt. 6.)[1]

## II.    Information required by Seventh Circuit Rule 28(a)(2).

This Court has jurisdiction pursuant to 28. U.S.C. § 1291. On December 10, 2021, the District Court granted the Motions for Summary Judgment filed by the Wood County Department of Human Services, Theresa Heinzen-Janz, Mary Christensen, Anne La Chapelle, and Mary Solheim (the "Wood County Defendants") and the Marshfield Police Department and Marshfield police detective Derek Iverson (the "Marshfield Defendants"), and dismissed Gilbank's action on the merits and with prejudice. (Dkt. 131.) The District Court entered Judgement in favor of the Wood

---

[1] "Dkt." refers to the docket entry and corresponding document in the District Court record, as noted in the Civil Docket filed with this Court on January 10, 2022. Conversely, "Doc." refers to documents, which have been filed in this present appeal.

County Defendants and the Marshfield Defendants that same day. (Dkt. 132.) On

January 9, 2022, Gilbank filed her Notice of Appeal. (Dkt. 135.)

## III.    Information required by Seventh Circuit Rule 28(a)(3).

The appeal is from a final order and judgment and no further claims or issues

remain before the District Court. (*See* Dkt. 132.)

## STATEMENT CONCERNING ORAL ARGUMENT

The Wood County Defendants do not believe that oral argument is necessary. The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. App. P. 34(a)(2).

## STATEMENT OF THE ISSUES

**I.** **Has Gilbank waived her arguments on appeal?**

This Court should answer yes.

**II.** **Did the District Court correctly determine that the *Rooker-Feldman* and Issue Preclusion doctrines barred Gilbank's claim?**

This Court should answer yes and affirm.

**III.** **Are Gilbank's claims barred as a matter of law, on the merits, and on doctrine of qualified immunity?**

This Court should answer yes and affirm.

## STATEMENT OF THE CASE

To avoid unnecessary duplication, the Wood County Defendants adopt and incorporate herein by reference the "Statement of Case" as stated in the Marshfield Defendants' Appellate Brief.

## STANDARD OF REVIEW

Gilbank's brief is incomplete in that she failed to set forth the applicable standard of review in this matter.

To avoid unnecessary duplication, the Wood County Defendants adopt and incorporate herein by reference the "Standard of Review" as stated in the Marshfield Defendants' Appellate Brief.

## SUMMARY OF THE ARGUMENT

Gilbank appeals from the District Court's final judgment entered on December 10, 2021, and "from all previous rulings in this action." However, her five-page brief fails to even mention the claims dismissed in the District Court's prior orders, and many of the claims dismissed in the District Court's Summary Judgment ruling. The claims that she *does* address are severely underdeveloped and do not merit consideration. Her appeal should be dismissed on this basis alone.

Alternatively, the Court should affirm the dismissal because the District Court appropriately found that Gilbank's claims are barred by the *Rooker-Feldman* Doctrine and the doctrine of Issue Preclusion. Gilbank's claims are inextricably

intertwined with the State Juvenile Court's decisions, which are the source of the "injury" of which Gilbank complains. Gilbank's attempt to separate the injuries fails in light of her allegation that Defendants *caused* the State Juvenile Court to take the action that caused her alleged injury. (*See* Doc. 3.) Additionally, many of Gilbank's claims succeed only if there is a finding that there was *no* probable cause for the removal, and continued removal, of T.E.H. Because the State Juvenile Court has already held otherwise, the District Court was barred by the doctrine of issue preclusion from reconsidering the issue.

Lastly, and alternatively, Gilbank's claims fail on the merits, as a matter of law, and are barred based on immunity principles. The Court may affirm dismissal on this alternate ground.

## ARGUMENT

### I.    Gilbank Has Waived Some, If Not All, of Her Claims.

Gilbank's skeletal five-page appellate brief fails to so much as mention, (much less analyze and provide citations to authority for) the vast majority of the claims she seeks to revive. (*See* Doc. 3.) The claims she does mention are underdeveloped and lack citations to the authorities and parts of the record on which she relies. This Court is not positioned to weed through the District Court Orders Gilbank seeks to overturn, determine what, if any, basis she has for overturning those

orders, and analyze those arguments for her. Gilbank's appeal should be dismissed on this basis alone.

### a. Law Regarding Waiver

An appellant who fails to raise or develop an argument in her opening brief waives those arguments on appeal. Federal Rule of Appellate Procedure 28(a) requires that an appellant's brief contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies" within its argument. Fed. R. App. P. 28(a). Arguments raised in a reply brief, but not opening brief, are waived. *Unites States v. Webster*, 775 F.3d 897, 904 (7th Cir. 2015).

Moreover, arguments that are conclusory or underdeveloped without supporting authority are also deemed waived. "A skeletal 'argument', really nothing more than an assertion, does not preserve a claim." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (*citing United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990)). "A litigant who fails to press a point by supporting it with *pertinent* authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Giovannetti*, 919 F.2d at 1230. (*citing Bob Willow Motors, Inc. v. Gen. Motors Corp.*, 872 F.2d 788, 795 (7th Cir. 1989)) (holding that an argument which amounts to a "mere single line in the 'summary of argument' section of [the] opening brief" is waived).

### b. Gilbank Has Waived Any Challenge to the District Court's Prior Rulings.

In her Notice of Appeal, Gilbank states that she appeals from the final judgment entered on December 10, 2021, and "from all previous rulings in this action." (Dkt. 135.) The previous rulings consist of the following:

- Opinion and Order dated December 15, 2020, in which the District Court:

    - Granted the Wood County Defendants' Motion to Dismiss the Wood County Department of Human Services (the "Department"), Gilbank's 48 U.S.C. § 1986 claim, and T.E.H.'s claims;
    - Granted Judges Gregory Potter and Nicolas Brazeau, Jr.'s Motions to Dismiss;
    - Granted Children's Hospital of Wisconsin's Motion to Dismiss;
    - Denied Gilbank's Motion for an exemption from PACER fees; and
    - Denied Gilbank's motion for assistance in recruiting counsel or a guardian ad litem.

- Opinion and Order dated June 8, 2021, denying Wood County Defendants' Motion to Dismiss due to Gilbank's failure to comply with discovery orders.[2]

(Dkt. 41, 57.) Gilbank's appellate brief is devoid of any mention of the Court's prior orders or specific rulings. (*See generally* Doc. 3.) Specifically, as it relates to the Wood County Defendants, Gilbank's appellate brief fails to raise (much less provide analysis, and citations to authorities and parts of the record for) any arguments regarding the District Court's dismissal of the Department, the

---

[2] This is one of the orders Gilbank attached to her Notice of Appeal. Presumably, Gilbank does not actually seek to overturn a decision that was in her favor. However, this is demonstrative of Gilbank's tactic of "throwing everything at the wall," and asking this Court to weed through the information to determine which, if any, of the claims are revivable.

dismissal of Gilbank's 48 U.S.C. § 1986 claim, and the dismissal of T.E.H.'s claims. This Court is not positioned to develop Gilbank's arguments on her behalf. By failing to raise and develop these arguments, with failing to cite to authorities and part of the records, Gilbank has waived any arguments relating to the District Court's prior orders.

If the Court considers the merits of Gilbank's claims, the Court should affirm dismissal as a matter of law. First, as to the District Court's dismissal of the Department, under Wisconsin law, municipal departments are arms of the municipality, and cannot be sued. *See, e.g.*, *Whiting v. Marathon Cnty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004). Next, claims under § 1986 have a one-year statute of limitation (*see Hoagland v. Town of Clear Lake,* 415 F.3d 693, 700 (7th Cir. 2005)), and Gilbank's Amended Complaint contains no allegations suggesting that the Wood County Defendants engaged in conspiratorial acts within the year before she filed this lawsuit. (*See* Dkt. 6.) Lastly, the District Court properly granted the Wood County Defendants' Motion to Dismiss T.E.H. because a *pro se* parent cannot assert claims on behalf of their children absent legal representation. *See, e.g.*, *Piphus v. City of Chicago Police Dep't*, No. 12 CV 7259, 2013 WL 3975209, at *3 (N.D. Ill. Aug. 1, 2013). Here, Gilbank had no legal representation and, therefore, the claims on behalf of T.E.H. were properly dismissed.

### c. Gilbank Has Waived Any Challenge to Many, If Not All, of the Claims Addressed in the District Court's Summary Judgment Decision.

Through discovery and at the summary judgment stage, Gilbank withdrew several of her claims. Her remaining claims were as follows:

1) Fourth Amendment claim arising out of taking of a urine sample;

2) Fourth Amendment claim arising out of alleged "eviction"[3];

3) Fourth Amendment claim arising out the alleged "seizure" of T.E.H. without probable cause;

4) Fifth Amendment claim arising out of allegations that Detective Iverson and Ms. Heinzen-Janz compelled her to be a witness against herself;

5) Fourteenth Amendment claim for denial of Procedural Due Process when there was no pre-deprivation hearing, when she had been bonded out of jail prior to receiving notice of one of the many post-deprivation hearings, and when Ms. Heinzen-Janz and Detective Iverson allegedly provided "false, misleading, and incomplete information" to the juvenile court;

6) Fourteenth Amendment claim for alleged denial of Substantive Due Process arising out of the removal of T.E.H. and placement of T.E.H. with her father;

7) *Monell* claims against the Wood County and Marshfield Defendants; and

8) Constitutional claims arising out of alleged violation of several state statutes.

Yet again, Gilbank's brief does not so much as mention her claims relating to her Fourth Amendment urinalysis claim, her Fifth Amendment claim, the state statutes she asserts the Wood County Defendants violated, or her *Monell* claim

---

[3] Gilbank asserts the far-fetched claim that Ms. Heinzen-Janz carried out an eviction when, following Gilbank's arrest for possession of methamphetamine, Ms. Heinzen-Janz placed T.E.H. in the temporary physical custody of her father, Ian Hoyle. Because Gilbank was residing with Mr. Hoyle at the time of her arrest, she asserts that this was effectively an eviction.

against the Wood County Defendants. Therefore, Gilbank has waived these claims and any arguments relating to these claims on appeal, and the Court should affirm dismissal of these claims on this basis alone.

Alternatively, the Court may affirm the dismissal of Fourth Amendment urinalysis claim, her Fifth Amendment claim, and her *Monell* claim against the Wood County Defendants because these claims fail as a matter of law. First, as it relates to her Fourth Amendment urinalysis claim, "[a] search conducted pursuant to voluntarily obtained consent is a well-recognized exception to the Fourth Amendment's warrant requirement." *Andrews v. Hickman County*, 700 F.3d 845, 854 (6th Cir. 2012). Gilbank has testified under oath in other proceedings that she voluntarily consented to the urinalysis. (Dkt. 82-15 at 24.) Next, Gilbank's Fifth Amendment claim fails as a matter of law because the Fifth Amendment does not apply to state child protection proceedings. S*ee Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (to assert viable § 1983 claim based on violation of the right against self-incrimination, the incriminating statement at issue must be used *in a criminal case*). Next, Gilbank's claim regarding alleged statutory violations fails because an alleged violation of state law is not a denial of due process. *See Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993). Finally, with respect to her *Monell* claim, in a § 1983 claim, municipal agencies are liable for civil rights violations **only** due to "(1) an express municipal policy; (2) a widespread, though unwritten, custom or practice;

or (3) a decision by a municipal agent with 'final policymaking authority.'" *Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011). Here, Gilbank failed to name any suable entities or identify any Wood County policies that support a *Monell* claim. Further, a municipality cannot be liable under *Monell* "when there is no underlying constitutional violation." *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495–96 (7th Cir. 2021) (internal citations and quotations omitted). As discussed herein, the District Court properly applied the *Rooker-Feldman* Doctrine and found that Gilbank's constitutional challenges failed as a matter of law.

Moreover, the claims that Gilbank *does* address are severely underdeveloped and do not merit consideration. Specifically, Gilbank mentions only the Fourth Amendment Claim arising out of the alleged "eviction"; the Fourth Amendment Claim arising out the alleged "seizure" of T.E.H. without probable cause; and the Fourteenth Amendment claim for denial of Procedural Due Process and Substantive Due Process. However, her arguments are no more than conclusory statements. *See generally* Doc. 3 ("Defendant Heinzen-Janz intentionally confined Plaintiff…" "[T]he false imprisonment caused by Defendant Heinzen-Janz substantially interfered with Plaintiff's access to her personal property (conversion).") Aside from reciting general Fourteenth Amendment Substantive Due Process law, Gilbank fails to provide citations to any authority or the record to support her claims. The District Court held that Gilbank's constitutional claims

were barred by the *Rooker-Feldman* Doctrine. The District Court further held that Gilbank's Due Process claims were barred by the doctrine of Issue Preclusion and not supported by the evidence. Yet again, Gilbank makes conclusory statements in response (*see e.g.,* Doc. 3 ("Judge Peterson made a mistake in applying the Rooker-Feldman doctrine and issue preclusion in this case.")), but provides little to no analysis or citations to authority or the record, for her claims. Accordingly, Gilbank has waived all arguments on appeal.

## II. The *Rooker-Feldman* Doctrine and Issue Preclusion Bar Gilbank's Claims.

If the Court concludes that Gilbank has not waived some or all of her arguments on appeal, the Court should affirm the dismissal of her claims based on the *Rooker-Feldman* Doctrine and Issue Preclusion.

### a. Gilbank's Claims Are Barred by the Rooker-Feldman Doctrine.

The *Rooker-Feldman* doctrine provides that federal courts lack jurisdiction over claims that seek review of state court judgments or are "inextricably intertwined" with state court determinations. *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). "The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (citing *Dist. of Columbia Ct. App. v. Feldman*, 460 U.S. 462, 482 n.16 (1983)). The doctrine "applies when the state court's judgment is the source of the

injury of which plaintiffs complain in federal court." *Richardson v. Koch L. Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014). "Stated succinctly, the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

This Court has applied a two-step analysis to determine whether the *Rooker-Feldman* doctrine bars jurisdiction: First, the court determines whether the plaintiff's federal claims "either 'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Andrade v. City of Hammond*, 9 F.4th 947, 950 (7th Cir. 2021). Next, the court determines "whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings." *Id.*

Here, Gilbank's claims against the Wood County Defendants are inextricably intertwined with the State Juvenile Court's decisions. Gilbank complains that Ms. Heinzen-Janz "interfered in Plaintiff's right to the care, custody, and control of her daughter T.E.H.," "created, submitted, [] signed" and filed false documents and claims with the State Juvenile Court, and "intentionally confined" and "falsely imprisoned[4]" her from her home and belongings. (*See* Doc. 3.) All of these claims

---

[4] Gilbank never raised claims arising out of "false imprisonment" or "confinement" at the District Court level. She is barred from doing so now. *See Carpenter v. PNC Bank, Nat'l Ass'n*, 633 F. App'x

are inextricably intertwined with the State Juvenile Court's decisions finding that there was probable cause to remove T.E.H. from Gilbank's custody and placing her with her father, Mr. Hoyle. The State Juvenile Court's decisions are the "source of the injury of which plaintiffs complain in federal court." Any finding that Ms. Heinzen-Janz interfered with Gilbank's custodial rights, provided false evidence to the state court, or "evicted" Gilbank by following the State Juvenile Court's orders regarding custody and placement, would effectively undermine the State Juvenile Court's determination that there was probable cause to remove T.E.H. from Gilbank's custody and place her with Mr. Hoyle. Accordingly, Gilbank's federal claims are clearly inextricably intertwined with the State Juvenile Court's decisions.

Gilbank asserts that the *Rooker-Feldman* doctrine does not apply because her injury was not caused by the State Juvenile Court's decisions. (*See* Doc. 3 at 2.) Her own statements on appeal establish otherwise. Specifically, Gilbank states that "*Defendants' violations* of law on August 21 and 22, 2018 *caused the court to take action which caused the Plaintiff* and her daughter severe trauma and *injury…*" *Id.* at 3. She then claims that the Defendants' "*unlawful actions greatly affected judicial decision regarding Plaintiff's custody and individual liberty…*" *Id.* at 5. Her statements

---

346, 348 (7th Cir. 2016) ("plaintiff may not raise on appeal entirely new claims for relief.") If Gilbank is referring to her claim for "eviction," the claim is addressed herein.

affirm that the State Juvenile Court's decisions are the "source of the injury" and Defendants' actions are inextricably intertwined with the State Juvenile Court actions.

Similarly, the second step of *Rooker-Feldman* analysis is met because Gilbank had ample opportunity and did, in fact, raise the issue in state court proceedings. Gilbank challenged the reasonableness of the Wood County Defendants' actions at every stage of the state court proceedings. Gilbank challenged the removal at the plea hearing, the fact finding hearing, and by filing two separate motions to dismiss in the state court action. (Dkt. 82-13 at 4; 82-14; 82-17; 82-24.) She had ample opportunity to question Ms. Heinzen-Janz regarding the false evidence Ms. Heinzen-Janz allegedly was providing to the State Juvenile Court. Similarly, she had ample opportunity to argue to the State Juvenile Court that, by carrying out the Temporary Physical Custody order, Ms. Heinzen-Janz had "evicted" her from Mr. Hoyle's residence.

Therefore, both elements of the *Rooker-Feldman* doctrine are met, and the District Court properly applied the doctrine to dismiss Gilbank's constitutional claims.

### b. Issue Preclusion Bars Gilbank's Claims arising out of the Reasonableness of the Removal.

If the Court finds that Gilbank has not waived her arguments regarding the doctrine of Issue Preclusion, the Court should find that her claims are barred by

the doctrine of Issue Preclusion. Many of Gilbank's claims in this lawsuit succeed only if there is a finding that there was *no* probable cause for the removal of T.E.H. Because the State Juvenile Court has already held otherwise, the District Court was barred by the doctrine of issue preclusion from reconsidering the issue.

The facts of this case fall squarely within the Court's holding in *Jensen v. Foley*, 295 F.3d 745 (7th Cir. 2002). There, agents of the Illinois Department of Children and Family Services removed an infant from the plaintiffs' home without a pre-deprivation hearing or a warrant. *Id.* at 746. Two days later, the Illinois circuit court held a temporary physical custody hearing and found probable cause existed to justify the removal. *Id.* at 747. The plaintiffs subsequently filed a § 1983 complaint in federal court alleging that the DCFS agents and local officers violated their Fourth and Fifth Amendment rights. As a preliminary matter, the court noted that:

> So long as a post-deprivation hearing is held within 2 business days of removal, DCFS agents constitutionally may remove a child from her home and family without a pre-deprivation hearing if they are acting pursuant to a court order, if the taking is supported by probable cause to believe that the child would be subject to the danger of abuse if not removed, or if exigent circumstances require them to do so.

*Id.* at 747. However, the court did not reach the issue of whether probable cause actually existed, noting that it was bound by the state court's determination that the agents had probable cause to remove the child. *Id.* at 748. Specifically, the court held:

> The constitutional claims that plaintiffs brought to federal district court could succeed only if *no* probable cause existed. *Brokaw,* 235 F.3d at 1010. Because the state court held otherwise, we are barred by the doctrine of issue preclusion from reconsidering the issue.

*Id.* As a result, issue preclusion applied and the court dismissed the plaintiffs' claim. *Id.*

The same result is required here. Gilbank challenges whether probable cause existed to remove T.E.H. Despite such challenges, State Juvenile Court Judges Potter and Brazeau have already concluded that probable cause existed, and that the Defendants were justified in their actions.

Issue preclusion prevents a party from re-litigating an issue that it has previously litigated and lost. *Donald v. Polk County,* 836 F.2d 376, 381 (7th Cir. 1988). *Jensen*, 295 F.3d at 748. Federal courts "must give state court judgments the same preclusive effect as would a court in the rendering state." *Id.* (internal citations omitted). In Wisconsin, issue preclusion is appropriate if "the issue or fact was actually litigated and determined in the prior proceeding and whether the determination was essential to the judgment," and "whether applying issue preclusion comports with principles of fundamental fairness." *Aldrich v. Labor & Indus. Review Comm'n*, 2012 WI 53, ¶¶ 97, 109, 814 N.W.2d 433.

The first element of issue preclusion is met here. Gilbank challenged the reasonableness of the Defendants' actions at every stage of the State Juvenile Court proceedings. Gilbank challenged the removal at the plea hearing, the fact-finding

hearing, and by filing two separate motions to dismiss in the state court action. Judge Potter's decision that Wood County had probable cause to remove T.E.H. was essential to Gilbank's challenge. After considering the Defendants' explanation for their decision to remove T.E.H., Judge Potter found that probable cause existed to hold T.E.H. in protective custody. (Dkt. 82-10 at 3.) After an extensive fact-finding hearing, Judge Brazeau affirmed this finding. (Dkt. 82-14 at 61-63.)

Gilbank vigorously litigated her case in state court and on appeal at the Wisconsin Court of Appeals. (Dkt. 82-22.) She opposed T.E.H.'s removal at every opportunity. Had Gilbank succeeded at the fact-finding hearing, the State Juvenile Court would have been obligated to return T.E.H. to Gilbank, and the case would have ended. Because Gilbank's challenges were litigated, and the outcome of those challenges was "essential to the judgment[s]" in state court, the first element of issue preclusion is met.

The second element of issue preclusion is whether preclusion "comports with principles of fundamental fairness." *Aldrich*, 2012 WI 53, ¶ 109. In essence, the question is whether the party against whom issue preclusion is being asserted (Gilbank) had "a fair opportunity procedurally, substantively and evidentially to pursue the claim before a second litigation will be precluded." *Id.* In order to make

this decision, the Supreme Court of Wisconsin has articulated five factors to be

considered by the court:

1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;

2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;

3) Do significant differences in the quality or extensiveness of proceedings between two courts warrant relitigation of the issue;

4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and

5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Id.* ¶ 110. No single factor is dispositive, nor is the list "exhaustive or exclusive."

*Id.* ¶ 111. In addition, the weight given to any individual factor is left to the court's

discretion. *Id.* ¶ 112.

Notably absent from these factors is any requirement that there be identical

parties in both disputes in order for issue preclusion to apply—which is the sole

basis of Ms. Gilbank's skeletal issue preclusion argument. (Doc. 3 at 5.) Indeed,

"an identity of parties is not required in issue preclusion." *N. States Power Co. v.*

*Bugher*, 525 N.W.2d 723, 727 (Wis. 1995).

Here, the factors that do apply weigh in favor of applying issue preclusion.

First, Gilbank could have sought an appeal of Judge Potter's probable cause

finding or Judge Brazeau's denial of her motion to dismiss.[5] Second, Gilbank's challenge of T.E.H's removal in this action is substantively no different than her challenge in state court. In both venues, Gilbank alleges that the Defendants acted unreasonably and took T.E.H. into custody without any cause or exigent circumstances. The claims are identical, and there has been no shift in Fourth or Fourteenth Amendment jurisprudence since Judge Potter's or Judge Brazeau's rulings.

Third, while the CHIPS proceedings did not involve the extensive time and briefing that the present action requires, the quality of Judge Potter's and Judge Brazeau's decisions cannot seriously be questioned. The analysis for whether probable cause existed to remove the children is the same whether it is at the initial proceeding or in a collateral action. If probable cause existed at the time of T.E.H.'s removal, it exists today as well. Fourth, the burdens of persuasion have shifted, but in favor of preclusion. In the CHIPS proceedings, Wood County had the burden of proving that its employees' actions were reasonable and that they had probable cause to remove T.E.H. In this case, Gilbank has the burden of proof. Thus, Defendants are not benefiting from a lesser burden in the prior proceeding.

---

[5] State law permits a party to seek permission to appeal a non-final order. *See* Wis. Stat. § 808.03(2).[5] Judge Potter's order granting the temporary custody request incorporated her finding of probable cause, and was a non-final order for purposes of an interlocutory appeal.

Finally, public policy favors issue preclusion on the issue of the reasonableness of the Defendants' actions in removing T.E.H. As the Seventh Circuit explained in *Jensen*, the issue of probable cause to remove the children "began and ended with the temporary custody hearing. Plaintiffs may not now relitigate the issue . . . after the state court has conclusively ruled against them." *Jensen*, 295 F.3d at 749. There is nothing "fundamentally unfair" about applying the same logic from *Jensen* to Gilbank's current claims. Just as the plaintiffs in *Jensen*, Gilbank could have appealed Judge Potter's temporary custody order, but she chose not to act. *See id.* ("Plaintiffs could have sought leave to appeal the temporary custody order"). Likewise, Gilbank had every incentive to fully litigate the issue in state court. As evidenced by her arguments in the CHIPS proceedings and her Amended Complaint here, Gilbank obviously believed that she was denied fundamental rights. It is hard to imagine a greater motivation to fully litigate one's claims.

For these reasons, Gilbank's claims arising out of the Defendants' removal of T.E.H. are barred by issue preclusion. This Court should affirm dismissal of Gilbank's claims on this basis alone.

## III.   Gilbank's Fourth[6] and Fourteenth Amendment Claims Fail as a Matter of Law, on the Merits, and on Immunity Grounds.

If the Court finds that Gilbank has not waived her claims or that the *Rooker Feldman* or Issue Preclusion doctrines do not bar her claims, the Court should affirm dismissal because Gilbank's Fourth and Fourteenth Amendment claims fail as a matter of law, on the merits, and on immunity grounds.

### a.   Gilbank's Fourth Amendment Claim Premised on an Alleged Unlawful Seizure of T.E.H. Fails as a Matter of Law and on Immunity Grounds.

Gilbank's claim relating to the alleged "seizure" of T.E.H. without probable cause fails as a matter of law because T.E.H. is not a plaintiff in this suit. (*See* Dkt. 41.) Further, a judicial determination of probable cause is an absolute defense to Gilbank's claim that T.E.H. was seized without probable cause. Here, there were *two* different judicial determinations that there was probable cause for the seizure. Finally, if there remains any question as to whether Gilbank's claims relating to the removal were properly dismissed as a matter of law, the seizure claim is foreclosed by qualified immunity. If Gilbank contends that continuation of the separation of T.E.H. violated the Fourth Amendment, such claim is foreclosed by quasi-judicial immunity and qualified immunity.

---

[6] As discussed in Section Ic, *supra*, Gilbank's Fourth Amendment claims arose out of the taking of a urine sample, the alleged eviction, and the alleged seizure of T.E.H. without probable cause. The merits of the urinalysis claim were discussed in Section Ic, and will not be repeated here.

      i.   *Gilbank's Fourth Amendment Claim Premised on an Alleged Unlawful Seizure of T.E.H. Fails as a Matter of Law.*

First, Gilbank lacks standing to sue for an alleged seizure of T.E.H. It is black-letter law that "§ 1983 claims are personal to the injured party." *Ray v. Maher*, 662 F.3d 770, 773 (7th Cir. 2011) (citations omitted); *Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005) (parents could only sue for their own constitutional injuries, and not the constitutional injuries of their child). In the context of child removal cases, "*the child must assert the claim for the unlawful seizure.*" *Krowicki v. Sayemour*, No. 6:16CV1186DNHATB, 2016 WL 9227665, at *6 (N.D.N.Y. Oct. 5, 2016), *report and recommendation adopted,* No. 6:16CV1186DNHATB, 2017 WL 2804945 (N.D.N.Y. June 28, 2017). Here, T.E.H. is not a plaintiff in this suit. (*See* Dkt. No. 41.) Gilbank's Fourth Amendment claim based on the "seizure" of T.E.H. is properly dismissed on this basis alone.

Additionally, Gilbank's Fourth Amendment Claim premised on the alleged unlawful seizure of T.E.H. is also foreclosed because probable cause existed for the removal of T.E.H. "The Fourth Amendment prohibits only those searches [or seizures] that are unreasonable." *Michael C. v. Gresbach*, 526 F.3d 1008, 1014 (7th Cir. 2008). In the context of removal of a child, seizure is reasonable "if it is pursuant to a court order, if it is supported by probable cause, *or* if it is justified by exigent circumstances." *Id.* at 926 (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1010 (7th Cir. 2000) (emphasis added). A judicial determination of probable

cause is an absolute defense to Gilbank's claim that T.E.H. was seized without probable cause. *See Donald*, 836 F.2d at 384.

Here, *two* different judges reviewed the decision to remove T.E.H., and there are two different judicial determinations that probable cause existed to justify the removal. Specifically, Judge Gregory Potter found at the Temporary Physical Custody hearing "that probable cause exists to believe that the parent or guardian or legal custodian, that being the mother, is neglecting or unable to provide the adequate supervision and care…" (Dkt. 82-10 at 3.) On August 23, 2018, Judge Potter signed an Order to the same effect. (Dkt. 82-10.) Next, Judge Nicholas J. Brazeau presided over an extensive fact-finding hearing where he heard from numerous witnesses, and found "clear and convincing evidence" that T.E.H. was in need of protection. (Dkt. 82-14.) Judge Brazeau would later note, when addressing Gilbank's second Motion to Dismiss, that there was "more than enough information in this file to make a determination regarding the best interests of the child." (Dkt. 82-18 at 4.) Simply put, Gilbank's Fourth Amendment claim premised on the allege seizure of T.E.H. is foreclosed by several judicial determinations of probable cause.

      ii.    *Gilbank's Claim Relating to the Alleged Unlawful Seizure of T.E.H. is Barred by Qualified Immunity.*

Qualified immunity provides immunity from liability and immunity from suit. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It protects all but the "plainly

incompetent" public official. *Malley v. Briggs*, 475 U.S. 335, 340, (1986). When a defendant asserts qualified immunity as a defense, the critical issue is whether the defendant official violated federal law that was clearly established at the time he or she acted. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Saucier v. Katz*, 533 U.S. 194, 207 (2001) (overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Clearly established rights are those which are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Marshall v. Allen*, 984 F.2d 787, 794 (7th Cir. 1993) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The law at the time of the conduct in question must have been "clear in relation to the specific facts confronting the public official when he acted." *Marshall,* 984 F.2d at 794 (quoting *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988) (en banc)). However, even if the law is clearly established, an official is afforded the protection of qualified immunity if, at the time of the challenged actions, his belief that his actions were lawful is "objectively reasonable." *Anderson*, 483 U.S. at 641.

The *Harlow* test is an objective reasonableness test. *Harlow*, 457 U.S. at 818. Under that test, an official who violates clearly established law does not act in an objectively reasonable manner. *Id*. This test has been described as a "fair warning standard;" if the federal law is clearly established, the official is considered to be

on notice that violation of the law may result in civil liability. *United States v. Lanier*, 520 U.S. 259, 270-71 (1997).

In the context of qualified immunity as it relates to social workers in particular, "several circuit courts have concluded that because the balance between a child's liberty interest in familial relations and a state's interest in protecting the child is nebulous at best, social workers and other state actors who cause a child's removal are entitled to qualified immunity because the alleged constitutional violation will rarely—if ever—be clearly established." *Brokaw*, 235 F.3d at 1023 (citing *Kiser v. Garrett*, 67 F.3d 1166, 1169–74 (5th Cir. 1995); *Hodorowski v. Ray*, 844 F.2d 1210, 1216–17 (5th Cir. 1988); *Tenenbaum v. Williams*, 193 F.3d 581, 595–96 (2d Cir. 1999); *Doe v. Louisiana*, 2 F.3d 1412, 1416–21 (5th Cir. 1993); *Frazier v. Bailey*, 957 F.2d 920, 929–31 (1st Cir. 1992)).

Further, in the context of child removal cases, the court "need not determine whether probable cause in fact existed at the time of [the] removal decision. Rather, [the Court] may rule on qualified immunity grounds that a reasonable caseworker *could have believed* that probable cause existed and accordingly wouldn't have understood [her] actions to violate a constitutional right." *Xiong v. Wagner*, 700 F.3d 282, 290 (7th Cir. 2012).

Here, as explained *supra*, Defendants did not violate any clearly established rights. Ms. Heinzen-Janz *could* have believed that probable cause existed for the

removal. Indeed, Judges Potter's and Brazeau's later findings that there *was* probable cause to remove T.E.H., and clear and convincing evidence to justify the removal, resolve this issue.

If Gilbank contends that continuation of the separation of T.E.H. violated the Fourth Amendment, such claim is foreclosed by absolute/quasi-judicial immunity and qualified immunity. Quasi-judicial immunity extends to acts prescribed by a judge's order. *Turney v. O'Toole,* 898 F.2d 1470, 1474 (10th Cir. 1990). The Seventh Circuit has held that the doctrine of quasi-judicial immunity applies to social workers. *See Millspaugh v. Cnty. Dep't of Pub. Welfare*, 937 F.2d 1172, 1175 (7th Cir. 1991). "The rationale for immunizing persons who execute court orders is apparent. Such persons are themselves integral parts of the judicial process. The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." *Coverdell v. Dep't of Soc. & Health Servs.,* 834 F.2d 758, 765 (9th Cir. 1987) (internal quotations and citations omitted). To deny those who act pursuant to a court directive absolute immunity "would seriously encroach on the judicial immunity already recognized by the Supreme Court...It would make the receiver a lightning rod for harassing litigation aimed at judicial orders. In addition to the unfairness of sparing the judge who gives an order while punishing the receiver who obeys it, a fear of bringing down litigation on the receiver might color a court's judgment in some

cases...." *Id.* (quoting *Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno,* 547 F.2d 1, 3 (1st Cir. 1976).)

Defendants are entitled to absolute/quasi-judicial immunity for all acts subsequent to the Court's Order on August 23, 2018. On that day, Judge Potter signed an Order finding that there was probable cause to believe that Gilbank was neglecting and/or unable to provide adequate supervision and care to T.E.H. (Dkt. 82-10 at 3.) The Judge ordered T.E.H. removed from the care of Gilbank and, instead, placed her with Mr. Hoyle. (*Id.* at 4.) Similarly, Judge Brazeau signed a Dispositional Order on November 12, 2018, also finding that T.E.H. was in need of protection or services pursuant to Wis. Stat. § 48.13(10). (Dkt. 82-16.) Judge Brazeau also ordered placement with Mr. Hoyle. *Id.* Judge Brazeau ordered certain conditions upon Gilbank and Mr. Hoyle. *Id.* Judge Brazeau ordered Wood County Human Services Department to monitor participation and progress in the conditions mandated by the Court. *Id.*

Simply put, all of the Defendants' actions subsequent to August 23, 2018, were not only authorized by court orders, they were specifically *mandated* by court orders. Accordingly, if Gilbank is asserting claims arising out of acts following the order on August 23, 2018, those claims are foreclosed by the doctrine of absolute/judicial immunity.

### b. *Gilbank's Fourth Amendment Claim Premised on eviction fails as a matter of law and on immunity grounds.*

Gilbank asserts the far-fetched claim that Ms. Heinzen-Janz carried out an eviction when, following Gilbank's arrest for possession of methamphetamine, Ms. Heinzen-Janz placed T.E.H. in the temporary physical custody of her father. Because Gilbank was residing with Mr. Hoyle at the time of her arrest, she asserts that this was effectively an eviction. The claim fails for the simple fact that Ms. Heinzen-Janz did not evict Gilbank from her home. Further, even if one accepts Gilbank's far-fetched claim that the removal and placement of T.E.H. amounted to an "eviction," there can be no question that such "eviction" was not an unreasonable seizure. Lastly, Gilbank's claim fails on immunity grounds.

Here, Gilbank's far-reaching claim fails for the simple fact that Ms. Heinzen-Janz did not evict Gilbank. Following her possession of methamphetamine charges, Gilbank was placed under arrest. (Dkt. 82-2.) In carrying out her duties as a social worker, Ms. Heinzen-Janz placed T.E.H. in temporary physical custody with her father, Mr. Hoyle. (Dkt. 80 at ¶ 10.) Ms. Heinzen-Janz placed no restrictions on Gilbank with respect to her property. (*Id.* at ¶ 12.) She placed no restrictions on Gilbank with respect to her living arrangements. (*Id.* at ¶ 13.) Simply put, she did not "evict" Gilbank in any sense of the term.

Even assuming arguendo that Ms. Heinzen-Janz "evicted" Gilbank, there can be no question that this is not a cognizable Fourth Amendment claim. Gilbank

seemingly asserts the "eviction" was an unreasonable seizure under the Fourth Amendment, though it is not apparent what she claims Ms. Heinzen-Janz unreasonably "seized." The Court has previously held that there is no unreasonable seizure when, following a verbal altercation, an officer asks one party to leave the premises under threat of arrest. In *White v. City of Markham*, 310 F.3d 989, 996 (7th Cir. 2002), the plaintiff lived in a home owned by his aunt. During a verbal altercation with his aunt, the plaintiff called the police for assistance. Officer Muldrow arrived at the scene and, after determining that the aunt owned the home, asked the plaintiff to vacate the premises or face arrest. The plaintiff left the home and subsequently filed suit against several parties, including the officer, alleging that they violated his Fourth Amendment right to be secure against unreasonable seizures, in violation of 42 U.S.C. § 1983. The Court held that it was "clear that [White] ha[d] not suffered an unreasonable seizure as a matter of law." The Court explained that:

> When Officer Muldrow arrived he was faced with a domestic disturbance and in order to restore peace to the situation, he was forced to ask either Witcher, the admitted nonresident homeowner, or White, her relative and resident guest, to leave the premises. Based on this unique situation, it could not have been unreasonable for Officer Muldrow to request White, the family member with the apparently inferior property interest in remaining on the premises, to vacate the explosive situation.

*White*, 310 F.3d at 996.

The Court's reasoning in *White* applies with even greater force to the facts of this case. *White* involved an *actual* eviction—not the far-fetched eviction Gilbank asks the Court to find here. But, even in the circumstances of an *actual eviction*, the court held that it was "clear" there was no unreasonable seizure. In the present case, there was no eviction—there was simply a social worker carrying out her duties in a child protective custody matter. Following Gilbank's arrest and methamphetamine charges, Ms. Heinzen-Janz was faced with a child protective custody situation. She had to decide where to place T.E.H. She made the decision to leave T.E.H. in the custody of her father—the same individual Gilbank herself had chosen to place T.E.H. with following her arrest. (Dkt. 80 at ¶ 10.) Even if this decision could be characterized as an eviction or seizure, which it is not, there can be no question the "seizure" was not unreasonable.

Lastly, Ms. Heinzen-Janz is immune from liability under the qualified immunity doctrine. In *White*, the court held that the officer was immune from liability under the doctrine of qualified immunity because "it was not clearly established that Officer Muldrow's action on that day constituted a constitutional violation." The court further explained that the officer could not have known that asking White to leave would constitute an unreasonable seizure. The court noted that there was simply no case law where such a scenario or similar scenario was held to be a seizure.

Here, just as in *White,* it was far from clearly established that Ms. Heinzen-Janz's actions in removing T.E.H. and placing her with her father would amount to an "eviction" in violation of Gilbank's constitutional rights. Ms. Heinzen-Janz could not have known that placing T.E.H. with her father would somehow constitute an unreasonable seizure of Gilbank or her belongings. Gilbank has not identified any case law where such a scenario or even a similar scenario was held to be a seizure. Accordingly, the doctrine of qualified immunity bars Gilbank's claim.

### c. Gilbank's Fourteenth Amendment Claims Fails as a Matter of Law, on the Merits, and on Immunity Grounds.

Gilbank's Fourteen Amendment claims fails as a matter of law and on the merits. Additionally, Wood County Defendants are shielded by absolute/quasi-judicial and qualified immunity for their alleged conduct in removing T.E.H. from Gilbank's custody.

#### i. Gilbank's Claim that She Did Not Receive Procedural Due Process Has No Basis in Fact or Law.

Gilbank claims that she was denied procedural due process when there was no pre-deprivation hearing, when she had been bonded out of jail prior to receiving notice of one of the many post-deprivation hearings, and when Ms. Heinzen-Janz and Detective Iverson allegedly provided false and incomplete information to the State Juvenile Court. (Doc. 3 at 2.) Gilbank's procedural due process claims have

no basis in law or fact. To the contrary, the facts of the case paint a much different picture as to the amount of process Gilbank received.

In the context of child welfare proceedings, procedural due process requires that "parental rights [not] be denied without an 'opportunity for them to be heard at a meaningful time and in a meaningful manner.'" *Brokaw*, 235 F.3d at 1020 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). This does not mean, however, that the State is required to conduct a pre-deprivation hearing before it can remove a child in need of protection. Indeed, "government officials may remove a child from his home without a pre-deprivation hearing and court order if the official has probable cause to believe that the child is in imminent danger of abuse." *Hernandez v. Foster*, 657 F.3d 463, 486 (7th Cir. 2011). "When a child's safety is threatened, that is justification enough for *action first and hearing afterward*." *Id.* (quoting *Lossman v. Pekarske*, 707 F.2d 288 (7th Cir. 1983) (emphasis added)). The Seventh Circuit has held that "government officials may remove a child from his home *without a pre-deprivation hearing and court order* if the official has probable cause to believe that the child is in imminent danger of abuse." *Hernandez*, 657 F.3d at 486 (emphasis added).

A "post-deprivation hearing establishing probable cause of abuse prevented due process claim for lack of pre-deprivation hearing." *Brokaw*, 235 F.3d at 1021 citing *Donald*, 836 F.2d at 380 (emphasis added). Accordingly, if a child welfare

department removes a child from the home without a court order, but then initiates a post-deprivation hearing, the department's actions do not infringe on any constitutional rights so long as the department's actions are reasonable. *Hernandez*, 657 F.3d at 485.

Here, Gilbank was not entitled to a pre-deprivation hearing because probable cause existed to justify the removal. Indeed, a post-deprivation hearing, the Temporary Physical Custody hearing, was held on August 23, 2018, within two days after T.E.H.'s removal, establishing probable cause and thereby preventing any due process claim for lack of pre-deprivation hearing. Specifically, Judge Potter found at the Temporary Physical Custody hearing, "*that probable cause exists* to believe that the parent or guardian or legal custodian, that being the mother, is neglecting or unable to provide the adequate supervision and care…" (Dkt. 82-10 at 3.) That same day, Judge Potter signed an Order for Temporary Physical Custody. (Dkt. 82-12.) The Order also notes that probable cause existed to believe that T.E.H. will be subject to injury by others and that Gilbank was neglecting and unable to provide adequate supervision and care. (Dkt. 82-12.)

Despite Gilbank's claims to the contrary, simply because T.E.H. was removed without a pre-deprivation hearing does not mean that she did not receive adequate due process. To the contrary, the facts of the case establish that Gilbank received more than sufficient process.

To begin with, following the temporary custody hearing on August 23, 2018, a Plea/Disposition Hearing was held on September 19, 2018, with Judge Nicholas J. Brazeau, Jr. presiding, to allow Gilbank to formally enter a plea denying the allegations in the CHIPS petitions. (Dkt. 82-13 at 1.) Gilbank was present at the hearing. (*Id.* at 2.) Gilbank had the benefit of counsel, Attorney Jessica Phelps, at that hearing. (*Id.*) Prior to the hearing, Gilbank filed a Motion to Dismiss based partly on her allegation that she did not have Notice of the Temporary Physical Custody Hearing. (Dkt. 82-24.) Judge Brazeau addressed Gilbank's Motion to Dismiss, ultimately denying it. (Dkt. 82-13 at 2.) Gilbank denied the allegations of the Petition. (*Id.* at 4.) Accordingly, a fact-finding hearing was scheduled.

The fact-finding hearing was held on September 25, 2018. (Dkt. 82-14.) Again, Gilbank was present and represented by counsel Attorney Jessica Phelps, at the hearing. (*Id.* at 3.) In fact, the Judge noted that she was represented by "very competent" counsel. (Dkt. 82-18 at 4.) Judge Brazeau heard testimony from several witnesses, including Mr. Hoyle, Officer Abel, Detective Iverson, and Ms. Heinzen-Janz. (*See* Dkt. 82-14.) Gilbank, through her counsel, had the opportunity to, and did in fact, cross-examine all of these witnesses, and present her own witnesses and evidence. (*See* Dkt. 82-14.) Having heard the testimony, reviewed the evidence, and heard the arguments, Judge Brazeau found that T.E.H. was "clearly a child in need of protection and services. There is clear and convincing evidence

of that fact." (*Id.* at 62.) Judge Brazeau noted that in making his finding, he was taking into account the credibility of the witnesses. (*Id.*)

A fourth post-deprivation proceeding was held on October 29, 2018. (Dkt. 82-15.) Again, Gilbank had notice of the hearing. (*Id.*) Gilbank was present at the hearing. (*Id.*) Gilbank was represented by counsel, Attorney Phelps, at the hearing. (*Id.*) Yet again, Gilbank, through her counsel, had the opportunity to call witnesses, present evidence, and/or testify on her behalf. (*Id.*) Judge Brazeau informed Gilbank that until she could accept that she is addicted to methamphetamines and take the necessary steps to get help, he believed that T.E.H. would be in need of protection. (*Id.* at 34-36.) Judge Brazeau ordered placement with Mr. Hoyle. (Dkt. 82-16.)

A fifth post-deprivation hearing was held on March 18, 2019, on Gilbank's Motion to Dismiss. (Dkt. 82-18.) Gilbank failed to appear at the hearing to address her Motion. (*Id.*) Judge Brazeau denied Gilbank's Motion, noting that there was there was "more than enough information in this file to make a determination regarding the best interests of the child." (*Id.* at 4.)

Gilbank contends that *none* of this process was sufficient because she did not receive notice of the August 23, 2018, temporary physical custody hearing. At least one other court has rejected a similar argument. In *Callahan v. City of New York*, the plaintiff-father alleged that he was denied procedural due process because he did

not receive notice of a post-deprivation hearing. *Callahan v. City of New York*, 90 F. Supp. 3d 60, 65–66 (E.D.N.Y. 2015). The court rejected the argument, noting that a second post-deprivation hearing was held, and the plaintiff was present for that hearing. Similarly, here, Gilbank had the benefit of *numerous* post-deprivation hearings. Any argument that she did not receive adequate process fails for this reason alone.

Gilbank's argument relative to the August 23, 2018, post-deprivation hearing also fails because she has not, and cannot, establish any wrongdoing on the part of Ms. Heinzen-Janz. Gilbank does not dispute that Ms. Heinzen-Janz provided notice regarding the hearing. Her grievance is that she did not *receive* notice. (Dkt. 82-1 at 116-17.) But this was not due to any wrongdoing on Ms. Heinzen-Janz's part. As noted, Gilbank was arrested on August 21, 2018, for possession of methamphetamines and drug paraphernalia. (Dkt. 82-2.) Gilbank was still in jail the following day, August 22, 2018, when Ms. Heinzen-Janz set out to provide notice to her regarding the hearing. (Dkt. 80 at ¶ 18.) Accordingly, Ms. Heinzen-Janz followed the typical procedures for serving inmates. (*Id*.) Ms. Heinzen-Janz called the jail to confirm that Gilbank was still an inmate. (*Id*. at ¶ 16.) Wood County Jail confirmed that Gilbank was still an inmate. (*Id*. at ¶ 17, 19.) Ms. Heinzen-Janz verbally advised the jail official that a hearing was scheduled for the following day. (*Id*.) Ms. Heinzen-Janz asked the jail official to transport Gilbank to

the hearing. (*Id.* at ¶ 20-21.) Ms. Heinzen-Janz then faxed notice of the hearing to the jail and asked that it be forwarded to Gilbank. (*Id.*) Wood County Jail confirmed that they would provide Gilbank with the notice and bring her to the hearing scheduled the following day. (*Id.* at ¶ 22.) At the temporary physical custody hearing the following day, Ms. Heinzen-Janz learned, for the first time, that Gilbank was bonded out. (*Id.* at ¶ 23.) Based on these facts, there can be no question that Ms. Heinzen-Janz took the necessary steps on her end to provide Gilbank with notice of the hearing. Equally important, based on the numerous other post-deprivation hearings held in this matter, there can be no question that Gilbank received adequate post-deprivation hearings.

Next, Gilbank contends that Ms. Heinzen-Janz and Detective Iverson violated her procedural due process rights when they "filed statements under oath with the court in which the provided false, misleading, and incomplete information." (Dkt. 82-23 at 11.) Yet again, the facts do not support Gilbank's bold statements. By way of example, Gilbank asserts that Defendants provided false testimony when they "stated to the court that plaintiff was being placed under arrest and therefore emergency custody of minor child without warrant was necessary." (*Id.* at 22.) The assertion that this was "false" testimony is perplexing and demonstrably false. In fact, the undisputed facts demonstrate that Gilbank had been placed under arrest on August 21, 2018, for possession of

methamphetamines, necessitating the emergency removal. (Dkt. 82-2.) Gilbank also claims that Ms. Heinzen-Janz provided false testimony when she testified that "plaintiff was exposing her child to her use of methamphetamines." (Dkt. 82-23 at 22.) Once again, the undisputed facts, including Gilbank's own testimony, demonstrate this to be true. (Dkt. 82-1 at 45, 60-61, 227-228.) The numerous other statements Gilbank characterizes as "false" or "misleading" are equally demonstrably true. But the court need not dissect each of the statements Gilbank claims to be false. Gilbank has already regurgitated these same arguments, *repeatedly,* to the state court in the CHIPS proceeding. She has taken advantage of every opportunity to demonstrate to the state court the alleged false and misleading information it was being presented with. Each and every time, the state court heard and rejected Gilbank's arguments. Accordingly, and yet again, the state court's orders in the CHIPS proceedings are dispositive of Gilbank's claims.

ii. *Absolute/Quasi-Judicial Immunity Bars Gilbank's Claims Procedural Due Process Claims.*

"Social workers and like public officials are entitled to absolute immunity in child custody cases on account of testimony and other steps taken to present the case for decision by the court." *Millspaugh v. Cnty. Dep't of Pub. Welfare of Wabash Cnty.*, 937 F.2d 1172, 1176 (7th Cir. 1991) (citations omitted). Specifically, they are entitled to "absolute immunity for their actions on behalf of the state in preparing

for, initiating, and prosecuting dependency proceedings." *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 495 (3d Cir. 1997).

Social workers are entitled to absolute immunity even if they make "intentional misrepresentations" to the court. *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 725 (6th Cir. 2011). As the court explained in *Pittman*:

> [P]rosecutors do not forfeit their absolute immunity when they knowingly make false statements while advocating before the court. Because absolute immunity for social workers is akin to absolute immunity for prosecutors, the same protection must apply here, no matter how undesirable the results.

*Pittman*, 640 F.3d 716, 725–26 (6th Cir. 2011).

"The dividing line between absolute immunity and qualified immunity is whether the injury depends on the judicial decision. In other words, if the alleged injury would not have occurred but for a judge's decision—presumably prompted by prosecution—then the prosecutor or other individual who induces the judge to act is entitled to absolute immunity with respect to the inducing conduct." *Loertscher v. Anderson*, No. 14-CV-870-jdp, 2016 WL 3166599, *4 (W.D. Wis. June 6, 2016) (internal quotations omitted).

The Seventh Circuit held that a social worker was entitled to absolute immunity for the following acts: "(1) asking the court to do certain things; (2) selecting evidence to present to the court; (3) deciding to go forward with child services proceedings despite not providing the mothers with adequate notice; and (4)

testifying." *Loertscher*, 2016 WL 3166599, at *4 (citing *Millspaugh*, 937 F.2d at 1175-76). In *Millspaugh*, the plaintiffs alleged, among other things, that a county social worker "(1) failed to furnish the court with material that would have been favorable to parental custody, (2) pursued the litigation after it should have been clear that the mothers were entitled to custody, (3) pursued the litigation for an improper motive, and (4) neglected to ensure that the mothers received adequate notice of hearings." *Millspaugh*, 937 F.2d at 1175. The court held that, even assuming the social worker "acted out of improper motives and misled the court," her actions could yield no harm to the plaintiffs unless the court to which she presented the false evidence agreed. Thus, the *Millspaugh* court reasoned that if there would be no loss but for the judge's acts, absolute immunity is afforded to a "social worker [who] presents the case to a court." *Id.* at 1177.

Based on the above law, Gilbank's procedural due process claims arising out of her allegation that she did not receive notice of the August 23, 2018, temporary physical custody hearing, and that Ms. Heinzen-Janz and Detective Iverson allegedly provided "false, misleading, and incomplete information" to the court are barred by the doctrine of absolute/quasi-judicial immunity. Even assuming arguendo that Ms. Heinzen-Janz's statements to the court were false or misleading, which they demonstrably were not, any harm Gilbank sustained as a result of those statements would not have been sustained but for the acts of the

judges who heard and made a decision on the credibility of that testimony. Similarly, any harm that Gilbank sustained due to an alleged failure to provide her with adequate notice of the August 23, 2018, hearing, would not have been sustained but for the acts of the judges who were aware of this and proceeded forward. Accordingly, Ms. Heinzen-Janz is protected by absolute immunity in both regards.

     iii.   *Gilbank's Substantive Due Process Claim is Preempted by Her Fourth Amendment Claims; Alternatively, This Claim is Without Any Basis in Fact or Law.*

The scope of substantive due process is extremely limited, and "may not be called upon when a specific constitutional provision protects the right allegedly infringed upon." *Hernandez v. Foster*, 657 F.3d 463, 474 (7th Cir. 2011). Thus, if another provision of the Constitution protects the interest Gilbank claims has been violated, her substantive due process claim must fail. As illustrated above, Gilbank's claims are rooted in the Fourth Amendment and stem from the decision to remove T.E.H. Thus, Gilbank's claims are adequately addressed in the Fourth Amendment context, rather than through substantive due process claim.

In the alternative, if the Court finds that Gilbank has stated a substantive due process claim independent of her Fourth Amendment claims, the claims still are properly dismissed because the undisputed facts show that the Defendants acted reasonably under the circumstances.

There is no dispute that "the fundamental right to familial relations is an aspect of substantive due process." *Id.* at 478. That right, however, is not absolute and "must be balanced against the state's interest in protecting children from abuse," be it physical or emotional. *Id.* Therefore, to strike the proper balance, "caseworkers must have 'some definite and articulable evidence giving rise to a reasonable suspicion' of past or imminent danger of abuse before they may take a child into protective custody." *Id.* (quoting *Brokaw*, 235 F.3d at 1019). "A reasonable suspicion requires more than a hunch but less than probable cause." *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 928 (7th Cir. 2011). Yet again, Judge Potter's temporary custody order forecloses this argument and resolves the case in favor of the Defendants.

The evidence demonstrates that the Defendants acted based on probable cause, and the state's interest in protecting T.E.H. outweighed Gilbank's familial rights. Gilbank admits that T.E.H.'s living situation was "problematic", "unpredictable", and "unsafe." (Dkt. 82-1 at 47, 49, 50, 69, 199.) Gilbank invited methamphetamine addicts into her home and T.E.H. was frequently surrounded by methamphetamine addicts, including Gilbank herself. (*Id.* at 45, 60-61, 227-228.) Gilbank struggled with sobriety and the urinalysis she provided on July 3, 2018, showed that she tested positive for amphetamines. (*Id.*) Gilbank's struggle with sobriety culminated in Gilbank being arrested for possession of

methamphetamine in the presence of T.E.H. (Dkt. 82-2.) After this arrest, Gilbank refused to cooperate with Ms. Heinzen-Janz and Detective Iverson. (Dkt. 82-7.) Gilbank's romanticization of an illicit substance, coupled with the other events leading up to the removal of T.E.H. on August 21, 2018, led to the loss of her parental rights over T.E.H. (*See* Dkt. 82-8.)

Gilbank produced no evidence whatsoever to dispute these facts or contradict Judge Potter's order. Accordingly, Gilbank's substantive due process claim fails on the merits, and the Court should affirm dismissal on this alternative basis.

      iv.   *Gilbank's Procedural and Substantive Due Process Claim is Also Foreclosed by The Doctrine of Qualified Immunity.*

In the context of qualified immunity as it relates to social workers in particular, "several circuit courts have concluded that because the balance between a child's liberty interest in familial relations and a state's interest in protecting the child is nebulous at best, social workers and other state actors who cause a child's removal are entitled to qualified immunity because the alleged constitutional violation will rarely—if ever—be clearly established." *Brokaw*, 235 F.3d at 1023 (citing *Kiser v. Garrett,* 67 F.3d 1166, 1169–74 (5th Cir. 1995)).

As set forth in detail above, the facts show that the Defendants did not violate any clearly established right in removing T.E.H. from a dangerous family environment. Yet again, Judges Potter's and Brazeau's orders foreclose this issue. Their decisions leave no doubt that a pre-deprivation hearing was not necessary

and that there was probable cause for the removal. Simply put, the facts clearly establish that there was no violation of Gilbank's Constitutional rights. Even if there was a violation, the facts show that the Defendants acted as any objectively reasonable official would. Therefore, the Wood County Defendants are entitled to qualified immunity and the Court should affirm dismissal on this alternative basis.

## CONCLUSION

For the foregoing reasons, the District Court's decision should be AFFIRMED.

Dated at Madison, Wisconsin this 14th day of February, 2022.

AXLEY BRYNELSON, LLP

*/s/ Aneet Kaur*
Lori M. Lubinsky, State Bar No. 1027575
Aneet Kaur, State Bar No. 1088063
Post Office Box 1767
Madison, WI 53701-1767
Email: llubinsky@axley.com
         akaur@axley.com
Telephone: (608) 257-5661
Facsimile: (608) 257-5444

Attorneys for Wood County Department of Human Services, Theresa Heinzen-Janz, Mary Christensen, Anne La Chapelle, and Mary Solheim

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), typeface requirements of Fed. R. App. P. 32(a)(5) and 7th Cir. R. 32(b), and type style requirements of Fed. R. App. P. 32(a)(6).

This brief contains 10,330 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 13-point Book Antiqua.

/s/ *Aneet Kaur*
Aneet Kaur

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2022, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that I have mailed the foregoing document by First-Class mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following party:

Michelle Gilbank
919 West Blodgett Street
Marshfield, WI 54449

*/s/ Aneet Kaur*
Aneet Kaur