No. 22-1037

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

MICHELLE R. GILBANK,

  Plaintiff-Appellant,

   v.

WOOD COUNTY DEPARTMENT OF HEALTH SERVICES, *et al.*,

  Defendants-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN,
THE HONORABLE JAMES D. PETERSON, PRESIDING

---

BRIEF OF DEFENDANTS-APPELLEES MARSHFIELD POLICE
DEPARTMENT AND DEREK IVERSON

---

JASON R. JUST
DAVIS & KUELTHAU, s.c.
State Bar No.: 1104647

TIFFANY E. WOELFEL
DAVIS & KUELTHAU, s.c.
State Bar No.: 1093779

Attorneys for Defendants-Appellees
Marshfield Police Department and
Derek Iverson

DAVIS & KUELTHAU, s.c.
318 S. Washington St., Suite 300
Green Bay, WI 54301
920.435.9378

Jason R. Just Direct Contact:
  920.431.2226 – Phone
  920.431.2266 – Fax
  jjust@dkattorneys.com

Tiffany E. Woelfel Direct Contact:
  920.431.2232 – Phone
  920.431.2272 – Fax
  twoelfel@dkattorneys.com

# RULE 26.1 DISCLOSURE STATEMENT

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No.:  22-1037

Short Caption:  *Gilbank v. Wood County Department of Health Services, et al.*

(1) The full name of every party that the attorney represents in the case: **Marshfield Police Department & Derek Iverson**

(2) The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in  this court: **Davis & Kuelthau, s.c. (at the District and Appellate Courts); Corneille Law Group, llc (at the District Court only)**

(3) If the party or amicus is a corporation: **Not Applicable**

    i) Identify all its parent corporations, if any; and: **Not Applicable**

    ii) List any publicly held company that owns 10% or more of the party's or amicus' stock: **Not Applicable**

Attorney's Signature:    s/ Jason R. Just
Attorney's Name:    Jason R. Just
Date:    February 15, 2022

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).

Yes **X** No ___

Address:                           Direct Contact:
318 S. Washington St., Suite 300    920.431.2226 – Phone
Green Bay, WI 54301             920.431.2266 – Fax
920.435.9378                   jjust@dkattorneys.com

# RULE 26.1 DISCLOSURE STATEMENT

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No.:   22-1037

Short Caption:   *Gilbank v. Wood County Department of Health Services, et al.*

(1) The full name of every party that the attorney represents in the case: **Marshfield Police Department & Derek Iverson**

(2) The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in  this court: **Davis & Kuelthau, s.c. (at the District and Appellate Courts); Corneille Law Group, llc (at the District Court only)**

(3) If the party or amicus is a corporation: **Not Applicable**

i) Identify all its parent corporations, if any; and: **Not Applicable**

ii) List any publicly held company that owns 10% or more of the party's or amicus' stock: **Not Applicable**

Attorney's Signature:    s/ Tiffany E. Woelfel
Attorney's Name:    Tiffany E. Woelfel
Date:    February 15, 2022

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).

Yes __  No **X**

Address:    Direct Contact:
318 S. Washington St., Suite 300    920.431.2232 – Phone
Green Bay, WI 54301    920.431.2272 – Fax
920.435.9378    twoelfel@dkattorneys.com

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT .................................i

RULE 26.1 DISCLOSURE STATEMENT ........................... ii

TABLE OF CONTENTS ...................................... iii

TABLE OF AUTHORITIES.....................................vi

I.   JURISDICTIONAL STATEMENT ...................................1

II.  STATEMENT REGARDING ORAL ARGUMENT..........2

III. STATEMENT OF ISSUES(S) ........................................3

     1.   Whether the District Court correctly determined that the *Rooker-Feldman* doctrine barred Ms. Gilbank's claims arising from the removal of her child in state court? .................3

     2.   Whether the District Court correctly determined that the doctrine of issue preclusion barred Ms. Gilbank's constitutional claims?.................................................................3

     3. Alternatively, whether the doctrine of qualified immunity bars Ms. Gilbank's claims against the MPD Defendants? .....................................3

IV.  STATEMENT OF THE CASE ........................................4

    A. The Relevant Parties.................................................4

    B. Defendants' Early Interactions with Ms. Gilbank and Her Daughter Arose from Concerns about Her Daughter's Welfare and Ms. Gilbank's Prior Drug Abuse.........................................................................5

C.  Wood County DHS Initiates State Court Custody Proceedings over the 4-Year-Old Child After Ms. Gilbank Is Arrested for Drug Possession. ................6

D.  The Wood County Courts Adjudicated All Issues Surrounding Custody of Ms. Gilbank's Daughter....7

E.  The Court Properly Dismisses All Claims against Defendants. ...............................................10

V.   SUMMARY OF THE ARGUMENT ................................12

VI.  STANDARD OF REVIEW .............................................14

VII.  ARGUMENT .................................................................15

A.  The District Court Properly Applied the *Rooker-Feldman* Doctrine. ...................................................16

B.  The District Court Properly Found that Issue Preclusion Barred Ms. Gilbank's Due Process Arguments. ............................................................23

C.  Alternatively, the Court of Appeals Could Affirm the District Court's Grant of Summary Judgment for the MPD Defendants on the Basis of Qualified Immunity. ...............................................................27

D.  Ms. Gilbank Waived Any Challenge to the District Court's Grant of Summary Judgment for the MPD Defendants on Her Remaining Claims..................35

VIII.  CONCLUSION .............................................................39

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS....................................................41

CERTIFICATE OF SERVICE ..............................................42

# TABLE OF AUTHORITIES

## Cases

*Aldrich v. Labor and Ind. Review Comm'n*,
  2012 WI 53, 341 Wis. 2d 36, 814 N.W.2d 433 .............24, 25
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...........................................................14
*Andrade v. City of Hammond*,
  9 F.4th 947 (7th Cir. 2021)...........................................15, 18
*Brokaw v. Mercer Ctny.*,
  235 F.3d 1000 (7th Cir. 2000) ....................................28, 31
*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ...........................................30
*Buchanan v. City of Kenosha*,
  57 F. Supp. 2d 675 (E.D. Wis. 1999)..................................39
*C.G. Schmidt, Inc. v. Permasteelisa N. Am.*,
  825 F.3d 801 (7th Cir. 2016) ...........................................13
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...........................................................14
*Chavez v. Ill. State Police*,
  251 F.3d 612 (7th Cir. 2001) ...........................................30
*Chavez v. Martinez*,
  538 U.S. 760 (2003) ...........................................................38
*Continental Ins. Co. v. M/V Orsula*,
  354 F.3d 603 (7th Cir. 2003) ...................................27, 38, 39
*DeShaney by First v. Winnebago Cnty. Dep't of Soc. Servs.*,
  812 F.2d 298 (7th Cir. 1987) ....................................32, 35
*Dunderdale v. United Airlines, Inc.*,
  807 F.3d 849 (7th Cir. 2015) ...........................................14
*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005) ....................................................15, 16
*Felton v. Ericksen*,
  366 F. App'x 677 (7th Cir. 2010).......................................30
*Gaetjens v. City of Loves Park*,
  4 F.4th 487 (7th Cir. 2021)...............................................38
*Garg v. Potter*,
  521 F.3d 731 (7th Cir. 2008) ...........................................38

*Gupta v. Melloh,*
 19 F.4th 990 (7th Cir. 2021)................................... 28, 30, 34

*Hernandez ex rel. Hernandez v. Foster,*
 657 F.3d 463 (7th Cir. 2011) ...............................34

*Hernandez v. Cook Cnty. Sheriff's Off.,*
 634 F.3d 906 (7th Cir. 2011) ...............................36

*Jensen v. Foley,*
 295 F.3d 745 (7th Cir. 2002) ..........................24, 27

*Klein v. O'Brien,*
 884 F.3d 754 (7th Cir. 2018) ...............................23

*Local 15, Int'l Brotherhood of Elec. Workers v. Exelon Corp.,*
 495 F.3d 779 (7th Cir. 2007) ...............................36

*Long v. Shorebank Dev.Corp.,*
 182 F.3d 548 (7th Cir.1999) ...............................22

*Mains v. Citibank, N.A.,*
 852 F.3d 669 (7th Cir. 2017) .......................16, 17

*Martin v. Illinois,*
 No. 21-1149, 2022 WL 171926 (7th Cir. Jan. 19, 2022).... 15

*Matthews v. Commonwealth Edison Co.,*
 128 F.3d 1194 (7th Cir. 1997) ...............................36

*N. States Power Co. v. Bugher,*
 189 Wis. 2d 541, 525 N.W.2d 723 (1995)...........................25

*O'Brien v. Caterpillar Inc.,*
 900 F.3d 923 (7th Cir. 2018) ...............................14

*Pearson v. Callahan,*
 555 U.S. 223 (2009) ...........................................28

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC,*
 950 F.3d 959 (7th Cir. 2020) ...............................14

*Rascon v. Hardiman,*
 803 F.2d 269 (7th Cir. 1986) ...............................30

*Reed v. Palmer,*
 906 F.3d 540 (7th Cir. 2018) ...............................31

*Reichle v. Howards,*
 566 U.S. 658 (2012) ...........................................28

*Shipley v. Chi. Bd. of Election Comm'rs,*
 947 F.3d 1056 (7th Cir. 2020) ...............................23

*Swartz v. Heartland Equine Rescue,*
 940 F.3d 387 (7th Cir. 2019) .......................17, 19

*Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*,
 837 F.3d 736 (7th Cir. 2016) ...............................17
*United States v. White*,
 781 F.3d 858 (7th Cir. 2015) ...............................38
*Valenti v. Lawson*,
 889 F.3d 427 (7th Cir. 2018) ...............................14
*White v. Am. Fam. Mut. Ins. Co.*,
 No. 20-1803, 2022 WL 59403 (7th Cir. Jan. 6, 2022).........23
*White v. United States*,
 8 F.4th 547 (7th Cir. 2021).................................36
*Whiting v. Marathon Cnty. Sheriff's Dep't*,
 382 F.3d 700 (7th Cir. 2004) ...............................39
*Williams v. Berge*,
 102 F. App'x 506 (7th Cir. 2004).............................24
*Xiong v. Wagner*,
 700 F.3d 282 (7th Cir. 2012) .................................30, 34, 35

**Statutes**

28 U.S.C. § 1331 ................................................1
28 U.S.C. § 1343(a)(3) .........................................1
42 U.S.C. § 1983 ...............................................1
42 U.S.C. § 1985 ...............................................1
42 U.S.C. § 1986 ...............................................1

**Rules**

Fed. R. App. P. 34(a)..........................................2
Fed. R. Civ. P. 17(b)..........................................39
Fed. R. Civ. P. 56(a)..........................................14
Seventh Circuit Rule 28(b).....................................1
Seventh Circuit Rule 34(f) ....................................2

# I. JURISDICTIONAL STATEMENT

Ms. Gilbank's jurisdictional summary is neither complete nor correct. Therefore, Detective Iverson ("Det. Iverson") and Marshfield Police Department ("MPD," together "MPD Defendants") set forth the following jurisdictional statement as required by Seventh Circuit Rule 28(b).

## A. Information required by Seventh Circuit Rule 28(a)(1)

The District Court had jurisdiction over Ms. Gilbank's claims, which arose under federal law pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (civil rights). The amended complaint raised claims under the First, Fourth through Ninth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986.

## B. Information required by Seventh Circuit Rule 28(a)(2)

The appeal is of a final order and judgment. On December 15, 2020, the District Court dismissed several claims and defendants based upon motions to dismiss that had been filed.

The District Court then issued and Opinion and Order on Summary Judgment (the "Summary Judgment Order") on December 10, 2021,

dismissing all claims against all remaining defendants. Dkt. No. 131. The District Court also entered judgment in favor of all defendants dismissing the case on December 10, 2021. Dkt. No. 132.

Ms. Gilbank filed her Notice of Appeal, Dkt. No. 135, and a Motion for Leave to Proceed in forma pauperis on appeal, Dkt. No. 136, on January 9, 2022. Therefore, the Notice of Appeal was timely filed. No motion for a new trial, motion for alteration of the judgment, or any other motion tolling the time within which to appeal was filed at the District Court.

## C.    Information required by Seventh Circuit Rule 28(a)(3)

The appeal is from a final order and judgment and no further claims or issues remain before the District Court.

## II.   STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Circuit Rule 34(f), the MPD Defendants believe oral argument is necessary to clarify the issues on appeal. Although the MPD Defendants believe the dispositive issues as set identified and forth in the Ms. Gilbank's Statement on Appeal have been authoritatively decided, the MPD

Defendants believe the decisional process could be aided by oral argument to clarify and narrow the precise issues on appeal.

## III.   STATEMENT OF ISSUES(S)

**1. Whether the District Court correctly determined that the *Rooker-Feldman* doctrine barred Ms. Gilbank's claims arising from the removal of her child in state court?**

This Court should answer yes and affirm.

**2. Whether the District Court correctly determined that the doctrine of issue preclusion barred Ms. Gilbank's constitutional claims?**

This Court should answer yes and affirm.

**3. Alternatively, whether the doctrine of qualified immunity bars Ms. Gilbank's claims against the MPD Defendants?**

This Court should answer yes and could affirm the dismissal of the claims against the MPD Defendants on alternative grounds.

## IV.   STATEMENT OF THE CASE

The District Court's Summary Judgment Order in favor of the Defendants presents the undisputed facts between Ms. Gilbank and the MPD Defendants. *See* Dkt. No. 131. To the extent MPD Defendants rely on facts that have not been presented the Summary Judgment Order, MPD Defendants will cite to the undisputed fact as presented in the summary judgment briefing.

### A.    The Relevant Parties

Michelle Gilbank is the mother of a minor daughter, who was born in 2014 and who was 4 years old during the time at issue. Summ. J. Order, Dkt. No. 131 at 2. Ms. Gilbank had sole custody and placement of her daughter until November 2017, when her daughter's father, Ian Hoyle, was granted supervised visitation rights. *Id.* Ms. Gilbank has a history of mental illness, including post-traumatic stress disorder, and methamphetamine use. *Id.*

At the relevant time Derek Iverson was a detective with MPD in Marshfield, Wisconsin, and Theresa Heinzen-Janz was an initial

assessment social worker with the Wood County Human Services Department ("Wood County HSD"). *Id.*[1]

## B. Defendants' Early Interactions with Ms. Gilbank and Her Daughter Arose from Concerns about Her Daughter's Welfare and Ms. Gilbank's Prior Drug Abuse.

On June 29, 2018, Ms. Gilbank and her child were living with Mr. Hoyle when an anonymous caller contacted Wood County HSD concerned about them because it appeared they were living in Mr. Hoyle's non-airconditioned garage in the summer heat. *Id.* at 3. Ms. Heinzen-Janz responded to the call. *Id.*

On July 3, 2018, Ms. Heinzen-Janz met with Ms. Gilbank again and Det. Iverson joined. *Id.* In preparation for the return visit, Ms. Heinzen-Janz learned that Ms. Gilbank had a history of drug use and a pending charge for possession of methamphetamine that occurred in August 2017. *Id.* Additionally, she spoke with Mr. Hoyle who expressed a concern about Ms. Gilbank's drug use. *Id.*

During the July 3, 2018 visit, Ms. Gilbank voluntarily provided a urine sample for a urinalysis. *Id.*; *see also* Dkt. No. 107 at PFOF 11.

---

[1] There are other Defendants who also worked in some capacity for Wood County HSD that are separately represented along with Ms. Heinzen-Janz. *Id.* Because Det. Iverson interacted primarily with Ms. Heinzen-Janz, she is the only Wood County HSD Defendant discussed in the MPD Defendants' statement of facts.

Additionally, Ms. Gilbank admitted to having smoked a small amount of methamphetamine residue on or shortly before July 3, 2018. Dkt. No. 107 at PFOF 9. Ms. Gilbank's urinalysis was positive for both amphetamines and methamphetamines. Summ. J. Order, Dkt. No. 131 at 4. Neither Det. Iverson nor Ms. Heinzen-Janz removed Ms. Gilbank's daughter from her custody at that time. *Id.*

## C. Wood County DHS Initiates State Court Custody Proceedings over the 4-Year-Old Child After Ms. Gilbank Is Arrested for Drug Possession.

On August 21, 2018, Ms. Gilbank was pulled over for driving with a suspended license while her daughter was in the vehicle. *Id.* After a legal search, it was ultimately discovered that Ms. Gilbank had 0.7 grams methamphetamine in her purse, as well as several bags with white crystal-like residue and drug paraphernalia in her car. *Id.* Ms. Gilbank contacted Mr. Hoyle to come and take custody of their daughter. Dkt. No. 82-5.

Ms. Gilbank was then placed under arrest and taken to the police department, where she was interviewed by Det. Iverson and Ms. Heinzen-Janz. Summ. J. Order, Dkt. No. 131 at 4. Det. Iverson read Ms. Gilbank her *Miranda* rights and Ms. Gilbank stated she did not want to

answer questions without a lawyer. *Id*. Det. Iverson ceased any questioning about the items that were found in her vehicle. *Id*. at 4–5. However, Det. Iverson did indicate that they still needed to talk about Ms. Gilbank's drug use as it related to her daughter and Ms. Heinzen-Janz told Ms. Gilbank that she wanted to create a safety plan for Ms. Gilbank's daughter. *Id*. at 5. Ms. Gilbank was reluctant to cooperate with Ms. Heinzen-Janz and eventually Ms. Heinzen-Janz informed Ms. Gilbank that her daughter would be taken into temporary custody by Wood County and then placed with her father. *Id*. Ms. Gilbank was then taken to the county jail. *Id*.

## D. The Wood County Courts Adjudicated All Issues Surrounding Custody of Ms. Gilbank's Daughter.

Ms. Heinzen-Janz then filed a request of temporary physical custody in Wood County Juvenile Court on August 22, 2018. *Id*. Ms. Heinzen-Janz also submitted a petition for a child in need of protective services under Wis. Stat. § 49.13(10) ("CHIPS petition"). *Id*. On August 23, 2018, a temporary physical custody hearing was scheduled. *Id*. at 6. Ms. Heinzen-Janz called the Wood County jail to inform Ms. Gilbank, but she had already been released. *Id*. Ms. Gilbank was not present for the hearing in juvenile court, but the guardian ad litem that had been

appointed for her daughter was present, as was an assistant district attorney, Ms. Heinzen-Janz, and Mr. Hoyle. *Id*. The State Court concluded that probable cause was established by Ms. Heinzen-Janz that Ms. Gilbank was either neglecting her daughter or was unable to provide adequate supervision and care of her daughter. *Id*. The State Court ordered her daughter to be placed with Mr. Hoyle until the next hearing. *Id*.

The next day, August 24, 2018, Ms. Gilbank filed a motion to dismiss the temporary custody order, in which she alleged, at least in part, that there was insufficient evidence to support taking her child and that various government actors had violated her constitutional rights. *Id*. at 7. The Court denied Ms. Gilbank's motion. *Id*.

An evidentiary hearing for the CHIPS petition was held on September 25, 2018. Summ. J. Order, Dkt. No. 131 at 7. Ms. Gilbank was represented by counsel at the hearing. *Id*. An assistant district attorney presented evidence from Det. Iverson, Ms. Heinzen-Janz, Mr. Hoyle, and the officer that had arrested Ms. Gilbank the prior month. *Id*. Ms. Gilbank had the opportunity to cross-examine the state's witnesses, including Det. Iverson. *Id*. at 7–8. Ms. Gilbank, through her

counsel, had the opportunity to put forth her own evidence and call her own witnesses, but she failed to do so. *Id*. at 8. The State Court found that Ms. Gilbank's child needed to be protected from Ms. Gilbank's drug use and ordered supervision over the child for a period not extending a year. *Id*.

On October 29, 2018, another hearing was held as to the placement of Ms. Gilbank's daughter. *Id*. Ms. Gilbank was once again represented by counsel. *Id*. Ms. Gilbank's attorney put forth evidence, including Ms. Gilbank testifying on her own behalf and a letter of support by Mr. Hoyle. *Id*. Ms. Heinzen-Janz appeared and testified that the child should remain with Mr. Hoyle. *Id*. Ultimately, the State Court agreed with Ms. Heinzen-Janz and concluded that the child should remain with Mr. Hoyle for at least a year. *Id*. at 9. Ms. Gilbank filed a pro se motion to dismiss the CHIPS petition arguing that the state had failed to present evidence that her daughter had been neglected, that the State Court refused to allow her to present evidence, and that her daughter should be placed with her. *Id*. The State Court denied the motion. *Id*.

On September 9, 2019, the State Court held a closure hearing on the CHIPS petition, which was closed because all parties, including Ms. Gilbank and Mr. Hoyle agreed it should be closed. *Id*. On November 1, 2019, Ms. Gilbank filed a pro se appeal of the closure order, which was denied by the State Court of Appeals because she had approved of the closure. *Id*.

## E. The Court Properly Dismisses All Claims against Defendants.

In June 2020, Ms. Gilbank filed suit in the Western District of Wisconsin and sued nearly everyone she believed was involved in the investigation and legal proceedings removing her daughter from her custody. *Id*. Ms. Gilbank alleged that her constitutional rights were violated by the MPD Defendants in the following ways: she was forced to give a urine sample without a warrant; she was not provided an attorney after asking for one during the questioning after her arrest; and her daughter was placed with Mr. Hoyle without probable cause. *Id*. at 10. She also raised a number of arguments of constitutional violations by the other defendants, primarily arising from the State

Juvenile Court proceedings involving her daughter. *Id*. The MPD Defendants moved for summary judgment. *Id*. at 10.[2]

Ultimately, the District Court granted MPD Defendants' Motion for Summary Judgment, as well as that of the Wood County DHS Defendants. *See generally* Dkt. No. 131. The District Court held that any of her claims that arose from her child being removed from her—from the temporary removal through the custodial placement with Mr. Hoyle for one year by the State Court—were barred by the *Rooker-Feldman* doctrine. *Id*. at 11–12. Likewise, the Court found that Ms. Gilbank's due process claims were barred by the doctrine of issue preclusion. *Id*. at 14.

As to Ms. Gilbank's remaining constitutional claims, such as that she was forced to give a urinalysis without a warrant and that she was deprived of an attorney during questioning, and to the extent those arose outside of the State Court proceedings and were not barred by the *Rooker-Feldman* doctrine, the District Court found that the claims failed as a matter of law. *Id*. at 13. The District Court found that Ms. Gilbank consented to the urinalysis; thus, there was no constitutional

---

[2] Several other parties, including the Wood County DHS Defendants and Ms. Gilbank, also moved for summary judgment.

violation. *Id*. Additionally, the District Court found that Det. Iverson's questioning of Ms. Gilbank did not violate her Fifth Amendment right because the Fifth Amendment does not apply to state child protection proceedings. *Id*.

On January 10, 2022, Ms. Gilbank filed a notice of appeal. Dkt. No. 3. Because the District Court's analysis was correct, and because Ms. Gilbank has provided no reason to reverse its decision, the Court should affirm the District Court.

## V. SUMMARY OF THE ARGUMENT

The District Court appropriately applied the *Rooker-Feldman* doctrine and found that it lacked subject matter jurisdiction over any of Ms. Gilbank's claims against the MPD Defendants that are inextricably intertwined with the State Court's juvenile decisions as to custody of her child. Ms. Gilbank argues that because Det. Iverson made allegedly false statements about her before the State Court's juvenile proceedings began, they are not barred by the *Rooker-Feldman* doctrine.

This Court can quickly reject such an argument because the "inextricably intertwined" analysis does not require a state court proceeding to predate the alleged constitutional violations. Rather, it

examines whether substance of the alleged constitutional violations is intertwined with the state court proceedings such that they cannot be separated. Here, it is clear that the allegations that Ms. Gilbank raises in her appeal, specifically that Det. Iverson made false statements that led to her daughter being removed from her custody, are inextricably intertwined with the State Court's decisions as to the child's custody and are thus barred.[3]

Additionally, the District Court appropriately applied the doctrine of issue preclusion to find that Ms. Gilbank had the opportunity to raise her due process claims in State Court and thus could not raise such arguments now. As such, the District Court properly applied the *Rooker-Feldman* doctrine and issue preclusion to Ms. Gilbank's claims and should be affirmed.

In the alternative, this Court can affirm the dismissal of the MPD Defendants under the doctrine of qualified immunity.

---

[3] To the extent that Ms. Gilbank had other alleged violations that were unrelated to the removal of her child from her custody (such as the allegation that she was forced to give a urine sample without a warrant and was not given an attorney during questioning), Ms. Gilbank has waived such claims by failing to present them in her opening brief on appeal.

# VI. STANDARD OF REVIEW

The Court of Appeals reviews de novo the decision by a district court to grant or deny summary judgment to a party. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 805 (7th Cir. 2016)). The Court of Appeals interprets the facts and draws all reasonable inferences in favor of the nonmoving party. *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 964 (7th Cir. 2020) (citing *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018)).

"Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "And summary judgment is inappropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Physicians Healthsource, Inc.*, 950 F.3d at 964 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Additionally, the Court of Appeals "may affirm the entry of summary judgment on any ground supported in the record, so

long as the parties adequately presented the issue to the district court and the non-moving party had an opportunity to contest it." *Id.* (citing *O'Brien*, 900 F.3d at 928 (internal citation omitted)).

Likewise, the Court reviews a district court's application of the *Rooker-Feldman* doctrine de novo. *Martin v. Illinois*, No. 21-1149, 2022 WL 171926, at *1 (7th Cir. Jan. 19, 2022) (citing *Andrade v. City of Hammond*, 9 F.4th 947, 949 (7th Cir. 2021)). The *Rooker-Feldman* doctrine implicates subject matter jurisdiction, as the doctrine is "a narrow prohibition against lower federal courts' taking subject-matter jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

## VII. ARGUMENT

The District Court properly applied the *Rooker-Feldman* doctrine to find that it lacked jurisdiction over Ms. Gilbank's federal claims that arose from, and were intertwined with, the removal of her child from her custody through the State Court's custodial decisions. Likewise, the

District Court properly found that Ms. Gilbank had the opportunity to raise her due process arguments in State Court and was thus barred from raising them now under the doctrine of issue preclusion. To the extent that the Court finds that the *Rooker-Feldman* doctrine does not apply, the Court can still uphold the grant of summary judgment in favor of the MPD Defendants under the doctrine of qualified immunity. Additionally, to the extent that Ms. Gilbank asserts that any of the other claims she raised in District Court remain, the Court can deny those arguments as waived.

## A. The District Court Properly Applied the *Rooker-Feldman* Doctrine.

The District Court properly applied the *Rooker-Feldman* doctrine in holding that it lacked jurisdiction over any Ms. Gilbank's claims arising from, and intertwined with, the state juvenile court proceedings. The *Rooker-Feldman* doctrine "prevents lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017) (citing *Exxon Mobile Corp.*, 544 U.S. at 284). The *Rooker-Feldman* doctrine applies not only to claims that directly seek to set aside a state-

court judgment, but "even federal claims that were not raised in state court, or that do not on their face require review of a state court's decision, may be subject to *Rooker-Feldman* if those claims are closely enough related to a state-court judgment." *Id.* (citing *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016)).

Stated otherwise, for the *Rooker-Feldman* doctrine to apply, there must be no way for the injury complained of by a plaintiff to be separated from a state court judgment. *Id.* However, if the claim alleges an injury that is independent of the state-court judgment that the state court failed to remedy, then the *Rooker-Feldman* doctrine does not apply. *Id.* (citations and quotations omitted). The courts apply a two-step analysis to determine whether *Rooker-Feldman* doctrine bars jurisdiction.

> First, we consider whether a plaintiff's federal claims are "independent" or, instead, whether they "either 'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019). If they are "independent" claims, the *Rooker-Feldman* doctrine does not preclude federal courts from exercising jurisdiction over them. But if they "directly" challenge or are "inextricably intertwined" with a state-court judgment, then we move on to step two.
>
> At step two, we determine "whether the plaintiff had a reasonable opportunity to raise the issue in state court

proceedings." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). Only if the plaintiff did have such an opportunity does *Rooker-Feldman* strip federal courts of jurisdiction.

*Andrade*, 9 F.4th at 950. This Court has explained that "[f]or a federal claim to be inextricably intertwined with a state-court judgment, there must be no way for the injury complained of by the plaintiff to be separated from the state court judgment." *Id.* (cleaned up).

Ms. Gilbank's federal claims against Det. Iverson are inextricably intertwined with the state juvenile court's decision that there was probable cause to remove her child from her custody. Ms. Gilbank complains that Det. Iverson "interfered in Plaintiff's right to the care, custody, and control of her daughter" and that Det. Iverson "created, submitted, and signed false documents with Wood County Circuit Court implying that Plaintiff was under the influence and left her daughter without care on August 21, 2018." Ms. Gilbank's Statement on Appeal, Dkt. No. 3 at 1–2. Ms. Gilbank asserts that because these actions occurred prior to "any court involvement," they occurred separate from a state court judgment. *Id.* at 2, 4. She also claims that she "seeks no reversal of Wood County Court rulings." *Id.* at 4. Therefore, she argues that the *Rooker-Feldman* doctrine does not bar her claims based upon

the statements made by Det. Iverson. *See generally id.* However, simply because the statements were made prior to the State Court proceedings does not sever their connection to the State Court proceedings.

The first element of the *Rooker-Feldman* doctrine has undoubtedly been met. It is axiomatic that Ms. Gilbank's federal claims against Det. Iverson—specifically that he interfered with her right to the care, custody, and control of her daughter and that his statements influence the State Court's decision—are inextricably intertwined with the state juvenile court's decision that there was probable cause to remove Ms. Gilbank's daughter from her custody. *Id.*; *see, e.g.*, *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019) (explaining that the State Court's finding of probable cause and ordered seizure of Plaintiff's animals produced the injury the plaintiffs now claimed).

Further evidence that the State Court's decisions caused the claimed injuries is found in Ms. Gilbank's own words, i.e. the "504 days" of injury that she alleges she suffered from the date her child was removed from her custody. Ms. Gilbank's Statement on Appeal, Dkt. No. 3 at 3. Therefore, the remedy she seeks remediation from is the removal of her

child. But if Det. Iverson's alleged actions occurred before and distinct and separate from that removal, such that they are not barred by the *Rooker-Feldman* doctrine, then how could they be responsible for "504 days" of injury? There's simply no way to separate the harm that Ms. Gilbank complains of from the underlying State Court proceeding.

Similarly, if the Court or a jury were to find either that Det. Iverson interfered with Ms. Gilbank's custodial rights to her child or that Det. Iverson "created, submitted, and signed false documents," such a decision would call into question the State Court's determination that there was probable cause to removal the child from her custody. *See generally id*. As such, Ms. Gilbank's federal claims are clearly inextricably intertwined with the State Court's juvenile decisions.

Ms. Gilbank's own Statement on Appeal explicitly shows how her federal claim is inextricably intertwined with the State Court's decision. Ms. Gilbank asserts:

> **Defendants' violations of law on August 21 and 22, 2018 caused the court to take action** which caused the Plaintiff and her daughter severe trauma and injury for 504 days. Plaintiff could find not a single juvenile court case in which Wood County Court ruled against Wood County DHS recommendation when a child's primary caregiver was not present for the initial hearing.

*Id.* at 3 (emphasis added). Ms. Gilbank also noted that "[Defendants']
unlawful actions greatly affected judicial decisions regarding Plaintiff's
custody and individual liberty." *Id.* at 5 (emphasis in original).
Therefore, despite Ms. Gilbank's assertions that her claims arose before
the State Court juvenile proceedings began, Ms. Gilbank's own
assertions show that her claims are inextricably intertwined.

Likewise, the second factor of the *Rooker-Feldman* doctrine has
clearly been met. Ms. Gilbank had a reasonable opportunity to raise her
arguments as to the lack of probable cause and the allegedly false
statements by Det. Iverson in the State Court proceedings. Indeed, as
the District Court noted, Ms. Gilbank raised the argument that
probable cause was lacking and the State Court rejected such an
argument. Summ. J. Order, Dkt. No. 131 at 7–8. Not only did Ms.
Gilbank have the opportunity to raise such arguments in the State
Court proceedings, she had the opportunity to cross-examine Det.
Iverson about his statements to the State Court and to challenge any
evidence authored by Det. Iverson that had been entered before the
Court if she believed those documents to be false, as she now asserts.
*Id.* at 8. She did not do so. *Id.*

Although Ms. Gilbank attempts to carveout Det. Iverson's actions as occurring prior to any state court proceedings, it is clear that the injuries she claims (i.e. the 504 days without custody of her daughter), are directly connected to (and caused by) the State Court's decisions— not by isolated actions of Det. Iverson. Moreover, the alleged injuries that occurred either were, or could have been, presented to the State Court to be remedied. As such, Ms. Gilbank has failed to set forth any evidence of an independent prior injury that the State Court failed to remedy. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir.1999).

Because Det. Iverson's alleged actions are inextricably intertwined with the State Court's proceedings and decisions, and because Ms. Gilbank had reasonable opportunity to raise these issues in State Court, both factors of the *Rooker-Feldman* doctrine clearly apply and the District Court properly held that it lacked jurisdiction over Ms. Gilbank's federal claims. This Court should affirm the District Court's application of the *Rooker-Feldman* doctrine.

## B. The District Court Properly Found that Issue Preclusion Barred Ms. Gilbank's Due Process Arguments.

Additionally, to the extent Ms. Gilbank properly raised an argument on appeal related issue preclusion—which the MPD Defendants assert she has not—the District Court properly found that issue preclusion barred her due process claims. Ms. Gilbank asserts that the District Court erred in applying issue preclusion to her claims of due process violation. Ms. Gilbank's Statement on Appeal, Dkt. No. 3 at 5. However, such an argument is undeveloped aside from Ms. Gilbank's unsupported assertion that "Defendants have not been party to any other legal action involving Plaintiff." *See generally id.* Ms. Gilbank failed to address in any meaningful way the District Court's finding that issue preclusion barred her due process claims which were raised in the state court. Because Ms. Gilbank failed to "engage with the reasons she lost" and failed to develop her arguments, the Court can find that Ms. Gilbank failed to properly present her issue preclusion argument and dismiss such an argument. *See, e.g., White v. Am. Fam. Mut. Ins. Co.*, No. 20-1803, 2022 WL 59403, at *1 (7th Cir. Jan. 6, 2022) (citing *Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018)); *Shipley v. Chi. Bd. of*

*Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020)); *Williams v. Berge*, 102 F. App'x 506, 508 (7th Cir. 2004)).

To the extent that this Court finds that Ms. Gilbank did not waive her issue preclusion argument, the Court should hold that the District Court properly applied issue preclusion against Ms. Gilbank's due process claims. When applying issue preclusion, "[f]ederal courts must give state court judgments the same preclusive effect 'as would a court in the rendering state'"; therefore, the Court must apply Wisconsin law in performing this analysis. *Jensen v. Foley*, 295 F.3d 745, 749 (7th Cir. 2002) (citation omitted). The first step in the issue preclusion analysis is determining "whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in the previous action and whether the determination was essential to the judgment." *Aldrich v. Labor and Ind. Review Comm'n*, 2012 WI 53, ¶ 97, 341 Wis. 2d 36, 814 N.W.2d 433 (internal citations and quotations omitted). The second step in the issue preclusion analysis is determining "whether applying issue preclusion comports with principles of fundamental fairness." *Id.* ¶ 98 (internal citations and quotations omitted). The fundamental fairness analysis considers a number of factors, none of

which are exhaustive or exclusive, but to which the Court may give discretionary weight in coming to a final decision that "rests on a 'sense of justice and equity.'" *Id.* ¶¶ 110–12. These factors include:

> (1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;
> (2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;
> (3) Do significant differences in the quality or extensiveness of proceedings between two courts warrant relitigation of the issue;
> (4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and
> (5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Id.* ¶ 110. Notably absent from this determination is any requirement that there be identical parties in both disputes for issue preclusion to apply—which is the entire basis of Ms. Gilbank's minimal issue preclusion argument. *N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 550–51, 525 N.W.2d 723 (1995) ("Unlike claim preclusion, an identity of parties is not required in issue preclusion.").

As explained by the District Court, Ms. Gilbank had every opportunity to bring her due process arguments in the State Court's

juvenile proceedings, including her arguments that she was denied proper notice and that probable cause was lacking in the State Proceedings. Summ. J. Order, Dkt. No. 131 at 14. The State Court heard such arguments during multiple proceedings in which Ms. Gilbank was represented by counsel and allowed to present witnesses and evidence, as well as cross-examine the state witnesses. *Id.* at 6–9. Therefore, the issue of due process in the State Proceedings was actually litigated in State Court and was essential to the State Court's judgments. As such, the first step in the issue preclusion was met.

Likewise, the justice and equity factors support finding issue preclusion. Ms. Gilbank had the opportunity to review the State Proceedings through the state appellate procedures but chose not to. *Id.* at 9. Moreover, Ms. Gilbank provide no reason that these issues should be relitigated in federal court. Ms. Gilbank had every incentive to raise these arguments during the State Court's juvenile proceedings, which was the more appropriate proceeding in which to seek relief and had the higher burden of persuasion. Similarly, there are no public policy or individual circumstances that would render the application of collateral estoppel to be fundamentally unfair. As such, the justice and equity

factors support a finding that issue preclusion bars Ms. Gilbank's due process arguments.

Overall, the District Court properly applied issue preclusion and Ms. Gilbank offered no argument or reason for finding that the District Court had erred in applying issue preclusion based upon the State Court's juvenile proceedings. *See, e.g.*, *Jensen*, 295 F.3d at 749 (finding that the issue of probable cause was a controlling and material issue in a temporary custody order and, thus, the plaintiff was barred from raising that issue again in a 42 U.S.C. § 1983 suit).

## C. Alternatively, the Court of Appeals Could Affirm the District Court's Grant of Summary Judgment for the MPD Defendants on the Basis of Qualified Immunity.

In the alternative, the Court can affirm the District Court's dismissal of the MPD Defendants under the doctrine of qualified immunity.[4] The doctrine of qualified immunity "protects government officials from individual liability under Section 1983 for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable

---

[4] The MPD Defendants raised qualified immunity as a defense in their motion for summary judgment. Dkt. No. 67 at 18–21. Therefore, the matter was properly put before the District Court and this Court may use it as an alternative ground upon which to grant relief. *Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606 (7th Cir. 2003).

person would have known." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1022 (7th Cir. 2000) (internal citation omitted).

"Qualified immunity under § 1983 extends to police officers unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). However, the Court "need not consider the prongs in order." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Additionally, "clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id.* (cleaned up).

The doctrine of qualified immunity applies to the actions taken by Det. Iverson. Ms. Gilbank alleges that Det. Iverson violated her constitutional rights by partaking in the removal of her child from her custody. Statement on Appel, Dkt. No. 3. However, it is often unclear what she means by "removal," specifically whether she means the legal proceedings that removed her child from her custody or whether she is alleging that Defendants physically removed or seized her child from

her during the arrest. This confuses the analysis, but nevertheless, Ms. Gilbank's arguments are barred by qualified immunity.

It appears Ms. Gilbank's allegations against Det. Iverson arise solely from the legal proceedings that removed her child from her custody. However, Det. Iverson took no direct role in those legal proceedings. Det. Iverson neither filed the request for temporary physical custody of the child nor did he submit the CHIPS petition. Summ. J. Order, Dkt. No. 131 at 4. He appeared at one of the CHIPS hearings and provided testimony. *Id*. However, Ms. Gilbank has not raised any specific allegations as to testimony he gave at that proceeding that would violate her constitutional rights and give rise to a claim. *See generally* Statement on Appeal, Dkt. No. 3. Moreover, Ms. Gilbank, through counsel, was given the opportunity to cross-examine him during that proceeding. Summ. J. Order, Dkt. No. 131 at 7–8. Likewise, Det. Iverson did not make the decision as to probable cause or the custody of the child—as both such decisions were made by the State Court.

Therefore, Det. Iverson was not the party who filed the custody or CHIPS petition, nor was he the party that ultimately made those decisions. To the extent Ms. Gilbank's claims arise from those decisions,

she cannot state a claim against Det. Iverson because he had no personal involvement in those. *See, e.g.*, *Felton v. Ericksen*, 366 F. App'x 677, 680 (7th Cir. 2010) ("And because liability under § 1983 requires a showing of personal involvement, *see Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (citing *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986)); *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001), the absence of any evidence linking these two defendants to the seizure is enough to resolve the First Amendment claim as against them.").

To the extent Ms. Gilbank's argument relies upon Det. Iverson's testimony at the CHIPS proceeding, qualified immunity applies. Det. Iverson is entitled to qualified immunity unless it was "sufficiently clear that every reasonable official would understand that what he was doing [was] unlawful." *Gupta*, 19 F.4th at 1000 (citations omitted). As long as Det. Iverson reasonably believed his actions to be lawful, in light of clearly established law, he is entitled to qualified immunity. *Xiong v. Wagner*, 700 F.3d 282, 290 (7th Cir. 2012). However, testifying at a child custody or CHIPS proceeding is not unlawful. It is Ms. Gilbank's burden to demonstrate that Det. Iverson's actions were violations of her clearly established constitutional rights and Ms. Gilbank has offered

nothing that would support that Det. Iverson was doing something unlawful by testifying. *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018). As such, qualified immunity applies.

To the extent that Ms. Gilbank is now asserting that Det. Iverson and Ms. Heinzen-Janz seized her child by physically taking custody over her child and then placed her child with her child's father, such an argument is also barred by the doctrine of qualified immunity.[5]

However, even if Det. Iverson and Wood County DHS had taken physical custody over the child and placed her with her father, such actions would have been reasonable. Moreover, such actions would not have been a constitutional violation, because they had both probable cause and exigent circumstances to justify taking temporary custody of Ms. Gilbank's daughter. "In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that state officers have reason to believe that life or limb is in immediate jeopardy." *Brokaw*, 235 F.3d at 1010.

---

[5] MPD and Wood County Defendants both assert that it is undisputed that Ms. Gilbank called Mr. Hoyle and asked Mr. Hoyle to take custody over their child during her arrest. Dkt. No. 82-5. However, even assuming she did not call her child's father and her child was temporarily seized, her claims would fail.

Wood County DHS and Det. Iverson had probable cause to take temporary custody over Ms. Gilbank's child because they had actual knowledge of the circumstances of her arrest. It is undisputed that on August 21, 2018, an MPD officer stopped Ms. Gilbank for driving with a suspended license and that Ms. Gilbank's daughter was in the vehicle. Dkt. No. 107 at PFOF 14. It is also undisputed that a lawful search of Ms. Gilbank's vehicle revealed she was in possession of 0.7 grams of methamphetamine, several baggies containing a powdery residue, and a pipe believed to be drug paraphernalia, all while her 4-year-old child was in the car with her. *Id.* at PFOFs 16–17. Moreover, it is undisputed that Ms. Gilbank was then arrested, taken into custody, and transported to the MPD station. *Id.* at PFOF 18. Because Ms. Gilbank was being transported to the police station, something had to occur with her child. They could not just leave the 4-year-old in the car. If MPD had left the 4-year-old in the car, MPD would have been liable for any injury that befell her. *See, e.g., DeShaney by First v. Winnebago Cnty. Dep't of Soc. Servs.*, 812 F.2d 298, 303 (7th Cir. 1987) ("If the state, having arrested a child's parents, leaves the child alone in a situation where he is quite likely to come to grief because no one is watching over

him, and he is injured, the state is a cause of the injury."). Likewise, it would have been inappropriate for the 4-year-old to be taken into custody and brought to the MPD station. This is why Ms. Gilbank was allowed to place a call, and she chose to have Mr. Hoyle arrive and take custody of their child.

Moreover, even if Ms. Gilbank was not being arrested, there is still probable cause to remove the 4-year-old based upon fear of immediate harm or neglect because of Det. Iverson and Wood County's DHS's knowledge and past interactions with Ms. Gilbank. It is undisputed that Ms. Heinzen-Janz responded to a call concerning the child's welfare on June 29, 2018. Dkt. No. 107 at PFOF 5. It is also undisputed that Ms. Gilbank informed Ms. Heinzen-Janz and Det. Iverson that she had recently smoked a small amount of methamphetamine residue on or around July 3, 2018, while having sole custody of her 4-year-old child. *Id*. at PFOF 9. Likewise, it is undisputed that on July 23, 2018, Ms. Gilbank admitted to the use of methamphetamines. *Id*. at PFOF 13. Then, it was undisputed that while her 4-year-old was in her custody, Ms. Gilbank had 0.7 grams of methamphetamine and drug paraphernalia in her possession. *Id*. at PFOF 17. Therefore, based upon

those facts, Det. Iverson and Wood County DHS had probable cause to believe Ms. Gilbank's child was facing neglect based upon Ms. Gilbank's ongoing drug use. *See generally Xiong*, 700 F.3d at 290 (explaining suspected child neglect could provide probable cause for removing a child); *see also Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 475 (7th Cir. 2011) (explaining the probable cause analysis is an objective inquiry, which the focus on the facts and circumstances known to defendants at the time they decided to remove the child and whether a person applying reasonable caution could have believed the child faced an immediate threat of danger or abuse based on those facts).

However, the Court need not get into such analysis, rather Det. Iverson is entitled to qualified immunity unless it was "sufficiently clear that every reasonable official would understand that what he was doing [was] unlawful." *Gupta*, 19 F.4th at 1000 (citations omitted). There is nothing to support an argument that another police officer would understand that assisting DHS in taking temporary custody over a child whose parent was being arrested and then placing that child into the custody of her other parent was "unlawful." Rather, Seventh Circuit precedent provides that an officer that fails to take custody over a minor

in that situation to ensure the child remains safe could expose be exposed to liability if the child is injured while unsupervised. *See, e.g.*, *DeShaney,* 812 F.2d at 303.

Likewise, there is nothing to support an argument that another police officer, or social worker, would believe that removing custody over a child from a parent after repeated drug-related incidents in a month and placing the child in the custody of her other parent would be "unlawful." As long as Det. Iverson reasonably believed his actions to be lawful, in light of clearly established law, he is entitled to qualified immunity. *Xiong*, 700 F.3d at 290. Because Ms. Gilbank has failed to meet her burden of demonstrating that Det. Iverson's actions were clearly established violations of her constitutional rights, Det. Iverson is entitled to qualified immunity.

## D. Ms. Gilbank Waived Any Challenge to the District Court's Grant of Summary Judgment for the MPD Defendants on Her Remaining Claims.

To the extent Ms. Gilbank seeks to revive any of her other claims against the MSD Defendants that she brought before the District Court, such claims have been waived. The Court's precedent is clear that arguments not made in opening appellate briefs, or "skeletal

arguments," "may be properly treated as waived." *Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011) (citations omitted); *see also White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("A party that omits from its opening appellate brief any argument in support of its position waives or abandons that party's claim on appeal."); *Local 15, Int'l Brotherhood of Elec. Workers v. Exelon Corp.*, 495 F.3d 779, 783 (7th Cir. 2007) ("A party waives any argument that it does not raise before the district court or, if raised in the district court, it fails to develop on appeal.") (internal quotations and citations omitted); *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1197–98 (7th Cir. 1997) ("He mentions the point in a sentence in his brief, but neither develops nor substantiates it; it is therefore waived, and we do not consider it.")).

Ms. Gilbank's Statement on Appeal pertains entirely the removal of her child from her custody and her alleged federal claims arising therefrom. *See generally* Ms. Gilbank's Statement on Appeal, Dkt. No. 3. However, Ms. Gilbank's Statement is devoid of arguments relating to the other arguments she raised at the District Court, including her claims against MPD and her claims of constitutional violations arising

from the questioning performed by Det. Iverson regarding the safety plan for her child and the urinalysis that she willingly gave. Therefore, Ms. Gilbank has waived any such claims.

The District Court held that Det. Iverson's questioning of Ms. Gilbank without an attorney did not violate her Fifth Amendment because the Fifth Amendment does not apply to state child protection proceedings. Summ. J. Order, Dkt. No. 131 at 13. Likewise, the District Court held that Ms. Gilbank could not sustain a constitutional claim based on an unlawful search or seizure arising from her urinalysis because she consented to it. *Id.* If Ms. Gilbank desired to challenge those decisions by the District Court, it was her obligation to raise these arguments in her opening brief. Because she did not, any belated attempt by Ms. Gilbank to raise such arguments should be quickly rejected by this Court. *See, e.g.*, *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (collecting cases).[6]

---

[6] Alternatively, the Court could affirm the District Court's decision on the merits because Ms. Gilbank has failed to state a claim for a constitutional violation because she admitted that she consented to the urinalysis. *See* Dkt. No. 131 at 13; Dkt. No. 107 at PFOF 11; *see also United States v. White*, 781 F.3d 858, 860–61 (7th Cir. 2015). Likewise, the Court could also affirm in the alternative the District Court's decision that Ms. Gilbank failed to state a claim of a constitutional violation based upon her alleged interrogation by Det. Iverson because such statements were

Additionally, the District Court properly dismissed the claims against MPD. "[A] municipality cannot be liable under *Monell* [*v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978),] when there is no underlying constitutional violation." *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495–96 (7th Cir. 2021) (internal citations and quotations omitted). After the District Court properly applied the *Rooker-Feldman* doctrine and found that Ms. Gilbank's remaining constitutional challenges failed as a matter of law, the District Court dismissed the claims against MPD. Because the *Rooker-Feldman* doctrine was properly applied and because Ms. Gilbank waived her remaining arguments, there is no constitutional violation committed by a municipality. As such, any claim against MPD fails and was properly dismissed.[7]

---

not used in any criminal proceeding. *See* Dkt. No. 131 at 13; *Chavez v. Martinez*, 538 U.S. 760, 769 (2003); *Continental Ins. Co.*, 354 F.3d at 606.

[7] In the alternative, the Court may affirm the dismissal of claims against MPD on the alternative grounds that MPD was not a suable entity. Pursuant to Wisconsin law, "a sheriff's department was part of a county government and 'not a separate suable entity.'" *Buchanan v. City of Kenosha*, 57 F. Supp. 2d 675, 678 (E.D. Wis. 1999) (applying Fed. R. Civ. P. 17(b)), cited approvingly in *Whiting v. Marathon Cnty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004). Therefore, Appellant may not state a claim pursuant to 42 U.S.C. § 1983 directly against MPD because it is not a suable entity. MPD raised this defense in its Motion to Dismiss and Motion for Summary Judgment before the District Court, to which Appellant had the opportunity to respond. Dkt. No. 67 at 8–9. As such, the Court may affirm the dismissal on this alternative ground. *Continental Ins. Co.*, 354 F.3d at 606.

## VIII. CONCLUSION

Because the District Court properly applied the *Rooker-Feldman* doctrine and doctrine of issue preclusion, and because Ms. Gilbank has not identified any error by the District Court, this Court should affirm the District Court and dismiss Ms. Gilbank's appeal.

Dated this <u>14th</u> day of February 2022.

Respectfully submitted,

DAVIS & KUELTHAU, s.c.

<u>s/ Jason R. Just</u>
JASON R. JUST
State Bar No.: 1104647
TIFFANY E. WOELFEL
State Bar No.: 1093779

Attorneys for Defendants-Appellees
Marshfield Police Department and
Derek Iverson

DAVIS & KUELTHAU, s.c.
318 S. Washington St., Suite 300
Green Bay, WI 54301
920.435.9378

Jason R. Just
Direct Contact:
     920.431.2226 – Phone
     920.431.2266 – Fax
     jjust@dkattorneys.com

Tiffany E. Woelfel
Direct Contact:
      920.431.2232 – Phone
      920.431.2272 – Fax
      twoelfel@dkattorneys.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), typeface requirements of Fed. R. App. P. 32(a)(5) and 7th Cir. R. 32(b), and type style requirements of Fed. R. App. P. 32(a)(6).

This brief contains 7,923 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Century Schoolbook.

Dated this <u>14th</u> day of February 2022.

DAVIS & KUELTHAU, s.c.

<u>*s/ Jason R. Just*</u>
JASON R. JUST
State Bar No.: 1104647
TIFFANY E. WOELFEL
State Bar No.: 1093779

## CERTIFICATE OF SERVICE

I certify that on February 14th, 2022, I electronically filed the foregoing Brief of Defendants-Appellees Marshfield Police Department and Derek Iverson with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

I further certify that a copy of the above document was mailed to:

Michelle R. Gilbank
919 West Blodgett Street
Marshfield, WI 54449

Dated this <u>14th</u> day of February 2022.

DAVIS & KUELTHAU, s.c.

*<u>s/ Jason R. Just</u>*
JASON R. JUST
State Bar No.: 1104647
TIFFANY E. WOELFEL
State Bar No.: 1093779
