**No. 22-1037**

**In the United States Court of Appeals for the Seventh Circuit**

———————————

MICHELLE R. GILBANK,

*Plaintiff-Appellant,*

*v.*

WOOD COUNTY DEPARTMENT OF
HUMAN SERVICES, ET AL.,

*Defendants-Appellees.*

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
CASE NO. 3:20-CV-00601-JDP
THE HONORABLE JAMES D. PETERSON, PRESIDING

**RESPONSE BRIEF OF DEFENDANTS-APPELLEES WOOD COUNTY
DEPARTMENT OF HUMAN SERVICES, THERESA HEINZEN-JANZ, MARY
CHRISTENSEN, ANNE LA CHAPELLE, AND MARY SOLHEIM**

Axley Brynelson, LLP
Lori M. Lubinsky, SBN 1027575
Aneet Kaur, SBN 1088063
2 E. Mifflin Street, Suite 200
Madison, WI 53703
(608) 257-5661

Attorneys for Wood County Department of Human Services, Theresa Heinzen-
Janz, Mary Christensen, Anne La Chapelle, and Mary Solheim

## RULE 26.1 DISCLOSURE STATEMENT

Appellate Court Case No. <u>22-1037</u>

Short Caption:  <u>Michelle R. Gilbank v. Wood County DHS, et al.</u>

The full name of every party that the attorney represents in this case: <u>Wood County Department of Human Services, Theresa Heinzen-Janz, Mary Christensen, Anne La Chapelle, and Mary Solheim.</u>

The names of all law firms whose partners or associates have appeared for the parties in this case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court: <u>Axley Brynelson, LLP</u>

If the party or amicus is a corporation:

    (i)    Identify all its parent corporations, if any; and

    (ii)    List any publicly held company that owns 10% or more of the party's or amicus stock: <u>N/A</u>

Attorney's Signature: <u>*/s/ Aneet Kaur*</u>

Date: <u>November 16, 2022</u>

Attorney's Printed Name: <u>Aneet Kaur</u>

Address: <u>2 East Mifflin Street, Suite 200, Madison, Wisconsin 53703</u>

# RULE 26.1 DISCLOSURE STATEMENT

Appellate Court Case No. <u>22-1037</u>

Short Caption:  <u>Michelle R. Gilbank v. Wood County DHS, et al.</u>

The full name of every party that the attorney represents in this case: <u>Wood County Department of Human Services, Theresa Heinzen-Janz, Mary Christensen, Anne La Chapelle, and Mary Solheim.</u>

The names of all law firms whose partners or associates have appeared for the parties in this case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court: <u>Axley Brynelson, LLP</u>

If the party or amicus is a corporation:

  (i)    Identify all its parent corporations, if any; and

  (ii)   List any publicly held company that owns 10% or more of the party's or amicus stock: <u>N/A</u>

Attorney's Signature: <u>*/s/ Lori M. Lubinsky*</u>

Date: <u>November 16, 2022</u>

Attorney's Printed Name: <u>Lori M. Lubinsky</u>

Address: <u>2 East Mifflin Street, Suite 200, Madison, Wisconsin 53703</u>

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT.........................................................................ii

RULE 26.1 DISCLOSURE STATEMENT........................................................................iii

TABLE OF CONTENTS...................................................................................................iv

TABLE OF AUTHORITIES ...........................................................................................vii

JURISDICTIONAL STATEMENT ................................................................................. 1

STATEMENT OF THE ISSUES...................................................................................... 2

    I.   Does Gilbank's 42 U.S.C. § 1985 claim fail as a matter of law, on the merits, and on immunity grounds?........................................................................... 2

    II. Should the Court abandon its *Rooker-Feldman* test, strike the "inextricably intertwined" language, and adopt Gilbank's proposed test?................................................................................................................................. 2

    III. Did the District Court correctly determine that the *Rooker-Feldman* doctrine barred Gilbank's claims arising out of alleged injuries caused by the State Juvenile Court's decisions?........................................... 2

    IV. Should the Court affirm dismissal based on issue preclusion, as a matter of law, on the merits, and qualified immunity—all grounds which were fully briefed before the District Court? ................................... 2

STATEMENT OF THE CASE........................................................................................... 3

STANDARD OF REVIEW ............................................................................................... 3

SUMMARY OF THE ARGUMENT ............................................................................... 3

ARGUMENT ..................................................................................................................... 5

    I.   Gilbank's 42 U.S.C. § 1985 Claim Was Properly Dismissed at the Summary Judgment Stage and Dismissal Should Be Affirmed. .............. 5

        a.   Gilbank's 42 U.S.C. § 1985 Was Not Dismissed as Untimely. ............. 5

        b.   Gilbank's 42 U.S.C. § 1985 Claim Was Properly Dismissed at the Summary Judgment Stage and Dismissal Should Be Affirmed as a Matter of Law, on the Merits, and on Immunity Grounds........... 6

    II. The *Rooker-Feldman* Doctrine Bars Gilbank's Claims Alleging Injuries Caused by the State Juvenile Court's Orders. ............................................. 9

        a.   The Rooker-Feldman Doctrine Prohibits Both Direct and Indirect Attacks to a State Court Judgment............................................................ 9

        b.   The Seventh Circuit Has Adopted a Test That Is Consistent with the Above Principles. Gilbank's Proposed Test Is Not.............. 11

i.  The "inextricably intertwined language" is the law of the land...............................................................................12

ii. Gilbank's proposed test, which limits the Rooker-Feldman bar to only those cases that "directly" challenge a state court decision, is inconsistent with Supreme Court precedent..............13

c.  Gilbank's Claims for Injuries Arising from the State Juvenile Court's Orders Are Barred by the Rooker-Feldman Doctrine...........16

    i.  Gilbank's Due Process Claims Are Inextricably Intertwined with the State Juvenile Court's Orders. ............................................16

    ii. Gilbank's Unsupported Fraud and Conspiracy Allegations Do Not Exempt Her Claims from the Rooker-Feldman Doctrine. .................................................................................20

    iii. Gilbank Had a Reasonable Opportunity to Raise Her Due Process Claims. ...................................................................25

III. The Court May Affirm Dismissal Based on Any of the Alternative Grounds Fully Briefed Before the District Court. ......................................27

    a.  Issue Preclusion Bars Gilbank's Due Process Claims. ........................28

    b.  Gilbank's Fourth Amendment Claim Premised on an Alleged Unlawful Seizure of T.E.H. Fails as a Matter of Law and on Immunity Grounds. ................................................................................30

        i.  Gilbank's Fourth Amendment Claim Premised on an Alleged Unlawful Seizure of T.E.H. Fails as a Matter of Law. ..................33

        ii. Gilbank's Claim Relating to the Alleged Unlawful Seizure of T.E.H. is Barred by Qualified Immunity......................................34

    c.  Gilbank's Fourth Amendment Claim Premised on eviction fails as a matter of law and on immunity grounds.....................................38

    d.  Gilbank's Fourth Amendment Claim Arising out of theUrinalysis Fails as a Matter of Law and on Immunity Grounds.........................41

    e.  Gilbank's Fifth Amendment Claims Fails as a Matter of Law, on the Merits, and on Immunity Grounds.............................................42

    f.  Gilbank's Fourteenth Amendment Claims Fails as a Matter of Law, on the Merits, and on Immunity Grounds.................................43

        i.  Gilbank's Claim that She Did Not Receive Procedural Due Process Has No Basis in Fact or Law. ...............................................43

    ii.  Absolute/Quasi-Judicial Immunity Bars Gilbank's Claims
         Procedural Due Process Claims. ........................................................ 50

    iii. Gilbank's Substantive Due Process Claim is Preempted by
         Her Fourth Amendment Claims; Alternatively, This Claim is
         Without Any Basis in Fact or Law. .................................................... 53

    iv. Gilbank's Procedural and Substantive Due Process Claim is
         Also Foreclosed by The Doctrine of Qualified Immunity. ........... 55

CONCLUSION .................................................................................................... 56

CERTIFICATE OF COMPLIANCE .............................................................. 57

CERTIFICATE OF SERVICE .......................................................................... 58

# TABLE OF AUTHORITIES

## Cases

*Aldrich v. Labor & Indus. Review Comm'n*,
2012 WI 53, 814 N.W.2d 433 .................................................................29, 30, 31

*Andrade v. City of Hammond, Indiana*,
9 F.4th 947 (7th Cir. 2021) ............................................................................25

*Andress v. Daubert L. Firm, LLC*,
667 F. App'x 154 (7th Cir. 2016) ...................................................................22

*Andrews v. Hickman County*,
700 F.3d 845 (6th Cir. 2012) ..........................................................................41

*Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*,
398 U.S. 281 (1970) ........................................................................................10

*Auriemma v. Rice*,
910 F.2d 1449 (7th Cir. 1990) ..........................................................................8

*Bank of Ill. v. Allied Signal Safety Restraint Sys.*,
75 F.3d 1162 (7th Cir. 1996) ...........................................................................41

*Bauer v. Koester*,
951 F.3d 863 (7th Cir. 2020) ...........................................................19, 22, 24, 25

*Behr v. Campbell*,
8 F.4th 1206 (11th Cir. 2021) ..........................................................................19

*Bisbee v. Bey*,
39 F.3d 1096 (10th Cir. 1994) ...........................................................................6

*Brokaw v. Mercer Cnty.*,
235 F.3d 1000 (7th Cir. 2000) ..................................................................passim

*Brown v. Bowman*,
668 F.3d 437 (7th Cir. 2012) ...........................................................................26

*Brown v. Bowman*,
668 F.3d 437 (7th Cir. 2012) ...........................................................................19

*Callahan v. City of New York*,
90 F. Supp. 3d 60 (E.D.N.Y. 2015) .................................................................47

*Campbell v. Amax Coal Co.*,
610 F.2d 701 (10th Cir. 1979) ...........................................................................8

*Chavez v. Martinez*,
538 U.S. 760 (2003) ........................................................................................42

*Coverdell v. Dep't of Soc. & Health Servs.*,
834 F.2d 758 (9th Cir. 1987) ....................................................................36, 37

*Crawford v. Countrywide Home Loans, Inc.*,
647 F.3d 642 (7th Cir. 2011) ...........................................................................20

*D.C. Ct. of Appeals v. Feldman,*
   460 U.S. 462 (1983)..............................................................passim
*Doe v. Louisiana,*
   2 F.3d 1412 (5th Cir. 1993) ......................................................35
*Donald v. Polk County,*
   836 F.2d 376 (7th Cir. 1988) .......................................29, 34, 44
*Ernst v. Child & Youth Servs. of Chester Cnty.,*
   108 F.3d 486 (3d Cir. 1997) ......................................................50
*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
   544 U.S. 280 (2005)................................................9, 10, 13, 14
*Frazier v. Bailey,*
   957 F.2d 920 (1st Cir. 1992).....................................................35
*Garry v. Geils,*
   82 F.3d 1362 (7th Cir. 1996) ....................................................18
*Great Am. Fed. Sav. & Loan Ass'n v. Novotny,*
   442 U.S. 366 (1979).....................................................................7
*Griffin v. Breckenridge,*
   403 U.S. 88 (1971).......................................................................7
*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982)...................................................................35
*Harold v. Steel,*
   773 F.3d 884 (7th Cir. 2014) ....................................................22
*Hernandez v. Foster,*
   657 F.3d 463 (7th Cir. 2011) .......................................44, 53, 54
*Hodorowski v. Ray,*
   844 F.2d 1210 (5th Cir. 1988) ..................................................35
*Iqbal v. Patel,*
   780 F.3d 728 (7th Cir. 2015) ....................................................21
*Jakupovic v. Curran,*
   850 F.3d 898 (7th Cir. 2017) ..............................................11, 25
*Jensen v. Foley,*
   295 F.3d 745 (7th Cir. 2002) .......................................28, 29, 32
*Johnson v. Cambridge Indus., Inc.,*
   325 F.3d 892 (7th Cir. 2003) ....................................................21
*Johnson v. Orr,*
   551 F.3d 564 (7th Cir.2008) .....................................................20
*Keith v. Wisconsin Dep't of Workforce Dev.,*
   No. 21-2398, 2022 WL 741731 (7th Cir. Mar. 11, 2022)..........21
*Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno,*
   547 F.2d 1 (1st Cir. 1976.)........................................................37

*Kiser v. Garrett,*
  67 F.3d 1166 (5th Cir. 1995) ..................................................... 35, 55

*Lance v. Dennis,*
  546 U.S. 459 (2006) ..................................................................... 13

*Loertscher v. Anderson,*
  No. 14-CV-870-jdp, 2016 WL 3166599, *4 (W.D. Wis. June 6, 2016) .................... 51

*Lossman v. Pekarske,*
  707 F.2d 288 (7th Cir. 1983) ......................................................... 44

*Loubser v. Thacker,*
  440 F.3d 439 (7th Cir. 2006) ......................................................... 22

*Malley v. Briggs,*
  475 U.S. 335 (1986) ................................................................... 35

*Manley v. City of Chicago,*
  236 F.3d 392 (7th Cir. 2001) ......................................................... 19

*Mason-Funk v. City of Neenah,*
  296 F. Supp. 3d 1006 (E.D. Wis. 2017) ................................................. 8

*Mathews v. Eldridge,*
  424 U.S. 319 (1976) ................................................................... 43

*Michael C. v. Gresbach,*
  526 F.3d 1008 (7th Cir. 2008) ........................................................ 34

*Millspaugh v. Cnty. Dep't of Pub. Welfare,*
  937 F.2d 1172 (7th Cir. 1991) ............................................... 36, 50, 51, 52

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985) ................................................................... 34

*Pearson v. Callahan,*
  555 U.S. 223 (2009) ................................................................... 35

*Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.,*
  640 F.3d 716 (6th Cir. 2011) ......................................................... 50

*Podemski v. Nat'l Ass'n,*
  714 F. App'x 580 (7th Cir. 2017) ..................................................... 21

*Ray v. Maher,*
  662 F.3d 770 (7th Cir. 2011) ......................................................... 33

*Ritter v. Ross,*
  992 F.2d 750 (7th Cir. 1993) ......................................................... 11

*Rooker v. Fid. Tr. Co.,*
  263 U.S. 413 (1923) ............................................................ 10, 15, 27

*Russ v. Watts,*
  414 F.3d 783 (7th Cir. 2005) ......................................................... 33

*Saucier v. Katz,*
  533 U.S. 194 (2001) ................................................................... 35

*Siliven v. Ind. Dep't of Child Servs.*,
    635 F.3d 921 (7th Cir. 2011) .................................................................. 54

*Stevens v. Tillman*,
    855 F.2d 394 (7th Cir. 1988) .................................................................. 8

*Swartz v. Heartland Equine Rescue*,
    940 F.3d 387 (7th Cir. 2019) ................................................ 11, 18, 21, 23

*Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*,
    837 F.3d 736 (7th Cir. 2016) ............................................................. 10, 11

*Taylor v. Fed. Nat'l Mortg. Ass'n*,
    374 F.3d 529 (7th Cir. 2004) ........................................................ 10, 11, 25

*Tenenbaum v. Williams*,
    193 F.3d 581 (2d Cir. 1999) ................................................................. 35

*Torres-Rosado v. Rotger-Sabat*,
    335 F.3d 1 (1st Cir. 2003).......................................................................... 7

*Turney v. O'Toole*,
    898 F.2d 1470 (10th Cir. 1990) ............................................................. 36

*Volk v. Coler*,
    845 F.2d 1422 (7th Cir. 1988) ................................................................ 8

*White v. City of Markham*,
    310 F.3d 989 (7th Cir. 2002) ................................................................. 39

*Wilson v. Layne*,
    526 U.S. 603 (1999) ............................................................................. 35

*Wood v. Orange County.*,
    715 F.2d 1543 (11th Cir. 1983) ............................................................. 12

*Xiong v. Wagner*,
    700 F.3d 282 (7th Cir. 2012) ................................................................. 36

## Statutes

28 U.S.C. § 1257 ............................................................................................ 10

Wis. Stat. § 48.01 (1)(ad).............................................................................. 27

Wis. Stat. § 808.03(2) ................................................................................... 31

## Constitutional Provisions

U.S. Const., amend. V.................................................................................... 42

## JURISDICTIONAL STATEMENT

Gilbank's jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUES

I. **Does Gilbank's 42 U.S.C. § 1985 claim fail as a matter of law, on the merits, and on immunity grounds?**

This Court should answer yes and affirm dismissal.

II. **Should the Court abandon its *Rooker-Feldman* test, strike the "inextricably intertwined" language, and adopt Gilbank's proposed test?**

This Court should answer no, affirm its test, and reject Gilbank's proposed test.

III. **Did the District Court correctly determine that the *Rooker-Feldman* doctrine barred Gilbank's claims arising out of alleged injuries caused by the State Juvenile Court's decisions?**

This Court should answer yes and affirm dismissal.

IV. **Should the Court affirm dismissal based on issue preclusion, as a matter of law, on the merits, and qualified immunity—all grounds which were fully briefed before the District Court?**

This Court should answer yes and affirm dismissal.

## STATEMENT OF THE CASE

To avoid unnecessary duplication, the Wood County Defendants adopt and incorporate by reference the "Statement of Case" as stated in the Marshfield Defendants' Appellate Brief.

## STANDARD OF REVIEW

To avoid unnecessary duplication, the Wood County Defendants adopt and incorporate by reference the "Standard of Review" as stated in the Marshfield Defendants' Appellate Brief.

## SUMMARY OF THE ARGUMENT

First, Wood County Defendants do not interpret the District Court's December 15, 2020, Order as dismissing Gilbank's 42 U.S.C. § 1985 claims as untimely. Indeed, the parties fully briefed the claim, later, at the summary judgment stage and the claim was properly dismissed at that time. The Court should affirm dismissal as a matter of law, on the merits, and on immunity grounds.

Next, the Court should reject Gilbank's suggestion that the Court strike the "inextricably intertwined" language of the *Rooker-Feldman* doctrine and should not adopt her proposed test. The "inextricably intertwined" language is the law of the land and Gilbank's proposed test, which limits application of the *Rooker-Feldman* doctrine to only "direct" claims, demonstrates the dangers of abandoning that

language. The language is necessary to prevent veiled attempts at challenging a state court decision, which is exactly what Gilbank attempts to do in her federal lawsuit. Gilbank's own statements affirm that the "injury" she is complaining of arises out of the State Juvenile Court's orders and decisions. Gilbank cannot evade the *Rooker-Feldman* doctrine by cloaking her claim as constitutional violations. Nor can she use unsupported fraud and conspiracy allegations to evade the doctrine. Gilbank had ample opportunity to litigate her claims at the state court level. Her claims related to injuries incurred as a result of the State Juvenile Court's orders and decisions are barred under the *Rooker-Feldman* doctrine.

Lastly, this Court has authority to and should affirm dismissal on any of the grounds fully briefed before the District Court. At the summary judgment stage, the Wood County Defendants argued that Gilbank's claims were barred on issue preclusion grounds. Indeed, many of Gilbank's claims succeed only if there is a finding that there was *no* probable cause for the removal, and continued removal, of T.E.H. Because the State Juvenile Court has already held otherwise, the District Court was barred by the doctrine of issue preclusion from reconsidering the issue. Further the Wood County Defendants moved for dismissal on all claims based on the merits, failure to state a claim, and immunity principles. The Court should reject Gilbank's request to remand the case and affirm dismissal on any of these alternate grounds.

# ARGUMENT

**I.    Gilbank's 42 U.S.C. § 1985 Claim Was Properly Dismissed at the Summary Judgment Stage and Dismissal Should Be Affirmed.**

Gilbank asserts that her 42 U.S.C. § 1985 claim was timely brought and that the District Court erred "to the extent" it dismissed that claim as untimely. Defendants do not dispute that Gilbank's § 1985 claim was timely brought. However, Defendants do not interpret the District Court's Order as dismissing Gilbank's 42 U.S.C. § 1985 claim as untimely. Rather, the claim was properly dismissed, later, at the summary judgment stage. The Court should affirm dismissal of Gilbank's 42 U.S.C. § 1985 claim.

### *a.    Gilbank's 42 U.S.C. § 1985 Was Not Dismissed as Untimely.*

The District Court dismissed Gilbank's 42 U.S.C. § 1986 claim—not her 42 U.S.C. § 1985 claim—as untimely. (Dkt. 41.)[1] Specifically, Gilbank brought claims under 42 U.S.C. §§ 1983, 1985, and 1986. (Dkt. 6 at 7.) Wood County Defendants moved to dismiss Gilbank's 42 U.S.C. § 1986 claim as being barred by the statute of limitations. (Dkt. 17.) By Order dated December 15, 2020, the District Court granted Defendants' motion to dismiss. (Dkt. 41.) In doing so, the Court specifically noted that it was dismissing Gilbank's *42 U.S.C. § 1986* conspiracy claims. *Id.* at 10-11. (Defendants "have moved for dismissal of Gilbank's *conspiracy*

---

[1] "Dkt." refers to the docket entry and corresponding document in the District Court record, as noted in the Civil Docket filed with this Court on January 10, 2022. Conversely, "Doc." refers to documents that have been filed in this present appeal.

*claims brought under 42 U.S.C. § 1986* on the ground that the claims are untimely.";

"Defendants argue that "*§ 1986 claims are untimely. I agree with defendants.*") Indeed,

the Court's decision does not so much as mention Gilbank's 42 U.S.C. § 1985 claim.

*See* Dkt. 41. Accordingly, Defendants do not interpret the District Court's

December 15, 2020, Order as dismissing Gilbank's 42 U.S.C. § 1985 claims as

untimely.

### b. Gilbank's 42 U.S.C. § 1985 Claim Was Properly Dismissed at the Summary Judgment Stage and Dismissal Should Be Affirmed as a Matter of Law, on the Merits, and on Immunity Grounds.

The District Court dismissed Gilbank's 42 U.S.C. § 1985 claim at the

summary judgment stage, and the Court should affirm that dismissal. Though the

decision does not specify the basis for the Court's decision as it relates to the § 1985

claim, the Court may affirm dismissal on any or all of the bases argued before the

District Court. *See* Dkt. 76 at 34-7; *see also* Dkt. 67 at 8.

"Section 1985(3) creates a cause of action against persons who conspire to

deprive a person or class of 'equal' protection or 'equal' privileges and

immunities." *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994). Gilbank asserts that

all of the Defendants conspired jointly to remove T.E.H. from her care. Gilbank's

42 U.S.C. § 1985(3) claim fails as a matter of law because her constitutional rights

were not violated and because Gilbank has not alleged any racial or class-based

animus as required for a § 1985 claim. Further, Gilbank's § 1985(3) claim is barred by the doctrine of qualified immunity.

First, Gilbank's § 1985(3) claim should be dismissed because if there is no violation of constitutional rights, there cannot be a conspiracy to deprive a person of such rights. *See Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1, 14 (1st Cir. 2003) ("The fact that a plaintiff styles her claim as a conspiracy ... does not diminish her need to show a constitutional deprivation."). As discussed *Infra* Section III, Gilbank cannot demonstrate a constitutional deprivation. Gilbank's § 1985(3) should be dismissed for this reason alone.

Second, independent of the constitutional violations, Gilbank cannot satisfy the elements of a § 1985(3) claim. To establish a § 1985(3) claim, a plaintiff must show, among other things, a "conspiracy" and an intent to deprive someone of *equal privileges* and immunities under the law. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). To establish this, "the plaintiff must allege 'some *racial, or perhaps otherwise class–based invidiously discriminatory animus* behind the conspirators' action.'" *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1024 (7th Cir. 2000) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) (emphasis added). "[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985." *Campbell v. Amax Coal Co.,* 610 F.2d 701, 702 (10th Cir.

1979) (per curiam). This Court has held that § 1985(3) reaches only "racially-motivated" conspiracies (*Stevens v. Tillman*, 855 F.2d 394, 404 (7th Cir. 1988)) or "conspiracies based on sex, religion, ethnicity, or political loyalty." *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir. 1988).

Here, Gilbank has not alleged racial or class-based discriminatory animus. *See* Dkt. 6. Further, as discussed *Infra* Section 2Cii, she has not established any facts to prove a "conspiracy." In fact, all facts prove that there was no conspiracy. Accordingly, Gilbank's § 1985 claim fails as a matter of law.

Lastly, Gilbank's § 1985(3) claim is also barred by the doctrine of qualified immunity. This Court has held that the doctrine of qualified immunity applies to § 1985 claims. *See Auriemma v. Rice*, 910 F.2d 1449, 1457–58 (7th Cir. 1990). In order to overcome the affirmative defense, Gilbank bears the burden of showing that she was (1) deprived of a federal constitutional or statutory right, and (2) that the right was clearly established at the time of the alleged conduct. *Mason-Funk v. City of Neenah*, 296 F. Supp. 3d 1006, 1016 (E.D. Wis. 2017). As discussed *infra*, the doctrine of qualified immunity serves to bar the various constitutional violations Gilbank has asserted. If those alleged constitutional violations are dismissed, so too must Gilbank's § 1985 claim, which is premised on those alleged violations. Additionally, the doctrine specifically bars Gilbank's § 1985 claim because she was not deprived of her rights under § 1985. As discussed, Gilbank has no rights under

§ 1985 because she has not asserted any facts establishing that Defendants conspired to deprive her of 'equal' protection or 'equal' privileges and immunities. Accordingly, Gilbank cannot meet her burden of establishing that Defendants violated a clearly established right.

## II. The *Rooker-Feldman* Doctrine Bars Gilbank's Claims Alleging Injuries Caused by the State Juvenile Court's Orders.

The *Rooker-Feldman* doctrine bars claims where the source of injury is the state court judgment. Here, the district court correctly determined that the source of Gilbank's primary injury—the loss of the custody of her daughter—was the State Juvenile Court's orders removing T.E.H. from Gilbank's custody following Gilbank's arrest for possession of methamphetamines and drug paraphernalia. Gilbank cannot escape this conclusion by cloaking her claims as indirect challenges to the State Juvenile Court's orders. The District Court's finding should be affirmed.

### a. The Rooker-Feldman Doctrine Prohibits Both Direct and Indirect Attacks to a State Court Judgment.

Federal district courts are "not authorize[d] [] to exercise appellate jurisdiction over state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). The authority to review a state court judgment vests solely with the United States Supreme Court. *Id.* (citing *D.C. Ct. of Appeals v. Feldman,* 460 U.S. at 476 (1983); *Atlantic Coast Line R.R. Co. v. Brotherhood of*

*Locomotive Eng'rs,* 398 U.S. 281, 286 (1970); *Rooker v. Fid. Tr. Co.,* 263 U.S. at 416). *See also* 28 U.S.C. § 1257.

To effectuate this congressional purpose, the Supreme Court has adopted what has come to be known as the "*Rooker-Feldman*" doctrine, named after the two cases in which the Supreme Court has applied the doctrine: *Rooker v. Fidelity Trust Co.* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 464 (1983). In *Exxon*, the Supreme Court affirmed its ruling in those cases, explaining that federal district courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.

Significantly, the doctrine bars *both direct <u>and indirect challenges</u>* to a state court judgment. *Rooker*, 263 U.S. at 416 ("an aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly"). Specifically, the doctrine bars claims that are "directly" seeking to set aside a state court judgment. *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016) (citing *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Aug. 3, 2004)). Those are "de facto appeals" and are barred without additional inquiry. *Sykes,* 837 F.3d at 742. The doctrine also bars claims that "do not on their face require review of a state court's decision," but are "inextricably

intertwined" with a state court judgment. *Id.* The "inextricably intertwined" inquiry focuses on the source of the federal plaintiff's injury (i.e., whether the federal plaintiff alleges injuries that were caused by the state court judgment) as well as "whether 'the district court is in essence being called upon to review the state-court decision.'" *Taylor*, 374 F.3d at 533. *Ritter v. Ross,* 992 F.2d 750, 754 (7th Cir. 1993) (quoting *Feldman,* 460 U.S. at 483–84 n.16).

### b. The Seventh Circuit Has Adopted a Test That Is Consistent with the Above Principles. Gilbank's Proposed Test Is Not.

Consistent with the above principles, the Seventh Circuit has outlined a two-step test for determining whether a claim is barred by the *Rooker-Feldman* doctrine. First, the Court determines whether the federal plaintiff is, in fact, presenting an independent claim. *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019) (citing *Jakupovic v. Curran,* 850 F.3d 898, 902 (7th Cir. 2017) (citation and internal quotation marks omitted)). To make this determination, the Court analyzes "whether the federal claims either "directly" challenge a state court judgment or are "inextricably intertwined" with one." *Swartz,* 940 F.3d at 391. Second, if the federal plaintiff's claims are *not* independent, the court examines whether the federal plaintiff had a "reasonable opportunity" to litigate the claims

in state court.[2] If the Court answers in the affirmative, the claims are barred by the *Rooker-Feldman* doctrine.

Gilbank asserts that the Seventh Circuit test is inconsistent with the Court's language in the *Exxon* case. Gilbank "favors" abandoning the "inextricably intertwined language" adopted by the Supreme Court in *Feldman* and following only the Supreme Court's condensed one sentence summary of the rule in *Exxon*. Short of that, Gilbank also proposes a test that limits the *Rooker-Feldman* bar to only those claims that directly challenge a state court decision. Gilbank's arguments should be rejected for the reasons explained below. The Seventh Circuit test is wholly consistent with Supreme Court precedent and need not be abandoned or otherwise modified.

      i.   *The "inextricably intertwined language" is the law of the land.*

Gilbank asserts that the Court should abandon the "inextricably intertwined language." Doc. 45 at 22. However, the "inextricably intertwined" language is the law of the land. Specifically, the language was born out of the Supreme Court's decision in *Feldman.* In that case, the Supreme Court held that the plaintiffs' "constitutional claims" arising out of state court injunctions were "*inextricably*

---

[2] This second part of the test is born out of a footnote in the *Feldman* decision. The Supreme Court noted that "[b]y failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court." *Feldman*, 460 U.S. at 483, n.16. This has been interpreted to mean that the federal plaintiff must have had a reasonable opportunity to raise those claims at the state court level for the *Rooker-Feldman* bar to apply. *See Wood v. Orange County.*, 715 F.2d 1543, 1546–47 (11th Cir. 1983).

*intertwined* with the state court's [judgment] [such that] the District Court [] *in essence* [was] being called upon to review the state court decision. This the District Court may not do." *Feldman,* 460 U.S. at 482, n.16.

The Supreme Court affirmed this holding in *Exxon* when it held that the *Rooker-Feldman* bar was confined to the cases it was born out of. *Exxon Mobil*, 544 U.S. at 281.While the Court did not use the "inextricably intertwined" language, the Court in *Exxon,* and even its subsequent decisions, affirmed that the doctrine is not confined to "direct" challenges. Specifically, in *Exxon* and *Lance v. Dennis*, respectively, the Court noted that the plaintiffs in *Rooker* and *Feldman* were "essentially" inviting review of the state court decisions and that their actions were "tantamount" to an appeal of the state court's decision. *See Exxon,* 544 U.S. at 283-84; *Lance v. Dennis* , 546 U.S. 459, 463 (2006). These word choices capture federal claims beyond just those directly requesting review of a state court decision. The "inextricably intertwined" language is essential to the *Rooker-Feldman* analysis.

    ii.   *Gilbank's proposed test, which limits the Rooker-Feldman bar to only those cases that "directly" challenge a state court decision, is inconsistent with Supreme Court precedent.*

The danger associated with striking the "inextricably intertwined" language is apparent in Gilbank's proposed test. In an attempt to "align" the test with *Exxon's* language, Gilbank proposes limiting the *Rooker-Feldman* bar to only those

claims that directly challenge a state court decision. Gilbank's proposed test runs headlong into Supreme Court precedent.

In *Exxon*, the Supreme Court explained that "[t]he *Rooker–Feldman* doctrine is confined to cases of the kind from which it acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 281. Gilbank asserts that the Seventh Circuit test does not align with this "test." Specifically, Gilbank argues that the Supreme Court's "test" contains an "injury" component ("injuries caused by state-court judgments") and a "relief" component ("inviting district court review and rejection of those judgments"), and that the Seventh Circuit test does not—unless one views the Seventh Circuit test conjunctively. In other words, Gilbank claims that in order for the *Rooker-Feldman* bar to apply, the federal plaintiffs must both "directly" challenge a state court judgment *and* the claims must be "inextricably intertwined" with the judgment. Gilbank's reasoning fails for the reasons discussed below.

As a preliminary matter, the Court's summary of those decisions is not a "test." Rather, the one sentence summary in *Exxon* is just that—a summary of the Court's decisions in *Rooker* and *Feldman*. The Court should look to those decisions themselves for guidance. In doing so, there can be no question that the *Rooker-*

*Feldman* bar is not limited to "direct" challenges. *See Rooker*, 263 U.S. at 416 ("an aggrieved litigant *cannot be permitted to do indirectly what he no longer can do directly*"); *see also Feldman*, 460 U.S. at 483 ("If the constitutional claims presented to a United States District Court are *inextricably intertwined with the state court's denial* in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is *in essence being called upon to review the state court decision*.") Gilbank's proposed test, which ends the inquiry if the federal plaintiff does not *directly* challenge a state court decision, fails for this reason alone.

Next, the Seventh Circuit test is entirely consistent with Supreme Court precedent and contains what Gilbank labels as "injury" and "relief" component.[3] One who *challenges* a state court decision—whether directly or indirectly—is inherently complaining that the decision was injurious and inviting review of that decision. Accordingly, the Seventh Circuit test analyzes both components in determining whether the *Rooker-Feldman* bar applies. Simply put, the Seventh Circuit's *Rooker-Feldman* test is functional and consistent with Supreme Court precedent.

---

[3] Defendants do not adopt these labels but simply use them for succinct reference to those excerpts of the *Exxon* language that Gilbank applies them to.

### c. *Gilbank's Claims for Injuries Arising from the State Juvenile Court's Orders Are Barred by the Rooker-Feldman Doctrine.*

Gilbank divides her injuries into conduct that occurred before the State Juvenile Court proceedings and conduct that occurred during the proceedings. Defendants do not dispute that the *Rooker-Feldman* doctrine does not apply to alleged injuries incurred before the State Juvenile Court proceedings—such as the alleged unlawful urinalysis search and denial of an attorney. Those claims are barred for the reasons discussed *Infra* Section III. However, Gilbank's due process claims, which allege injures caused by the State Juvenile Court's orders and decisions, are barred by *Rooker-Feldman*. As Gilbank's own statements affirm, her alleged injuries were caused by the State Juvenile Court's orders and decisions. She cannot evade the *Rooker-Feldman* doctrine with unsupported conspiracy and fraud allegations. Gilbank had ample opportunity to litigate her due process claims before the State Juvenile Court. Accordingly, Gilbank's due process claims are barred by the *Rooker-Feldman* doctrine.

i. *Gilbank's Due Process Claims Are Inextricably Intertwined with the State Juvenile Court's Orders.*

Gilbank maintains that she "does not complain of injuries caused by…the state-court judgment." (Doc. 45 at 113.) Her own statements confirm otherwise.

The following are some of the "injuries" Gilbank identified in her Amended Complaint[4]:

- "T.E.H began wetting herself after *supervised visits* with Michelle and *upon being told she had to leave Michelle*."

- Potty training regression *caused by placement with Hoyle*.

- "*Separation anxiety*" experienced by T.E.H. and Gilbank.

- Gilbank was "forced into a *limited visitation schedule* that severely affected her relationship and bonds with T.E.H. and T.E.H.'s bonds with her."

- "*[U]nlawful separation*…"

- "[F]orced to move out of the family home…"

(Dkt. 6 at 22.) All of these injuries, as Gilbank herself labels them, were caused by the State Juvenile Court orders. The State Juvenile Court ordered supervised visitation. Dkt. 82-16. The State Juvenile Court ordered placement with Hoyle. *Id.* Gilbank was "forced to move out" of Hoyle's home because the State Juvenile Court ordered placement with Hoyle. Gilbank cannot escape her own words and reverse course and claim she does not complain of injuries caused by the state-court judgment.

*Swartz* is dispositive of Gilbank's claims arising out of these injuries. In *Swartz,* this Court held that the *Rooker-Feldman* doctrine barred the plaintiffs' § 1983 claims because "[t]he state court's *finding of probable cause* and ordered

---

[4] These are excerpts of Gilbank's response to the following question in the *pro se* Complaint template: "What injuries occurred due to the acts of the defendants?"

seizure of the animals *produced the injury claimed by the [plaintiffs]. This is true even though the [plaintiffs] now claim that the injury originated in a conspiracy.*" *Swartz,* 940 F.3d at 391. This Court recognized that a finding in favor of the plaintiffs would call into question the state court's probable cause finding and placement judgment. *Id.* at 390. The Court held that the plaintiffs' injury—the seizure and placement of their livestock—was effectuated by state court orders and therefore their claims were intertwined with those state court judgments. *Id.*

The same logic applies here. "[E]ven though [Gilbank] now claim[s] that the injury originated in a conspiracy," the State Juvenile Court's finding of probable cause produced that alleged injury. *Id.* A finding in favor of Gilbank would call into question the State Juvenile Court's probable cause finding and placement judgment. *Id.* Gilbank's injuries were effectuated by the State Juvenile Court's orders and therefore her claims are intertwined with those orders.[5] *Id.*

Gilbank contends that the *Rooker-Feldman* bar does not apply to her claims because she is seeking only monetary damages and not reversal of custody decision. The Seventh Circuit has previously rejected this same argument. *Garry v. Geils*, 82 F.3d 1362, 1370 (7th Cir. 1996) ("while the plaintiffs now maintain that

---

[5] Gilbank asserts that *Swartz* is inapplicable because some of the injuries she complains of—the alleged unlawful urinalysis search and denial of attorney—occurred prior to any judicial involvement. This is true and, as discussed, the Wood County Defendants do not dispute that the *Rooker-Feldman* doctrine does not apply to those claims. However, the holding applies entirely to claims that allege injuries from the State Juvenile Court's orders.

they are seeking only damages, this does not affect our conclusion that the *Rooker–Feldman* doctrine bars jurisdiction over their case."); *see also Manley v. City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001) ("Manley cannot circumvent the decisions of the state courts by seeking damages as opposed to reinstatement in federal court."); *Bauer v. Koester*, 951 F.3d 863, 867 (7th Cir. 2020) (plaintiffs claims for damages under § 1983 barred by *Rooker-Feldman* doctrine when no injury would have resulted but for the state court's orders). Simply put, Gilbank's "artful pleading cannot get [her] around *Rooker–Feldman* when the gravamen of [her] complaint requires the district court to review the state judicial proceeding." *Brown v. Bowman*, 668 F.3d 437, 443 (7th Cir. 2012).

Gilbank relies heavily on *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021) and decisions from other circuits to support her assertion that a claim for monetary relief saves a claim from the *Rooker-Feldman* doctrine. However, this blanket rule all but eviscerates the *Rooker-Feldman* doctrine. A federal plaintiff could evade the doctrine simply by inserting a request for relief in the form of monetary damages. This also runs counter to the principle that even the Sixth Circuit recognizes — that the *Rooker-Feldman* doctrine "does not prioritize form over substance." *Behr*, 8 F.4th at 1211. A state court loser cannot "cleverly cloak" her pleadings to avoid *Rooker-Feldman. Id.* But basing the application of the *Rooker-Feldman* doctrine on whether or not a request for monetary relief is included does just that.

ii.   *Gilbank's Unsupported Fraud and Conspiracy Allegations Do Not Exempt Her Claims from the Rooker-Feldman Doctrine.*

Gilbank's unsupported conspiracy and fraud allegations do not save her claims. Neither the facts nor the law support Gilbank's conspiracy and fraud allegations. Accordingly, her claims arising out of injuries allegedly caused by the State Juvenile Court's decisions and orders must be dismissed.

First, Gilbank has not identified any facts to support the conspiracy and fraud allegations she made in her Amended Complaint.[6] For example, in her Amended Complaint, Gilbank asserted that the Defendants conspired to remove T.E.H. from her custody. (Dkt. 6 at 11.) However, at the summary judgment stage, Gilbank failed to provide any evidence to support these allegations. To the contrary, the undisputed facts, as accepted by Judge Peterson, establish the opposite. Specifically, the undisputed facts establish that Defendants had earlier opportunities when they could have removed T.E.H. from Gilbank's custody (e.g. when Gilbank tested positive for both amphetamines and methamphetamines.) *See* Dkt. 131 at 4. Yet, they did not. *Id.* Gilbank's unsupported "conspiracy" allegations cannot stand in light of this.

---

[6] Gilbank contends that the Court should determine the applicability of the *Rooker-Feldman* doctrine based exclusively, or primarily, on the allegations in her amended complaint. Doc. 45 at 23, n.4. This is not so. *See Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 646–47 (7th Cir. 2011) ("To determine whether *Rooker–Feldman* bars a claim, we look beyond the four corners of the complaint to discern the actual injury claimed by the plaintiff." quoting *Johnson v. Orr,* 551 F.3d 564, 568 (7th Cir.2008).)

20

Similarly, the facts do not support Gilbank's claims alleging fraud. For example, Gilbank contends that Defendants provided false testimony when they "stated to the court that plaintiff was being placed under arrest and therefore emergency custody of minor child without warrant was necessary." (Dkt. 82-23 at 22.) The assertion that this was "false" testimony is perplexing and demonstrably false. The undisputed facts demonstrate that Gilbank had been placed under arrest on August 21, 2018, for possession of methamphetamines, necessitating the emergency removal. (Dkt. 82-2.) Gilbank's other allegations of fraud meet this same fate: they are unsupported or specifically contradicted by the evidence. The summary judgment stage was Gilbank's "put up or shut up" moment in the lawsuit. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Gilbank failed to present any credible evidence to substantiate her conspiracy and fraud allegations. She cannot evade *Rooker-Feldman* with unsupported allegations.

The law also does not support Gilbank's claims. "[T]here is no general fraud exception to *Rooker-Feldman*." K*eith v. Wisconsin Dep't of Workforce Dev.*, No. 21-2398, 2022 WL 741731 (7th Cir. Mar. 11, 2022), *(*citing *Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015); s*ee also Podemski v. Nat'l Ass'n*, 714 F. App'x 580, 581–82 (7th Cir. 2017); *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019) ("If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction…This is the case even when

plaintiffs allege that the state court judgment was obtained through the defendants' bad faith actions."); *Andress v. Daubert L. Firm, LLC*, 667 F. App'x 154, 155 (7th Cir. 2016) ("None of the alleged violations—that service in the state-court proceeding was defective, that the defendants must have known that they would have lost the collection action (had Andress not defaulted), and that in the state court the defendants concealed the identity of the real party in interest—could have resulted in injury independent of the judgment or the subsequent garnishment orders); *Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014) ("No injury occurred until the state judge ruled against Harold.").

Gilbank's reliance on *Loubser v. Thacker*, 440 F.3d 439, 441 (7th Cir. 2006) is misplaced. *Loubser* involved a "sprawling conspiracy claim that included a state-court judge, court reporters, and many others, to manipulate the entirety of divorce proceedings." *Bauer v. Koester*, 951 F.3d 863, 867 (7th Cir. 2020). The allegations of a "widespread conspiracy undermined the entirety of the state-court proceedings." *Id.* That is not the case here. Gilbank has not alleged, nor do the undisputed facts support, *any* conspiracy, much less one that was "widespread" and "undermined the entirety of the state-court proceedings." *Id. Loubser* does not support a fraud exception for Gilbank's allegations.

Similarly, Gilbank's reliance on *Brokaw* is also misplaced. In *Brokaw*, a child protective custody case, this Court observed that "there [was] serious concern

about the fairness and integrity of those [child protective custody] proceedings."
*Brokaw*, 305 F.3d at 671. Specifically, the plaintiff alleged that her father's family,
including her uncle who was the County deputy, conspired with various state
officials to remove her and her brother from the family home based on false
accusations of child neglect. *Id.* at 662. A hearing was held after they were
removed, but neither the plaintiff nor her brother were present at the hearing, nor
were they represented by counsel or a guardian ad litem. *Id.* at 662-63. While her
parents were present, they were not represented by counsel, nor were they
allowed to speak, call witnesses, or cross-examine witnesses. *Id.* at 663. Both
plaintiff and her brother were placed in foster care. *Id.* After nearly three months,
a state court ordered that they be returned home "finding no continuing basis to
hold the children." *Id.* After the plaintiff turned 18 years old, she sued her father's
family and the various state actors who were involved, alleging that they
conspired to violate her constitutional rights by making false claims of neglect. *Id.*
at 662.

   *Brokaw* bears no resemblance to Gilbank's claims. First, *Brokaw* involved
"improper probable cause findings due to a lack of reasonable opportunity to
litigate." *Swartz*, 940 F.3d at 393. Here, the probable cause finding was not
improper. Further, as discussed *Infra* Section IIciii, Gilbank had more than
reasonable opportunity to litigate. Next, the plaintiff's claims in *Brokaw* arose out

of conduct that occurred "prior to any judicial involvement." Here, as discussed *supra,* Wood County Defendants do not dispute that that conduct is exempt from the *Rooker-Feldman* doctrine. Next, as the Court acknowledged, the facts of *Brokaw* raised "serious concern" about the integrity of the proceedings. Indeed, the plaintiff provided "specific and detailed allegations concerning not only the purported false statements, but the motive underlying those statements, as well as a motive for a state actor—her uncle—to have joined the conspiracy." *Brokaw*, 305 F.3d at 670. Conversely, here, Gilbank has provided vague generalized allegations with no underlying motive for why the named Defendants would have conspired to improperly remove T.E.H. from Gilbank's custody. Gilbank's unsupported claims are in no way analogous to *Brokaw*.

Rather, Gilbank's fraud claims are analogous to the claims in *Bauer*. In that case, the plaintiffs filed suit against several individuals involved in foreclosure proceedings on real estate that plaintiffs owned. *Bauer*, 951 F.3d at 865. The plaintiffs sought damages under 42 U.S.C. § 1983 asserting alleged conspiracies and fraud during the foreclosure trial. *Id.* The district court dismissed their complaint under the *Rooker-Feldman* doctrine, noting that the plaintiffs "alleged injuries stem from the 2013 state court foreclosure judgment." *Id.* at 866. On appeal, the plaintiffs argued that they were not challenging the state courts orders or seeking to overturn them. *Id.* Rather, they were challenging "the 'collection

practices' of the defendants and their collusion to introduce forged evidence. *Id.* This Court disagreed with the plaintiffs and affirmed dismissal, holding that "were it not for the state court's foreclosure order…no injury would have resulted from the allegedly [fraud]…Indeed, the defendants needed to prevail in the state court to effectuate their alleged fraud…" *Id.*

The same analysis applies here. Even if the Court gives any consideration to Gilbank's unsupported fraud and conspiracy allegations, it is apparent that Gilbank's alleged injuries (as she herself describes them) stemmed from the State Juvenile Court's orders and judgments. "[W]ere it not for the state court's [] order…no injury would have resulted from the alleged [fraud]…Indeed, the defendants needed to prevail in the state court to effectuate their alleged fraud…" Accordingly, Gilbank's conclusory conspiracy and fraud allegations do not save her claims.

      iii.   *Gilbank Had a Reasonable Opportunity to Raise Her Due Process Claims.*

At step two, the Court determines "whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings." *Andrade v. City of Hammond, Indiana*, 9 F.4th 947, 950 (7th Cir. 2021). *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). Gilbank "must point[] to some factor independent of the actions of the opposing party that precluded [her] from raising [her] federal claims during the state court proceedings. *Taylor*, 374 F.3d at 533. If Gilbank "could have raised

the issue in state court, the claim is barred under *Rooker–Feldman*." *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012).

Here, not only *could* Gilbank have raised these issues in state court, she did so repeatedly. Gilbank raised her due process claims throughout the state court proceedings. She challenged the removal at the plea hearing, the fact-finding hearing, and by filing two separate motions to dismiss in the state court action. (Dkt. Nos. 82-13, 82-14, 82-17, 82-24.) The due process arguments she raised in her motion to dismiss mirror the allegations she makes in these proceedings. (Dkt. 82-17.) Because Gilbank failed to show up to the hearing addressing her motion to dismiss, there were no oral arguments. (Dkt. 82-18 at 2.) Yet, Judge Nicholas Brazeau, the State Juvenile Court judge, reviewed and addressed all of the allegations contained in Gilbank's motion and denied it. *Id.* at 4. Gilbank could have appealed the State Juvenile Court's decisions and orders, but she chose not to timely appeal. However, her failure to timely appeal does not establish a lack of opportunity. Simply put, the facts establish that Gilbank had ample opportunity to raise these issues in state court.

Gilbank asserts that she did not have a reasonable opportunity because the State Juvenile proceedings did not permit her constitutional claims. Not so. One of the express legislative purposes of Wisconsin Statute Chapter 48, the "Children's Code," is "to provide judicial and other procedures through which children and

all other interested parties are *assured fair hearings and their* <u>*constitutional and other*</u> <u>*legal rights*</u> *are recognized* and enforced…" Wis. Stat. § 48.01 (1)(ad) (emphasis added).[7] Further, as the *Rooker* court recognized, "[i]f the constitutional questions stated in the [federal complaint] actually arose in the [state case], it was the province and duty of state courts to decide them…" *Rooker*, 263 U.S. at 415. For these reasons, Gilbank's assertion that the State Juvenile proceedings did not permit her constitutional claims fails.

For all of these reasons, Gilbank's claims for injuries arising from the State Juvenile Court's orders and decisions must be barred by the *Rooker-Feldman* doctrine.

## III.    The Court May Affirm Dismissal Based on Any of the Alternative Grounds Fully Briefed Before the District Court.

If the Court finds that the *Rooker-Feldman* doctrine does not bar Gilbank's due process claims, it should affirm dismissal of those claims on issue preclusion grounds. Alternatively, the Court may affirm dismissal on all of Gilbank's claims as a matter of law, on the merits, and on immunity grounds. All of these additional grounds for dismissal were fully briefed at the summary judgment and are ripe for the Court's consideration.[8] *See* Dkt. 85.

---

[7] Wood County Defendants adopt and incorporate by reference the other Children's Code provisions, and corresponding case law, identified in the Marshfield Defendants' brief.

[8] To avoid unnecessary repetition, the Wood County Defendants adopt and incorporate by reference the Marshfield Defendants' arguments opposing Gilbank's request for remand.

### a. Issue Preclusion Bars Gilbank's Due Process Claims.

Gilbank's due process claims succeed only if there is a finding that there was *no* probable cause for the removal of T.E.H. Because the State Juvenile Court has already held otherwise, the District Court was barred by the doctrine of issue preclusion from reconsidering the issue.

The facts of this case fall squarely within the Court's holding in *Jensen v. Foley*, 295 F.3d 745 (7th Cir. 2002). There, agents of the Illinois Department of Children and Family Services removed an infant from the plaintiffs' home without a pre-deprivation hearing or a warrant. *Id.* at 746. Two days later, the Illinois circuit court held a temporary physical custody hearing and found probable cause existed to justify the removal. *Id.* at 747. The plaintiffs subsequently filed a § 1983 complaint in federal court alleging that the DCFS agents and local officers violated their Fourth and Fifth Amendment rights. As a preliminary matter, the court noted that:

> So long as a post-deprivation hearing is held within 2 business days of removal, DCFS agents constitutionally may remove a child from her home and family without a pre-deprivation hearing if they are acting pursuant to a court order, if the taking is supported by probable cause to believe that the child would be subject to the danger of abuse if not removed, or if exigent circumstances require them to do so.

*Id.* at 747. However, this Court did not reach the issue of whether probable cause actually existed, noting that it was bound by the state court's determination that

the agents had probable cause to remove the child. *Id.* at 748. Specifically, the Court held:

> The constitutional claims that plaintiffs brought to federal district court could succeed only if *no* probable cause existed. *Brokaw,* 235 F.3d at 1010. Because the state court held otherwise, we are barred by the doctrine of issue preclusion from reconsidering the issue.

*Id.* As a result, issue preclusion applied, and the Court dismissed the plaintiffs' claim. *Id.*

The same result is required here. Gilbank challenges whether probable cause existed to remove T.E.H. Despite such challenges, State Juvenile Court Judges Gregory Potter and Brazeau have already concluded that probable cause existed, and that the Defendants were justified in their actions.

Issue preclusion prevents a party from re-litigating an issue that it has previously litigated and lost. *Donald v. Polk County,* 836 F.2d 376, 381 (7th Cir. 1988). *Jensen*, 295 F.3d at 748. Federal courts "must give state court judgments the same preclusive effect as would a court in the rendering state." *Id.* (internal citations omitted). In Wisconsin, issue preclusion is appropriate if "the issue or fact was actually litigated and determined in the prior proceeding and whether the determination was essential to the judgment," and "whether applying issue preclusion comports with principles of fundamental fairness." *Aldrich v. Labor & Indus. Review Comm'n*, 2012 WI 53, ¶¶ 97, 109, 814 N.W.2d 433.

The first element of issue preclusion is met here. As explained *supra*, Gilbank challenged the reasonableness of the Defendants' actions at every stage of the State Juvenile Court proceedings. Judge Potter's temporary physical custody order finding probable cause to remove T.E.H. was essential to Gilbank's challenges. After considering the Defendants' explanation for their decision to remove T.E.H., Judge Potter found that probable cause existed to hold T.E.H. in protective custody. (Dkt. 82-10 at 3.) After an extensive fact-finding hearing, Judge Brazeau affirmed this finding. (Dkt. 82-14 at 61-63.)

Gilbank vigorously litigated her case in state court and subsequently filed an appeal with the Wisconsin Court of Appeals. (Dkt. 82-22.) She opposed T.E.H.'s removal at every opportunity. Had Gilbank succeeded at the fact-finding hearing, the State Juvenile Court would have been obligated to return T.E.H. to Gilbank, and the case would have ended. Because Gilbank's challenges were litigated, and the outcome of those challenges was "essential to the judgment[s]" in state court, the first element of issue preclusion is met.

The second element of issue preclusion is whether preclusion "comports with principles of fundamental fairness." *Aldrich*, 2012 WI 53, ¶ 109. In essence, the question is whether the party against whom issue preclusion is being asserted (Gilbank) had "a fair opportunity procedurally, substantively and evidentially to pursue the claim before a second litigation will be precluded." *Id.* In order to make

this decision, the Supreme Court of Wisconsin has articulated five factors to be

considered by the court:

1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;

2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;

3) Do significant differences in the quality or extensiveness of proceedings between two courts warrant relitigation of the issue;

4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and

5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Id.* ¶ 110. No single factor is dispositive, nor is the list "exhaustive or exclusive."

*Id.* ¶ 111. In addition, the weight given to any individual factor is left to the court's

discretion. *Id.* ¶ 112. Here, each of the factors weighs in favor of applying issue

preclusion.

First, Gilbank could have sought an appeal of Judge Potter's probable cause

finding or Judge Brazeau's denial of her motion to dismiss.[9] Second, Gilbank's

challenge of T.E.H's removal in this action is substantively no different than her

challenge in state court. In both venues, Gilbank alleges that the Defendants acted

---

[9] State law permits a party to seek permission to appeal a non-final order. *See* Wis. Stat. § 808.03(2). Judge Potter's order granting the temporary custody request incorporated her finding of probable cause, and was a non-final order for purposes of an interlocutory appeal.

unreasonably and took T.E.H. into custody without any cause or exigent circumstances. The claims are identical, and there has been no shift in Fourth or Fourteenth Amendment jurisprudence since Judge Potter's or Judge Brazeau's rulings.

Third, while the CHIPS proceedings did not involve the extensive time and briefing that the present action requires, the quality of Judge Potter's and Judge Brazeau's decisions cannot be questioned. The analysis for whether probable cause existed to remove the children is the same whether it is at the initial proceeding or in a collateral action. If probable cause existed at the time of T.E.H.'s removal, it exists today as well. Fourth, the burdens of persuasion have shifted, but in favor of preclusion. In the CHIPS proceedings, Wood County had the burden of proving that its employees' actions were reasonable and that they had probable cause to remove T.E.H. In this case, Gilbank has the burden of proof. Thus, Defendants are not benefiting from a lesser burden in the prior proceeding.

Finally, public policy favors issue preclusion on the issue of the reasonableness of the Defendants' actions in removing T.E.H. As this Court explained in *Jensen*, the issue of probable cause to remove the children "began and ended with the temporary custody hearing. Plaintiffs may not now relitigate the issue . . . after the state court has conclusively ruled against them." *Jensen*, 295 F.3d at 749. There is nothing "fundamentally unfair" about applying the same logic

from *Jensen* to Gilbank's current claims. Just as the plaintiffs in *Jensen*, Gilbank could have appealed Judge Potter's temporary custody order, but she chose not to act. *See id.* ("Plaintiffs could have sought leave to appeal the temporary custody order"). Likewise, Gilbank had every incentive to fully litigate the issue in state court. As evidenced by her Amended Complaint, Gilbank believed that she was denied fundamental rights. It is hard to imagine a greater motivation to fully litigate one's claims.

For these reasons, Gilbank's claims arising out of the Defendants' removal of T.E.H. are barred by issue preclusion. This Court should affirm dismissal of Gilbank's due process claims on this alternative basis.

### b. *Gilbank's Fourth Amendment Claim Premised on an Alleged Unlawful Seizure of T.E.H. Fails as a Matter of Law and on Immunity Grounds.*

Gilbank's claim relating to the alleged "seizure" of T.E.H. without probable cause fails as a matter of law and on immunity grounds. The Court should affirm dismissal on this alternate ground.

### i. *Gilbank's Fourth Amendment Claim Premised on an Alleged Unlawful Seizure of T.E.H. Fails as a Matter of Law.*

First, Gilbank lacks standing to sue for an alleged seizure of T.E.H. It is black-letter law that "§ 1983 claims are personal to the injured party." *Ray v. Maher*, 662 F.3d 770, 773 (7th Cir. 2011) (citations omitted); *Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005) (parents could only sue for their own constitutional injuries, and

not the constitutional injuries of their child). Here, T.E.H. is not a plaintiff in this suit. (*See* Dkt. No. 41.) Gilbank's Fourth Amendment claim based on the "seizure" of T.E.H. is properly dismissed on this basis alone.

Additionally, Gilbank's claim is foreclosed because probable cause existed for the removal of T.E.H. "The Fourth Amendment prohibits only those searches [or seizures] that are unreasonable." *Michael C. v. Gresbach*, 526 F.3d 1008, 1014 (7th Cir. 2008). In the context of removal of a child, seizure is reasonable "if it is pursuant to a court order, if it is supported by probable cause, *or* if it is justified by exigent circumstances." *Id.* at 926 (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1010 (7th Cir. 2000) (emphasis added). A judicial determination of probable cause is an absolute defense to Gilbank's claim that T.E.H. was seized without probable cause. *See Donald*, 836 F.2d at 384.

Here, *two* different judges reviewed the decision to remove T.E.H., and there are two different judicial determinations that probable cause existed to justify the removal. (*See* Dkt. Nos. 82-10, 82-14, 82-18 at 4.) Simply put, Gilbank's Fourth Amendment claim premised on the allege seizure of T.E.H. is foreclosed by several judicial determinations of probable cause.

      ii.    *Gilbank's Claim Relating to the Alleged Unlawful Seizure of T.E.H. is Barred by Qualified Immunity.*

Qualified immunity provides immunity from liability and immunity from suit. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It protects all but the "plainly

incompetent" public official. *Malley v. Briggs*, 475 U.S. 335, 340, (1986). When a defendant asserts qualified immunity as a defense, the critical issue is whether the defendant official violated federal law that was clearly established at the time he or she acted. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Saucier v. Katz*, 533 U.S. 194, 207 (2001) (overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)).

As it relates to social workers in particular, "several circuit courts have concluded that because the balance between a child's liberty interest in familial relations and a state's interest in protecting the child is nebulous at best, social workers and other state actors who cause a child's removal are entitled to qualified immunity because the alleged constitutional violation will rarely—if ever—be clearly established." *Brokaw*, 235 F.3d at 1023 (citing *Kiser v. Garrett,* 67 F.3d 1166, 1169–74 (5th Cir. 1995); *Hodorowski v. Ray,* 844 F.2d 1210, 1216–17 (5th Cir. 1988); *Tenenbaum v. Williams*, 193 F.3d 581, 595–96 (2d Cir. 1999); *Doe v. Louisiana*, 2 F.3d 1412, 1416–21 (5th Cir. 1993); *Frazier v. Bailey,* 957 F.2d 920, 929–31 (1st Cir. 1992)).

Further, in the context of child removal cases, the court "need not determine whether probable cause in fact existed at the time of [the] removal decision. Rather, [the Court] may rule on qualified immunity grounds that a reasonable caseworker *could have believed* that probable cause existed and accordingly wouldn't have

understood [her] actions to violate a constitutional right." *Xiong v. Wagner*, 700 F.3d 282, 290 (7th Cir. 2012).

Here, as explained *supra*, Defendants did not violate any clearly established rights. Ms. Heinzen-Janz *could* have believed that probable cause existed for the removal. Indeed, Judges Potter's and Brazeau's later findings that there *was* probable cause to remove T.E.H., and clear and convincing evidence to justify the removal, resolve this issue.

Any claim that continuation of the separation of T.E.H. violated the Fourth Amendment is foreclosed by absolute/quasi-judicial immunity and qualified immunity. Quasi-judicial immunity extends to acts prescribed by a judge's order. *Turney v. O'Toole,* 898 F.2d 1470, 1474 (10th Cir. 1990). This Court has held that the doctrine of quasi-judicial immunity applies to social workers. *See Millspaugh v. Cnty. Dep't of Pub. Welfare*, 937 F.2d 1172, 1175 (7th Cir. 1991). "The rationale for immunizing persons who execute court orders is apparent. Such persons are themselves integral parts of the judicial process. The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." *Coverdell v. Dep't of Soc. & Health Servs.,* 834 F.2d 758, 765 (9th Cir. 1987) (internal quotations and citations omitted). To deny those who act pursuant to a court directive absolute immunity "would seriously encroach on the judicial immunity already recognized by the Supreme Court...It

would make the receiver a lightning rod for harassing litigation aimed at judicial orders. In addition to the unfairness of sparing the judge who gives an order while punishing the receiver who obeys it, a fear of bringing down litigation on the receiver might color a court's judgment in some cases...." *Id.* (quoting *Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno,* 547 F.2d 1, 3 (1st Cir. 1976.))

Defendants are entitled to absolute/quasi-judicial immunity for all acts subsequent to the Court's Order on August 23, 2018. On that day, Judge Potter signed an Order finding that there was probable cause to believe that Gilbank was neglecting and/or unable to provide adequate supervision and care to T.E.H. (Dkt. 82-10 at 3.) The Judge ordered T.E.H. removed from the care of Gilbank and, instead, placed her with Mr. Hoyle. (*Id.* at 4.) Similarly, Judge Brazeau signed a Dispositional Order on November 12, 2018, also finding that T.E.H. was in need of protection or services pursuant to Wis. Stat. § 48.13(10). (Dkt. 82-16.) Judge Brazeau also ordered placement with Mr. Hoyle. *Id.* Judge Brazeau ordered certain conditions upon Gilbank and Mr. Hoyle. *Id.* Judge Brazeau ordered Wood County Human Services Department to monitor participation and progress in the conditions mandated by the Court. *Id.*

Accordingly, all of the Defendants' actions subsequent to August 23, 2018, were not only authorized by court orders, they were specifically *mandated* by court

orders. Accordingly, any claims arising out of acts following the order on August 23, 2018, are foreclosed by the doctrine of absolute/judicial immunity.

### c. *Gilbank's Fourth Amendment Claim Premised on eviction fails as a matter of law and on immunity grounds.*

Gilbank asserts the far-fetched claim that Ms. Heinzen-Janz carried out an eviction when, following Gilbank's arrest for possession of methamphetamine, Ms. Heinzen-Janz placed T.E.H. in the temporary physical custody of her father. Because Gilbank was residing with Mr. Hoyle at the time of her arrest, she asserts that this was effectively an eviction. The claims fails for several reasons.

First, Gilbank's far-reaching claim fails for the simple fact that Ms. Heinzen-Janz did not evict Gilbank. Following her possession of methamphetamine charges, Gilbank was placed under arrest. (Dkt. 82-2.) In carrying out her duties as a social worker, Ms. Heinzen-Janz placed T.E.H. in temporary physical custody with her father, Mr. Hoyle. (Dkt. 80 at ¶ 10.) Ms. Heinzen-Janz placed no restrictions on Gilbank with respect to her property. (*Id.* at ¶ 12.) She placed no restrictions on Gilbank with respect to her living arrangements. (*Id.* at ¶ 13.) She did not "evict" Gilbank in any sense of the term.

Even assuming arguendo that Ms. Heinzen-Janz "evicted" Gilbank, there can be no question that this is not a cognizable Fourth Amendment claim. Gilbank seemingly asserts the "eviction" was an unreasonable seizure under the Fourth Amendment, though it is not apparent what she claims Ms. Heinzen-Janz

unreasonably "seized." The Court has previously held that there is no unreasonable seizure when, following a verbal altercation, an officer asks one party to leave the premises under threat of arrest. In *White v. City of Markham,* 310 F.3d 989, 996 (7th Cir. 2002), the plaintiff lived in a home owned by his aunt. During a verbal altercation with his aunt, the plaintiff called the police for assistance. Officer Muldrow arrived at the scene and, after determining that the aunt owned the home, asked the plaintiff to vacate the premises or face arrest. The plaintiff left and subsequently filed suit against several parties, including the officer, alleging that they violated his Fourth Amendment right to be secure against unreasonable seizures, in violation of 42 U.S.C. § 1983. The Court held that it was "clear that [White] ha[d] not suffered an unreasonable seizure as a matter of law." The Court explained that:

> When Officer Muldrow arrived he was faced with a domestic disturbance and in order to restore peace to the situation, he was forced to ask either Witcher, the admitted nonresident homeowner, or White, her relative and resident guest, to leave the premises. Based on this unique situation, it could not have been unreasonable for Officer Muldrow to request White, the family member with the apparently inferior property interest in remaining on the premises, to vacate the explosive situation.

*White*, 310 F.3d at 996.

The Court's reasoning in *White* applies with even greater force to the facts of this case. *White* involved an *actual* eviction—not the far-fetched eviction Gilbank asks the Court to find here. But, even in the circumstances of an *actual eviction*, the

court held that it was "clear" there was no unreasonable seizure. In the present case, there was no eviction—there was simply a social worker carrying out her duties in a child protective custody matter. Following Gilbank's arrest and methamphetamine charges, Ms. Heinzen-Janz was faced with a child protective custody situation. She had to decide where to place T.E.H. She made the decision to leave T.E.H. in the custody of her father—the same individual Gilbank herself had chosen to place T.E.H. with following her arrest. (Dkt. 80 at ¶ 10.) Even if this decision could be characterized as an eviction or seizure, which it is not, there can be no question the "seizure" was not unreasonable.

Lastly, Ms. Heinzen-Janz is immune from liability under the qualified immunity doctrine. In *White*, the court held that the officer was immune from liability because he could not have known that asking White to leave would constitute an unreasonable seizure. Here, just as in *White,* Ms. Heinzen-Janz could not have known that that placing T.E.H. with her father would amount to an "eviction" in violation of Gilbank's constitutional rights. Gilbank has not identified any case law where such a scenario or even a similar scenario was held to be a seizure. Accordingly, the doctrine of qualified immunity bars Gilbank's claim.

### d. *Gilbank's Fourth Amendment Claim Arising out of the Urinalysis Fails as a Matter of Law and on Immunity Grounds.*

"A search conducted pursuant to voluntarily obtained consent is a well-recognized exception to the Fourth Amendment's warrant requirement." *Andrews v. Hickman County*, 700 F.3d 845, 854 (6th Cir. 2012). Here, it is an undisputed fact that Gilbank voluntarily consented to the urinalysis on July 3, 2018. Dkt. 131 at 3. Indeed, at the dispositional hearing on October 29, 2018, in the CHIPS matter, the GAL asked her when she last took a UA. She responded "…whenever *I volunteered it in my home*" in July 2018. (Dkt. 82-15 at 24*.)* Gilbank cannot, now, assert the opposite in an effort to avoid dismissal. *See Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) (plaintiff's deposition testimony, which contradicted under-oath testimony he provided in other judicial proceedings, was ineffective to preclude summary judgment.)

Additionally, Gilbank's claim that the urinalysis was obtained in violation of the Fourth Amendment is barred by the doctrine of qualified immunity. As discussed above, Defendants did not violate any constitutional right when Gilbank voluntarily provided them with a urinalysis. Further, no objectively reasonable social worker could have thought as not voluntarily taking the test when she agreed to take the test. Gilbank cannot overcome the defense of qualified immunity.

### e. Gilbank's Fifth Amendment Claims Fails as a Matter of Law, on the Merits, and on Immunity Grounds.

The Fifth Amendment provides that "[n]o person…shall be compelled *in any criminal case* to be a *witness* against himself." U.S. Const., amend. V (emphasis added.) "Statements compelled by a police interrogation may not be used against a defendant in a criminal case, *but it is not until such use that the Self-Incrimination Clause is violated.*" *Chavez v. Martinez*, 538 U.S. 760, 760–61 (2003) (emphasis added.)

Gilbank claims that Detective Iverson and Ms. Heinzen-Janz violated her Fifth Amendment rights when they allegedly compelled her to be a witness against herself. The sole basis for the claim is the interview that Detective Iverson and Ms. Heinzen-Janz conducted on August 21, 2018, at the Marshfield Police Department, after Gilbank was taken into custody for Possession of Methamphetamine and Possession of Drug Paraphernalia. Dkt. 82-1 at 163-64. Gilbank's Fifth Amendment claim fails as a matter of law because the Fifth Amendment prohibits compelling a person to be <u>*a witness*</u> against themselves in a <u>*criminal proceeding*</u>. While Gilbank was arrested and charged with possession of methamphetamines and drug paraphernalia, she does not allege that that she provided any statements that were later used against her in a criminal proceeding. *Id.* Accordingly, Gilbank's claim fails as a matter of law.

Additionally, Gilbank's Fifth Amendment claim is barred by the defense of qualified immunity. Gilbank was not deprived of any federal constitutional or

statutory right that was clearly established at the time of the alleged conduct. Accordingly, Wood County Defendants are entitled to qualified immunity.

### f. Gilbank's Fourteenth Amendment Claims Fails as a Matter of Law, on the Merits, and on Immunity Grounds.

Gilbank's Fourteen Amendment claims fails as a matter of law and on the merits. Additionally, Wood County Defendants are shielded by absolute/quasi-judicial and qualified immunity for their alleged conduct in removing T.E.H. from Gilbank's custody.

#### i. Gilbank's Claim that She Did Not Receive Procedural Due Process Has No Basis in Fact or Law.

Gilbank claims that she was denied procedural due process when there was no pre-deprivation hearing, when she had been bonded out of jail prior to receiving notice of one of the many post-deprivation hearings, and when Ms. Heinzen-Janz and Detective Iverson allegedly provided false and incomplete information to the State Juvenile Court. Gilbank's procedural due process claims have no basis in law or fact. To the contrary, the facts of the case paint a much different picture as to the amount of process Gilbank received.

In the context of child welfare proceedings, procedural due process requires that "parental rights [not] be denied without an 'opportunity for them to be heard at a meaningful time and in a meaningful manner.'" *Brokaw*, 235 F.3d at 1020 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). This does not mean,

however, that the State is required to conduct a pre-deprivation hearing before it can remove a child in need of protection. Indeed, "government officials may remove a child from his home without a pre-deprivation hearing and court order if the official has probable cause to believe that the child is in imminent danger of abuse." *Hernandez v. Foster*, 657 F.3d 463, 486 (7th Cir. 2011). "When a child's safety is threatened, that is justification enough for *action first and hearing afterward*." *Id.* (quoting *Lossman v. Pekarske*, 707 F.2d 288 (7th Cir. 1983) (emphasis added)). This Court has held that "government officials may remove a child from his home *without a pre-deprivation hearing and court order* if the official has probable cause to believe that the child is in imminent danger of abuse." *Hernandez*, 657 F.3d at 486 (emphasis added).

A "post-deprivation hearing establishing probable cause of abuse prevented due process claim for lack of pre-deprivation hearing." *Brokaw*, 235 F.3d at 1021 citing *Donald*, 836 F.2d at 380 (emphasis added). Accordingly, if a child welfare department removes a child from the home without a court order, but then initiates a post-deprivation hearing, the department's actions do not infringe on any constitutional rights so long as the department's actions are reasonable. *Hernandez*, 657 F.3d at 485.

Here, Gilbank was not entitled to a pre-deprivation hearing because probable cause existed to justify the removal. Indeed, a post-deprivation hearing

was held two days after T.E.H.'s removal, establishing probable cause and thereby preventing any due process claim for lack of pre-deprivation hearing. Specifically, Judge Potter found at the Temporary Physical Custody hearing, "*that probable cause exists* to believe that the…mother, is neglecting or unable to provide the adequate supervision and care…" (Dkt. 82-10 at 3.) That same day, Judge Potter signed an Order for Temporary Physical Custody. (Dkt. 82-12.) The Order also notes that probable cause existed to believe that T.E.H. will be subject to injury by others and that Gilbank was neglecting and unable to provide adequate supervision and care. (Dkt. 82-12.)

Despite Gilbank's claims to the contrary, simply because T.E.H. was removed without a pre-deprivation hearing does not mean that she did not receive adequate due process. To the contrary, the facts establish that Gilbank received more than sufficient process.

To begin with, following the temporary custody hearing on August 23, 2018, a Plea/Disposition Hearing was held on September 19, 2018, with Judge Nicholas J. Brazeau, Jr. presiding, to allow Gilbank to formally enter a plea denying the allegations in the CHIPS petitions. (Dkt. 82-13 at 1.) Gilbank was present at the hearing. (*Id.* at 2.) Gilbank had the benefit of counsel, Attorney Jessica Phelps, at that hearing. (*Id.*) Prior to the hearing, Gilbank filed a Motion to Dismiss based partly on her allegation that she did not have Notice of the Temporary Physical

Custody Hearing. (Dkt. 82-24.) Judge Brazeau addressed Gilbank's Motion to Dismiss, ultimately denying it. (Dkt. 82-13 at 2.) Gilbank denied the allegations of the Petition. (*Id.* at 4.) Accordingly, a fact-finding hearing was scheduled.

The fact-finding hearing was held on September 25, 2018. (Dkt. 82-14.) Again, Gilbank was present and represented by counsel at the hearing. (*Id.* at 3.) In fact, the Judge noted that she was represented by "very competent" counsel. (*Id.* at 4.) Judge Brazeau heard testimony from several witnesses, including Mr. Hoyle, Officer Abel, Detective Iverson, and Ms. Heinzen-Janz. (*See* Dkt. 82-14.) Gilbank, through her counsel, had the opportunity to, and did in fact, cross-examine all of these witnesses, and present her own witnesses and evidence. (*See* Dkt. 82-14.) Having heard the testimony, reviewed the evidence, and heard the arguments, Judge Brazeau found that T.E.H. was "clearly a child in need of protection and services. There is clear and convincing evidence of that fact." (*Id.* at 62.) Judge Brazeau noted that in making his finding, he was taking into account the credibility of the witnesses. (*Id.*)

A fourth post-deprivation proceeding was held on October 29, 2018. (Dkt. 82-15.) Again, Gilbank had notice of the hearing, was present, and was represented by counsel. (*Id.*) Yet again, Gilbank, through her counsel, had the opportunity to call witnesses, present evidence, and/or testify on her behalf. (*Id.*) Judge Brazeau informed Gilbank that until she could accept that she is addicted to

46

methamphetamines and take the necessary steps to get help, he believed that
T.E.H. would be in need of protection. (*Id.* at 34-36.) Judge Brazeau ordered
placement with Mr. Hoyle. (Dkt. 82-16.)

A fifth post-deprivation hearing was held on March 18, 2019, on Gilbank's
Motion to Dismiss. (Dkt. 82-18.) Gilbank failed to appear at the hearing. (*Id.*) Judge
Brazeau denied Gilbank's Motion, noting that there was there "more than enough
information in this file to make a determination regarding the best interests of the
child." (*Id.* at 4.)

Gilbank contends that *none* of this process was sufficient because she did not
receive notice of the August 23, 2018, temporary physical custody hearing. At least
one other court has rejected a similar argument. In *Callahan v. City of New York*, the
plaintiff-father alleged that he was denied procedural due process because he did
not receive notice of a post-deprivation hearing. *Callahan v. City of New York*, 90 F.
Supp. 3d 60, 65–66 (E.D.N.Y. 2015). The court rejected the argument, noting that a
second post-deprivation hearing was held, and the plaintiff was present for that
hearing. Similarly, here, Gilbank had the benefit of *numerous* post-deprivation
hearings. Any argument that she did not receive adequate process fails for this
reason alone.

Gilbank's argument relative to the August 23, 2018, post-deprivation
hearing also fails because she has not, and cannot, establish any wrongdoing on

the part of Ms. Heinzen-Janz. Gilbank does not dispute that Ms. Heinzen-Janz provided notice regarding the hearing. Her grievance is that she did not *receive* notice. (Dkt. 82-1 at 116-17.) But this was not due to any wrongdoing on Ms. Heinzen-Janz's part. As noted, Gilbank was arrested on August 21, 2018, for possession of methamphetamines and drug paraphernalia. (Dkt. 82-2.) Gilbank was still in jail the following day when Ms. Heinzen-Janz set out to provide notice to her regarding the hearing. (Dkt. 80 at ¶ 18.) Accordingly, Ms. Heinzen-Janz followed the typical procedures for serving inmates. (*Id*.) She called the jail to confirm that Gilbank was still an inmate, verbally advised the jail official that a hearing was scheduled for the following day, and asked the jail official to transport Gilbank to the hearing. (*Id*. at ¶ 16-21.) Ms. Heinzen-Janz then faxed notice of the hearing to the jail and asked that it be forwarded to Gilbank. (*Id*.) Wood County Jail confirmed that they would provide Gilbank with the notice and bring her to the hearing scheduled the following day. (*Id*. at ¶ 22.) At the temporary physical custody hearing the following day, Ms. Heinzen-Janz learned, for the first time, that Gilbank was bonded out. (*Id*. at ¶ 23.) Based on these facts, there can be no question that Ms. Heinzen-Janz took the necessary steps on her end to provide Gilbank with notice of the hearing. Equally important, based on the numerous other post-deprivation hearings held in this matter, there can be no question that Gilbank received adequate post-deprivation hearings.

Next, Gilbank contends that Ms. Heinzen-Janz and Detective Iverson violated her procedural due process rights when they "filed statements under oath with the court in which the provided false, misleading, and incomplete information." (Dkt. 82-23 at 11.) Yet again, the facts do not support Gilbank's bold statements. As stated *supra*, Gilbank asserts that Defendants provided false testimony when they "stated to the court that plaintiff was being placed under arrest and therefore emergency custody of minor child without warrant was necessary." (*Id.* at 22.) The assertion that this was "false" testimony is perplexing and demonstrably false. In fact, the undisputed facts demonstrate that Gilbank had been placed under arrest on August 21, 2018, for possession of methamphetamines, necessitating the emergency removal. (Dkt. 82-2.) Gilbank also claims that Ms. Heinzen-Janz provided false testimony when she testified that "plaintiff was exposing her child to her use of methamphetamines." (Dkt. 82-23 at 22.) Once again, the undisputed facts, including Gilbank's own testimony, demonstrate this to be true. (Dkt. 82-1 at 45, 60-61, 227-228.) The numerous other statements Gilbank characterizes as "false" or "misleading" are equally demonstrably true. But the court need not dissect each of the statements Gilbank claims to be false. Gilbank has already regurgitated these same arguments, *repeatedly,* to the state court in the CHIPS proceeding. She has taken advantage of every opportunity to demonstrate to the state court the alleged false and

misleading information it was being presented with. Each and every time, the state court heard and rejected Gilbank's arguments. Accordingly, and yet again, the state court's orders in the CHIPS proceedings are dispositive of Gilbank's claims.

        ii.   *Absolute/Quasi-Judicial Immunity Bars Gilbank's Claims Procedural Due Process Claims.*

"Social workers and like public officials are entitled to absolute immunity in child custody cases on account of testimony and other steps taken to present the case for decision by the court." *Millspaugh v. Cnty. Dep't of Pub. Welfare of Wabash Cnty.*, 937 F.2d 1172, 1176 (7th Cir. 1991) (citations omitted). Specifically, they are entitled to "absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 495 (3d Cir. 1997).

Social workers are entitled to absolute immunity even if they make "intentional misrepresentations" to the court. *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 725 (6th Cir. 2011). As the court explained in *Pittman*:

> [P]rosecutors do not forfeit their absolute immunity when they knowingly make false statements while advocating before the court. Because absolute immunity for social workers is akin to absolute immunity for prosecutors, the same protection must apply here, no matter how undesirable the results.

*Pittman*, 640 F.3d 716, 725–26 (6th Cir. 2011).

"The dividing line between absolute immunity and qualified immunity is whether the injury depends on the judicial decision. In other words, if the alleged injury would not have occurred but for a judge's decision—presumably prompted by prosecution—then the prosecutor or other individual who induces the judge to act is entitled to absolute immunity with respect to the inducing conduct." *Loertscher v. Anderson*, No. 14-CV-870-jdp, 2016 WL 3166599, *4 (W.D. Wis. June 6, 2016) (internal quotations omitted).

This Court held that a social worker was entitled to absolute immunity for the following acts: "(1) asking the court to do certain things; (2) selecting evidence to present to the court; (3) deciding to go forward with child services proceedings despite not providing the mothers with adequate notice; and (4) testifying." *Loertscher*, 2016 WL 3166599, at *4 (citing *Millspaugh*, 937 F.2d at 1175-76). In *Millspaugh*, the plaintiffs alleged, among other things, that a county social worker "(1) failed to furnish the court with material that would have been favorable to parental custody, (2) pursued the litigation after it should have been clear that the mothers were entitled to custody, (3) pursued the litigation for an improper motive, and (4) neglected to ensure that the mothers received adequate notice of hearings." *Millspaugh*, 937 F.2d at 1175. The court held that, even assuming the social worker "acted out of improper motives and misled the court," her actions could yield no harm to the plaintiffs unless the court to which she presented the

false evidence agreed. Thus, the *Millspaugh* court reasoned that if there would be no loss but for the judge's acts, absolute immunity is afforded to a "social worker [who] presents the case to a court." *Id.* at 1177.

Based on the above law, Gilbank's procedural due process claims arising out of her allegation that she did not receive notice of the August 23, 2018, temporary physical custody hearing, and that Ms. Heinzen-Janz and Detective Iverson allegedly provided "false, misleading, and incomplete information" to the court are barred by the doctrine of absolute/quasi-judicial immunity. Even assuming arguendo that Ms. Heinzen-Janz's statements to the court were false or misleading, which they demonstrably were not, any harm Gilbank sustained as a result of those statements would not have been sustained but for the acts of the judges who heard and made a decision on the credibility of that testimony. Similarly, any harm that Gilbank sustained due to an alleged failure to provide her with adequate notice of the August 23, 2018, hearing, would not have been sustained but for the acts of the judges who were aware of this and proceeded forward. Accordingly, Ms. Heinzen-Janz is protected by absolute immunity in both regards.

iii.   *Gilbank's Substantive Due Process Claim is Preempted by Her Fourth Amendment Claims; Alternatively, This Claim is Without Any Basis in Fact or Law.*

The scope of substantive due process is extremely limited, and "may not be called upon when a specific constitutional provision protects the right allegedly infringed upon." *Hernandez v. Foster*, 657 F.3d 463, 474 (7th Cir. 2011). Thus, if another provision of the Constitution protects the interest Gilbank claims has been violated, her substantive due process claim must fail. As illustrated above, Gilbank's claims are rooted in the Fourth Amendment and stem from the decision to remove T.E.H. Thus, Gilbank's claims are adequately addressed in the Fourth Amendment context, rather than through substantive due process claim.

In the alternative, if the Court finds that Gilbank has stated a substantive due process claim independent of her Fourth Amendment claims, the claims still are properly dismissed because the undisputed facts show that the Defendants acted reasonably under the circumstances.

There is no dispute that "the fundamental right to familial relations is an aspect of substantive due process." *Id.* at 478. That right, however, is not absolute and "must be balanced against the state's interest in protecting children from abuse," be it physical or emotional. *Id.* Therefore, to strike the proper balance, "caseworkers must have 'some definite and articulable evidence giving rise to a reasonable suspicion' of past or imminent danger of abuse before they may take a

child into protective custody." *Id.* (quoting *Brokaw*, 235 F.3d at 1019). "A reasonable suspicion requires more than a hunch but less than probable cause." *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 928 (7th Cir. 2011). Yet again, Judge Potter's temporary custody order forecloses this argument and resolves the case in favor of the Defendants.

The evidence demonstrates that the Defendants acted based on probable cause, and the state's interest in protecting T.E.H. outweighed Gilbank's familial rights. Gilbank admits that T.E.H.'s living situation was "problematic", "unpredictable", and "unsafe." (Dkt. 82-1 at 47, 49, 50, 69, 199.) Gilbank invited methamphetamine addicts into her home and T.E.H. was frequently surrounded by methamphetamine addicts, including Gilbank herself. (*Id.* at 45, 60-61, 227-228.) Gilbank struggled with sobriety and the urinalysis she provided on July 3, 2018, showed that she tested positive for amphetamines. (*Id.*) Gilbank's struggle with sobriety culminated in Gilbank being arrested for possession of methamphetamine in the presence of T.E.H. (Dkt. 82-2.) After this arrest, Gilbank refused to cooperate with Ms. Heinzen-Janz and Detective Iverson. (Dkt. 82-7.) Gilbank's romanticization of an illicit substance, coupled with the other events leading up to the removal of T.E.H. on August 21, 2018, led to the loss of her parental rights over T.E.H. (*See* Dkt. 82-8.)

Gilbank produced no evidence to dispute these facts or contradict Judge Potter's order. Accordingly, Gilbank's substantive due process claim fails on the merits, and the Court should affirm dismissal on this alternative basis.

      iv.   *Gilbank's Procedural and Substantive Due Process Claim is Also Foreclosed by The Doctrine of Qualified Immunity.*

In the context of qualified immunity as it relates to social workers in particular, "several circuit courts have concluded that because the balance between a child's liberty interest in familial relations and a state's interest in protecting the child is nebulous at best, social workers and other state actors who cause a child's removal are entitled to qualified immunity because the alleged constitutional violation will rarely—if ever—be clearly established." *Brokaw*, 235 F.3d at 1023 (citing *Kiser v. Garrett,* 67 F.3d 1166, 1169–74 (5th Cir. 1995)).

As set forth in detail above, the facts show that the Defendants did not violate any clearly established right in removing T.E.H. from a dangerous family environment. Yet again, Judges Potter's and Brazeau's orders foreclose this issue. Their decisions leave no doubt that a pre-deprivation hearing was not necessary and that there was probable cause for the removal. The facts establish that there was no violation of Gilbank's Constitutional rights. Even if there was a violation, the facts show that the Defendants acted as any objectively reasonable official would. Therefore, the Wood County Defendants are entitled to qualified immunity and the Court should affirm dismissal on this alternative basis.

## CONCLUSION

For the foregoing reasons, the District Court's decision should be AFFIRMED.

Dated at Madison, Wisconsin this 16th day of November, 2022.

> AXLEY BRYNELSON, LLP
>
> /s/ *Aneet Kaur*
> Lori M. Lubinsky, State Bar No. 1027575
> Aneet Kaur, State Bar No. 1088063
> Post Office Box 1767
> Madison, WI 53701-1767
> Email: llubinsky@axley.com
>          akaur@axley.com
> Telephone: (608) 257-5661
> Facsimile: (608) 257-5444
>
> Attorneys for Wood County Department of Human Services, Theresa Heinzen-Janz, Mary Christensen, Anne La Chapelle, and Mary Solheim

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), typeface requirements of Fed. R. App. P. 32(a)(5) and 7th Cir. R. 32(b), and type style requirements of Fed. R. App. P. 32(a)(6).

This brief contains 12,848 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 13-point Book Antiqua.

/s/ *Aneet Kaur*

Aneet Kaur

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2022, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

*/s/ Aneet Kaur*
Aneet Kaur