No. 22-1037

_____

## IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

---

MICHELLE R. GILBANK,

    Plaintiff-Appellant,

       v.

WOOD COUNTY DEPARTMENT OF HEALTH SERVICES, *et al.*,

    Defendants-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN,
THE HONORABLE JAMES D. PETERSON, PRESIDING

---

BRIEF OF DEFENDANTS-APPELLEES MARSHFIELD POLICE
DEPARTMENT AND DEREK IVERSON

---

JASON R. JUST
AMUNDSEN DAVIS, LLC
State Bar No.: 1104647

TIFFANY E. WOELFEL
AMUNDSEN DAVIS, LLC
State Bar No.: 1093779

Attorneys for Defendants-Appellees
Marshfield Police Department and
Derek Iverson

AMUNDSEN DAVIS, LLC
318 S. Washington St., Suite 300
Green Bay, WI 54301
920.435.9378

Jason R. Just Direct Contact:
    920.431.2226 – Phone
    920.431.2266 – Fax
    jjust@amundsendavislaw.com

Tiffany E. Woelfel Direct Contact:
    920.431.2232 – Phone
    920.431.2272 – Fax
    twoelfel@amundsendavislaw.com

## RULE 26.1 DISCLOSURE STATEMENT

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No.:  22-1037

Short Caption:     *Gilbank v. Wood County Department of Health Services, et al.*

(1) The full name of every party that the attorney represents in the case: **Marshfield Police Department & Derek Iverson**

(2) The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in  this court: **Amundsen Davis, LLC (at the Appellate Court); Davis & Kuelthau, s.c. (at the District and Appellate Courts); Corneille Law Group, LLC (at the District Court only).**[1]

(3) If the party or amicus is a corporation: **Not Applicable**

> i) Identify all its parent corporations, if any; and: **Not Applicable**

> ii) List any publicly held company that owns 10% or more of the party's or amicus' stock: **Not Applicable**

Attorney's Signature:     s/ Jason R. Just
Attorney's Name:     Jason R. Just
Date:     November 16, 2022

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).

---

[1] Attorney Just has represented Detective Iverson and the Marshfield Police Department throughout the entirety of the dispute. Attorney Just moved to Davis & Kuelthau s.c. while the matter was before the District Court. On November 1, 2022, Davis & Kuelthau merged with SmithAmundsen to form Amundsen Davis, LLC. In an abundance of caution, Attorney Just has identified all of the relevant firms.

Yes __**X**__ No ___

Address:
318 S. Washington St., Suite 300
Green Bay, WI 54301
920.435.9378

Direct Contact:
920.431.2226 – Phone
920.431.2266 – Fax
jjust@amundsendavislaw.com

## RULE 26.1 DISCLOSURE STATEMENT

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No.:  22-1037

Short Caption:     *Gilbank v. Wood County Department of Health Services, et al.*

(1) The full name of every party that the attorney represents in the case: **Marshfield Police Department & Derek Iverson**

(2) The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in   this court: **Amundsen Davis, LLC (at the Appellate Court); Davis & Kuelthau, s.c. (at the District and Appellate Courts); Corneille Law Group, LLC (at the District Court only).[2]**

(3) If the party or amicus is a corporation: **Not Applicable**

    i) Identify all its parent corporations, if any; and: **Not Applicable**

    ii) List any publicly held company that owns 10% or more of the party's or amicus' stock: **Not Applicable**

Attorney's Signature:     s/ Tiffany E. Woelfel
Attorney's Name:         Tiffany E. Woelfel
Date:                     November 16, 2022

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).

---

[2] Attorney Just has represented Detective Iverson and the Marshfield Police Department throughout the entirety of the dispute. Attorney Just moved to Davis & Kuelthau s.c. while the matter was before the District Court. On November 1, 2022, Davis & Kuelthau merged with SmithAmundsen to form Amundsen Davis, LLC. In an abundance of caution, Attorney Woelfel has identified all of the relevant firms.

Yes __ No __**X**__

Address:
318 S. Washington St., Suite 300
Green Bay, WI 54301
920.435.9378

Direct Contact:
920.431.2232 – Phone
920.431.2272 – Fax
twoelfel@amundsendavislaw.com

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT ...............................i

RULE 26.1 DISCLOSURE STATEMENT ............................ ii

TABLE OF CONTENTS ......................................................... iii

TABLE OF AUTHORITIES....................................................vii

I.   JURISDICTIONAL STATEMENT .....................................1

II.  STATEMENT REGARDING ORAL ARGUMENT..........1

III. STATEMENT OF ISSUES(S) .........................................1

    1.  Whether the Court should adopt Ms. Gilbank's proposed test for the *Rooker-Feldman* doctrine?.....1

    2.  Whether the District Court correctly determined that *Rooker-Feldman* doctrine barred Ms. Gilbank's due process claims alleging injuries caused by the state court's custodial decisions?......1

    3.  Whether this Court should affirm the dismissal of Ms. Gilbank's remaining claims on their merits (for issue preclusion, failure to state a claim, and/or qualified immunity), as they were fully briefed before the District Court and provide a proper alternative ground upon which this Court can affirm, rather than remand the matter for further proceedings?............................................................2

4.  Whether the District Court properly dismissed Ms. Gilbank's claims under 42 U.S.C. § 1985 on the merits? ..................................................................2

IV.  STATEMENT OF THE CASE ..........................................2

A.  The Relevant Parties .........................................3

B.  Defendants' Early Interactions with Ms. Gilbank and Her Daughter Arose from Concerns about Her Daughter's Welfare and Ms. Gilbank's Prior and Ongoing Drug Abuse. .......................................4

C.  Wood County DHS Initiates State Court Custody Proceedings over the 4-Year-Old Child After Ms. Gilbank Is Arrested for Possession of Methamphetamine. ...........................................5

D.  The State Court Adjudicated All Issues Surrounding Custody of Ms. Gilbank's Daughter. ...........................6

E.  The Court Properly Dismisses All Claims against Defendants ......................................................9

V.  SUMMARY OF THE ARGUMENT .................................11

VI.  STANDARD OF REVIEW ...........................................12

VII.  ARGUMENT ........................................................14

A.  The District Court Properly Applied the *Rooker-Feldman* Doctrine to Ms. Gilbank's Claims Alleging Injuries from the State Court's Custody Decisions. ....15

i.  The *Rooker-Feldman* Doctrine Explained. ............16

ii. The Proper Test for Determining If the *Rooker-Feldman* Doctrine Applies......................................17

iii. Applying the Seventh Circuit's Test, the *Rooker-Feldman* Doctrine Bars Ms. Gilbank's Claims for Injuries Arising from the State Court's Custodial Decision. .................................................................22

iv. Ms. Gilbank's Claims Arising Outside of the State Court's Custodial Decisions and Orders Are Not Barred by the *Rooker-Feldman* Doctrine. .............38

B. The Court Should Affirm the District Court's Dismissal of Ms. Gilbank's Claims on the Merits.........................38

   i. The District Court Did Not Assume "Hypothetical Jurisdiction" in Ruling on the Merits in the Alternative. .............................................................39

   ii. This Court Should Affirm the District Court's Dismissal of the Urinalysis and Improper Questioning Claims on the Merits........................41

C. Alternatively, the Court Can Affirm the Dismissal of Ms. Gilbank's Claims Based on Any Issue Fully Raised at the District Court......................................................42

   i. Ms. Gilbank Has No Constitutional Claim to the Urinalysis Because She Consented to It. .............43

   ii. Ms. Gilbank's Fifth Amendment for Improper Questioning Claim Fails as a Matter of Law. .......45

iii.  Issue Preclusion Bars Ms. Gilbank's Due Process

Claims. ..............................................................46

iv.  The MPD Defendants Have Qualified Immunity. 49

v.  Ms. Gilbank's *Monell* Claims Fail Because There Is

No Underlying Constitutional Claim. ...................55

D.  Ms. Gilbank's § 1985 Claims Fail as a Matter of Law.57

E.  This Court Should Reject Ms. Gilbank's Request for

Remand and Affirm the District Court. .......................57

VIII.  CONCLUSION ...........................................................61

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME

LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE

STYLE REQUIREMENTS....................................................63

CERTIFICATE OF SERVICE ..............................................64

## TABLE OF AUTHORITIES

## Cases

*Aldrich v. Labor and Ind. Review Comm'n*,
  2012 WI 53, 341 Wis. 2d 36, 814 N.W.2d 433 ................................ 46, 47

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................. 13

*Andrade v. City of Hammond*,
  9 F.4th 947 (7th Cir. 2021) .......................................................... passim

*Arnold v. KJD Real Estate, LLC*,
  752 F.3d 700 (7th Cir. 2014) ............................................................... 59

*Bauer v. Koester*,
  951 F.3d 863 (7th Cir. 2020) ......................................................... 31, 37

*Behr v. Campbell*,
  8 F.4th 1206 (11th Cir. 2021) ....................................................... passim

*Bowes-Northern v. Miller*,
  No. 21-3319, 2022 WL 16849058 (7th Cir. Nov. 10, 2022) ................. 42

*Brokaw v. Mercer Cnty.*,
  235 F.3d 1000 (7th Cir. 2000) ...................................................... 50, 54

*Brokaw v. Weaver*,
  305 F.3d 660 (7th Cir. 2002) .............................................. 29, 30, 59, 60

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ............................................................... 52

*Buchanan v. City of Kenosha*,
  57 F. Supp. 2d 675 (E.D. Wis. 1999) .................................................. 56

*C.G. Schmidt, Inc. v. Permasteelisa N. Am.*,
  825 F.3d 801 (7th Cir. 2016) ............................................................... 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................. 13

*Chavez v. Ill. State Police*,
  251 F.3d 612 (7th Cir. 2001) ............................................................... 52

*Chavez v. Martinez*,
  538 U.S. 760 (2003) ............................................................................. 45

*Colbert v. City of Chi.*,
  851 F.3d 649 (7th Cir. 2017) ......................................................... 25, 26

*Cont'l Ins. Co. v. M/V Orsula*,
  354 F.3d 603 (7th Cir. 2003) .................................................. 49, 50, 56

*D.C. Court of Appeals v. Feldman,*
  460 U.S. 462 (1983) ......................................................... 1, 16
*DeShaney by First v. Winnebago Cnty. Dep't of Soc. Servs.,*
  812 F.2d 298 (7th Cir. 1987) ................................................ 55
*Dunderdale v. United Airlines, Inc.,*
  807 F.3d 849 (7th Cir. 2015) ................................................ 13
*Ernst v. Child and Youth Servs. of Chester Cnty.,*
  108 F.3d 486 (3d Cir. 1997) ................................................. 29
*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
  544 U.S. 280 (2005) ................................................. 17, 20, 41
*Felton v. Ericksen,*
  366 F. App'x 677 (7th Cir. 2010) ........................................... 52
*Fid. & Deposit Co. of Md. v. Edward E. Gillen Co.,*
  926 F.3d 318 (7th Cir. 2019) .................................... 39, 43, 49
*Franks v. Delaware,*
  438 U.S. 154 (1978) ......................................................... 36
*Gaetjens v. City of Loves Park,*
  4 F.4th 487 (7th Cir. 2021) ............................................ 55, 56
*Gilbert v. Ill. State Bd. of Educ.,*
  591 F.3d 896 (7th Cir. 2010) ............................................... 34
*Gorzelanczyk v. Baldassone,*
  29 F. App'x 402 (7th Cir. 2002) ....................................... 28, 29
*Graham v. UMH IN Holiday Vill., LLC,*
  No. 22-2829, 2022 WL 3928517 (7th Cir. Aug. 31, 2022) ............. 16, 23
*Green v. Mattingly,*
  585 F.3d 97 (2d Cir. 2009) .................................................. 29
*Gupta v. Melloh,*
  19 F.4th 990 (7th Cir. 2021) .............................. 50, 51, 53, 55
*Harold v. Steel,*
  773 F.3d 884 (7th Cir. 2014) ............................................... 17
*Henrichs v. Valley View Dev.,*
  474 F.3d 609 (9th Cir. 2007) ............................................... 17
*Holloway v. Brush,*
  220 F.3d 767 (6th Cir. 2000) ............................................... 29
*Holt v. Lake Cnty. Bd. of Comm'rs,*
  408 F.3d 335 (7th Cir. 2005) ............................................... 23

*Hutchinson v. Am. Ass'n for Lab. Accreditation, Inc.*,
   No. 22-2289, 2022 WL 819517 (7th Cir. 2022) ................................... 17

*In Interest of L.A.T.*,
   167 Wis. 2d 276, 481 N.W.2d 493 (Ct. App. 1992) ............................. 36

*In re Isaacs*,
   895 F.3d 904 (6th Cir. 2018) ..................................................... 17

*Jensen v. Foley*,
   295 F.3d 745 (7th Cir. 2002) .................................................. 37, 46, 49

*Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*,
   606 F.3d 301 (6th Cir. 2010) ..................................................... 29

*Lyons v. Gene B. Glick Co., Inc.*,
   844 F. App'x 866 (7th Cir. 2021) ............................................. 42, 58

*Mains v. Citibank, N.A.*,
   852 F.3d 669 (7th Cir. 2017) ..................................................... 17

*Martin v. Illinois*,
   No. 21-1149, 2022 WL 171926 (7th Cir. Jan. 19, 2022) ..................... 14

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
   436 U.S. 658 (1978) ................................................................. 43

*N. States Power Co. v. Bugher*,
   189 Wis. 2d 541, 525 N.W.2d 723 (1995) .................................... 47

*O'Brien v. Caterpillar Inc.*,
   900 F.3d 923 (7th Cir. 2018) .............................................. 13, 39, 49

*O'Malley v. Litscher*,
   465 F.3d 799 (7th Cir. 2006) ..................................................... 33

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ................................................................. 50

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*,
   950 F.3d 959 (7th Cir. 2020) ..................................................... 13

*Pohle v. Pence*,
   No. 21-3351, 2022 WL 2915454 (7th Cir. July 25, 2022) ................... 58

*Rascon v. Hardiman*,
   803 F.2d 269 (7th Cir.1986) ..................................................... 52

*Reed v. Palmer*,
   906 F.3d 540 (7th Cir. 2018) ..................................................... 53

*Reichle v. Howards*,
   566 U.S. 658 (2012) ................................................................. 50

ix

*Rooker v. Fidelity Trust Co.*,
  263 U.S. 413 (1923) ......................................................................... 1, 16
*Royal v. Payne*,
  No. 22-1184, 2022 WL 4008718 (7th Cir. Sept. 2, 2022) ............... 29, 37
*Sanders v. Ind. Dep't of Child Servs.*,
  806 F. App'x 478 (7th Cir. 2020) ........................................................ 29
*State v. Mann*,
  123 Wis. 2d 375, 367 N.W.2d 209 (1985) ............................................ 36
*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) .......................................................................... 39, 40
*Swartz v. Heartland Equine Rescue*,
  940 F.3d 387 (7th Cir. 2019) ...................................................... passim
*United States v. White*,
  781 F.3d 858 (7th Cir. 2015) .............................................................. 44
*Valenti v. Lawson*,
  889 F.3d 427 (7th Cir. 2018) .......................................................... 12, 13
*VanderKodde v. Mary Jane M. Elliot, P.C.*,
  951 F.3d 397 (6th Cir. 2020) ........................................................ 20, 59
*Wade v. Ramos*,
  26 F.4th 440 (7th Cir. 2022) .............................................................. 58
*Whiting v. Marathon Cnty. Sheriff's Dep't*,
  382 F.3d 700 (7th Cir. 2004) .............................................................. 56
*Xiong v. Wagner*,
  700 F.3d 282 (7th Cir. 2012) .............................................................. 53

## Statutes

U.S. Const. Amend. V ............................................................................. 45
Wis. Stat. § 48.255 ................................................................................. 36
Wis. Stat. § 48.297(2) ............................................................................ 35
Wis. Stat. § 48.297(3) ............................................................................ 35
Wis. Stat. § 48.297(4) ............................................................................ 35

## Rules

Fed. R. App. P. 34(a)......................................................................... 1

Fed. R. App. P. 34(f) ......................................................................... 1

Fed. R. Civ. P. 17(b)........................................................................ 56

Fed. R. Civ. P. 56(a)........................................................................ 13

## Other

Milton Childs et al., *Wisconsin Juvenile Law Handbook* (4th
    ed. 2017)........................................................................... 34, 36

# I. JURISDICTIONAL STATEMENT

Ms. Gilbank's jurisdictional summary is complete and correct.

# II. STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Circuit Rule 34(f), Detective Iverson and the Marshfield Police Department (together, the "MPD Defendants") believe oral argument is necessary to clarify the issues. Although the MPD Defendants believe the dispositive issues as set forth and identified in the Ms. Gilbank's Statement on Appeal have been authoritatively decided, the MPD Defendants believe the decisional process could be aided by oral argument.

# III. STATEMENT OF ISSUES(S)

1. Whether the Court should adopt Ms. Gilbank's proposed test for the *Rooker-Feldman*[3] doctrine?

   This Court should answer "no" and reject the test.

2. Whether the District Court correctly determined that *Rooker-Feldman* doctrine barred Ms. Gilbank's due process claims alleging injuries caused by the state court's custodial decisions?

   This Court should answer "yes" and affirm dismissal of those claims.

---

[3] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

1

3.    Whether this Court should affirm the dismissal of Ms. Gilbank's remaining claims on their merits (for issue preclusion, failure to state a claim, and/or qualified immunity), as they were fully briefed before the District Court and provide a proper alternative ground upon which this Court can affirm, rather than remand the matter for further proceedings?

This Court should answer "yes" and should affirm the dismissal of the claims against the MPD Defendants on alternative grounds.

4.    Whether the District Court properly dismissed Ms. Gilbank's claims under 42 U.S.C. § 1985 on the merits?

This Court should answer "yes" and should affirm the dismissal of the § 1985 claims against the MPD Defendants on the merits.

## IV.   STATEMENT OF THE CASE

The District Court's Summary Judgment Order in favor of the Defendants presents the undisputed facts between Ms. Gilbank and the MPD Defendants. *See* Pl.'s App. 2–16; R.131. To the extent MPD Defendants rely on facts that have not been presented in the Summary Judgment Order, MPD Defendants will cite to the undisputed facts as presented in the summary judgment briefing.[4]

---

[4] Ms. Gilbank's Statement of the Case repeatedly presents accusations from her amended complaint as though they were undisputed findings of fact made by the District Court. The Court should reject such attempts to blur the lines between the two documents. The MPD Defendants object to Ms. Gilbank's attempts to present her unsubstantiated pleadings as relevant facts. The relevant order on appeal is the

## A.     The Relevant Parties

Michelle Gilbank is the mother of a minor daughter, who was born in 2014 and who was 4 years old during the time at issue. Pl.'s App. 6; R. 131:2. Ms. Gilbank had sole custody and placement of her daughter until November 2017, when her daughter's father, Ian Hoyle, was granted supervised visitation rights. *Id*. Ms. Gilbank has a history of methamphetamine use, as well as mental illness, including post-traumatic stress disorder. *Id*.

At the relevant time, Derek Iverson was a detective with MPD in Marshfield, Wisconsin, and Theresa Heinzen-Janz was an initial assessment social worker with the Wood County Human Services Department ("Wood County HSD") (together, "Wood County HSD Defendants"). *Id*.[5]

---

summary judgment decision. As such, the undisputed facts found by the District Court are the facts before this Court. The Court should not reach back to Ms. Gilbank's amended complaint for the unsupported and self-serving assertions of fact. To the extent that the Court finds it necessary to look to Ms. Gilbank's amended complaint, it should only be as to the *Rooker-Feldman* analysis. Facts alleged only in the amended complaint but not found as an undisputed fact by the District Court are not properly before this Court as to the Court's alternative analysis on the merits of Ms. Gilbank's claims.

[5] There are other Defendants who also worked in some capacity for Wood County HSD that are separately represented along with Ms. Heinzen-Janz. *Id*. Because Det. Iverson interacted primarily with Ms. Heinzen-Janz, she is the only Wood County HSD Defendant discussed in the MPD Defendants' statement of facts.

**B.    Defendants' Early Interactions with Ms. Gilbank and Her Daughter Arose from Concerns about Her Daughter's Welfare and Ms. Gilbank's Prior and Ongoing Drug Abuse.**

On June 29, 2018, Ms. Gilbank and her child were living with Mr. Hoyle when a concerned anonymous caller contacted Wood County HSD and reported that it appeared Ms. Gilbank and her daughter were living in Mr. Hoyle's non-airconditioned garage in the summer heat. *Id.* at R.131:3. Ms. Heinzen-Janz responded to the call. *Id.*

On July 3, 2018, Ms. Heinzen-Janz met with Ms. Gilbank again and Det. Iverson joined. *Id.* In preparation for the return visit, Ms. Heinzen-Janz learned that Ms. Gilbank had a history of drug use and a pending charge for possession of methamphetamine that occurred in August 2017. *Id.* Additionally, she spoke with Mr. Hoyle who expressed a concern about Ms. Gilbank's drug use. *Id.*

During the July 3, 2018 visit, Ms. Gilbank was asked about her drug use, and she admitted that she had used methamphetamine, but it had been at least three weeks prior. *Id.* Ms. Gilbank voluntarily provided a urine sample for a urinalysis. *Id.*; *see also* MPD Defs.' App. 97; R. 107:6; MPD Defs.' App. 75; R. 68-17:24; MPD Defs.' App. 39; R. 68-10:79. Ms. Gilbank's urinalysis was positive for both amphetamines and

4

methamphetamines. Pl.'s App. 5; R. 131:4. Ms. Gilbank has since admitted to having smoked a small amount of methamphetamine residue on or shortly before July 3, 2018. R. 131:4; MPD Defs.' App. 96; R. 107:5. Despite Ms. Gilbank's positive urinalysis, neither Det. Iverson nor Ms. Heinzen-Janz threatened or attempted to arrest Ms. Gilbank or remove her daughter from her custody at that time. *Id*.

## C. Wood County DHS Initiates State Court Custody Proceedings over the 4-Year-Old Child After Ms. Gilbank Is Arrested for Possession of Methamphetamine.

On August 21, 2018, Ms. Gilbank was pulled over for driving with a suspended license while her daughter was in the vehicle. *Id*. After a legal search, it was ultimately discovered that Ms. Gilbank had 0.7 grams methamphetamine in her purse, as well as several bags with white crystal-like residue and drug paraphernalia in her car. *Id*. **Ms. Gilbank contacted Mr. Hoyle to come and take custody of their daughter.** *Id*.

Ms. Gilbank was then placed under arrest and taken to the police department, where she was interviewed by Det. Iverson and Ms. Heinzen-Janz. *Id*. Det. Iverson read Ms. Gilbank her *Miranda* rights and Ms. Gilbank stated she did not want to answer questions without a

5

lawyer. *Id*. Det. Iverson ceased any questioning about the criminal investigation and items that were found in her vehicle. *Id*. at 5–6; R. 131:4–5. However, Det. Iverson did indicate that they still needed to talk about Ms. Gilbank's drug use as it related to her daughter and Ms. Heinzen-Janz told Ms. Gilbank that she wanted to create a safety plan for Ms. Gilbank's daughter. *Id*. at 6; R. 131:5. Ms. Gilbank was reluctant to cooperate with Ms. Heinzen-Janz and eventually Ms. Heinzen-Janz informed Ms. Gilbank that her daughter would be taken into temporary custody by Wood County and then placed with her father, where Ms. Gilbank had already placed her daughter just prior to her arrest. *Id*. at 5–7; R. 131:4–6. Ms. Gilbank was then taken to the county jail. *Id*. at 6; R. 131:5.

## D.   The State Court Adjudicated All Issues Surrounding Custody of Ms. Gilbank's Daughter.

Ms. Heinzen-Janz filed a request for temporary physical custody in Wood County Juvenile Court on August 22, 2018. *Id*. Ms. Heinzen-Janz also submitted a petition for a child in need of protective services under Wis. Stat. § 49.13(10) ("CHIPS petition"). *Id*. On August 23, 2018, a temporary physical custody hearing was scheduled. *Id*. at 7; R.131:6. Ms. Heinzen-Janz called the Wood County jail to inform Ms. Gilbank,

6

but she had already been released. *Id*. Ms. Gilbank was not present for the hearing in juvenile court, but the guardian ad litem that had been appointed for her daughter was present, as was an assistant district attorney, Ms. Heinzen-Janz, and Mr. Hoyle. *Id*. The state court concluded that probable cause was established by Ms. Heinzen-Janz that Ms. Gilbank was either neglecting her daughter or was unable to provide adequate supervision and care of her daughter. *Id*. The state court ordered her daughter to be placed with Mr. Hoyle until the next hearing. *Id*.

The next day, August 24, 2018, Ms. Gilbank filed a motion to dismiss the temporary custody order, in which she alleged, at least in part, that there was insufficient evidence to support taking her child and that various government actors had violated her constitutional rights. *Id*. The state court denied Ms. Gilbank's motion. *Id*.

An evidentiary hearing for the CHIPS petition was held on September 25, 2018. *Id*. at 8; R. 131:7. Ms. Gilbank was represented by counsel at the hearing. *Id*. An assistant district attorney presented evidence from Det. Iverson, Ms. Heinzen-Janz, Mr. Hoyle, and the officer that had arrested Ms. Gilbank the prior month. *Id*. Ms. Gilbank

had the opportunity to, and in fact did, cross-examine the state's witnesses, including Det. Iverson. *Id*. 8–9; R. 131:7–8. Ms. Gilbank, through her counsel, had the opportunity to put forth her own evidence and call her own witnesses, but she failed to do so. *Id*. at 9; R. 131:8. The state court found that Ms. Gilbank's child needed to be protected from Ms. Gilbank's drug use and ordered supervision over the child for a period not exceeding one year. *Id*.

On October 29, 2018, another hearing was held as to the placement of Ms. Gilbank's daughter. *Id*. Ms. Gilbank was once again represented by counsel. *Id*. Ms. Gilbank's attorney put forth evidence, including Ms. Gilbank's testimony and a letter of support by Mr. Hoyle. *Id*. Ms. Heinzen-Janz appeared and testified that the child should remain with Mr. Hoyle. *Id*. Ultimately, the state court agreed with Ms. Heinzen-Janz and concluded that the child should remain with Mr. Hoyle for at least a year. *Id*. at 10; R. 131:9. Ms. Gilbank filed a pro se motion to dismiss the CHIPS petition arguing that the state had failed to present evidence that her daughter had been neglected, that the state court refused to allow her to present evidence, and that her daughter should be placed with her. *Id*. The state court denied the motion. *Id*.

On September 9, 2019, the state court held a closure hearing on the CHIPS petition, which was closed because all parties, including Ms. Gilbank and Mr. Hoyle agreed it should be closed. *Id*.[6] On November 1, 2019, Ms. Gilbank filed a pro se appeal of the closure order, which was denied by the state court of appeals because she had approved of the closure. *Id*.

## E.    The Court Properly Dismisses All Claims against Defendants.

In June 2020, Ms. Gilbank filed suit in the Western District of Wisconsin and sued nearly everyone she believed was involved in the investigation and legal proceedings removing her daughter from her custody. *Id*. Ms. Gilbank alleged that her constitutional rights were violated by the MPD Defendants in the following ways: she was forced to give a urine sample without a warrant; she was not provided an attorney after asking for one during the questioning after her arrest; and her daughter was placed with Mr. Hoyle without probable cause.

---

[6] Ms. Gilbank, without evidence and relying solely on the allegations in her amended complaint, alleges that she regained full custody of her child after Mr. Hoyle admitted to "placing her fingers in [her daughter's] vagina daily." Pl.'s Br. at 8. She cites to the District Court's summary judgment decision and her amended complaint, which misleadingly implies that the District Court found this as an undisputed fact. That is untrue. Pl.'s App. 10; R. 131:9. The District Court made no such finding of fact and Ms. Gilbank has offered no such evidence to support her outlandish accusation.

*Id.* at 11; R. 131:10. She also raised a number of arguments of constitutional violations by the other defendants, primarily arising from the state court custodial proceedings involving her daughter. *Id.* The MPD Defendants, and other defendants, moved for summary judgment. *Id.* at 2; R. 131:1.

Ultimately, the District Court granted MPD Defendants' Motion for Summary Judgment, as well as that of the Wood County DHS Defendants. *See generally* Pl.'s App. 2–16; R.131. The District Court held that any of her claims that arose from her child being removed from her—from the temporary removal through the custodial placement with Mr. Hoyle for one year by the state court—were barred by the *Rooker-Feldman* doctrine. *Id.* at 12–13; R. 131:11–12. Likewise, the Court found that Ms. Gilbank's due process claims were barred by the doctrine of issue preclusion. *Id.* at 15; R. 131:14.

As to Ms. Gilbank's remaining constitutional claims, such as that she was forced to give a urinalysis without a warrant and that she was deprived of an attorney during questioning, and to the extent those arose outside of the state court proceedings and were not barred by the *Rooker-Feldman* doctrine, the District Court found that the claims

10

failed as a matter of law. *Id*. at 14; R. 131:13. The District Court found that Ms. Gilbank consented to the urinalysis; thus, there was no constitutional violation. *Id*. Additionally, the District Court found that Det. Iverson's questioning of Ms. Gilbank did not violate her Fifth Amendment right because the Fifth Amendment does not apply to state child protection proceedings. *Id*.

On January 10, 2022, Ms. Gilbank filed a notice of appeal. Dkt. No. 3. This matter was fully briefed before the Court struck the previous briefing and recruited counsel. Dkt. Nos. 3, 16, 18, 19, 22, 25, 38, 39, and 40.

## V.  SUMMARY OF THE ARGUMENT

As to the *Rooker-Feldman* doctrine, the District Court appropriately applied the doctrine to Ms. Gilbank's claims that complain of injuries arising from the state court's judgments and orders. To avoid the application of the doctrine, Ms. Gilbank advocates for a revised test which will only further confuse the analysis and move away from the Supreme Court's guidance on the issue and open the door litigants completely eviscerating the doctrine by simple utterance that they seek monetary damages only. This Court should reject Ms. Gilbank's

invitation and instead apply the Seventh Circuit's analysis, which it can do even if it eliminates the confusing "inextricably intertwined" language of the analysis. In applying the test, it is clear that Ms. Gilbank's due process allegations are all injuries arising from the state court's judgments and orders, and are barred by the *Rooker-Feldman* doctrine. Ms. Gilbank's allegations of injuries from conduct outside of the state court's custodial proceedings are not barred by the doctrine, but rather fail on the merits.

Because this case was fully briefed at summary judgment, the Court can, and should, affirm the dismissal of any claim not barred by *Rooker-Feldman* on alternative grounds. At summary judgment, the MPD Defendants properly raised numerous defenses, including issue preclusion; failure to state a claim; and qualified immunity. The Court should reject Ms. Gilbank's request to remand the case to the lower courts and instead affirm the dismissal of the claims against the MPD Defendants on the merits.

## VI.  STANDARD OF REVIEW

The Court of Appeals reviews de novo the decision by a district court to grant or deny summary judgment to a party. *Valenti v. Lawson*, 889

F.3d 427, 429 (7th Cir. 2018) (citing *C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 805 (7th Cir. 2016)). The Court of Appeals interprets the facts and draws all reasonable inferences in favor of the nonmoving party. *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 964 (7th Cir. 2020) (citing *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018)).

"Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "And summary judgment is inappropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Physicians Healthsource, Inc.*, 950 F.3d at 964 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Additionally, the Court of Appeals "may affirm the entry of summary judgment on any ground supported in the record, so long as the parties adequately presented the issue to the district court and the non-moving party had an opportunity to contest it." *Id.* (citing *O'Brien*, 900 F.3d at 928 (internal citation omitted)).

13

The Court reviews a district court's application of the *Rooker-Feldman* doctrine de novo. *Martin v. Illinois*, No. 21-1149, 2022 WL 171926, \*1 (7th Cir. Jan. 19, 2022) (citing *Andrade v. City of Hammond*, 9 F.4th 947, 949 (7th Cir. 2021)).

## VII.  ARGUMENT

The District Court properly applied the *Rooker-Feldman* doctrine to find that it lacked jurisdiction over Ms. Gilbank's due process claims that complain of injury caused by the state court's custodial decisions and orders. As to Ms. Gilbank's constitutional claims arising outside of the custodial judicial proceedings, the Court did not exert hypothetical jurisdiction when ruling in the alternative on the merits of these claims. Additionally, because this case was fully briefed through summary judgment, this Court can, and should, affirm on any ground that was properly raised at summary judgment. As such, this Court should affirm the dismissal of Ms. Gilbank's claims because they fail on the merits, are barred by issue preclusion, and are barred by qualified immunity. This includes the District Court's proper dismissal of Ms. Gilbank's 42 U.S.C. § 1985 claim on its merits. Lastly, because the other affirmative defenses were fully briefed, the Court should reject Ms.

14

Gilbank's invitation to remand this matter back to the District Court and should affirm the dismissal on one of the other applicable defenses.

**A.    The District Court Properly Applied the *Rooker-Feldman* Doctrine to Ms. Gilbank's Claims Alleging Injuries from the State Court's Custody Decisions.**

The District Court properly applied the *Rooker-Feldman* doctrine to Ms. Gilbank's claims for alleged injuries caused by the state court's custodial decisions and orders, especially when those alleged injuries were all raised and considered by the state court. Ms. Gilbank does not seek this Court's narrowing of the application of the *Rooker-Feldman* doctrine, she seeks to have this Court effectively render it inapplicable in any case. First, Ms. Gilbank's proposed test for the application of the *Rooker-Feldman* doctrine does not adhere to the doctrine or precedent. Instead, it further exacerbates the problems lower courts are having by continuing to ingratiate the "inextricably intertwined" language, instead of focusing on whether the state court judgment caused the injury. Ms. Gilbank's proposed test allows for a litigant to simply proclaim they are seeking monetary damages for injuries sustained before or during the state court proceeding to avoid *Rooker-Feldman*. This Court should reject her proposed test.

Second, applying the Seventh Circuit's analysis, Ms. Gilbank's due process claims that alleged injury caused by the state court's custodial judgments and orders are barred by the *Rooker-Feldman* doctrine. Lastly, while the *Rooker-Feldman* doctrine does not bar Ms. Gilbank's claims arising outside of the state court custodial proceeding (i.e., the allegations related to the urinalysis and the questioning of Ms. Gilbank), the Court should affirm the dismissal of these claims on the merits.

### i.    The *Rooker-Feldman* Doctrine Explained.

The *Rooker-Feldman* doctrine is a narrow doctrine that precludes a district court from exerting subject matter jurisdiction over a case alleging injury caused by a state court judgment, and arises from two seminal cases. *Rooker*, 263 U.S. at 413; *Feldman*, 460 U.S. at 462. "The *Rooker-Feldman* doctrine prevents federal courts from deciding cases brought by litigants who lost in state court 'complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Graham v. UMH IN Holiday Vill., LLC*, No. 22-2829, 2022 WL 3928517, *1 (7th Cir. Aug. 31, 2022) (citing *Exxon Mobil*

*Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "The doctrine 'applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court.'" *Hutchinson v. Am. Ass'n for Lab. Accreditation, Inc.*, No. 22-2289, 2022 WL 819517, \*2 (7th Cir. 2022) (quoting *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014)). The doctrine has frequently been confused with non-jurisdictional preclusion rules. *Andrade*, 9 F.4th at 951 (Sykes, J. concurring). The analysis is on the individual claim asserted; therefore, it should be applied on a claim-by-claim basis. *See, e.g.*, *Behr v. Campbell*, 8 F.4th 1206, 1213 (11th Cir. 2021); *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018); *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007); *see also Mains v. Citibank, N.A.*, 852 F.3d 669, 678 (7th Cir. 2017) (applying the analysis to the claims and not to the complaint); *Andrade*, 9 F.4th at 950 (same).

### ii.   The Proper Test for Determining If the *Rooker-Feldman* Doctrine Applies.

The Seventh Circuit currently applies a two-steps analysis to determine if the *Rooker-Feldman* doctrine applies. *Andrade*, 9 F.4th at 950. The Court has explained:

> First, we consider whether a plaintiff's federal claims are "independent" or, instead, whether they "either 'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019). If they are "independent" claims, the *Rooker-Feldman* doctrine does not preclude federal courts from exercising jurisdiction over them. But if they "directly" challenge or are "inextricably intertwined" with a state-court judgment, then we move on to step two.
>
> At step two, we determine "whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). Only if the plaintiff did have such an opportunity does *Rooker-Feldman* strip federal courts of jurisdiction.

*Id*. Rather than the current two-part test, as explained in *Andrade*, Ms. Gilbank advocates for a three-part test, in which all three questions must be held in the affirmative for the *Rooker-Feldman* doctrine to apply:

> 1) Does the federal plaintiff's claim directly challenge the state-court judgment?;
> 2) Is the federal plaintiff's claim inextricably intertwined with the state-court judgment?; [and]
> 3) Did the federal plaintiff have a reasonable opportunity to raise the issues in the state-court proceeding?

Pl.'s Br. at 23. The Court should reject Ms. Gilbank's proposed test for two reasons. First, it takes an overly simplistic view of the term "directly challenge," which has been previously rejected by the Court. Second, it perpetuates the "inextricably intertwined" language that has

befuddled lower courts and parties for years. Instead, the Court should retain the two-part test identified in *Andrade*, which it can do even if the Court decides to abandon the "inextricably intertwined" language.

As to Ms. Gilbank's proposed test, she proposes that the first step should require the Court to determine if the claims "directly challenge" the state-court judgment and, if not, the analysis would end. Pl.'s Br. at 23. However, that is a misinterpretation of *Exxon*. As Judge Sykes recognized in *Andrade*, the proper focus is not "whether the plaintiff seeks a result that conflicts with or undermines a judgment in parallel state litigation," the proper analysis focuses on "the source of the plaintiff's injuries." *Andrade*, 9 F.4th at 952 (Sykes, J. concurring). In applying Ms. Gilbank's proposed test, a state-court sore loser could circumvent the *Rooker-Feldman* doctrine completely by disguising its attack on the state-court judgment by not directly declaring an intent to attack the judgment; which is precisely what Ms. Gilbank seeks to do with her claims. Ms. Gilbank alleges that because she seeks monetary damages and not injunctive relief ordering custody of her child, she does not "directly attack" the state court's custodial decision and the *Rooker-Feldman* analysis should end.

However, such an analysis takes the wrong focus from *Exxon*, which focuses the Courts' attention on whether the plaintiff is complaining of an *injury caused by* the state court judgment. *Exxon*, 544 U.S. at 291 (emphasis added); *Andrade*, 9 F.4th at 953 (Sykes, J. concurring).[7] As will be explained further below, when the Court zeroes in on the facts Ms. Gilbank alleges and the injury she complains of, it is clear that her due process claims are for injuries caused by the state court's custodial decisions and orders.

Moreover, despite relying on it, Ms. Gilbank's first step in her analysis does precisely what *Behr v. Campbell* sought to avoid: it prioritizes form over substance. *Behr*, 8 F.4th at 1211. As the *Behr* Court makes clear, the test to be applied by should be: "whether the claims raised before the district court were brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 1210 (citation omitted).

---

[7] Ms. Gilbank cites *VanderKodde v. Mary Jane M. Elliot*, *P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (quotations omitted) for the proposition that the Court should focus on the remedy sought. This is untrue. The Sixth Circuit reviews the relief requested to determine the source of injury, the key focus is on "the source of the injury the plaintiff alleges in the federal complaint."

In *Behr*, the Eleventh Circuit stressed that the "inextricably intertwined" language had overly complicated the *Rooker-Feldman* analysis, yielding an unwieldy doctrine, and reminded the lower courts and parties that the focus should be that "[t]he injury must be caused by the judgment itself." *Id.* at 1212.

Ms. Gilbank's test does the complete opposite of what *Behr* teaches. First, it puts form over function, by inviting the *Rooker-Feldman* analysis to stop if the plaintiff styles the claims in any manner so long as they do not admit to directly appealing or challenging the state court's decision. Second, it further perpetuates the confusion caused by the "inextricably intertwined" analysis.

The Eleventh Circuit summarizes the purpose of "inextricably intertwined." *Id.* at 1212. It is not meant to be a separate part of the *Rooker-Feldman* analysis; rather, it was meant to "ensur[e] that courts do not exercise jurisdiction over the appeal of a state court judgment simply because the claimant does not call it an appeal of a state court judgment." *Id.*

Therefore, the Court should reject Ms. Gilbank's invitation to further ingratiate "inextricably intertwined" into the *Rooker-Feldman* analysis.

As, Judge Sykes noted, the language has blurred the lines between *Rooker-Feldman* and preclusion issues. *Andrade*, 9 F.4th at 954 (Sykes, J. concurring). However, such language is not necessary for the Seventh Circuit's *Rooker-Feldman* analysis to be conducted.

Rather, the Court's first step, can and should be whether the plaintiff complains of injury caused by a state court judgment; thus, directly challenging the state court judgment.

### iii.    Applying the Seventh Circuit's Test, the *Rooker-Feldman* Doctrine Bars Ms. Gilbank's Claims for Injuries Arising from the State Court's Custodial Decision.

Applying the Seventh Circuit's analysis, Ms. Gilbank's claims arising from the state court's custodial decision are barred by the *Rooker-Feldman* doctrine. One of Ms. Gilbank's biggest failures with her claims is her inability to, or refusal to, clearly identify the various claims she is making and the facts from which they arise. *See generally* Pl.'s Br. at 8–9. Ms. Gilbank has alleged a series of claims, couched as due process claims, arising from the state court's decision to remove custody of the child from her. *Id*. This includes alleged due process violations for temporarily placing her child with Mr. Hoyle; alleged due process violations for interfering with familial relationships arising from the

lost custody; alleged due process violations from false and incomplete information provided in the CHIPS petition; and alleged due process violations from inadequate notice of the hearing and lack of an opportunity to be heard. *Id.*

However, regardless of how Ms. Gilbank attempts to cloak her claims in constitutional drapings, her alleged injuries are all traceable to the state court's custodial judgments and orders. "No matter how a plaintiff characterizes her claims, or the legal theories she relies upon, a case that seeks relief from an injury traceable to a state court's judgment cannot be brought in federal district court." *Graham*, 2022 WL 3928517, *1 (citing *Holt v. Lake Cnty. Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005)).

### a. The State Court's Custodial Judgments and Orders Caused the Injuries of Which Ms. Gilbank Complains.

Evaluating each of these claims individually, the alleged injury for each is traceable to the state court's custodial judgment and orders; thus, they directly challenge the state court's custodial decisions and orders. As such, the first element of the *Rooker-Feldman* analysis is met as to each claim.

**First**, Ms. Gilbank complains of an "[u]nlawful seizure of [the child]" and placement with Mr. Hoyle. Pl.'s Br. at 8. It is useful to strip away the terms Ms. Gilbank cloaks her claim in to look at the precise injury of which she complains: 1) that the physical placement of the child was given to Mr. Hoyle and 2) that she lost custody of her child.

As to the first injury, that the child was given to Mr. Hoyle upon Ms. Gilbank's arrest, there can be no constitutional violation. After drugs were discovered in Ms. Gilbank's possession, **<u>Ms. Gilbank called Mr. Hoyle and gave physical custody of her child to Mr. Hoyle</u>**. Pl.'s App. 5; R. 131:4. The Defendants did not place (or give) the child to Mr. Hoyle. Ms. Gilbank did. Ms. Gilbank's own actions cannot serve as the basis for a constitutional violation against any of the defendants, regardless of the inflammatory language Ms. Gilbank hurls around.[8]

Upon Ms. Gilbank's arrest, her child was without an available legal custodian and was clearly in harm's way with Ms. Gilbank's continued use and possession of a dangerous illegal drug, methamphetamine, and Ms. Heinzen-Janz filed an emergency CHIPS petition. The state court

---

[8] Despite calling Mr. Hoyle and giving the child to him, Ms. Gilbank continues to hurl inflammatory allegations that the Defendants "kidnapped" or "seized" her child and then "gave" her to her "abuser." The Court should disregard Ms. Gilbank's unsupported accusations.

then determined there was probable cause to remove the child from Ms. Gilbank's custody.

Furthermore, the probable cause hearing occurred before Ms. Gilbank was released from police custody. As such, there is no time period between when Ms. Gilbank was arrested and released for which she could have asserted custody over her child and during which any of the MPD Defendants prevented that from occurring.

Moreover, the MPD Defendants did not file the request for temporary physical custody or initiate the CHIPS Petition. The District Court found as an undisputed fact that Ms. Heinzen-Janz took such action. Pl.'s App. 6; R. 131:5. Likewise, the MPD Defendants did not make the judicial determination that there was probable cause to remove the child from Ms. Gilbank's custody—the state court made that decision. *Id.* at 7–8; R. 131:6–7. The state court then made every subsequent decision regarding the custody and placement of the child. *Id.* There are no factual allegations that the MPD Defendants took action that deprived Ms. Gilbank of custody: those actions were alleged to have been conducted by Ms. Heinzen-Janz and the state courts. As such, Ms. Gilbank cannot maintain a § 1983 claim against them. *Colbert v. City of*

*Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (explaining individual liability requires personal involvement in the alleged action constituting the constitutional deprivation) (quotations and citation omitted). Therefore, Ms. Gilbank's allegations that her child was seized and there were due process violations are claims that are either factually untrue or that directly attack the state court's probable cause and due process determinations.

**Second**, Ms. Gilbank alleged due process violations for interference of familial relations. Pl.'s Br. at 9. However, this is yet another attempt to cloak the state court custodial decisions and orders in due process trappings, as Ms. Gilbank admits that these due process claims arise from and are based on the "seizure" of her child. As discussed above, there was no initial "seizure" of her child by any of the defendants. Ms. Gilbank gave her child to Mr. Hoyle upon her arrest and before Ms. Gilbank was released from custody, the state court made its first probable cause decision that custody of the child should be temporarily removed from Ms. Gilbank. Thus, this injury too directly attacks the state court's decisions.

**Third**, Ms. Gilbank alleges due process violations from a CHIPS petition based on "false and incomplete information." This allegation is a continuation of the attack on the state court's custodial decisions. As this Court explained in *Swartz v. Heartland Equine Rescue*:

> When a state court judgment is the cause of a plaintiffs' injury, *Rooker-Feldman* bars federal review. "If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction." *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 556 (7th Cir. 2004). **This is the case even when plaintiffs allege that the state court judgment was obtained through the defendants' bad faith actions.** In *Crestview*, for example, the plaintiff alleged that a conspiracy among city officials and private actors led to a state court ordering plaintiff to remedy alleged building code violations. *Id.* at 554–55. Despite the plaintiff's invocation of a civil rights conspiracy, this Court held that the injuries in the complaint were the practical result of a state court judgment, and thus barred under *Rooker-Feldman* . . . .

940 F.3d 387, 391 (7th Cir. 2019) (emphasis added). In *Swartz*, which is directly on point, the Court upheld the application of *Rooker-Feldman* to claims of a constitutional conspiracy to give false information to seize the plaintiffs' animals. *Id.* at 392. As such, the Court explained: "the Swartzes' alleged injury was directly caused by the state court's orders: first to seize their animals, and then to permanently place them with

27

other owners and force the Swartzes to reimburse Heartland for their care." *Id*.

Ms. Gilbank's fraud allegations similarly arise out of her alleged injury from the state court's decision to remove custody of her child from her and temporarily award it to her child's father. Furthermore, Ms. Gilbank challenged the probable cause determinations and the evidence they were based upon, including the CHIPs petition. Her alleged injury was directly caused by the state court's orders that custody of her child should be given to Mr. Hoyle. As such, *Swartz* directly governs and applies.

Ms. Gilbank argues that the Court should follow *Behr*, in which the Eleventh Circuit allowed due process claims to proceed because the plaintiffs "do not raise these constitutional claims to undo the state court's child custody decision; they want money damages for constitutional violations." *Behr*, 8 F.4th at 1213. However, looking solely at the remedy ignores *Exxon's* explanation that the focus should be on the whether the judgment caused the injury. *See, e.g.*, *Gorzelanczyk v. Baldassone*, 29 F. App'x 402, 403–04 (7th Cir. 2002) ("But even though Gorzelanczyk labels his lawsuit as a § 1983 action

28

alleging due process violations, his real injury is the child support order, not any alleged denial of due process. . . . Had Gorzelanczyk prevailed regarding the child support, despite the alleged due process errors, he would have had no injury and no constitutional claim to bring before the district court.") (citations and quotation omitted). Again, Ms. Gilbank's claimed injuries are caused by the state court's custodial decisions and orders.[9]

---

[9] Likewise, Ms. Gilbank's other citations are inapplicable. In *Brokaw v. Weaver*, the Seventh Circuit held that a claim that the state court's decision would have violated a child's constitutional rights would have been barred under *Rooker-Feldman*, but her claims that a conspiracy forcibly removed her from her home—separate from that decision—was allowed. 305 F.3d 660, 665 (7th Cir. 2002). However, as discussed, the child was not originally forcibly removed from Ms. Gilbank's custody. Rather, Ms. Gilbank gave custody of the child to Mr. Hoyle upon her arrest. Pl.'s App. 5; R. 131:4. Beyond that, the Court's decision removed Ms. Gilbank's custody over her child. The Defendants—and especially Det. Iverson who did not file the CHIPS petition—did not seize custody of the child before the Court ordered it.

Similarly, the other cases are similarly factually distinguishable. *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 606 F.3d 301, 310 (6th Cir. 2010) (alleging a conspiracy to remove custody of the children prior to a judicial proceeding); *Green v. Mattingly*, 585 F.3d 97, 102 (2d Cir. 2009) (finding the plaintiff was not a state court loser because she regained custody at the hearing regarding the temporary removal from custody); *Holloway v. Brush*, 220 F.3d 767, 770–72, 778–79 (6th Cir. 2000) (allowing claims against the children's caseworker for actions taken against the plaintiff wholly outside of the court's custodial proceedings); *Ernst v. Child and Youth Servs. of Chester Cnty.*, 108 F.3d 486, 491–92 (3d Cir. 1997) (explaining that claims determining whether recommendations made out of malice or personal bias during the custody proceedings would not implicate whether the state court judgments on those recommendations was erroneous); *Sanders v. Ind. Dep't of Child Servs.*, 806 F. App'x 478, 479–480 (7th Cir. 2020) (involving allegations that the department removed the children and investigated the father outside of judicial proceedings); *Royal v. Payne*, No. 22-1184, 2022 WL 4008718, *1 (7th Cir. Sept. 2, 2022) (explaining that claims for actions by

This case is also different than the situation in *Brokaw v. Weaver*, 305 F.3d 660, 665 (7th Cir. 2002). In *Brokaw*, upon entering the age of majority, plaintiff sued those involved in removing her from her parents' custody and alleged a broad conspiracy that occurred prior to judicial proceedings, in which she was removed from her parents' custody, and she was denied due process rights in the proceedings. *Id.* Again, this situation is different because the removal of custody in *Brokaw* occurred before court proceedings; whereas here, Ms. Gilbank gave custody to Mr. Hoyle and then the Court ordered that custody remain with Mr. Hoyle. Moreover, the *Brokaw* Court found that the plaintiff's injury was from the conspiracy. Here, Ms. Gilbank's injury continues to be the state court's custodial decisions as she alleges that the CHIPS petition caused to custodial decision. Therefore, this case is more aligned with *Swartz* than *Brokaw*.

**Finally**, Ms. Gilbank alleges due process violations from "inadequate notice" of the due process hearing and an inadequate "opportunity to be heard" regarding her child's placement. Pl.'s Br. at 9. This is directly

---

the department outside of the judicial proceedings were not barred because "[i]njuries not caused by a custody order do not implicate *Rooker-Feldman*" and explaining "claims target[ing] the Indiana court's rulings (e.g., assertions of inaccuracies in the documents relied upon by the Indiana court when deciding to remove custody)" were barred by the doctrine.).

attacking the state court's custodial decisions and orders and alleges an injury that was the result of the state court judgment itself.

Additionally, the Court can and should reject Ms. Gilbank's argument that she does not directly challenge the state court custodial judgment because she has already regained custody of her daughter; thus, she asserts, the *Rooker-Feldman* analysis should end. Pl.'s Br. at 23–24. That's factually untrue. Ms. Gilbank's amended complaint seeks undefined preliminary and permanent relief. Pl.'s App. at 51; R. 6:23. To the extent that she would be seeking permanent relief as to the custody of her daughter, such a claim explicitly attack's the state court's judgment.

Moreover, the Court should reject such a narrow application of "directly challenge" because it would allow state court losers to attack state court judgments that have injured them by simply disguising the attack This Court has already rejected such actions. *See generally Bauer v. Koester*, 951 F.3d 863, 866 (7th Cir. 2020); *Behr*, 8 F.4th at 1211.

### b.  Ms. Gilbank Had the Opportunity to Litigate Her Due Process Claims in State Court.

The second step to the *Rooker-Feldman* analysis also applies to all four of Ms. Gilbank's due process claims because she had the opportunity to litigate these issues in the state court. The second step of the Seventh Circuit's *Rooker-Feldman* analysis asks whether Ms. Gilbank had the opportunity to litigate her due process concerns in the state court. *Swartz*, 940 F.3d at 392. As to all four types of due process claims Ms. Gilbank alleges, she did.

Concerning the probable cause to temporarily remove Ms. Gilbank's custody, Ms. Gilbank not only had the opportunity to litigate such matters before the state court, she did litigate them. Although Ms. Gilbank was still in custody during the initial probable cause hearing, it is undisputed that she had the opportunity to raise her arguments as to the custody of her child, her alleged lack of notice, and her allegations of constitutional violations in motion practice and in hearings. Pl.'s App. 8–10; R. 131:7–9. *See, e.g.*, *Swartz*, 940 F.3d at 392–93 ("The *ex parte* nature of the initial probable cause hearing does not prevent the application of *Rooker-Feldman* because the Swartzes had other

32

opportunities to litigate the issue.") (citing *O'Malley v. Litscher*, 465 F.3d 799, 804 (7th Cir. 2006)).

It is undisputed that Ms. Gilbank appeared at the next CHIPS hearing on September 25, 2018. Pl.'s App. at 8; R. 131:7. With the assistance of counsel, Ms. Gilbank had an opportunity at that time to raise her due process arguments, including her allegations that her child was seized, her allegations of being deprived of her familial rights, her allegations that the statements in the CHIPS petition were fraudulent or false, and her allegations that she did not receive proper notice or an opportunity to be heard at the probable cause hearing. *Id.* at 8–9; R. 131:7–8. Though Ms. Gilbank did not introduce witnesses or other evidence, that was a choice by her and her counsel. *Id.* at 9; R. 131:8. This was an adversarial proceeding in which Ms. Gilbank was represented by counsel, had the opportunity to cross-examine witnesses, and had the opportunity to present her own evidence and witnesses.

It is also undisputed that Ms. Gilbank had yet another opportunity to litigate her claims and challenge the state's evidence on October 29, 2018 when she again appeared with the assistance of counsel. *Id.* At

33

this hearing, Ms. Gilbank presented evidence, testified and her attorney cross-examined the states witnesses. *Id*. at 8–9.

Not only did Ms. Gilbank have the opportunity to litigate her claims in state court, but she also had the opportunity to appeal the state court's decision to temporarily award custody to Mr. Hoyle for up to one year.[10] However, she failed to timely appeal and squandered her rights in that regard. *Id*. at 10; R. 131:9. But her failure to further litigate her arguments on appeal does not constitute a lack of opportunity. *See Swartz*, 940 F.3d at 393 (citing *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 901–02 (7th Cir. 2010)).

Therefore, Ms. Gilbank undeniably had the opportunity to litigate these claims in state court because she had the opportunity to participate, several times, and with the assistance of counsel, in the adversarial proceedings. *Swartz*, 940 F.3d at 393. As such, the second

---

[10] Ms. Gilbank would have had the ability to appeal the dispositional order granting custody to Mr. Hoyle for the year as a matter of right. *See* Milton Childs et al., *Wisconsin Juvenile Law Handbook* § 13.2 (4th ed. 2017) (explaining dispositional orders in CHIPS proceedings are final orders, appealable as a matter of right). Even if Ms. Gilbank did not have the right to appeal as a matter of right, she could have sought a permissive appeal under Wis. Stat. § 808.03(2). There is no evidence that Ms. Gilbank sought to appeal the state court's September 2018 decision awarding Mr. Hoyle custody. Rather, she alleges first seeking appeal in 2019, after the CHIPS proceeding is completely terminated. Pl.'s App. at 10; R. 131:9.

step of the *Rooker-Feldman* analysis is met, and the doctrine applies as to her due process claims.

Furthermore, Ms. Gilbank's assertions that she could not raise her constitutional claims are simply false. Wis. Stat. § 48.297(2) requires Ms. Gilbank to bring all "[d]efenses or objections based on defects in the institution of proceedings, lack of probable cause on the face of the petition, insufficiency of the petition or invalidity in whole or in part of the statute on which the petition is founded" within 10 days of the proceeding "or be deemed waived." Wis. Stat. § 48.297(2). Subsection 3 allows a party to bring motions regarding illegal seizure of evidence or statements illegally obtained and allows the Court to conduct fact-finding as to such motions. *Id*. § 48.297(3). Subsection 4 provides:

> Although the taking of a child or an expectant mother of an unborn child into custody is not an arrest, that taking into custody shall be considered an arrest for the purpose of deciding motions which require a decision about the propriety of taking into custody, including motions to suppress evidence as illegally seized, motions to suppress statements as illegally obtained and motions challenging the lawfulness of the taking into custody.

*Id*. § 48.297(4). Therefore, the subsection explicitly authorizes Ms. Gilbank to bring—and the state court to hear—her allegations

challenging the lawfulness of the custodial decisions regarding her daughter, and she did just that. *See* App. 8–10; R. 131:7-9.

Wis. Stat. § 48.255 provides the requirements for providing proper notice when a CHIPS petition is filed and the juvenile court has authority to determine if the petition is sufficient, which is done by applying the same constitutional standards that govern the sufficiency of criminal complaints. *In Interest of L.A.T.*, 167 Wis. 2d 276, 283, 481 N.W.2d 493 (Ct. App. 1992). Likewise, Wisconsin courts have adopted the test from *Franks v. Delaware*, 438 U.S. 154 (1978), for analyzing whether a document establishing probable cause is built on a falsehood. *See, e.g.*, *State v. Mann*, 123 Wis. 2d 375, 367 N.W.2d 209 (1985). There is no reason to believe Ms. Gilbank would have been unable to seek an evidentiary hearing if she asserted that the CHIPS petition contained intentionally false statements to create probable cause. *See* Milton Childs et al., § 7.24. Ms. Gilbank clearly had the ability to litigate her due process claims during the state court proceedings.

### c.    Ms. Gilbank's Due Process Claims Are Barred by *Rooker-Feldman* Doctrine.

Consequently, both steps of this Court's *Rooker-Feldman* analysis are met, and Ms. Gilbank's due process claims are barred by the

doctrine. When the audacious allegations are stripped away and the Court looks at the factual allegations and corresponding injuries complained of by Ms. Gilbank, her claims clearly target the state court's custodial decisions and orders. While she is clearly unhappy about the proceedings, her proper path for recourse was through the state court system. As a state court loser, she cannot be permitted to now claim she only seeking money damages when it is axiomatic that to do so requires her to challenge the state court's decisions that probable cause existed to temporarily remove her custody, that the evidence presented by the defendants was credible, reliable and there were no constitutional violations. *See Bauer*, 951 F.3d at 866 ("This suit is barred by the *Rooker-Feldman* doctrine, however, because any finding in favor of the Bauers would require us to contradict the state court's orders.") (citation omitted). The Court should affirm the District Court's dismissal of these claims without prejudice under the *Rooker-Feldman* doctrine. *See, e.g.*, *Royal*, 2022 WL 4008718, *1 (citing *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002)).

### iv. Ms. Gilbank's Claims Arising Outside of the State Court's Custodial Decisions and Orders Are Not Barred by the *Rooker-Feldman* Doctrine.

MPD Defendants concede that Ms. Gilbank's claims that arise outside of the state court's custodial decisions and orders are not barred by the *Rooker-Feldman* doctrine. As noted, the *Rooker-Feldman* doctrine's application to a matter must be conducted on a claim-by-claim basis to determine whether the doctrine applies to any particular claim.

As it pertains to Ms. Gilbank's claims, these consist of her allegation of an illegal search and seizure through the urinalysis and her allegation of unconstitutional questioning of her without an attorney. Because these alleged injuries arose before the state court custodial decisions and orders, they are not barred by the *Rooker-Feldman* doctrine. Nevertheless, for a variety of reasons as explained below, these claims fail on the merits and this Court should affirm their dismissal.

### B. The Court Should Affirm the District Court's Dismissal of Ms. Gilbank's Claims on the Merits.

As to the claims not barred by the *Rooker-Feldman* doctrine, this Court can, and should, affirm the District Court's dismissal of the

claims on the merits. The Court "may affirm a judgment on any ground supported by the record, so long as the issue was adequately raised in the district court and the opposing party had an opportunity to contest it." *Fid. & Deposit Co. of Md. v. Edward E. Gillen Co.*, 926 F.3d 318, 324 (7th Cir. 2019) (citing *O'Brien*, 900 F.3d at 928). As explained above, the MPD Defendants concede that the *Rooker-Feldman* doctrine does not apply to the allegations of an unconsented urinalysis and the allegations of improper questions. However, in his summary judgment decision, Judge Peterson ruled on the merits of these claims. App. 14–15; R. 131:12–14. This Court should affirm these dismissals on the merits.

### i.    The District Court Did Not Assume "Hypothetical Jurisdiction" in Ruling on the Merits in the Alternative.

The District Court did not exercise hypothetical jurisdiction when it ruled in the alternative on the merits of Ms. Gilbank's urinalysis and improper questioning claims; rather, it exercised actual jurisdiction. It is true that the United States Supreme Court has cautioned against the use of hypothetical jurisdiction by the lower courts. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–102 (1998). In *Steel*, the Supreme

Court addressed whether a federal court could turn to the merits issue, despite jurisdictional objections, when the merits issue was easier to address. *Id.* at 93. In *Steel*, the Court was addressing whether there was an actual case and controversy, so as to bestow constitutional jurisdiction. *Id.* at 102. The Court cautioned: "Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning." *Id.* at 101 (citations omitted).

However, the District Court did not assume hypothetical jurisdiction; rather, it ruled in the alternative and, in doing so, exercised actual subject matter jurisdiction—not hypothetical jurisdiction.

Recognizing that Ms. Gilbank alleged that these injuries occurred prior to, and independently of the state court's custody decisions, the district court analyzed each claim and dismissed them on grounds other than *Rooker-Feldman*. R. 131:12–13.

Generally speaking, a district court would have subject matter jurisdiction over § 1983 and § 1985 claims under the federal question doctrine, 28 U.S.C. § 1331. In applying the *Rooker-Feldman* doctrine, a district court does not find that it lacks subject matter jurisdiction;

rather, it finds that it is prohibited from exerting the jurisdiction it would otherwise exert under the doctrine. *Exxon,* 544 U.S. at 284. The district court does not lack jurisdiction—rather, the doctrine bars exercising such jurisdiction.

Therefore, if a district court's determination that it is barred from exerting jurisdiction over a claim is incorrect, then a district court has jurisdiction over such claim. Consequently, any ruling on the merits that a district court conducts, it does so with actual jurisdiction—not hypothetical jurisdiction. Because the district court would retain jurisdiction if *Rooker-Feldman* was inappropriately applied, the district court can, and should, rule in the alternative if the facts and case proceedings warrant doing so. This is more judicially efficient and is appropriate because the district court would be asserting actual jurisdiction.

> **ii.    This Court Should Affirm the District Court's Dismissal of the Urinalysis and Improper Questioning Claims on the Merits.**

In this case, the District Court had actual jurisdiction over any claim that was not barred by the *Rooker-Feldman* doctrine. As such, the District Court had jurisdiction to rule in the alternate on the merits of

the claims not barred by the *Rooker-Feldman* doctrine, including Ms. Gilbank's claims arising from the allegedly unconsented urinalysis, the allegedly illegal questioning, and the due process allegations. *See* App. 14–15; R. 45:13–14. The Court can, and should, affirm Judge Peterson's decisions on the merits of the claims, as it has historically done. *See, e.g.*, *Bowes-Northern v. Miller*, No. 21-3319, 2022 WL 16849058, *2 (7th Cir. Nov. 10, 2022) (affirming the lower court's dismissal with prejudice "to the extent it resolves the due-process theory on the merits"); *Lyons v. Gene B. Glick Co., Inc.*, 844 F. App'x 866, 869 (7th Cir. 2021) (reversing the district court's application of *Rooker-Feldman* but affirming the district court's alternative ruling on the merits that the claims were time-barred).

## C.  Alternatively, the Court Can Affirm the Dismissal of Ms. Gilbank's Claims Based on Any Issue Fully Raised at the District Court.

Even if this Court determines that the District Court asserted hypothetical jurisdiction, this Court may still affirm the dismissal of all of Ms. Gilbank's claims because they fail on the merits, are barred by issue preclusion, and because the MPD Defendants have qualified immunity. The Court "may affirm a judgment on any ground supported

by the record, so long as the issue was adequately raised in the district court and the opposing party had an opportunity to contest it." *Fid. & Deposit Co. of Md.*, 926 F.3d at 324 (citation omitted). At summary judgment, the MPD Defendants raised and fully briefed the following arguments: Ms. Gilbank's claims are barred by issue preclusion; Ms. Gilbank's Fourth, Fifth, and Sixth Amendment claims failed as a matter of law; Det. Iverson has qualified immunity; Ms. Gilbank failed to state a *Monell* claim[11]; and MPD is not a suable entity. MPD Defs.' App. 6–28 ; R. 67:6–28. Ms. Gilbank had the opportunity to respond to these arguments during summary judgment. MPD Defs.' App. 112–32; R. 108. As such, this Court can, and should, affirm dismissal on any of these grounds.

### i.    Ms. Gilbank Has No Constitutional Claim to the Urinalysis Because She Consented to It.

As part of summary judgment, the District Court found as an undisputed fact that Ms. Gilbank had consented to providing a urine sample. R. 45:3; App. 4. The law establishes that Fourth Amendment protections against unconstitutional searches and seizures do not apply

---

[11] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 660 (1978).

when the person consents to the action. *United States v. White*, 781 F.3d 858, 860–61 (7th Cir. 2015).

As the District Court correctly explained because Ms. Gilbank consented to the urinalysis, she cannot sustain a constitutional claim against defendants as a matter of law. Ms. Gilbank repeatedly testified under oath that she consented to providing the urine sample. Pl.'s App. 14; R. 131:13; *see also* MPD Defs.' App. 97; R. 107:6; MPD Defs.' App. 75; R. 68-17:24; MPD Defs.' App. 39; R. 68-10:79. Not only did Ms. Gilbank confess to consenting to the urinalysis under oath, but she also responded "Undisputed, although plaintiff was confused and under duress at the time" to MPD Defendants' proposed finding of fact that she voluntarily took the urinalysis. MPD Defs.' App. 97; R. 107:6. Consequently, the undisputed evidence shows that Ms. Gilbank consented to the urinalysis and her "illegal search and seizure" claim that relies thereupon fails as a matter of law. This issue was fully briefed before the District Court and this Court should affirm that Ms. Gilbank's claim fails on the merits.

### ii. Ms. Gilbank's Fifth Amendment for Improper Questioning Claim Fails as a Matter of Law.

Similarly, Ms. Gilbank's claim that her Fifth Amendment rights were violated by the questioning of Det. Iverson fails as a matter of law because the questioning was not used in a criminal proceeding. As the District Court correctly explained: "The Fifth Amendment guarantees that no person 'shall be compelled in any criminal case to be a witness against himself.' U.S. Const. Amend. V." Pl.'s App. 14; R. 45:13. the District Court also correctly identified that the "Fifth Amendment does not apply to state child protection proceedings." *Id.* (citing *Chavez v. Martinez*, 538 U.S. 760, 769 (2003)).

Ms. Gilbank has not alleged that any of her statements made during the interview with Det. Iverson after her arrest were used in a criminal proceeding because they were not. The MPD Defendants raised this argument at summary judgment. MPD Defs.' App. 24–26; R. 67:24–26. Ms. Gilbank has  failed to identify a criminal proceeding at which her custodial statements were used. Because Ms. Gilbank cannot do so, her claim fails as a matter of law and this Court should affirm the dismissal.

### iii. Issue Preclusion Bars Ms. Gilbank's Due Process Claims.

The Court should affirm the dismissal because issue preclusion bars Ms. Gilbank's alleged due process claims. When applying issue preclusion, "[f]ederal courts must give state court judgments the same preclusive effect 'as would a court in the rendering state'"; therefore, the Court must apply Wisconsin law in performing this analysis. *Jensen v. Foley*, 295 F.3d 745, 749 (7th Cir. 2002) (citation omitted).

The first step in the issue preclusion analysis is determining "whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in the previous action and whether the determination was essential to the judgment." *Aldrich v. Labor and Ind. Review Comm'n*, 2012 WI 53, ¶ 97, 341 Wis. 2d 36, 814 N.W.2d 433 (internal citations and quotations omitted). The second step in the issue preclusion analysis is determining "whether applying issue preclusion comports with principles of fundamental fairness." *Id*. ¶ 98 (internal citations and quotations omitted). The fundamental fairness analysis considers a number of factors, none of which are exhaustive or exclusive, but to which the Court may give discretionary weight in

46

coming to a final decision that "rests on a 'sense of justice and equity.'"

*Id*. ¶¶ 110–12. These factors include:

> (1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;
> (2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;
> (3) Do significant differences in the quality or extensiveness of proceedings between two courts warrant relitigation of the issue;
> (4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and
> (5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Id*. ¶ 110. Notably absent from this determination is any requirement that there be identical parties in both disputes for issue preclusion to apply. *N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 550–51, 525 N.W.2d 723 (1995) ("Unlike claim preclusion, an identity of parties is not required in issue preclusion.").

Ms. Gilbank's due process claims are barred by issue preclusion. As correctly acknowledged by the District Court, Ms. Gilbank had every opportunity to bring her due process arguments in the state court's custody proceedings, including her arguments that she was denied

proper notice and that probable cause was lacking in the state court proceedings. Pl.'s App. 15; R. 131:14. The state court heard such arguments during multiple proceedings in which Ms. Gilbank was represented by counsel and allowed to present witnesses and evidence, as well as cross-examine the state witnesses. *Id*. at 8–10, 15; R. 131:7–10, 14. Therefore, the issue of due process in the state proceedings was actually litigated in state court and was essential to the state court's judgments. As such, the first step in the issue preclusion is met.

Likewise, the second step is met because the justice and equity factors support finding issue preclusion. Ms. Gilbank had the opportunity to review the state proceedings through the state appellate procedures but chose not to. *Id*. at 10; R. 131:9. There is no reason that these issues should be relitigated in federal court. Ms. Gilbank had every incentive to raise these arguments during the state court's custody proceedings, which was the more appropriate proceeding in which to seek relief and had the higher burden of persuasion. Similarly, there are no public policy or individual circumstances that would render the application of issue preclusion to be fundamentally unfair. As such,

the justice and equity factors support a finding that issue preclusion bars Ms. Gilbank's due process arguments.

The MPD Defendants properly raised issue preclusion at the summary judgment stage. The District Court correctly acknowledged that issue preclusion would bar Ms. Gilbank's due process claims, and claims based upon the state court's custodial proceedings. Pl.'s App. at 10; R. 131:9. Because issue preclusion bars Ms. Gilbank's due process claims and because this issue was properly briefed before the District Court, the Court should affirm the dismissal on the merits. *Fid. & Deposit Co. of Md.*, 926 F.3d at 324 (citing *O'Brien*, 900 F.3d at 928); *see, e.g.*, *Jensen*, 295 F.3d at 749 (finding that the issue of probable cause was a controlling and material issue in a temporary custody order and, thus, the plaintiff was barred from raising that issue again in a 42 U.S.C. § 1983 suit); *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606 (7th Cir. 2003).

### iv.    The MPD Defendants Have Qualified Immunity.

Additionally, the Court can affirm the District Court's dismissal of the MPD Defendants under the doctrine of qualified immunity. The doctrine of qualified immunity "protects government officials from

individual liability under Section 1983 for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1022 (7th Cir. 2000) (internal citation omitted). The MPD Defendants raised qualified immunity as a defense in their motion for summary judgment. MPD Defs.' App. 17–20; R. 67:17–20. Therefore, the matter was properly put before the District Court and this Court may use it as an alternative ground upon which to grant relief. *Cont'l Ins. Co.*, 354 F.3d at 606.

"Qualified immunity under § 1983 extends to police officers unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). However, the Court "need not consider the prongs in order." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Additionally, "clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every

reasonable official would understand that what he is doing is unlawful."
*Id.* (cleaned up).

The doctrine of qualified immunity applies to the actions taken by
Det. Iverson. Ms. Gilbank has accused Det. Iverson of violating her
constitutional rights by partaking in the removal of her child from her
custody. However, it is often unclear what she means by "removal,"
specifically whether she means the legal proceedings that removed her
child from her custody or whether she is alleging that Defendants
physically removed or seized her child from her during the arrest. This
confuses the analysis, but nevertheless, Ms. Gilbank's arguments are
barred by qualified immunity.

It appears Ms. Gilbank's allegations against Det. Iverson arise solely
from the legal proceedings that removed her child from her custody.
This argument must be rejected as factually inaccurate. Det. Iverson
took no direct role in those legal proceedings. Det. Iverson neither filed
the request for temporary physical custody of the child nor did he
submit the CHIPS petition. Pl.'s App. at 5; R. 131:4. He appeared at one
of the CHIPS hearings and provided testimony. *Id.* However, Ms.
Gilbank has not raised any specific allegations as to testimony he gave

at that proceeding that would violate her constitutional rights and give rise to a claim. Moreover, Ms. Gilbank, through counsel, was given the opportunity to cross-examine him during that proceeding. Pl.'s App. 8–9; R. 131:7–8. Likewise, Det. Iverson did not make the decision as to probable cause or the custody of the child—as both such decisions were made by the state court. *Id.* at 8–10; R. 131:7–9.

Therefore, Det. Iverson was not the party who filed the custody or CHIPS petition, nor was he the party that ultimately made those decisions. To the extent Ms. Gilbank's claims arise from those decisions, she cannot state a claim against Det. Iverson because he had no personal involvement in those. *See, e.g.*, *Felton v. Ericksen*, 366 F. App'x 677, 680 (7th Cir. 2010) ("And because liability under § 1983 requires a showing of personal involvement, *see Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (citing *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986)); *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001), the absence of any evidence linking these two defendants to the seizure is enough to resolve the First Amendment claim as against them.").

To the extent Ms. Gilbank's argument relies upon Det. Iverson's testimony at the CHIPS proceeding, qualified immunity applies. Det.

52

Iverson is entitled to qualified immunity unless it was "sufficiently clear that every reasonable official would understand that what he was doing [was] unlawful." *Gupta*, 19 F.4th at 1000 (citations omitted). As long as Det. Iverson reasonably believed his actions to be lawful, in light of clearly established law, he is entitled to qualified immunity. *Xiong v. Wagner*, 700 F.3d 282, 290 (7th Cir. 2012). However, testifying at a child custody or CHIPS proceeding is not unlawful. It is Ms. Gilbank's burden to demonstrate that Det. Iverson's actions were violations of her clearly established constitutional rights and Ms. Gilbank has offered nothing that would support that Det. Iverson was doing something unlawful by testifying. *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018). She has failed to do so. As such, qualified immunity applies.

Ms. Gilbank cannot argue that Det. Iverson seized physical custody of her child. It is undisputed that Ms. Gilbank called Mr. Hoyle and she placed her daughter into his physical custody. Pl.'s App. at 5; R. 131:4. The state court then determined that probable cause existed to temporarily award custody of Ms. Gilbank's daughter with Mr. Hoyle. R. 131:6.

However, even if Det. Iverson and the Wood County DHS had taken physical custody over the child and placed her with her father, such actions would have been reasonable. Such actions would not have been a constitutional violation, because they had both probable cause and exigent circumstances to justify taking temporary custody of Ms. Gilbank's daughter. "In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that state officers have reason to believe that life or limb is in immediate jeopardy." *Brokaw v. Mercer Cnty.*, 235 F.3d at 1010 (citation omitted).

Wood County DHS and Det. Iverson had probable cause to take temporary custody over Ms. Gilbank's child because they had actual knowledge of the circumstances of her arrest. It is undisputed that on August 21, 2018, Ms. Gilbank  was found to be in possession of methamphetamine and drug paraphernalia in the presence of her daughter and was subsequently arrested and taken into custody. Pl.'s App. at 5; R. 131:4. Because Ms. Gilbank was being transported to the

police station, something had to occur with her child. Ms. Gilbank chose to have Mr. Hoyle come and take custody of their child.

The Court need not get into such analysis, rather Det. Iverson is entitled to qualified immunity unless it was "sufficiently clear that every reasonable official would understand that what he was doing [was] unlawful." *Gupta*, 19 F.4th at 1000 (citations omitted). There is nothing to support an argument that another police officer would understand that assisting DHS in taking temporary custody over a child whose parent was being arrested and after the parent gave custody of the child to the other parent was "unlawful." Rather, Seventh Circuit precedent provides that an officer that fails to take custody over a minor in that situation to ensure the child remains safe could expose be exposed to liability if the child is injured while unsupervised. *See, e.g.*, *DeShaney by First v. Winnebago Cnty. Dep't of Soc. Servs.*, 812 F.2d 298, 303 (7th Cir. 1987).

## v.   Ms. Gilbank's *Monell* Claims Fail Because There Is No Underlying Constitutional Claim.

The District Court properly dismissed the claims against MPD. "[A] municipality cannot be liable under *Monell*, when there is no underlying constitutional violation." *Gaetjens v. City of Loves Park*, 4

55

F.4th 487, 495–96 (7th Cir. 2021) (internal citations and quotations omitted).[12] After the District Court properly applied the *Rooker-Feldman* doctrine and found that Ms. Gilbank's remaining constitutional challenges failed as a matter of law, the District Court dismissed the claims against MPD.

As explained above, Ms. Gilbank's claims against Det. Iverson are either barred by the *Rooker-Feldman* doctrine, fail as a matter of law, are barred by issue preclusion, and/or are barred by qualified immunity. As such, there is no constitutional violation committed by Det. Iverson and there is no underlying constitutional violation for which MPD could be held liable. The Court should affirm the dismissal of the *Monell* claim against MPD.

---

[12] To the extent that Ms. Gilbank seeks to bring a claim directly against MPD, the Court may also affirm the dismissal because that MPD is not a suable entity. Pursuant to Wisconsin law, "a sheriff's department was part of a county government and 'not a separate suable entity.'" *Buchanan v. City of Kenosha*, 57 F. Supp. 2d 675, 678 (E.D. Wis. 1999) (applying Fed. R. Civ. P. 17(b)), cited approvingly in *Whiting v. Marathon Cnty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004). Therefore, Ms. Gilbank cannot state a claim pursuant to 42 U.S.C. § 1983 directly against MPD, a non-suable entity. MPD raised this defense to the District Court, to which Appellant had the opportunity to respond. MPD Defs.' App. 8–9; R. 67:8–9. As such, the Court may affirm the dismissal on this alternative ground. *Cont'l Ins. Co.*, 354 F.3d at 606.

**D.    Ms. Gilbank's § 1985 Claims Fail as a Matter of Law.**

Pursuant to Fed. R. App. P. 28(i), MPD Defendants incorporate and adopt by reference the Wood County DHS Defendants' argument in response to Ms. Gilbank's argument that her 42 U.S.C. § 1985 claim should be reinstated. For the reasons expressed in the Wood County DHS Defendants' brief, Ms. Gilbank's § 1985 claim was dismissed on the merits—not on the basis of untimeliness—and such dismissal should be affirmed on the merits or on the basis of qualified immunity.

**E.    This Court Should Reject Ms. Gilbank's Request for Remand and Affirm the District Court.**

The Court should reject Ms. Gilbank's assertions that the Court should remand the matter to the lower court for another decision on the merits. The District Court already made rulings in the alternative, which as explained above, should be affirmed. It unnecessary and inappropriate for the Court to remand to the District Court for further proceedings when it is within this Court's authority to affirm the dismissal on one of the multitude of other defenses that bar Ms. Gilbank's claims.

Judge Peterson's decision was issued at the summary judgment—the put-up-or-shut-up moment of the case—and he held that these

claims failed on their merits. *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) ("As we have said many times, summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence, it has that would convince a trier of fact to accept its version of events.) (cleaned up). Remanding the case back to the lower court would not change the underlying merits of the claims—it would only further delay final resolution of this dispute and increase the burdens on the defendants and judicial economy.

Contrary to Ms. Gilbank's assertion, a finding that the lower court inappropriately applied the *Rooker-Feldman* doctrine does not necessitate remanding the case to the lower court. This Court has affirmed a lower court's decision on the merits after reversing an improper application of the *Rooker-Feldman* doctrine. *See*, *e.g.*, *Lyons*, 844 F. App'x at 869; *Pohle v. Pence*, No. 21-3351, 2022 WL 2915454, *2 (7th Cir. July 25, 2022) (affirming the grounds of the district court's dismissal in the alternative after having determined the *Rooker-Feldman* doctrine did not apply). Ms. Gilbank's citations in support of her argument to remand for further consideration by the lower court are primarily decisions by other circuits or factually distinguishable.

58

*See Behr*, 8 F.4th at 1214 (an 11th Cir. decision remanding after the district court *sua sponte* dismissed the complaint under *Rooker-Feldman* five days after filing because none of the other possible defenses had been presented to the district court); *VanderKodde*, 951 F.3d at 401, 404 (remanding after the district court granted a Rule 12(b)(1) dismissal for lack of jurisdiction under *Rooker-Feldman* because the other possible defenses had not been presented to the district court); *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014) (remanding for the district court to consider whether *Wilton-Brillhart* abstention applied after reversing the finding that *Rooker-Feldman* applied because *Wilton-Brillhart* abstention is a fact-intensive, discretionary doctrine which the district court had not previously considered).

Notably, Ms. Gilbank cites *Brokaw*, 305 F.3d at 671 n.8, as an example of this court "reversing [a] *Rooker-Feldman*-based dismissal and remanding while declining to address 'numerous alternative arguments for affirmance' raised by appellees where 'none of those arguments concern subject matter jurisdiction.'" Pl.'s Br. at 43. While Ms. Gilbank choses select quotes from the opinion, the Court's full

footnote supports the MPD Defendants' position that the Court can and should affirm based on its alternative defenses. In *Brokaw*, the Court reversed and remanded because the lower court dismissal had occurred before summary judgment. 305 F.3d at 671 n.8. As such, the Court explained, in full:

> The defendants presented numerous alternative arguments for affirmance, but none of those arguments concern subject matter jurisdiction. **Rather, the defendants are trying to obtain summary judgment based on different legal theories and/or defenses, without having given the district court or the plaintiff an opportunity to present contrary factual and legal arguments.** Therefore, those alternative arguments are not appropriately before this court and should be considered in the first instance by the district court on remand. *See Goodman*, 259 F.3d at 1330 n. 5. *See, e.g., Box v. A & P Tea Co.*, 772 F.2d 1372, 1376 (7th Cir.1985) (internal citations omitted) ("On appeal of a summary judgment, the appellate court can usually consider only those matters that were presented to the trial court. True, we may affirm a summary judgment on any ground that finds support in the record, but the ground must have been adequately presented in the trial court so that the non-moving party had an opportunity to submit affidavits or other evidence and contest the issue.").

*Id.* (emphasis added). The facts of *Brokaw* are not present here. This is not an instance where Ms. Gilbank has been unable to present her factual and legal arguments before the lower court and the defendants are raising new ones on this appeal. Instead, the alternative defenses

raised here  were raised by Defendants at summary judgment. MPD Defs.' App. 1–29, 112–132, 133–141; R: 67, 108, 111. Ms. Gilbank has had an adequate opportunity to respond to MPD Defendants' defenses and arguments. Consequently, the Court can—and should—affirm dismissal on an alternative ground, if necessary.

## VIII.  CONCLUSION

Because the District Court properly applied the *Rooker-Feldman* doctrine as to Ms. Gilbank's due process claims arising from the state court custodial proceedings, the Court should affirm the dismissal of those claims without prejudice. As to Ms. Gilbank's remaining claims, or in the alternative, if the Court decided *Rooker-Feldman* does not apply, the Court should affirm the dismissal of all of Ms. Gilbank's claims on the merits and with prejudice because they are barred by issue preclusion, fail on the merits, and the doctrine of Qualified Immunity applies.

Dated this 16th day of November, 2022.

Respectfully submitted,

AMUNDSEN DAVIS LLC

*s/ Jason R. Just*
JASON R. JUST
State Bar No.: 1104647
TIFFANY E. WOELFEL
State Bar No.: 1093779

Attorneys for Defendants-Appellees
Marshfield Police Department and
Derek Iverson

AMUNDSEN DAVIS LLC
318 S. Washington St., Suite 300
Green Bay, WI 54301
920.435.9378

Jason R. Just
Direct Contact:
    920.431.2226 – Phone
    920.431.2266 – Fax
    jjust@amundsendavislaw.com

Tiffany E. Woelfel
Direct Contact:
    920.431.2232 – Phone
    920.431.2272 – Fax
    twoelfel@amundsendavislaw.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), typeface requirements of Fed. R. App. P. 32(a)(5) and 7th Cir. R. 32(b), and type style requirements of Fed. R. App. P. 32(a)(6).

This brief contains 12,642 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Century Schoolbook.

Dated this 16th day of November, 2022.

AMUNDSEN DAVIS LLC

*s/ Jason R. Just*
JASON R. JUST
State Bar No.: 1104647
TIFFANY E. WOELFEL
State Bar No.: 1093779

## CERTIFICATE OF SERVICE

I certify that on November 16th, 2022, I electronically filed the foregoing Brief of Defendants-Appellees Marshfield Police Department and Derek Iverson with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 16th day of November, 2022.

AMUNDSEN DAVIS LLC

*s/ Jason R. Just*
JASON R. JUST
State Bar No.: 1104647
TIFFANY E. WOELFEL
State Bar No.: 1093779