# HUSCH BLACKWELL

Joseph S. Diedrich
Senior Associate

33 East Main Street, Suite 300
Madison, WI 53703
Direct: 608.258.7380
Fax: 608.258.7138
Joseph.Diedrich@huschblackwell.com

April 18, 2023

**<u>VIA CM/ECF</u>**

Office of the Clerk
United States Court of Appeals for the Seventh Circuit
Everett McKinley Dirksen United States Courthouse
219 S. Dearborn St.
Room 2722
Chicago, IL 60604

  Re: *Gilbank v. Wood Cnty. Dep't of Human Servs. et al.*, No. 22-1037
    Fed. R. App. P. 28(j) Citation of Supplemental Authority

To the Office of the Clerk of the Seventh Circuit Court of Appeals:

On April 10, 2023, the Tenth Circuit decided *Graff v. Aberdeen Enterprizes, II, Inc.*, No. 21-5031. That court held that *Rooker-Feldman* did not apply: the district court had jurisdiction over claims brought in federal court by state-court defendants arising out of the collection of fines and fees assessed against them as part of their state-court sentences. *Id.*, slip op. 26–31.

With its *Graff* decision, the Tenth Circuit joins an ever-expanding crowd of courts that apply *Exxon*'s language as a four-element *Rooker-Feldman* test. *Id.*, slip op. 21; *see* Gilbank Br. 19 (Dkt. 45); Reply Br. 2–3 (Dkt. 62). This is the very same test Gilbank requests the Court apply here. Gilbank Br. 19–23; Reply Br. 2–3.

Of particular significance to this case, that test's fourth element directs courts to consider the *relief* the federal plaintiff seeks, instead of stopping the analysis at *Exxon*'s injury element. According to *Graff*, for *Rooker-Feldman* "[t]o apply, a litigant's claim must specifically seek to *modify* or *set aside* a state court judgment." *Graff*, slip op. 22 (emphases added). This alone disposes of any *Rooker-Feldman* issue in Gilbank's case because she does not ask this Court to modify or set aside the state-

**HUSCH BLACKWELL**

Office of the Clerk
April 18, 2023
Page 2

court custody judgment. Instead, she now *has* custody. And she seeks *only* monetary damages for constitutional violations. Gilbank Br. 23–28; Reply Br. 2–6. In cases like *Graff* and this one, where the plaintiff's success in federal court would leave the state-court judgment intact, *Rooker-Feldman* does not apply.

*Graff*'s analysis undermines *Rooker-Feldman*'s applicability with respect to injury, too. *Graff* supports drawing a line between injury arising from (a) the state-court proceedings themselves, versus (b) the conduct of adversaries. Like the *Graff* plaintiffs, Gilbank does not complain about the state-court proceedings *themselves*. She rather complains about the unconstitutional conduct of the social workers and police officers named as defendants. Gilbank Br. 30–33; Reply Br. 10; *see, e.g.*, *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014); *Brokaw v. Weaver*, 305 F.3d 660, 665 (7th Cir. 2002).

*Graff* supports reversal of the district court's *Rooker-Feldman* decision here.

Respectfully submitted,

HUSCH BLACKWELL LLP

/s/ Joseph S. Diedrich

Joseph S. Diedrich
Senior Associate

Encl.: *Graff v. Aberdeen Enterprizes, II, Inc.*, No. 21-5031 (10th Cir. Apr. 10, 2023)

**HUSCH BLACKWELL**

Office of the Clerk
April 18, 2023
Page 3

## CERTIFICATE OF COMPLIANCE

I certify that the body of this letter does not exceed 350 words.

Dated: April 18, 2023

/s/ Joseph S. Diedrich
Joseph S. Diedrich

FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 10, 2023**

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

CARLY GRAFF; RANDY FRAZIER;
DAVID SMITH; KENDALLIA
KILLMAN; LINDA MEACHUM;
CHRISTOPHER CHOATE; IRA LEE
WILKINS; MELANIE HOLMES, on
behalf of themselves and all others
similarly situated,

     Plaintiffs - Appellants,

v.                                                                  No. 21-5031

ABERDEEN ENTERPRIZES, II, INC.;
JIM D. SHOFNER; ROB SHOFNER;
OKLAHOMA SHERIFFS'
ASSOCIATION; THE BOARD OF
COUNTY COMMISSIONERS OF THE
COUNTY OF TULSA; BOARD OF
COUNTY COMMISSIONERS OF THE
COUNTY OF ROGERS; VIC
REGALADO, Sheriff of Tulsa County;
SCOTT WALTON, Sheriff of Rogers
County; JASON RITCHIE, Sheriff of
Adair County; RICK WALLACE, Sheriff
of Alfalfa County; TONY HEAD, Sheriff
of Atoka County; RUBEN PARKER, JR.,
Sheriff of Beaver County; TRAVIS
DAUGHERTY, Sheriff of Blaine County;
CHRIS WEST, Sheriff of Canadian
County; CHRIS BRYANT, Sheriff of
Carter County; JASON CHENNAULT,
Sheriff of Cherokee County; CHRIS
AMASON, Sheriff of Cleveland County;
BRYAN JUMP, Sheriff of Coal County;
HEATH WINFREY, Sheriff of Craig
County; BRET BOWLING, Sheriff of

Creek County; MARK BERRY, Sheriff of
Delaware County; CLAY SANDER,
Sheriff of Dewey County; CORY RINK,
Sheriff of Garfield County; JIM WEIR,
Sheriff of Grady County; SCOTT
STERLING, Sheriff of Grant County;
THOMAS MCCLENDON, Sheriff of
Harper County; MARCIA MAXWELL,
Sheriff of Hughes County; ROGER
LEVICK, Sheriff of Jackson County;
JEREMIE WILSON, Sheriff of Jefferson
County; GARY DODD, Sheriff of
Johnston County; STEVE KELLEY,
Sheriff of Kay County; DENNIS
BANTHER, Sheriff of Kingfisher County;
ADAM WOODRUFF, Sheriff of Latimer
County; RODNEY DERRYBERRY,
Sheriff of LeFlore County; MARTY
GRISHAM, Sheriff of Love County;
DONALD YOW, Sheriff of Marshall
County; MIKE REED, Sheriff of Mayes
County; KEVIN CLARDY, Sheriff of
McCurtain County; KEVIN LEDBETTER,
Sheriff of McIntosh County; DARRIN
RODGERS, Sheriff of Murray County;
JASON MCCLAIN, Sheriff of Nowata
County; STEVEN WORLEY, Sheriff of
Okfuskee County; EDDY RICE, Sheriff of
Okmulgee County; EDDIE VIRDEN,
Sheriff of Osage County; DAVID DEAN,
Sheriff of Ottawa County; DARRIN
VARNELL, Sheriff of Pawnee County;
JOE HARPER, Sheriff of Payne County;
MIKE BOOTH, Sheriff of Pottawatomie
County; B.J. HEDGECOCK, Sheriff of
Pushmataha County; BRIAN SMITH,
Sheriff of Roger Mills County; SHANNON
SMITH, Sheriff of Seminole County;
LARRY LANE, Sheriff of Sequoyah
County; MATT BOLEY, Sheriff of Texas
County; BILL INGRAM, Sheriff of
Tillman County; CHRIS ELLIOT, Sheriff
of Wagoner County; RICK SILVER,

Sheriff of Washington County; ROGER
REEVE, Sheriff of Washita County;
RUDY BRIGGS, JR., Sheriff of Woods
County; KEVIN MITCHELL, Sheriff of
Woodward County; JUDGE DAWN
MOODY; JUDGE DOUG DRUMMOND;
JUDGE WILLIAM J. MUSSEMAN, JR.;
DON NEWBERRY, Tulsa County Court
Clerk; DARLENE BAILEY, Tulsa County
Cost Administrator; JUDGE TERRELL S.
CROSSON; KIM HENRY, Rogers County
Court Clerk; TONY ALMAGUER, Former
Blaine County Sheriff; NORMAN
FISHER, Former Cherokee County Sheriff;
TODD GIBSON, Former Cleveland
County Sheriff; HARLAN MOORE,
Former Delaware County Sheriff; JERRY
NILES, Former Garfield County Sheriff;
JON SMITH, Former Johnston County
Sheriff; JESSE JAMES, Former Latimer
County Sheriff; ROB SEALE, Former
LeFlore County Sheriff; DANNY CRYER,
Former Marshall County Sheriff; SANDY
HADLEY, Former Nowata County Sheriff;
JEREMY FLOYD, Former Ottawa County
Sheriff; MIKE WATERS, Former Pawnee
County Sheriff; R.B. HAUF, Former Payne
County Sheriff; DARREN ATHA, Former
Roger Mills County Sheriff; BOBBY
WHITTINGTON, Former Tillman County
Sheriff,

      Defendants - Appellees.

-------------------------------

OKLAHOMA POLICY INSTITUTE;
PUBLIC JUSTICE; CATO INSTITUTE;
INSTITUTE FOR JUSTICE; FEDERAL
COURTS SCHOLARS,

      Amici Curiae.

_____

3

## Appeal from the United States District Court
## for the Northern District of Oklahoma
## (D.C. No. 4:17-CV-00606-TCK-JFJ)

_____

Seth Wayne, Institute for Constitutional Advocacy and Protection, Georgetown University Law Center, Washington, D.C. (Daniel E. Smolen and Robert M. Blakemore, Smolen & Roytman, Tulsa, Oklahoma; Tara Mikkilineni and Marco Lopez, Civil Rights Corps, Washington, D.C.; Shelby Calambokidis, Kelsi Brown Corkran, and Mary B. McCord, Institute for Constitutional Advocacy and Protection, Georgetown University Law Center, Washington, D.C., with him on the briefs), for Plaintiffs – Appellants.

Thomas A. LaBlanc, Best & Sharp, P.C., Tulsa, Oklahoma (Stefanie E. Lawson, Assistant Attorney General, Oklahoma Attorney General's Office, Oklahoma City, Oklahoma; John R. Woodard, III, and Robert E. Applegate, Coffey Senger & Woodard, PLLC, Tulsa, Oklahoma; Robert S. Lafferrandre, Randall J. Wood, and Jeffrey C. Hendrickson, Pierce Couch Hendrickson, Baysinger & Green, L.L.P., Oklahoma City, Oklahoma; Robert D. James and Isaac R. Ellis, Conner & Winters, LLP, Tulsa, Oklahoma; Douglas A. Wilson and Michael Shouse, Assistant District Attorneys, Tulsa County District Attorney's Office, Tulsa, Oklahoma; Joel L. Wohlgemuth, Jo Lynne Jeter, and W. Caleb Jones, Norman Wohlgemuth, L.L.P., Tulsa, Oklahoma; Matthew B. Free, Best & Sharp, P.C., Tulsa, Oklahoma; Scott Boudinot Wood, Wood Puhl Wood, PLLC, Tulsa, Oklahoma, with him on the briefs), for Defendants – Appellees.

Brian Hardingham, Public Justice, P.C., Oakland, CA on the brief for Oklahoma Policy Institute and Public Justice, Amici Curie in support of Plaintiffs – Appellants.

Melanie L. Bostwick, Cesar A. Lopez-Morales, Monica Haymond, and Lauren A. Weber, Orrick, Herrington & Sutcliffe LLP, Washington, D.C., on the brief for Federal Court Scholars, Amici Curiae in support of Plaintiffs – Appellants.

William R. Maurer, Seattle Washington, on the brief for Institute for Justice and the Cato Institute, Amici Curiae in support of Plaintiffs – Appellants.

_____

Before **ROSSMAN**, **KELLY**, and **MURPHY**, Circuit Judges.

_____

**MURPHY**, Circuit Judge.

_____

# I. INTRODUCTION

Carly Graff, Randy Frazier, David Smith, Linda Meachum, Kendallia Killman, Christopher Choate, Ira Lee Wilkins, and Melanie Holmes (referred to collectively as "Plaintiffs"), brought suit pursuant to 42 U.S.C. § 1983; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; and Oklahoma state law, challenging an allegedly unconstitutional scheme to collect "court debts"[1] from impoverished Oklahoma citizens. The SACAC named numerous "Defendants," which fall into three broad categories: (1) individual Oklahoma sheriffs, the Oklahoma Sheriff's Association ("OSA"), and officials of Tulsa and Rodgers Counties (referred to collectively as "Sheriffs"); (2) state court judges (referred to collectively as "Judges"); and (3) Aberdeen Enterprises, II, Inc. and its principal officers (referred to collectively as "Aberdeen"). Plaintiffs allege Aberdeen, a debt-collection company, acting in concert with other Defendants, uses actual or threatened

---

[1] The Second Amended Class Action Complaint ("SACAC"), the relevant pleading for purposes of this appeal, defines the term "court debts" as follows:

> "Court debts" are made up of fines, fees, and costs arising out of a criminal case, including fees supporting retirement funds, judicial expenses, prosecutors, jailors, probation supervision, public defenders, a wide variety of civil services unrelated to criminal cases, and other entities. After a criminal case, any debts owed become collectible in the same way as any other civil judgment under Oklahoma law. . . . For the purpose of this lawsuit, the term "court debt" refers to all of the legal financial obligations that are owed as the result of a criminal or traffic conviction . . . .

incarceration to coerce indigent Oklahomans into paying court debts, without any inquiry into ability to pay.[2]  The district court dismissed the SACAC for lack of subject matter jurisdiction.  In so doing, the district court broadly held that three independent doctrines—*Rooker-Feldman*,[3] *Younger* abstention,[4] and the *Heck* bar[5]—prevented Plaintiffs from proceeding on any claim against any Defendant.[6]

Plaintiffs appeal, asserting that none of the doctrines identified by the district court deprive federal courts of the ability to reach the merits of the claims

---

[2] According to the SACAC, the Defendants collectively infringe the rights of Plaintiffs and other indigent court debtors by (1) extorting money from them, in violation of the Constitution, federal racketeering law, and state tort law; (2) delegating law enforcement authority to a private entity that has an incentive to maximize extraction of money from debtors, in violation of the Constitution; (3) failing to assess court debtors' ability to pay before seeking a warrant for their arrest, in violation of the Constitution and state law; and (4) jailing court debtors for not making payments they cannot afford, in violation of the Fourteenth Amendment.

[3] *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

[4] *Younger v. Harris*, 401 U.S. 37 (1971).

[5] *Heck v. Humphrey*, 512 U.S. 477 (1994).

[6] "Subject matter jurisdiction defines the court's authority to hear a given type of case."  *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 666 (10th Cir. 2020) (quotation omitted).  "Only Congress may determine a lower federal court's subject-matter jurisdiction."  *Id.* (quotation omitted).  "Thus, the scope of a federal court's subject matter jurisdiction is governed exclusively by acts of Congress."  *Id.* (footnote omitted).  While *Rooker-Feldman* clearly implicates subject matter jurisdiction, it is unclear whether *Younger* abstention and the *Heck* bar relate to this doctrine.  Ultimately, however, whether these doctrines implicate subject matter jurisdiction does not meaningfully impact the outcome of the issues on appeal.  That is, whether or not *Younger* abstention or the *Heck* bar implicate subject matter jurisdiction, dismissal of the SACAC is not an appropriate application of either doctrine.  *See infra* nn. 28, 32.

set out in the SACAC. We agree that the district court erred in dismissing the SACAC on the basis of *Rooker-Feldman*, *Younger*, and/or *Heck*. Accordingly, exercising appellate jurisdiction pursuant to 28 U.S.C. § 1291, this court **reverses** the district court's order of dismissal and **remands** to the district court for further proceedings consistent with this opinion.

## II. FACTUAL BACKGROUND

### A. The Relevant Universe of Facts

Fed. R. Civ. P. 12(b)(1) provides that a party may move to dismiss a claim on the grounds the court lacks jurisdiction. Rule 12(b)(1) challenges may take two different forms. "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for

summary judgment . . . ." *Id.*  In such instances, a court has discretion to consider affidavits and other documents to resolve the jurisdictional question. *Holt*, 46 F.3d at 1003.

The Sheriffs alone assert this court cannot rely on the background factual allegations in the SACAC in resolving whether the district court properly dismissed, in toto, Plaintiffs' federal action.  *See* Sheriffs' Resp. Br. at 25, 27-30. The Sheriffs argue they mounted a factual attack on the district court's subject matter jurisdiction, obligating the Plaintiffs to produce evidence in support of jurisdiction.  *See id.*[7]  Indeed, in granting the Defendants' various motions to dismiss, the district concluded (1) a party had attacked the factual bases for subject matter jurisdiction and (2) Plaintiffs failed to present evidence in response to that factual attack.  Dist. Ct. Order at 10-11.

---

[7] The record makes clear that none of the other Defendants purported to lodge a factual attack on the district court's subject matter jurisdiction.  A few of the thirteen motions to dismiss note the applicable standard, including the possibility of a factual attack on the district court's jurisdiction, but do not thereafter raise such an attack.  *See* Jt. App. at 788-92 (Dkt. No. 226) (citing relevant standard, but then only citing to the SACAC in addressing *Rooker-Feldman* and *Younger* abstention); *id.* at 924-25 (Dkt. No. 227) (adopting jurisdictional arguments set out in Dkt. No. 226); *id.* at 949 (Dkt. No. 228) (adopting jurisdictional arguments set out in Dkt. No. 226).  Other motions to dismiss neither state the applicable standard nor indicate the possibility of jurisdiction being dependent on a factual dispute.  *See id*. at 980-82 (Dkt. No. 230); *id.* at 1011-13 (Dkt. No. 231); *id.* at 1060-64 (Dkt. No. 232); *id.* at 1077-84 (Dkt. No. 233).  Three motions specifically state that the request for dismissal, although based on the exact same grounds advanced by the Sheriffs, is limited to a facial attack on the district court's subject matter jurisdiction.  *See* Jt. App. at 1226 (Dkt. No. 235); *id.* at 1258-59 (Dkt. No. 236); *id.* at 1290 (Dkt. No. 237).  Two motions do not mention *Rooker-Feldman*, *Younger* abstention, or the *Heck* bar. *See* Jt. App. 1279-1309 (Dkt. No. 237); *id.* at 1311-34 (Dkt. No. 238).

Neither the district court's order, nor the Sheriffs' brief, identifies, in even the barest terms, the jurisdictionally significant facts the Sheriffs' motion supposedly placed at issue or what the Sheriffs' evidence demonstrates as to the existence or nonexistence of those disputed facts. Absent relevant district court findings and meaningful appellate argument, it is not possible to determine, even after digging through every page of an extensive record, whether the Sheriffs raised in the district court a viable factual attack on the federal courts' subject matter jurisdiction. *See Rocky Mountain Wild, Inc. v. United States Forest Serv.*, 56 F.4th 913, 927 (10th Cir. 2022) ("[J]udges are not like pigs, hunting for truffles buried in briefs. Appellants, rather than courts of appeals, must ferret out and articulate the record evidence considered material to each legal theory advanced on appeal." (quotations, citations, and alterations omitted)). At the motion to dismiss stage, a defendant cannot impose upon a plaintiff the obligation of adducing evidentiary support for the existence of federal court subject matter jurisdiction[8] by simply challenging, in summary fashion, the factual basis for the existence of such jurisdiction. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995); *see also Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

---

[8] *But cf. supra* n.6 (noting lack of clarity as to whether the *Heck* bar or *Younger* abstention even implicate federal court subject matter jurisdiction).

This court has, nevertheless, undertaken a laborious review of the record to determine whether the Sheriffs advanced in the district court a viable factual challenge to the district court's subject matter jurisdiction.[9]  To answer that question, this court must focus on the ultimate incorporated document, Docket No. 95.  Docket No. 95 can only be reasonably read as asserting two overarching facts of potential significance to the existence of subject matter jurisdiction.  First, as potentially relevant to *Rooker-Feldman*, Docket No. 95 asserts that court records demonstrate fines and costs were imposed as part of Plaintiffs' sentences and that ability to pay was considered by state court judges at the appropriate time (i.e., upon entry of judgment if no period of incarceration is imposed or, alternatively, upon release from prison following a term of incarceration).  Jt. App. at 237-43.  Second, as potentially relevant to *Younger* abstention, Docket

---

[9] Fifty-three of the sheriff defendants filed two relevant joint motions to dismiss.  The first, Docket No. 239, Jt. App. at 1345-88, a motion to dismiss filed by the sheriffs in their individual capacities, merely incorporates the arguments set out in Docket Nos. 215 and 234.  Notably, Docket No. 215, Jt. App. at 602-36, a motion to dismiss filed by Oklahoma County Sheriff P.D. Taylor, was not resolved in the district court's dismissal order on appeal because Taylor was dismissed as a party defendant before the district court entered its order.  *See* Dist. Ct. Order at 2 n.2; Dist. Ct. Dkt. No. 280.  The second relevant motion to dismiss, one filed by the fifty-three sheriffs in their official capacities, Docket No. 234, Jt. App. 1094-1143, does include attached state court documents.  Jt. App. at 1145-1211.  Those documents are, however, only referenced in the portions of the motion asserting the SACAC fails to state a valid claim for relief, *id.* at 1128-39, not in the section addressing the existence of subject matter jurisdiction, *id.* at 1139-42.  Instead, as is true of Docket No. 239, Docket No. 234 incorporates the arguments set out in Docket No. 215.  Docket No. 215, in turn, incorporates arguments set out in Docket No. 95.  Jt. App. at 620-25.  Docket No. 95, Jt. App. 205-69, is Taylor's motion to dismiss the Plaintiffs' first amended class action complaint.

10

No. 95 alleges that the Oklahoma court system engages in efforts to obtain outstanding court debts from court debtors via a series of hearings and issuance of warrants in conformity with Oklahoma law. Jt. App. at 243-47. Neither of these two sets of overarching facts is contested. Instead, the parties contest their legal significance. And, as set out more fully below, this court concludes neither of these sets of overarching facts make either *Rooker-Feldman* or *Younger* abstention applicable.[10]

Thus, contrary to the Sheriff's assertions, this court is not obligated to ignore the factual allegations in the SACAC, at least as they frame the relevant causes of action raised by Plaintiffs, in resolving whether the district court erred in dismissing the SACAC for lack of subject matter jurisdiction.

## B. The Facts Set Out in the SACAC

Plaintiffs are impoverished individuals convicted of criminal or traffic offenses and assessed fines and fees as part of their sentences. SACAC ¶¶ 1, 2, 6, 18-25, 117, 133, 144.[11] At sentencing, or after release from incarceration following a prison sentence, Plaintiffs were instructed to make payments or set up

---

[10] That is not to say, however, that these two overarching sets of facts are irrelevant to Plaintiffs' causes of action. Indeed, they appear to bear on the veracity of some of the SACAC's merits-based allegations. The important point here, however, is a possible merits-based failure of the SACAC's claims does not bear on the district court's ability and/or obligation to exercise its subject matter jurisdiction over those claims.

[11] The SACAC also alleges numerous additional costs are imposed upon court debtors post-judgment by court administrators. SACAC ¶¶ 1, 2, 117, 133.

payment plans with a "cost administrator."[12]  *Id.* ¶¶ 9, 35-37, 108-09, 118, 134.

According to the SACAC, the illegal debt-collection scheme begins when, after a

missed payment, delay in payment, or multiple requests for an extension, a court

clerk or cost administrator seeks a failure-to-pay arrest warrant without providing

notice to the debtor.  *Id.* ¶¶ 5, 50, 118-21, 136-37.  This warrant request is signed

by a state-court judge as a matter of course, without any scrutiny or hearing, *id.*

¶¶ 5, 33-34, 50, 120, 136, and is executed by a sheriff who is aware no notice or

hearing has been provided, *id.* ¶¶ 30-32.  These arrest warrants, which are issued

solely for nonpayment, are typically listed in state court dockets as "failure to

pay," "FTP," or "bench" warrants.  *Id.* ¶¶ 50, 206.  These warrants are not based

on a failure to attend a court hearing, as there is typically no scheduled hearing

for court debtors to attend.  *Id.* ¶¶ 1-2, 5, 33-37, 50, 95, 121, 136.  This is true,

according to the SACAC, despite the fact a hearing is required under Rule 8.4 of

the Oklahoma Court of Criminal Appeals, which states a debtor "must be given

an opportunity to be heard as to the refusal or neglect to pay [an] installment

when due."  *See* Rule 8.4, Rules of the Oklahoma Court of Criminal Appeals,

Title 22, Ch. 18, App. (hereinafter Okla. R. Crim. App. 8.4).

   After an initial warrant for nonpayment is issued, the court clerk or sheriff

has discretion to transfer a case to Aberdeen for collection, at which point a 30%

---

[12] The SACAC notes as follows with regard to the term "cost
administrator": "In certain counties, a 'cost administrator' sitting within the court
clerk's office handles the day-to-day responsibilities of overseeing debt
collections."  SACAC ¶ 5 n.4.

surcharge is added to the total debt owed.  SACAC ¶¶ 5, 35-37, 57-59, 125, 137, 283.  Transfer results from a contract between Aberdeen and OSA; OSA pays Aberdeen for its collection services from the amount of the surcharge collected from the debtor.  *Id.* ¶¶ 5, 55-59, 125, 137.  Aberdeen has no revenue source other than payments by court debtors.  *Id.* ¶ 107.  The process of transferring a case to Aberdeen and adding the surcharge occurs without notice to the debtor; without involvement of a judge; and without any opportunity for the debtor to be heard. *Id.* ¶¶ 5, 50.

Once Aberdeen takes over collection, it begins repeatedly contacting the debtor and his or her family and threatening arrest to coerce payment.  Aberdeen makes such threats even when it knows the debtor is too poor to pay.  *Id.* ¶¶ 2, 7, 82, 205-11.  Aberdeen has trained its employees to coerce debtors into making payments they cannot afford by (1) claiming the only way to remove an active arrest warrant is to make a payment Aberdeen deems sufficient and (2) threatening the debtor's imminent arrest.  *Id.* ¶¶ 73, 75, 77.  "The threat is explicit and systemic as a matter of policy: pay [Aberdeen] what it demands when it demands it, or be arrested and jailed." *Id.* ¶ 71.[13]  According to the SACAC, Aberdeen's tactics are effective.  Individuals sacrifice basic necessities, beg others for money, and divert money from means-tested disability payments to pay

---

[13] Similarly, the SACAC alleges Aberdeen has implemented policies to obscure the fact that payment to the court, often for a smaller amount, is an option.  SACAC ¶ 83.

13

Aberdeen rather than live under the shadow of an arrest warrant. *Id.* ¶¶ 7, 23, 82, 173, 203. At no point during this process are there any hearings in state court where an individual can contest these unlawful tactics.

If its threats are unsuccessful, Aberdeen contacts court clerks and/or cost administrators to request an arrest warrant for nonpayment. *Id.* ¶¶ 88-90. When Aberdeen makes this request, it does not provide court officials with any of the information it possesses about the debtor's inability to pay. *Id.* Court clerks help Aberdeen seek new arrest warrants based solely on unsworn allegations of nonpayment and without inquiry into the reason for nonpayment or ability to pay. *Id.* ¶¶ 9, 35-37, 62-63, 88-90. These warrants, like the initial failure-to-pay warrants, are routinely issued by judges—without a hearing or providing the debtor any opportunity to explain why he or she did not pay—and executed by the county sheriffs. *Id.* ¶¶ 9-10, 30-34, 64-65, 88-93, 207. Although a hearing should allegedly be provided under Rule 8 of the Oklahoma Criminal Rules, no such hearing is scheduled. *Id.* ¶¶ 92-93. Nor could one be requested prior to the issuance of the warrant because, alleges the SACAC, debtors are provided with no notice. *Id.* Because these warrants are sought without a factual basis in the warrant application or findings in the record about ability to pay, the SACAC alleges the warrants violate, inter alia, the Fourth and Fourteenth Amendments.

When debtors are arrested on failure-to-pay warrants, Sheriffs keep them in jail if they are too poor to pay a fixed sum required for their release—$250 in Tulsa County and the amount of debt owed in Rogers County. *Id.* ¶¶ 10, 31-32,

14

65, 97-98, 128-29, 139.  Those who cannot pay remain in jail for days before they see a Judge.  *Id.*; *see also id.* ¶¶ 25, 209.  Those delayed hearings are often the first time an indigent debtor has a chance to explain to a Judge that she is financially unable to pay.  *Id.* ¶¶ 9-10, 92-98, 120-29, 136-40.  Nevertheless, some Judges, specifically including judges in Rogers County, order individuals to remain in jail and "sit out" their debt if they cannot make a payment when they are eventually brought to court.  *Id.* ¶¶ 10, 98, 140.  Neither Sheriffs, Judges, nor anyone else provide any of the inquiries, findings, or procedural safeguards required by Supreme Court precedent and state law before a person can be jailed for nonpayment.  *Id.* ¶¶ 10, 30-37, 40-45, 79, 88-93.  In sum, the SACAC alleges the practice of detaining persons who are arrested on debt-collection warrants is based only on failure to pay, without any notice or hearing at which a person can challenge the basis for the warrant.  *Id.* ¶¶ 339-44.

**C.  The Causes of Action Set Out in the SACAC**

Count One of the SACAC sets out a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d), against Aberdeen and some of the Sheriffs.  SACAC ¶¶ 274-317.  According to the SACAC, "This RICO Enterprise is an ongoing business relationship with the common purpose of maximizing the collection of court debts by [Aberdeen] without consideration of ability to pay or other required legal process."  *Id.* ¶ 278. The SACAC asserts:

> [Aberdeen] threatens unlawful arrest and incarceration and refuses to
> request that arrest warrants be recalled for the purpose of extracting
> payment of court debts from plaintiffs and members of the proposed
> class without regard to their indigence or ability to pay.  [Aberdeen]
> adds additional fees to the court debts and determines how much
> payment it will require to request that an arrest warrant be lifted or
> defer seeking an arrest warrant (which it knows that the other
> Defendants will issue and execute pursuant to their common
> enterprise), demands such payment under threat of unlawful arrest,
> intentionally conceals alternative options that would avoid issuance
> of an arrest warrant, and seeks warrants for the arrest of persons who
> it knows to be indigent without disclosing such information.  Once a
> person is arrested on an arrest warrant for nonpayment, [Aberdeen]
> calls family members and threatens prolonged incarceration of the
> indigent person if the family does not pay money to [Aberdeen].

*Id.* ¶ 281.  It further alleges the other RICO defendants act in concert with

Aberdeen to further its unlawful debt-collection practices.  *Id.* ¶¶ 282-87.

Count Two of the SACAC claims Defendants' actions in seeking, issuing,

and executing debt-collection arrest warrants based solely on nonpayment of

court debts, without inquiry into ability to pay, violates Plaintiffs' Fourteenth

Amendment right to due process.  *Id.* ¶¶ 318-28.  Count Two is against each of

the three groups of Defendants.  *Id.*

Count Three of the SACAC avers that Defendants' actions in seeking,

issuing, and executing debt-collection arrest warrants based solely on unsworn

allegations of nonpayment containing material omissions violates Plaintiffs'

Fourth Amendment right to not have arrest warrants issued against them in the

absence of probable cause supported by oath or affirmation.  *Id.* ¶¶ 329-38.

Count Three is against each of the three groups of Defendants.  *Id.*

Count Four of the SACAC maintains the Sheriffs and Judges have violated the Plaintiffs' Fourteenth Amendment rights to equal protection and due process by arresting them for the sole reason they are unable to pay outstanding court debts. *Id.* ¶¶ 339-44. In support of this cause of action, the SACAC alleges:

> The Tulsa County Judges set the amount required for those who have been arrested on debt-collection arrest warrants to be released at $250. The Rogers County Judge sets the amount at the total amount owed for those who have been arrested on debt-collection arrest warrants. These payments are pre-set without inquiry into ability to pay. The Rogers and Tulsa Clerks assist in setting and implementing these required fix-sum payments.
>
> Based on the amounts pre-set by the judges, the Tulsa County and Rogers County Sheriffs detain indigent persons on these debt-collection arrest warrants, while allowing those who can make the payment to go free. These practices violate the Fourteenth Amendment.

*Id.* ¶¶ 342-43.

Count Five of the SACAC alleges that jailing court debtors without (1) proof of willfulness of non-payment and (2) pre-deprivation notice and hearing violates state created liberty interests.[14] *Id.* ¶¶ 345-53. Count Five is alleged against all three groups of Defendants. *Id.*

---

[14] Count Five of the SACAC relies, in large part, on the provisions of Okla. Stat. tit. 22, § 983(A) to support the assertion of a state-created liberty interest. Although not relevant to the issues before this court on appeal, we note that § 983 was substantially revised in May of 2022. In particular, the revisions appear designed to alleviate many of the due-process-based problems identified in the SACAC. The revised version of § 983 becomes effective on July 1, 2023. The changes wrought by the revised version of § 983 may well affect the forward-looking claims set out in the SACAC and should be addressed by the parties on remand.

17

Count Six of the SACAC alleges the contract between OSA and Aberdeen delegates law enforcement authority to Aberdeen, while simultaneously creating a significant financial conflict of interest.  *Id.* ¶¶ 354-59.  Given that conflict, the SACAC avers that referral of debt collection to Aberdeen violates the Fourteenth Amendment prohibition against "government law enforcement actors . . . having a direct and personal financial stake in the cases under their authority."  *Id.* ¶ 355. Count Six is alleged against Aberdeen and a subgroup of the Sheriffs.  *Id.*

Count Seven of the SACAC claims the Defendants' "policy and practice of subjecting individuals who owe court debt to onerous collection enforcement methods" violates the Fourteenth Amendment.  *Id*. ¶¶ 360-62.  In support of this claim, the SACAC alleges:

> Individuals who are wealthy enough to pay the full amount of their fines and fees may do so without any continued contact with any governmental official or private contractor.  By contrast, for individuals too poor to pay their court debt, including Plaintiffs, Defendant Judges issue arrest warrants, and Defendant Clerks and the Tulsa Cost Administrator and the Sheriff Defendants, pursuant to the Agreement, transfer Plaintiffs' cases to [Aberdeen].  Defendant Clerks and the Tulsa Cost Administrator then assess an additional 30-percent penalty surcharge to be added to the amount of court debt owed and, depending on the nature of the underlying offense, suspension of a driver's license.  [Aberdeen] then subjects those too poor to pay, including Plaintiffs, to repeated threats of arrests, forces them to pay arbitrary and unachievable amounts to have a warrant recalled, and harasses family members whose contact information they possess.  The Sheriff Defendants arrest persons in connection with these onerous collection enforcement activities.  This policy and practice of subjecting individuals, including Plaintiffs, to more extreme penalties and threats, while allowing those who can afford to pay to be left alone, violates the Equal Protection Clause.

*Id.* ¶ 361.  Count Seven is alleged against all defendants.  *Id.* ¶¶ 360-62.

Counts Eight (abuse of process), Nine (duress), and Ten (unjust enrichment) are all state law claims alleged against Aberdeen and the OSA.  *Id.* ¶¶ 363-72.  Each focuses on the process Aberdeen undertakes in an effort to collect court debt.  *Id.*  None of the three claims challenge the validity of costs and fees set out in a judgment of conviction.  Count Eight asserts:

> [Aberdeen] misuses arrest warrants to further its unlawful scheme and for the improper purpose of extracting revenue from the impoverished plaintiffs.
>
> When a case is transferred to [Aberdeen] for collections, [Aberdeen] exploits the threat that a warrant poses and prolongs the amount of time a warrant remains active with the improper purpose of extracting as much money as possible from debtors.
>
> The [OSA] by renewing the contract (and continuing to refuse to revoke it) with knowledge of Aberdeen's policies and practices, has authorized [Aberdeen] to engage in the abuse of process.

*Id.* ¶¶ 364-66.  Likewise, Count Nine alleges:

> When an individual cannot pay court debt, [Aberdeen] threatens to obtain, or threatens not to recall, a debt-collection arrest warrant even when it knows that the individual is indigent, that the individual cannot afford to pay, and thus that there are no lawful grounds for an arrest warrant.  Plaintiffs have paid [Aberdeen] because of these threats, and in return, [Aberdeen] has recalled warrants and/or not sought new warrants.  [Aberdeen] engages in this practice with full knowledge of debtors' lack of sophistication and vulnerability to these threats.

*Id.* ¶ 369.  Finally, Count Ten claims:

> Plaintiffs . . . have paid money that has enriched [Aberdeen] and the [OSA].  [Aberdeen] obtained these payments through unjust methods, including threatening arrest and concealing Plaintiffs' legal rights.  The transfer of money from Plaintiffs to [Aberdeen] has resulted in the injustice of Plaintiffs struggling to obtain the basic necessities of life and the perpetuation of an extortionate scheme.

*Id.* ¶ 372.

Finally, the SACAC contains the following prayer for relief:

a. Certification of the classes, represented by the named Plaintiffs . . . ;

b. An award of treble damages as authorized by RICO, 18 U.S.C. § 1964(c);

c. An order declaring it unlawful for Defendants to seek, issue, and execute debt collection arrest warrants based solely on alleged nonpayment, and similarly that it is unlawful to seek, issue, and execute such warrants without inquiry into ability to pay, consideration of alternatives, pre-deprivation process, and factual allegations based on oath or affirmation;

d. An order prohibiting [Aberdeen] and the [Sheriffs] . . . from seeking or enforcing debt-collection arrest warrants based on nonpayment without making inquiry into the warrant subject's ability to pay and consideration of alternatives;

e. An order declaring it unlawful for [Judges] to issue debt-collection arrest warrants on the basis of unsworn statements, and declaring the same unconstitutional;

f. An order prohibiting the Tulsa County and Rogers County Sheriffs from holding individuals arrested on debt-collection arrest warrants in jail unless they pay a pre-set sum, without any inquiry into ability to pay and without advancing a compelling government interest, and declaring the same unconstitutional;

g. An order enjoining Defendants from using a debt collection company that exercises control over debtors' liberty and also has a direct financial interest to infringe on that liberty, and declaring the same unconstitutional;

h. An order enjoining the practice of subjecting individuals too poor to pay their court debts to more onerous collection methods, including, but not limited to, imposing additional financial penalties, threats of arrest, arrest and detention, and declaring the same unconstitutional;

i. An order enjoining the collection of a 30-percent penalty surcharge from individuals too poor to pay their court debt, and

declaring the assessment of that penalty, without any inquiry into an individual's ability to pay, unconstitutional;

j.   An award of compensatory and punitive damages;

k.   An award of declaratory and injunctive relief;

l.   An award of Plaintiffs' costs and reasonable attorneys' fees; and

m.  An order of such other relief as the Court deems just and appropriate.

## III.  DISCUSSION

### A.  *Rooker-Feldman*

#### 1.  Legal Background

*Rooker-Feldman* prevents federal courts, with the notable exception of the United States Supreme Court, from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The doctrine is tied to Congress's decision to vest federal appellate jurisdiction over state court judgments exclusively in the United States Supreme Court.  *Id.* at 283; 28 U.S.C. § 1257.

*Rooker-Feldman*'s jurisdictional bar applies when "(1) the plaintiff lost in state court, (2) the state court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the plaintiff filed the federal claim, and (4) the plaintiff is asking the district court to review and reject the state court judgment." *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 746 (10th Cir. 2023).

When these predicates are present, lower federal courts lack subject matter jurisdiction. *Lance v. Dennis*, 546 U.S. 459, 464 (2006). Importantly, *Rooker-Feldman*'s jurisdictional bar is claim specific. *Flanders v. Lawrence (In re Flanders)*, 657 F. App'x 808, 814 (10th Cir. 2016) (unpublished disposition cited solely for its persuasive value) (This court "independently consider[s] each claim against the backdrop of the *Rooker-Feldman* doctrine.").[15]

The jurisdictional limitation recognized in *Rooker-Feldman* is narrow. *Lance*, 546 U.S. at 464; *Exxon Mobil*, 544 U.S. at 292. To apply, a litigant's claim must specifically seek to modify or set aside a state court judgment. *Exxon Mobil*, 544 U.S. at 292-93. *Rooker-Feldman* does not bar a federal court claim merely because it seeks relief inconsistent with a state court judgment. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) ("If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court.").[16]

---

[15] *See also Behr v. Campbell*, 8 F.4th 1206, 1213 (11th Cir. 2021) ("*Rooker-Feldman*, being a narrow and limited doctrine, requires a . . . targeted approach. The question isn't whether the whole complaint seems to challenge a previous state court judgment, but whether resolution of each individual claim requires review and rejection of a state court judgment."); *Isaacs v. DBI-ASG Coinvestor Fund, III, LLC (In re Isaacs)*, 895 F.3d 904, 912 (6th Cir. 2018) ("The *Rooker- Feldman* doctrine is properly applied on a claim-by-claim basis, even though it is jurisdictional in nature.").

[16] *See also Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1174-76 (10th Cir. 2018) (explaining *Rooker-Feldman* does not bar a federal claim "just because it could result in a judgment inconsistent with a state-court judgment"); *Bolden v. City of Topeka*, 441 F.3d 1129, 1145 (10th Cir. 2006) ("*Rooker-Feldman* does not bar federal-court claims that would be identical even had there been no state-

Instead, for the doctrine to apply, "an element of the claim must be that the state court wrongfully entered its judgment." *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012).[17]

## 2. District Court Decision

Without referencing the specific causes of action set out therein, the district court concluded the entirety of the SACAC "falls within the confines of the *Rooker-Feldman* doctrine." Dist. Ct. Order at 11. The heart of the district court's analysis in this regard is as follows:

---

court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment.").

[17] As we held in *Mayotte*,

[The Supreme Court's and this court's] precedents establish that *Rooker-Feldman* does not deprive a federal court of jurisdiction to hear a claim just because it could result in a judgment inconsistent with a state-court judgment. There is no jurisdictional bar to litigating the same dispute on the same facts that led to the state judgment. . . .

What is prohibited under *Rooker-Feldman* is a federal action that tries to modify or set aside a state-court judgment because the state proceedings should not have led to that judgment. Seeking relief that is inconsistent with the state-court judgment is a different matter, which is the province of preclusion doctrine. Thus, there would be a *Rooker-Feldman* issue if the federal suit alleged that a defect in the state proceedings invalidated the state judgment. That was what *Rooker* was about—alleged violations of due process, equal protection, and the Contract Clause by the state court. But attempts merely to relitigate an issue determined in a state case are properly analyzed under issue or claim preclusion principles rather than *Rooker-Feldman*.

880 F.3d at 1174-75 (emphasis, citations and quotation omitted).

The public records repeatedly reflect the assessment of costs and fines as part of the sentences imposed, findings by the state district courts regarding Plaintiffs' ability to pay, installment payment plans, and review of financial status.  Plaintiffs challenge these various rulings claiming that "exorbitant" costs and fines were imposed in the first instance, certain costs were included of which they were not advised, and that the sentencing proceedings were flawed for want of actual judicial consideration of their ability to pay as required by state law.  Plaintiffs further claim they have been imprisoned without a proper determination that they had the means to pay the costs, fines, and fees assessed against them, however in those instances the record reflects Plaintiffs chose not to appear for such a determination.  Not only do Plaintiffs seek to directly attack these various individual state court determinations, but because the costs and fines assessed are part of the sentence imposed against them, their claims are inextricably intertwined with the Judgments and Sentences themselves.

Dist. Ct. Order at 12 (footnotes omitted).[18]  In elucidating this ruling, the district court concluded Plaintiffs lost in state court, for *Rooker-Feldman* purposes,

---

[18] This court has clarified that use of the term "inextricably intertwined" is, after the Court's decision in *Exxon Mobil*, not helpful in analyzing the applicability of *Rooker-Feldman*.  *See Campbell*, 682 F.3d at 1282-83.  *Campbell* recognized "difficulty in interpretation ha[d] arisen because of the Court's use of the term *inextricably intertwined* in explicating its decision" in *Feldman*.  682 F.3d at 1282.  In parsing *Feldman*'s use of that term, *Campbell* held the "Court certainly did not mean that a claim is inextricably intertwined with a judgment just because the issues raised by the claim had been (or could have been) resolved in the proceedings leading to the judgment."  *Id.*  Thus, *Feldman*'s use of the term "does not bar an action just because it seeks relief inconsistent with, or even ameliorative of, a state-court judgment."  *Id.*  In any event, no matter the meaning it meant to attach to this terminology, "the Supreme Court has reformulated the *Rooker-Feldman* doctrine, apparently out of concern that the doctrine 'ha[d] sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law.'"  *Id.* at 1283 (quoting *Exxon Mobil*, 544 U.S. at 283).  Accordingly, *Campbell* made clear it is "best to follow the Supreme Court's lead, using the *Exxon Mobil* formulation and not trying to untangle the meaning of inextricably intertwined.  The essential point is that barred claims are

because each was "sentenced and a judgment was entered that included fees, costs and/or fines." *Id.* at 14.  The district court ruled the relevant state court proceedings were final before the filing of the SACAC because, although such avenues were available, Plaintiffs did not seek further review in state court.[19]  Consistent with its conclusion that Plaintiffs lost in state court because their criminal judgments obligated them to pay court fines, fees, and/or costs, the district court concluded the claims set out in the SACAC arose from injuries imposed by those same judgments.  *Id.* at 15-17.  Finally, the district court decided Plaintiffs were seeking review of the relevant state court judgments because they were seeking "money damages in an effort to put themselves in the same position they would have been in had they never received their state court judgments."  *Id.* at 18.

---

those complaining of injuries caused by state-court judgments.  In other words, an element of the claim must be that the state court wrongfully entered its judgment."  *Id.* (emphasis and quotation omitted).  Given this analysis in *Campbell*, we reject Aberdeen's and the Sheriffs' attempts to expand the reach of *Rooker-Feldman* by arguing that even if Plaintiffs' claims do not assert injuries flowing directly from an improperly entered state court judgment, the injuries alleged are nevertheless inextricably intertwined with the state court judgment.

[19] The district court did not attempt to explain how this conclusion was consistent with its later ruling, discussed *infra*, that Plantiffs' state court proceedings were ongoing for purposes of *Younger* abstention.

### 3. Analysis[20]

The district court erred in concluding any aspect of the SACAC amounts to a complaint of injury caused by a state court judgment. *See Miller v. Deutsche Bank Nat. Trust Co. (In re Miller)*, 666 F.3d 1255, 1260 (10th Cir. 2012) ("We review the application of the *Rooker-Feldman* doctrine de novo."). The SACAC does not allege Plaintiffs were wrongly convicted of their underlying offenses. Nor does it challenge Plaintiffs' sentences or, most importantly for the purposes of this appeal, the fines, fees, and costs assessed by a state court and set out in the state court judgment of conviction.[21] Instead, every one of the ten claims set

---

[20] The Judges do not defend the district court's invocation of *Rooker-Feldman* to dismiss the SACAC. *See generally* Judges' Response Br. (only seeking affirmance of the district court's order of dismissal on the basis of *Younger* abstention).

[21] It is certainly true that the SACAC challenges fees imposed on court debtors post-judgment, although the only such fee identified in the SACAC is the 30% surcharge added to any court debt transferred to Aberdeen for collection. *See* Okla. Stat. tit. 19, § 514.5; *see also* SACAC Prayer for Relief ¶ h. ("An order enjoining the practice of subjecting individuals too poor to pay their court debts to more onerous collection methods, including, but not limited to, imposing additional financial penalties . . . ."); *id.* ¶ i. ("An order enjoining the collection of a 30-percent penalty surcharge from individuals too poor to pay their court debt, and declaring the assessment of that penalty, without any inquiry into an individual's ability to pay, unconstitutional."). Notably, neither the district court nor the Defendants offer up any reason to support the notion that *Rooker-Feldman*, which focuses on attempts to modify a state-court judgment because that judgment was wrongfully entered, *Campbell*, 682 F.3d at 1283, applies to such claims. Nor has this court been able to locate any such precedent. And, to the extent the SACAC amounts to a challenge to the constitutionality of § 514.5, any such challenge does not implicate *Rooker-Feldman*. *See Skinner* 562 U.S. at 532 ("As the Court explained in *Feldman*, and reiterated in *Exxon*, a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action.").

26

out in the SACAC challenges debt-collection practices commenced after Plaintiffs are convicted and sentenced—practices allegedly including threats, arrests, and confinement without inquiry into ability to pay.  Simply put, "there is no need to set aside" Plaintiffs' criminal convictions or sentences, or "even consider the validity" of those judgments, for Plaintiffs to prevail on the claims set out in the SACAC.  *See Mayotte*, 880 F.3d at 1176.  Importantly, this court has specifically held that *Rooker-Feldman* does not apply to "separate and distinct claim[s] challenging the post-judgment enforcement procedures ordered by the state courts."  *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1171 (10th Cir. 1998).  In *Kiowa Tribe*, the Tribe sought injunctive relief against creditors and state-court judges to prevent the use of state-court processes to seize money from the Tribe pursuant to civil-court judgments.  *Id.* at 1167-68. This court reversed the district court's *Rooker-Feldman*-based dismissal of the Tribe's action, concluding Supreme Court precedent "demonstrates that asking a federal court to enjoin post-judgment collection procedures that allegedly violate a party's federal rights is distinguishable from asking a federal court to review the merits of the underlying judgment."  *Id.* at 1170.[22]

In concluding otherwise, the district court failed to grapple with the causes of action set out in the SACAC.  Aberdeen's and the Sheriffs' arguments on

---

[22] It is worth noting that the district court did not consider the impact of *Kiowa Tribe*.  On appeal, Aberdeen merely cites the case in a string cite for the proposition that this court reviews the applicability of *Rooker-Feldman* de novo.  *See* Aberdeen Response Br. at 8.  Although the Sheriffs do recognize the potential importance of

appeal suffer from the same defect.[23]   The ten causes of action set out in the

SACAC make clear Plaintiffs in no way challenge their underlying state-court

---

*Kiowa Tribe*, they dismiss its applicability by simply asserting the SACAC, without reference to the claims set out therein, seeks to attack the fines, fees, and costs set out in the Plaintiffs' criminal judgments.  See OSA Response Br. at 37.  As noted above and below, this assertion is simply not borne out by any reasonable reading of the SACAC.

[23] In its response brief, Aberdeen cites to a number of allegations in the complaint indicating Plaintiffs are indigent and, thus, unable to pay, at least at this time, previously imposed court debts.  Aberdeen Response Br. at 9-10.  Based on these allegations, Aberdeen asserts the claims in the SACAC must be read as challenges to the Plaintiffs' sentences.  This argument is a non sequitur.  The factual allegations identified by Aberdeen cannot reasonably be read as a challenge to the underlying criminal judgments.  Instead, these allegations relate to the SACAC's claims that forcing indigent court debtors to pay those debts, specifically when they flow from an admittedly valid judgment of conviction, violates the Fourteenth Amendment.

For their part, the Sheriffs assert that because initial imposition of fines, fees, and costs was in many cases accompanied by a determination Plaintiffs had an ability to pay, the claims in the SACAC must necessarily be read as a challenge to the underlying judgments of conviction.  OSA Response Br. at 37.  The problem with the Sheriffs' argument is two-fold.  First, the record demonstrates that not every sentencing proceeding leading to an imposition of a fine, fee, or cost included a co-terminus determination of ability to pay.  *See, e.g.*, Jt. App. at 369.  Nevertheless, the Sheriffs sought, and the district court granted, a blanket dismissal of the claims set out in the SACAC.  That is the order before this court on appeal.  In any event, the Sheriffs have not identified any precedent supporting the notion a judicial finding of ability-to-pay entered at sentencing is effective in perpetuity.  Indeed, the very filing the Sheriffs incorporated in seeking dismissal on the basis of *Rooker-Feldman*, Docket No. 95, eschews such an assertion.  Jt. App. at 239 ("Naturally, an offender's cost obligations must be periodically reviewed, as financial ability to pay is not a static condition."); *see also Bearden v. Georgia*, 461 U.S. 660, 666 n.8 (1983) ("[A] defendant's level of financial resources is a point on a spectrum rather than a classification.").  A state court finding at sentencing that a defendant is presently financially able to pay a fine does not serve as a jurisdictional bar under *Rooker-Feldman* to Plaintiffs' claims that they were unconstitutionally forced to pay court debts post-judgment despite their then-present indigency.

judgments or the amount of court debt imposed at sentencing.  *See supra* II.C.

(reciting each of the ten causes of action set out in the SACAC).  Instead, those

causes of action reflect allegations that Defendants—specifically including

Aberdeen, a group of private actors whose unconstitutional conduct is entirely

independent of the underlying state-court judgments—have engaged in

unconstitutional practices in the collection of court debts, often long after

judgments against Plaintiffs were entered.  None of these claims cast doubt on the

validity of Plaintiffs' convictions and sentences, including the amount of court

debt they were ordered to pay.  *But cf. supra* n.21.  Plaintiffs' claims "assert

injury from a source other than the state court judgments" and "are therefore

independent claims outside the scope of the *Rooker-Feldman* doctrine."

*McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006).  If Plaintiffs

succeeded on every element of every cause of action set out in the SACAC,

absolutely nothing would change about their underlying judgments of conviction

or the assessments of fines, fees, and costs set out therein.  *Id.* ("The key point is

that the source of the injury must be from the state court judgment itself; a claim

alleging another source of injury is an independent claim.").[24]

---

[24] The district court also erred in relying on Plaintiffs' request for money
damages.  *See* Dist. Ct. Order at 18 ("Plaintiffs seek money damages in an effort
to put themselves in the same position they would have been in had they never
received their state court judgments.  This is precisely the sort of backward-
looking request for personal compensation that *Rooker-Feldman* prohibits."
(quotation omitted)).  As explained above, no claim for relief set out in the
SACAC can reasonably be read as seeking to recover the amount of court debt
originally imposed in the judgment of conviction.  Rather, each claim for

Finally, the district court erred in relying on "avenue[s] of recourse" under state law, including Rule 8 of the Oklahoma Court of Criminal Appeals, as a basis to apply *Rooker-Feldman*. Dist. Ct. Order at 13 & 18 ("Plaintiffs' complaints regarding the imposition of costs and fines and/or failure of the [state] district courts to follow appropriate procedures outlined by statute and court rule, could have been challenged on appeal to the Court of Criminal Appeals. Plaintiffs may not circumvent numerous opportunities for appellate review and attempt to seek what is nothing more than a collateral appeal of those state court determinations in this Court by claiming they have been injured by the adverse decisions rendered against them.").[25]  *Rooker-Feldman* "does not impose a duty to exhaust judicial and administrative remedies before pursuing a federal civil rights suit." *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006). Accordingly, even if

---

monetary relief in the SACAC seeks to make Plaintiffs whole for the alleged constitutional, statutory, and state-law violations Plaintiffs suffered as a result of Defendants' post-judgment collection methods. Furthermore, the district court did not account for the fact the SACAC seeks prospective equitable relief for almost all claims set out therein. This type of purely forward-looking relief does not fall within *Rooker-Feldman*'s rubric. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1237-38 (10th Cir. 2006). Again, as noted above, *see supra* n.15 and accompanying text, the applicability of the narrow *Rooker-Feldman* doctrine is claim specific.

[25] As noted below, *see infra* n.34, Plaintiffs and Amici Curiae vigorously contest the district court's conclusion that the procedures set out in Rule 8 amount to an adequate state-court avenue to address the claims alleged in the SACAC. This court need not resolve this question in the context of the applicability of *Rooker-Feldman* because exhaustion plays no part in the applicability of the doctrine. And for the reasons set out below, it is also unnecessary to resolve that question in the context of the applicability of *Younger* abstention. *See id.*

Plaintiffs could have brought their claims in new or additional state-court
proceedings, *Rooker-Feldman* would not have required them to do so before
filing this suit.

Because no aspect of the claims set out in the SACAC seeks relief for
harms caused by the entry of judgments of conviction or asserts that the
judgments of conviction were wrongly entered, the district court erred in
concluding *Rooker-Feldman* deprived it of jurisdiction to hear the claims set out
in SACAC.

## B.  The *Heck* Bar

### 1.  Legal Background

In *Heck*, the Supreme Court confronted whether a federal litigant can
"challenge the constitutionality of his conviction in a suit for damages under
42 U.S.C. § 1983." 512 U.S. at 478.  In answering this question, the court was
required to reconcile two acts of Congress, § 1983 and 28 U.S.C. § 2254.  *Id.* at
480 ("[T]his case lies at the intersection of the two most fertile sources of
federal-court prisoner litigation—the Civil Rights Act of 1871, 42 U.S.C. § 1983,
and the federal habeas corpus statute, 28 U.S.C. § 2254." (citations omitted)).  In
particular, *Heck* confronted a § 1983 claim brought "to recover damages for
allegedly unconstitutional conviction or imprisonment, or for other harm caused
by actions whose unlawfulness would render a conviction or sentence invalid."
*Id.* at 486.  Allowing such actions to proceed had the potential to seriously upset
the balance between the two relevant provisions.  *See Butler v. Compton*, 482

F.3d 1277, 1279 (10th Cir. 2007) (holding that "[t]he purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions").  To preserve the historic purposes of § 2254, *Heck* held that to be able to proceed under § 1983, a "plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  512 U.S. at 486-87.[26]

Of course, the *Heck* bar only applies when the potential conflict animating the rule exists.  Thus, when a litigant seeks relief in a § 1983 suit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  *Id.* at 487.[27]  If the relevant cause of action would necessarily imply the invalidity of a litigant's conviction or sentence, that claim "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Id.*

---

[26] Although *Heck* involved a § 1983 suit for damages, the Supreme Court has subsequently made clear that the policies underlying the *Heck* bar also apply to claims for equitable and declaratory relief.  *Wilkinson v. Dotson*, 544 U.S. 74, 80-81 (2005).

[27] *See also Wallace v. Kato*, 549 U.S. 384, 393 (2007) (holding *Heck* bar applicable only when there exists a criminal conviction the § 1983 cause of action would necessarily impugn); *Butler*, 482 F.3d at 1279 ("[A] § 1983 action implicates *Heck* only as it relates to the conviction that it would be directly invalidating.").

"But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.*[28]

## 2. District Court Decision

The district court concluded Plaintiffs' federal causes of action are all barred by *Heck*.  Dist. Ct. Order at 21.  In so concluding, the district court began by asserting Plaintiffs' "§ 1983 claims are premised on the argument that Defendants have a 'policy and practice of arresting and confining individuals on debt-collection arrest warrants issued based on unsworn statements, without inquiry into the individuals' ability to pay or other pre-deprivation process, and on warrant applications that no reasonable person could believe were sufficient to

---

[28] In *Jiron v. City of Lakewood*, 392 F.3d 410, 413 n.1 (10th Cir. 2004), this court indicated the *Heck* bar is not a jurisdictional doctrine.  *Johnson v. Spencer*, 950 F.3d 680, 697 (10th Cir. 2020), labeled as dicta that statement in *Jiron*. *Johnson* recognized, however, that several of this court's unpublished cases have relied on *Jiron* for the proposition it is permissible to skip over the *Heck* bar and resolve cases on the merits because *Heck* is not a jurisdictional doctrine.  *See id.* (collecting cases).  *Johnson* further recognized that at least one other circuit has held that the *Heck* bar is not jurisdictional.  *Id.* (citing *Polzin v. Gage*, 636 F.3d 834, 837 (7th Cir. 2011) (per curiam)).  Because neither party raises this issue, let alone explains how it might affect the way this court should proceed in resolving this appeal, we do not consider the matter further.  This is particularly true given this court has held that even if a *Heck*-based dismissal is entered by a district court pursuant to Fed. R. Civ. P. 12(b)(6) it must be a without-prejudice dismissal.  *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 560 n.5 (10th Cir. 1999).

justify arrest.'" *Id.*[29]  With that background principle in mind, the district court simply ruled that "Plaintiffs' §1983 claims in this case, if successful, would necessarily undermine a basic characteristic—i.e., the imposed fees, fines and/or costs—of their plea agreements and criminal sentences." *Id.* at 22.  Finally, the district court bolstered its apparent conclusion that every cause of action set out in the SACAC was an attack on the validity of the underlying criminal judgment by reference to the nature of plea agreements:

> This outcome is all the more appropriate considering some Plaintiffs pled guilty and voluntarily entered into plea agreements, and their sentences were the primary issue for consideration in the plea proceedings.  It is well established that, much like a contract between two parties, a plea agreement represents an exchange of promises that must be fulfilled.  Just as a defendant has an enforceable expectation that the government will abide by the terms of a plea agreement, so too does the State.  And, yet, by bringing this action, Plaintiffs seek to invalidate a portion of their plea agreements.  Because judgment in favor of Plaintiffs on their claims would seek to invalidate a portion of their sentences, *Heck* bars their Section 1983 claims.

*Id.* at 22-23 (citations omitted).

---

[29] Although the district court's order does not cite the source of this quoted language, it appears in paragraph 30 of the SACAC, a paragraph dealing specifically with the conduct of the individual sheriff defendants.  The district court did not examine how or whether this specific allegation bears on the applicability of the *Heck* bar to Plaintiffs' claims against other Defendants, including other Defendants who fall within the "Sheriffs" umbrella.

### 3. Analysis[30]

For those same reasons discussed above as to the inapplicability of *Rooker-Feldman*, the district court erred in concluding any one of the claims set out in the SACAC, let alone the SACAC in its entirety, are subject to the *Heck* bar. *Butler*, 482 F.3d at 1278 (holding that the question whether "*Heck* applies to bar" a plaintiff's § 1983 claim is one of law subject to de novo review).[31]  The causes of action set out in the SACAC, taken together with the SACAC's prayer for relief, do not threaten to imply the invalidity of Plaintiffs' underlying convictions or any component part of the sentences imposed.  *See Heck*, 512 U.S. at 487; *Butler*, 482 F.3d at 1279 ("[A] §1983 action implicates *Heck* only as it relates to

---

[30] As is true with regard to the district court's invocation of *Rooker-Feldman* to conclude it lacked jurisdiction to hear the claims set out in the SACAC, the Judges do not defend the district court's invocation of the *Heck* bar to dismiss the SACAC.  *See generally* Judges' Response Br. (only seeking affirmance of the district court's order of dismissal on the basis of *Younger* abstention).

[31] Given this holding, it is not necessary to consider whether the *Heck* bar is applicable to the RICO and state-law claims set out in the SACAC.  *Swan v. Barbadoro*, 520 F.3d 24, 26 (1st Cir. 2008) ("*Heck*'s bar cannot be circumvented by substituting a supposed RICO action . . . ."); *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) ("On appeal, plaintiff argues that the *Heck* bar should apply equally to the state law claims.  Not surprisingly, plaintiff offers no authority to support this proposition.  In fact, *Heck* specifically concerned the clash between § 1983 and the federal habeas corpus statute, [28] U.S.C. § 2254."); *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 652 n.3 (5th Cir.2007) (holding appellant waived any argument *Heck* bar did not apply to state-law claims by failing to raise such an argument on appeal).

the conviction that it would be directly invalidating.").  Thus, those claims are

not *Heck* barred and "should be allowed to proceed."  512 U.S. at 487.

In reaching the opposite conclusion, the district court reasoned that

application of *Heck* to the SACAC is "all the more appropriate" because "some

Plaintiffs pled guilty and voluntarily entered into plea agreements, and their

sentences were the primary issue for consideration in the plea proceedings."

Dist. Ct. Order at 22.  This court does not perceive the relevance of the district

court's analysis.  No claim set out in the SACAC calls any aspect of the

underlying criminal judgments into question, whether obtained by a jury verdict

or plea agreement.  If the district court intended to imply that individual plaintiffs

who entered into plea agreements setting out an agreed-upon fine, fee, or cost

forever thereafter gave up the right to challenge any method employed by state

and private actors to collect court debts, it did not identify any precedent

supporting such a result.  Such a rule does not appear anywhere in *Heck* or this

court's decisions interpreting *Heck*.

## C. *Younger* Abstention

### 1. Legal Background

"[M]any of Congress's statutory grants of subject matter jurisdiction

operate to create concurrent jurisdiction between state and federal courts."  *Elna*

*Sefcovic, LLC*, 953 F.3d at 667.  This jurisdictional overlap "is of no

significance" as to the existence of federal court subject matter jurisdiction.  *Id.*

(quoting *Exxon Mobil*, 544 U.S. at 292, for the following proposition: "the

Supreme Court 'has repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction" (further quotation omitted)).  Furthermore, federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them.  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  Nevertheless, in exceptional circumstances, "[c]omity or abstention doctrines may . . . permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation."  *Exxon Mobil*, 544 U.S. at 292; *Colo. River*, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule.").

One such circumstance is set out in *Younger*: "a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in 'certain instances in which the prospect of undue interference with state proceedings counsels against federal relief.'"  *Elna Sefcovic, LLC*, 953 F.3d at 669-70 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)); s*ee also Younger,* 401 U.S. at 43 ("Congress has . . . manifested a desire to permit state courts to try state cases free from interference by federal courts.").  *Younger* abstention "applies to three categories of state cases: (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Elna Sefcovic LLC*, 953 F.3d at 670

(quotations omitted).  As is true of abstention generally, "[o]nly exceptional circumstances merit *Younger* abstention."  *Id.* (quotation omitted).

*Younger* abstention is required when three conditions are satisfied.  First, the relevant state court proceeding must be "ongoing."  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997).  Second, the state forum must provide an adequate opportunity to raise the relevant federal claims.  *Taylor*, 126 F.3d at 1297.  Third, an important state interest must be present.  *Id.*  Once these requirements have been met, "*Younger* abstention dictates that federal courts not interfere."  *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir.1999) (quotation omitted).  The principles underlying *Younger* abstention apply, in most circumstances, without regard to the relief requested.  *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223. 1228 (10th Cir. 2004).  Thus, claims for declaratory relief and injunctive relief are subject to outright dismissal.  *Id.*  "[T]he *Younger* doctrine extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding."  *Id.*  Notably, however, as to claims for money damages, the appropriate course is "staying proceedings on the federal damages claim until the state proceeding is final."  *Id.* & n.1.[32]

---

[32] It is unclear in this circuit whether *Younger* abstention implicates federal courts' subject matter jurisdiction.  In *D.L.*, we stated "*Younger* abstention is jurisdictional."  392 F.3d at 1228 (citing *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 100 n.3 (1998)).  In *Elna Sefcovic, LLC*, on the other hand, we

## 2. District Court Decision

The district court concluded the state proceedings at issue in the SACAC were of the type to which *Younger* applied and that the three requirements for application of *Younger* were satisfied in this case. The district court first ruled "several of"[33] Plaintiffs' cases are ongoing. Dist. Ct. Order at 20 ("Plaintiffs

---

indicated that "when cases present circumstances implicating [abstention] doctrines, no question is raised as to the court's subject matter jurisdiction." 953 F.3d at 667-68. In support of this conclusion, *Elna Sefcovic LLC* cited to *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1230 n.8 (10th Cir. 2013). As to this question, *D.A. Osguthorpe*, held as follows:

> [T]he federal district court suggested that the *Younger* doctrine is jurisdictional. This is not precisely correct. *Younger* is a doctrine of abstention. An abstention doctrine is one "under which a District Court may decline to exercise or postpone the exercise of its jurisdiction." *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). This differs from a case in which the district court is barred at the outset from exercising its jurisdiction. That said, we also acknowledge that once a court has properly determined that *Younger* abstention applies, "there is no discretion to grant injunctive relief." *Colorado River*, 424 U.S. at 816 n.22.

*Id.* As noted above, the district court dismissed all of Plaintiffs' claims for lack of subject matter jurisdiction. No party has addressed, let alone suggested, that the jurisdictional/non-jurisdictional nature of the *Younger* doctrine affects how this court should address the issues on appeal. *Cf. Goings v. Sumner Cnty. Dist. Attorney's Office*, 571 F. App'x 634, 639-40 & n.4 (10th Cir. 2014) (unpublished disposition cited solely for its persuasive value) ("For our purposes—formal semantics aside—the salient point is that *Younger* required the district court *not to rule* on the merits of [the] complaint."). Given that dismissal without prejudice is the proper result whether or not *Younger* abstention affects a federal court's subject matter jurisdiction, *see id.*, this court does not further consider the doctrine's jurisdictional pedigree.

[33] The record reveals that many months prior to the district court's issuance of its order of dismissal, Graff no longer had any outstanding court debts. Dist. Ct. Dkt. 342 (withdrawing Graff's request for preliminary injunctive relief because she "no longer has an active arrest warrant nor outstanding court debts in

have pled guilty to the underlying infractions and, as part of their sentence, have
agreed to pay, or have been sentenced to pay, certain fines and costs associated
with their violations. . . .   [T]hey have admittedly failed to satisfy their plea
agreements.").   As to the second requirement of *Younger* abstention, the district
court concluded "Oklahoma provides an adequate forum to hear [Plaintiffs']
federal claims."  *Id.*[34]  It then resolved the third *Younger* requirement was
satisfied because Oklahoma "has a substantial interest in ensuring its laws are

---

Rogers County").  The district court did not explain why it was appropriate to
abstain under *Younger* as to the claims asserted by any particular Plaintiff that did
not have ongoing state court proceedings.

[34] In this regard, the district court opined as follows:

> Plaintiffs can assert, in their underlying case, that the procedures
> employed regarding collections of the fines were improper and/or
> unconstitutional for purposes of determining whether those fines are
> appropriate and whether they should be enforced against them.
> Plaintiffs can also claim that the fines were improperly increased [as
> part of the process of referring the debts to Aberdeen for collection]
> in those proceedings.  Indeed, Plaintiffs' general claims in this case
> center on their argument that they were impermissibly deprived of a
> hearing on whether they are capable of paying the fine and/or
> whether additional issues should be taken into consideration by the
> Court in that regard.  Plaintiffs can make any and all constitutional
> arguments to the state court regarding their fines and/or the
> procedures to collect them.  Likewise, Plaintiffs can appeal any
> adverse determination concerning their ability to pay under Rule 8.

Dist. Ct. Order at 20.  In so concluding, the district court appears to have
disregarded paragraphs 73, 82, and 83 of the SACAC which allege Aberdeen
actively prevents individuals from pre-deprivation access to potentially available
state court proceedings.  In any event, Plaintiffs vigorously contest the district
court's conclusion that the procedures set out in Okla. Crim. App. R. 8 provide an
adequate forum to vindicate their federal claims.  This court resolves this case at
*Younger*'s first requirement, concluding Defendants' post-judgment efforts to
collect fines and costs do not amount to "ongoing proceedings."

enforced and that its statutory fines and fees are paid by identified offenders." *Id.*

### 3. Analysis

The district court erred in concluding it was obligated to abstain under *Younger* as to the entirety of the SACAC. *Courthouse News Serv. v. N.M. Admin. Off. of Cts.*, 53 F.4th 1245, 1254 (10th Cir. 2022) ("A district court's decision on whether to abstain under the *Younger* doctrine is reviewed de novo."). In so holding, this court narrowly concludes that *Younger* does not apply because the overall process of collecting court debts, beginning after the entry of the criminal judgment to payment of the last dollar owed, does not amount to a single ongoing state proceeding for purposes of *Younger*. Because this conclusion rejects the only basis underlying the district court's abstention decision, this court need go no further to resolve this appeal.[35]

Invoking *Younger* is only appropriate when failing to abstain would disturb an ongoing state proceeding. *Steffel v. Thompson*, 415 U.S. 452, 460-62 (1974) (holding that if state proceedings are not ongoing, abstention is improper because "the relevant principles of equity, comity, and federalism have little force").

---

[35] Defendants did not assert below, and do not assert on appeal, that *Younger* abstention is appropriate as to some group of Plaintiffs because those Plaintiffs are in discrete proceedings in state court. Instead, their theory has always been that every aspect of the SACAC's claims regarding Defendants' debt-collection activities, even those activities that might have concluded years ago, are subject to abstention because state-court proceedings count as ongoing from entry of judgment to final payment of court debts. That is the only theory this court considers and rejects on appeal.

State proceedings are no longer ongoing when a criminal conviction and sentence are entered and the time to appeal expires. *Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006). *Younger* itself make this clear. John Harris, the plaintiff in *Younger*, challenged the constitutionality of a California criminal statute and requested an injunction against the statute's enforcement while he awaited trial in a pending state criminal prosecution under the statute. 401 U.S. at 38-40.

In contrast to the facts in *Younger*, none of the Plaintiffs in the present case had ongoing criminal proceedings when they filed suit. All had been convicted and sentenced in state court. The time for Plaintiffs to appeal their convictions and sentences had long since passed. *See* Okla. Stat. tit. 22, § 1054(A). Thus, there were no ongoing criminal proceedings as to any Plaintiff that would warrant abstention. Nevertheless, the district court concluded state court proceedings were ongoing because Plaintiffs had not yet fully paid their fines and costs. Dist. Ct. Order at 20. The district court did not, however, cite any authority to support the notion state criminal proceedings remain ongoing for *Younger* purposes until all aspects of a sentence are fully satisfied. Furthermore, neither the district court nor Defendants identified scheduled future proceedings in state courts. Instead, those state courts merely had ongoing jurisdiction to hear potential future enforcement actions related to Plaintiffs' criminal convictions and sentences. Although there exists little authority on the issue, courts that have considered the question in similar circumstances have concluded "the mere existence of plaintiffs' undischarged [court] debts does not constitute an 'ongoing state

judicial proceeding'" for purposes of *Younger*. *Rodriguez v. Providence Cmty. Corr., Inc.*, 191 F. Supp. 3d 758, 763 (M.D. Tenn. 2016); *Cain v. City of New Orleans*, 186 F. Supp. 3d 536, 550 (E.D. La. 2016). Likewise, courts have refused to abstain under *Younger* in the context of probation and parole based on the mere possibility of future revocation proceedings. That is, courts have recognized the mere possibility someone will violate their probation and be brought into court does not render the probationer's criminal case ongoing. *Brown v. Montoya*, No. CV 10-0081 BB/ACT, 2010 WL 11523669, at *3 (D.N.M. Nov. 16, 2010); *see also Trombley v. Cnty. of Cascade*, 879 F.2d 866 (9th Cir. 1989) (holding there existed no ongoing proceeding for *Younger* purposes when plaintiff "is currently out on parole"); *Almodovar v. Reiner*, 832 F.2d 1138, 1141-42 (9th Cir. 1987) (holding "[p]ost trial proceedings[] such as probation" do not constitute "a pending criminal action for *Younger* purposes").

The district court erred in concluding criminal proceedings remained ongoing in Oklahoma state court until Plaintiffs paid their court debts in full. The Defendants do not offer this court an alternate basis to conclude state court criminal proceedings against Plaintiffs are ongoing for *Younger* purposes. Accordingly, the district court erred in abstaining from hearing the claims set out in the SACAC.

## D.  Alternate Bases to Affirm

The Defendants offer up various alternative reasons to affirm the district court's order of dismissal, both merits and non-merits based. Although this court

43

has discretion to affirm on any basis supported by the record, *United States ex rel. Reed v. Keypoint Gov't Sols.*, 923 F.3d 729, 763-64 & n.17 (10th Cir. 2019), we decline to do so here. The various alternative bases to affirm offered up by the Defendants are neither straight-forward nor easily resolved. Thus, the best course is to remand the matter so, if appropriate, the district court can produce a "reasoned . . . decision on the subject[s]." *Id.* at 763 n.17 (quotation omitted); *see also Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *United States v. Suggs*, 998 F.3d 1125, 1141 (10th Cir. 2021) (holding that this court is "a court of review, not of first view" (quotation omitted)); *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013) ("Where an issue has not been ruled on by the court below, we generally favor remand for the district court to examine the issue."). Such an approach is particularly appropriate in light of the district court's dismissal without prejudice since many of the proposed alternative bases to affirm are merits based, and any merits-based dismissal could potentially enlarge the Defendants' rights despite the fact no cross-appeals were filed. *Cf. generally Kerr v. Polis*, 20 F.4th 686 (10th Cir. 2021) (en banc).

## IV. CONCLUSION

For those reasons set out above, the order of the United States District Court for the Northern District of Oklahoma dismissing the SACAC on the bases of *Rooker-Feldman*, the *Heck* bar, and *Younger* abstention is **REVERSED** and the matter is **REMANDED** for further proceedings consistent with this opinion.