**AMUNDSEN DAVIS**

April 24, 2023

***VIA ELECTRONIC FILING***
Office of the Clerk
United States Court of Appeals
For the Seventh Circuit
Everett McKinley Dirksen United States Courthouse
219 S. Dearborn Street
Room 2722
Chicago, IL 60604

RE:     *Michelle R. Gilbank v. Wood County Department of Health Services, et al.*
        Seventh Circuit Court of Appeals Case No.: 22-1037
        Fed. R. App. 28(j) Citation of Supplemental Authority

Dear Clerk of the Seventh Circuit Court of Appeals:

On March 14, 2023, this Court decided *Hadzi-Tanovic v. Johnson*, No. 21-3373, 62 F.4th 394 (7th Cir. 2023). In *Hadzi-Tanovic*, Ms. Hadzi-Tanovic argued that she suffered severe damages from the loss of her parenting time, including loss of companionship of her children and her children's loss of their right to be raised by their mother. *Id.* at 12.[1] This Court held that Ms. Hadzi-Tanovic did not have an injury independent of the state court judgment, because "plaintiff's injury is 'effectuated' by the state court judgment" and that the federal court would "have to find the state court erred" to find a constitutional violation. *Id.* (internal citations omitted).

Ms. Gilbank's injury allegations are akin to Ms. Hadzi-Tanovic's, including alleged separation anxiety and unlawful separation because of the court's custodial decisions. Compl., R. 6 at 22; *see also* Wood Cnty. Br., Dkt. No. 54 at 17. Like *Hadzi-Tanovic*, these alleged injuries were all effectuated by the state court and do not state an independent injury.

In *Hadzi-Tanovic*, this Court rejected a general conspiracy/corruption exception to *Rooker-Feldman* and overturned prior precedent recognizing such an exception. Slip. op. at 13 (overturning *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006), and *Parker v. Lyons*, 757 F.3d 701 (7th Cir. 2014)). In so doing, this Court explained that such an exception was inconsistent with

---

[1] Pinpoint citations reference page numbers on the slip opinion, as included with this letter.

*Rooker-Feldman*. *Id*. at 13–20. It also explained allegations of conspiracy in the state court judgment were not an independent injury because Hadzi-Tanovic was not harmed until the state court order regarding parenting rights was entered; thus, the alleged injury was effectuated by the state court judgment. *Id*. at 19.

Ms. Gilbank argued that her claims were not barred by *Rooker-Feldman* because of the conspiracy exception in *Loubser*. Br., Dkt. No. 45 at 33. *Hadzi-Tanovic* now forecloses on that argument. As such, Ms. Gilbank's alleged injuries from her loss of custodial rights were effectuated by the state court's judgment and are barred, as explained in *Hadzi-Tanovic*.

Very truly yours,

Amundsen Davis, LLC

Axley Brynelson, LLP

Jason R. Just
JRJ:tew

Aneet Kaur

In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 21-3373

ANETA HADZI-TANOVIC, individually
and as natural mother and next friend
for SP, MP and KP, all minors,

*Plaintiff-Appellant,*

*v.*

ROBERT W. JOHNSON,
DAVID PETER PASULKA, and
SLOBODAN M. PAVLOVICH,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-03460 — **John J. Tharp, Jr.,** *Judge.*

———————————

ARGUED OCTOBER 26, 2022 — DECIDED MARCH 14, 2023

———————————

Before ROVNER, HAMILTON, and BRENNAN, *Circuit Judges.*

HAMILTON, *Circuit Judge*. This case arises out of a custody
dispute between plaintiff Aneta Hadzi-Tanovic and her for-
mer husband, defendant Slobodan Pavlovich, in an Illinois
state court. After the state court issued an order requiring that

Hadzi-Tanovic's parenting time with her children be super-vised, she filed this action in federal court. She brings claims under 42 U.S.C. §§ 1983 and 1985 against her ex-husband, the children's guardian ad litem, and the state court judge. She alleges the three conspired to violate her and her children's rights to family association and her right to a fair and unbi-ased trier of fact. The district court dismissed her complaint on abstention grounds. *Hadzi-Tanovic v. Johnson*, 2021 WL 5505541 (N.D. Ill. Nov. 24, 2021). Hadzi-Tanovic has appealed.

Hadzi-Tanovic's is the latest case in which a losing party in a state court divorce proceeding seeks to continue the liti-gation in federal court. We acknowledge the high stakes in-volved in divorce and custody disputes. We understand the natural temptation for losing parties to keep fighting and to look for new forums. Nevertheless, it is well established that federal district and circuit courts do not have jurisdiction to review such state court decisions. This appeal presents two recurring questions in applying this jurisdictional doctrine, known as the *Rooker-Feldman* doctrine, to divorce proceed-ings.[1]

The first concerns the *Rooker-Feldman* finality requirement as applied to divorce cases in which a state court provides on-going supervision of a family, especially concerning child cus-tody and visitation issues. The second concerns whether claims that state courts are corrupt can avoid application of the *Rooker-Feldman* doctrine. As we explain below, on the first point, the state court order that Hadzi-Tanovic challenges

---

[1] The doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

here is final, so the *Rooker-Feldman* doctrine may apply to her attempt to have the federal courts review it. On the second point, we conclude that allegations of state court corruption are not sufficient to avoid application of the *Rooker-Feldman* doctrine. We also expressly overrule holdings in a handful of our prior cases to the effect that a party who loses in state court can avoid *Rooker-Feldman* by alleging that the state courts who ruled against her were corrupt, or at least sufficiently corrupt. We affirm the dismissal of this action.

I.  *Factual and Procedural Background*

Hadzi-Tanovic's complaint alleges the following facts, which we accept as true for purposes of deciding whether we have subject matter jurisdiction, at least in the absence of debates over facts affecting jurisdiction. E.g., *Evers v. Astrue*, 536 F.3d 654, 656–57 (7th Cir. 2008); see generally *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 184 (1936); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (applying *Rooker-Feldman* doctrine; district court may look beyond jurisdictional allegations of complaint and consider evidence and decide factual issues affecting jurisdiction).

A.  *State Court Proceedings*

Defendant Pavlovich filed for divorce in an Illinois state court in October 2014. Hadzi-Tanovic and Pavlovich each accused the other of abusing their three minor children. On August 29, 2016, the court appointed defendant David Pasulka as guardian ad litem for the children. The case was assigned to defendant Judge Robert Johnson on March 15, 2017.

Hadzi-Tanovic and Pavlovich agreed to terms that split custody fifty-fifty, and on July 25, 2017, Judge Johnson entered a final judgment of dissolution of their marriage. Hadzi-

Tanovic appealed the judgment of dissolution, and the Illinois appellate court affirmed. *In re Marriage of Pavlovich*, 133 N.E.3d 1, 14 (Ill. App. 2019).

That decision did not end the couple's disagreements. Hadzi-Tanovic and Pavlovich continued to fight about their children, including their participation in school band and orchestra. Hadzi-Tanovic alleges that Pavlovich abused their son after he expressed his desire to participate in band. In January 2018, she took her son to the police station to report the alleged abuse. As required by state law, the police in turn reported the allegations to the Illinois Department of Children and Family Services, which directed the children's school not to release the children to Pavlovich.

In response, on February 13, 2018, Pavlovich filed an emergency motion seeking either to suspend Hadzi-Tanovic's parenting time or to require that her parenting time be supervised on the ground that she interfered with his parenting time. At a hearing the next day, guardian ad litem (and defendant here) Pasulka testified that, in his opinion, Pavlovich posed no threat to his children. Judge Johnson ordered that Pavlovich's parenting time be made up and that Hadzi-Tanovic not interfere with his parenting time.

Also on February 14, 2018, Pavlovich sought court relief for what he alleged had been Hadzi-Tanovic's interference with his parenting time. Judge Johnson set a hearing, for which Pasulka submitted a report. In his report, Pasulka explained that he believed that Hadzi-Tanovic had pressured the children to lie about Pavlovich's supposed abuse. Pasulka recommended that Judge Johnson revoke Hadzi-Tanovic's right to weekday visitation. On May 3, 2018, Judge Johnson

found Hadzi-Tanovic in indirect civil contempt for interfering with Pavlovich's parenting time.

After Hadzi-Tanovic was found in contempt, Pavlovich filed another petition seeking to restrict Hadzi-Tanovic's parenting time. Judge Johnson held another hearing, and Pasulka testified that, in his opinion, Hadzi-Tanovic's parenting time should be supervised. On June 13, 2018, Judge Johnson ordered that all of Hadzi-Tanovic's parenting time be supervised after finding that she had "engaged in conduct that seriously endangered the parties' minor children's mental and moral health and significantly impaired the children's emotional development." Hadzi-Tanovic filed a notice of appeal, but after she failed to file an opening brief, the appellate court dismissed the appeal in January 2020.

In July 2020, the Illinois Attorney Registration and Disciplinary Commission (ARDC) filed an ethics complaint against Pasulka accusing him of sexual abuse, some instances of which related to his duties as guardian ad litem. Following these accusations, Hadzi-Tanovic filed a petition in state court requesting that all orders in her case entered after April 20, 2017 be vacated. She filed her petition under section 2-1401 of the Illinois Code of Civil Procedure, 735 Ill. Comp. Stat. 5/2-1401, which allows collateral challenges to otherwise final judgments. See *In re Marriage of Labuz*, 54 N.E.3d 886, 896 (Ill. App. 2016). At the time briefs were filed in this court, Hadzi-Tanovic's motion to vacate remained pending in state court.

B.  *Hadzi-Tanovic's Federal Lawsuit*

On June 12, 2020, Hadzi-Tanovic sued Judge Johnson, guardian ad litem Pasulka, and ex-husband Pavlovich in federal court. She brought two federal conspiracy claims, under

42 U.S.C. §§ 1983 and 1985(3), as well as state law claims for abuse of process and intentional infliction of emotional distress. In her complaint, Hadzi-Tanovic alleged that the defendants conspired to deprive her and her children of their right to familial association in violation of the Fourteenth Amendment's Due Process clause. She also alleged that the defendants had conspired to corrupt the state court divorce proceedings, violating her right to a fair tribunal under the Fourteenth Amendment's guarantee of due process of law. She sought compensatory and punitive damages.

All three defendants moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Judge Johnson also moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The district court declined to exercise jurisdiction on abstention grounds and granted Judge Johnson's motion.

In his motion to dismiss, Judge Johnson invoked several doctrines that restrict access to the federal courts: *Rooker-Feldman*, abstention under *Younger v. Harris*, 401 U.S. 37 (1971), and the domestic-relations exception to federal jurisdiction. The district court concluded that none of these doctrines was a "perfect fit for the facts of this case," but it concluded that dismissal was warranted on general abstention principles. *Hadzi-Tanovic*, 2021 WL 5505541, at *4.

The court reasoned that the *Rooker-Feldman* doctrine did not apply for two reasons. First, the court questioned whether Hadzi-Tanovic's suit concerned a final order, as *Rooker-Feldman* requires, given both the state court's ongoing supervision of custody and child support arrangements and her pending motion for relief from the June 13, 2018 order. Second, relying on this court's decisions in *Nesses v. Shepard*, 68 F.3d 1003 (7th

Cir. 1995), and *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006), the court concluded that *Rooker-Feldman* did not bar Hadzi-Tanovic's suit because she alleged corruption in the state court proceedings. The court also concluded that *Younger* abstention, the domestic-relations exception, and *Burford* abstention (see *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)) did not apply to the facts of this case. 2021 WL 5505541, at *5.

The district court concluded that abstention was nevertheless appropriate. The court wrote that finding in Hadzi-Tanovic's favor would require the federal court to "examine and criticize" the state court's application of family law and to find that official actions of the state court judge and guardian ad litem were part of a conspiracy. A judgment in Hadzi-Tanovic's favor could then be used to interfere with the state court proceedings, and that, the court concluded, would be an "unacceptable intrusion into the domain of the state domestic relations court." 2021 WL 5505541, at *6. The court entered a final judgment dismissing Hadzi-Tanovic's case without prejudice.

II.  *Analysis*

Our analysis begins with appellate jurisdiction. Many dismissals of civil cases without prejudice are not appealable, but the dismissal here was final and appealable because the district court entered a final judgment on a basis that "effectively precludes re-filing" in federal court. *Lee v. Cook County*, 635 F.3d 969, 972 (7th Cir. 2011); accord, *Nuñez v. Indiana Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016).

We next focus on subject matter jurisdiction. If the federal courts lack subject matter jurisdiction, then we can go no further and must dismiss the suit. *Jakupovic v. Curran*, 850 F.3d

898, 902 (7th Cir. 2017). Under the *Rooker-Feldman* doctrine, the federal courts have no jurisdiction over Hadzi-Tanovic's claims, so we affirm the district court's dismissal.

The *Rooker-Feldman* doctrine is an important foundation for the division of power between federal and state courts. The doctrine imposes a "jurisdictional bar" that prohibits federal courts other than the Supreme Court of the United States from reviewing final state court judgments. *Andrade v. City of Hammond*, 9 F.4th 947, 948 (7th Cir. 2021). The doctrine reflects the fact that "[l]ower federal courts are not vested with appellate authority over state courts." *Sykes v. Cook County Circuit Court Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016). Consequently, "no matter how wrong a state court judgment may be under federal law," *Rooker-Feldman* acknowledges that "only the Supreme Court of the United States has jurisdiction to review it." *Id.* at 742.

*Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The doctrine is limited to federal claims that "'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Andrade*, 9 F.4th at 950, quoting *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019). To determine whether a plaintiff's federal claims are inextricably intertwined with the state court judgment, we ask whether the plaintiff alleges an injury "caused by the state court judgment." *Sykes*, 837 F.3d at 742. Put another way, we ask "whether the district court is essentially being called upon to review the state court decision." *Jakupovic*,

850 F.3d at 902. If not, and if the plaintiff's alleged injury is "independent" of the judgment, then *Rooker-Feldman* does not bar federal court jurisdiction. *Andrade*, 9 F.4th at 950. Finally, *Rooker-Feldman* applies only where the federal "plaintiff had a reasonable opportunity to raise the [federal] issue in state court proceedings." *Jakupovic*, 850 F.3d at 902. We consider these requirements in turn.

A.  *Final State Court Judgment*

The challenged state court judgment in this case was "rendered before the district court proceedings commenced," so that Hadzi-Tanovic was a "state-court loser." Judge Johnson issued his order requiring that her parenting time be supervised on June 13, 2018. Hadzi-Tanovic filed a notice of appeal, but the Illinois appellate court dismissed her appeal for want of prosecution on January 13, 2020. Judge Johnson's order was therefore final well before Hadzi-Tanovic filed this federal lawsuit on June 12, 2020. See *Parker v. Lyons*, 757 F.3d 701, 705–06 (7th Cir. 2014) (holding that *Rooker-Feldman* does not apply if state court appeal of challenged judgment is pending when federal suit is filed).

The district court questioned on two grounds whether the order was final. First, the court noted that the order might not be final given the state court's "continuing management" of child custody issues. We understand the concern, but Hadzi-Tanovic is challenging an order that was final when she filed this federal lawsuit. "State law determines the finality of a state judicial decision." *Mehta v. Attorney Registration & Disciplinary Comm'n*, 681 F.3d 885, 887 (7th Cir. 2012) (finding that, because state law so provided, a state court "interim" order suspending plaintiff's attorney license was final for purposes of *Rooker-Feldman*). Here, the June 13, 2018 order was entered

pursuant to the Illinois Marriage and Dissolution of Marriage Act, 750 Ill. Comp. Stat. 5/603.10, and "supersede[d]" the couple's prior allocation judgment. As such, the order was a final judgment immediately appealable under Illinois Supreme Court Rule 304(b)(6), which permits appeals from a "custody or allocation of parental responsibilities judgment or modification of such judgment" entered pursuant to the Marriage Act. See Ill. Sup. Ct. R. 304 ("Appeals from Final Judgments that do not Dispose of an Entire Proceeding"). Judge Johnson's June 13, 2018 order was therefore final for *Rooker-Feldman* purposes even though the state court may modify the order in the future.[2]

---

[2] State courts often enter non-final orders as part of their management of divorce and custody proceedings. In Illinois, for example, a court may enter a temporary allocation of parental responsibilities before a final allocation judgment is entered. 750 Ill. Comp. Stat. 5/603.5(a). Such orders are not final and therefore not automatically appealable, though a party may petition the appellate court for leave to file an interlocutory appeal. Ill. Sup. Ct. R. 306(a)(5). Where *Rooker-Feldman* does not apply because of a lack of final judgment, other doctrines usually apply to block federal jurisdiction to review such orders in divorce cases. Federal jurisdiction will in some cases be barred by *Younger* abstention or the domestic-relations exception. See, e.g., *Brunken v. Lance*, 807 F.2d 1325, 1330–31 (7th Cir. 1986) (*Younger* abstention barred consideration of father's claims that his due process rights were violated when he was not given notice of a hearing to place his daughter in protective custody after he was accused of abusing her); *Allen v. Allen*, 48 F.3d 259, 261 (7th Cir. 1995) (domestic-relations exception barred district court from exercising jurisdiction over husband's suit challenging state visitation and custody orders); see generally *Younger v. Harris*, 401 U.S. 37 (1971). And, in domestic relations cases where no abstention doctrine fits exactly, we have held that abstention is nevertheless appropriate where federal jurisdiction "threaten[s] interference with and disruption of local family law proceedings." *J.B. v. Woodard*, 997 F.3d 714, 723 (7th Cir. 2021).

Second, the district court also questioned whether the June 13, 2018 order should be considered final given Hadzi-Tanovic's pending motion to vacate in response to the ARDC's charges against guardian ad litem Pasulka. The motion to vacate does not defeat application of *Rooker-Feldman*. After the ARDC filed its complaint against Pasulka in July 2020, Hadzi-Tanovic filed a section 2-1401 petition to vacate the June 13, 2018 order and all other orders entered in her case after April 20, 2017. See 735 Ill. Comp. Stat. 5/2-1401. Section 2-1401 petitions are treated as collateral attacks on final judgments; they are not direct appeals. *People v. Mathis*, 827 N.E.2d 932, 936 (Ill. App. 2005); 735 Ill. Comp. Stat. 5/2-1401(a) (providing relief "from final orders and judgments"). A petition under section 2-1401 must be filed "in the same proceeding in which the order or judgment was entered but is not a continuation thereof." 735 Ill. Comp. Stat. 5/2-1401(b). To the contrary, a section 2-1401 petition "commences a new and separate cause of action." *Price v. Philip Morris, Inc.*, 43 N.E.3d 53, 60 (Ill. 2015). Because Hadzi-Tanovic's section 2-1401 petition is a collateral attack and not a direct appeal, it did not alter the finality of Judge Johnson's June 13, 2018 order for purposes of the *Rooker-Feldman* doctrine.

B. *Independent Injury*

Next, we consider whether Hadzi-Tanovic has alleged an injury independent of the state court judgment. Her complaint identifies two injuries: the deprivation of her and her children's right to familial association and the deprivation of her right to a fair and unbiased trier of fact.

1. *Familial Association*

The plaintiffs' alleged loss of familial association is not an injury independent of the state court judgment. The complaint traces plaintiffs' alleged injury directly to Judge Johnson's June 13, 2018 order: "By this June 13, 2018 ruling, [Hadzi-Tanovic] suffered severe damages from the loss of her parenting time that caused her to lose the companionship, love and affection of her three minor children and the three minor children lost their right to be raised by their mother in a normal family home." Where, as here, the plaintiff's injury is "effectuated" by the state court judgment, the *Rooker-Feldman* doctrine deprives lower federal courts of jurisdiction. *Swartz*, 940 F.3d at 391. For a federal court to find that the state court deprived plaintiffs of their constitutional right to familial association, the federal court would have to find that the state court erred in applying state family law. This *Rooker-Feldman* forbids. See *id.* (*Rooker-Feldman* barred jurisdiction where finding for plaintiffs, who alleged that their animals were seized in violation of Fourth and Fourteenth Amendments, would "call into question the state court's judgment that there was probable cause the animals were being neglected").

2. *Fair and Unbiased Trier of Fact*

Hadzi-Tanovic also argues that she was injured when the defendants "corruptly conspired" to interfere with her right to a fair and impartial trier of fact. She alleges that Judge Johnson's rulings showed "outrageous, unconstitutional, intentional bias." For example, she complains that Judge Johnson scheduled immediate hearings for motions filed by Pavlovich, but scheduled hearings far into the future on motions she filed, giving her ex-husband an unfair advantage. She also

criticizes Judge Johnson's alleged refusal to consider evidence she offered. In support of her claim that the defendants conspired together to corrupt the proceedings, she alleges that "unlawful extrajudicial and ex parte communications" took place between Pasulka and Judge Johnson and that Pasulka's testimony was "unrealistic, unbelievable and clearly false." As noted above, we must treat these allegations as true for purposes of this appeal.

Hadzi-Tanovic argues that, because she claims to have been injured by defendants' corruption of the state court proceedings, her injury is independent of the state court judgment for purposes of *Rooker-Feldman*. This theory would seem to open a large loophole in the *Rooker-Feldman* doctrine, and it has not been endorsed by the Supreme Court. Nevertheless, Hadzi-Tanovic finds some support in several decisions from this court beginning with *Nesses v. Shepard*, and these cases understandably led the district court to decline to rely on the *Rooker-Feldman* doctrine. We have reviewed these cases carefully and conclude here that the holdings in *Nesses* and *Loubser*, as well as *Parker v. Lyons*, recognizing a "corruption exception" to *Rooker-Feldman* should be overruled.

Starting with *Nesses*, the plaintiff there lost a breach of contract claim in state court and then sued his opponent's counsel in state court twice, alleging abuse of process. He lost both times. He then sued the same lawyers as well as several state judges in federal court under 42 U.S.C. § 1983. Nesses alleged "a massive, tentacular conspiracy" by the defendants to "engineer" his defeat in state court. 68 F.3d at 1004. He also claimed that counsel for his opponent had "used their political clout to turn the state judges against him." *Id.* The district court dismissed Nesses' suit, citing *Rooker-Feldman*. *Id.*

This court affirmed, based on res judicata and judicial immunity rather than *Rooker-Feldman*. We noted that applying *Rooker-Feldman* to Nesses' case posed "a difficult question," because he was "in a sense attacking" the state court's rulings. 68 F.3d at 1004. We also acknowledged that, to show he was injured by the alleged conspiracy, he would have to show that the state court decision was erroneous, which *Rooker-Feldman* would seem to forbid. *Id.* at 1005. But we concluded that *Rooker-Feldman* was "not that broad." *Id.* While the doctrine would prevent Nesses from having a federal court find that the state court judgment was merely incorrect, "if [Nesses] claims, as he does, that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics," then *Rooker-Feldman* did not apply. *Id.* Otherwise, we reasoned, "there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment," a conclusion we thought inconsistent with *Dennis v. Sparks*, 449 U.S. 24 (1980), and with § 1983 suits against police officers who fabricate evidence leading to wrongful convictions. *Id.* Nevertheless, we affirmed dismissal of Nesses' suit on other grounds, finding that res judicata prevented him from suing the same attorneys for the same alleged wrongdoing after he lost in state court, while judicial immunity barred his claims against the state court judges. *Id.* at 1005–06.

We applied this reasoning in *Nesses* to a divorce case in *Loubser v. Thacker*. Loubser sued forty people, including state court judges and court reporters, whom she accused of conspiring to ruin her financially and to corrupt her state court divorce proceedings in violation of her right to due process of

law. Some of Loubser's accusations, we noted, bordered on the "fantastic." 440 F.3d at 441. She accused defendants of destroying title documents and other evidence essential to her divorce proceedings, alleged that court reporters and her own lawyers altered court transcripts, and charged her counsel with failing to present critical evidence. She also accused the presiding judge of "consort[ing] improperly" with her ex-husband and his witnesses. *Id*. After the district court dismissed her suit as barred by *Rooker-Feldman* and the domestic-relations exception, Loubser appealed.

We reversed in part, finding that *Rooker-Feldman* posed no obstacle to Loubser's suit because she had alleged that defendants "so far succeeded in corrupting the state judicial process as to obtain a favorable judgment." 440 F.3d at 441, quoting *Nesses*, 68 F.3d at 1005. We reasoned that holding otherwise would leave Loubser with no federal remedy other than appeal to the Supreme Court of the United States, which would be "ineffectual because the plaintiff could not present evidence showing that the judicial proceeding had been a farce." *Id*. at 441–42. We affirmed the district court's dismissal of the defendant judges, who were entitled to absolute immunity, but we reversed and remanded as to the other defendants. *Id*. at 442–43.[3]

---

[3] On remand, the district court dismissed a defendant employed by the Indiana House of Representatives as well as several defendants whose only involvement in the case was serving as witnesses in the state divorce proceedings, all on immunity grounds. *Loubser v. Pala*, 497 F. Supp. 2d 934, 939–41 (N.D. Ind. 2007). The court also dismissed the court reporters from the action because Loubser's complaint failed to plead adequately that she was disadvantaged by alleged errors in the transcripts or that the court reporters were more than negligent. *Id*. at 940. Claims against the remaining defendants proceeded to discovery, after which all defendants were

We again relied on the corruption portion of *Nesses* in *Parker v. Lyons*. Plaintiff Parker tried to run for a seat on a local school board, and Lyons, the state's attorney for the county, filed suit in state court to block his candidacy on the ground that a prior felony conviction disqualified him from running. 757 F.3d at 704. The state court enjoined Parker from running. *Id.* Parker then sued Lyons and others in federal court. He challenged the Illinois statute that worked his disqualification as facially unconstitutional, and he alleged that its enforcement deprived him of equal protection of the law. *Id.* at 705. Relevant here, he also accused Lyons of denying him due process of law by "arrang[ing] for the case to be heard by [Lyons'] good friend" and providing Parker with "wholly inadequate notice." *Id.* The district court dismissed his suit on several grounds, including *Rooker-Feldman*. *Id.*

This court ultimately affirmed dismissal of Parker's suit, but we found that *Rooker-Feldman* did not bar his due process claim for two reasons. 757 F.3d at 705. First, Parker had appealed the state court's ruling, and his appeal was pending when he filed his federal lawsuit. Because the state court proceedings had not concluded when Parker initiated his federal lawsuit, *Rooker-Feldman* did not apply (though in such circumstances, federal courts would have powerful reasons to abstain until the state courts resolved the matter). *Id.* at 706.

Second, Parker accused Lyons of "vitiat[ing] the state-court process by collaborating with a friendly judge to rush the case to a foreordained judgment." 757 F.3d at 706. Under

---

granted summary judgment. *Loubser v. United States*, 606 F. Supp. 2d 897, 916 (N.D. Ind. 2009); *Loubser v. Indiana Abstract & Title Co.*, No. 4:04-cv-75-AS, 2009 WL 1513140, at *4 (N.D. Ind. May 29, 2009).

the reasoning of *Nesses*, this alleged corruption of the state judicial process provided a second reason that *Rooker-Feldman* did not bar his suit. *Id.* Nevertheless, we affirmed dismissal of Parker's due process claim against Lyons. The Eleventh Amendment barred Parker's suit against Lyons in his official capacity, while absolute prosecutorial immunity blocked Parker's suit against Lyons in his individual capacity. *Id.*

Our more recent decision in *Bauer v. Koester*, 951 F.3d 863 (7th Cir. 2020), limited the corruption rationale in *Nesses*. In *Bauer*, a state court foreclosure action resulted in the temporary loss of the Bauers' property. The Bauers sued, among others, their state court attorneys, opposing counsel, the state court clerks, and the presiding state court judge. The Bauers claimed that they were denied their rights to due process, equal protection, and an unbiased trier of fact. They alleged that the defendants, including the state judge, "conspired to introduce a forged version of the escrow account into evidence during the foreclosure trial" and that the judge and court clerk "allowed the foreclosure plaintiffs to issue baseless citations to discover assets." *Id.* at 866.

The district court dismissed the case on *Rooker-Feldman*, and we affirmed. The source of the Bauers' alleged injury was the state court judgment: "were it not for the state court's foreclosure order and order awarding additional interest, no injury would have resulted from the allegedly forged escrow exhibit or the citations to discover assets." 951 F.3d at 866. And, because "the defendants needed to prevail in the state court to effectuate their alleged fraud," we reasoned that adjudicating the Bauers' claims would require us to evaluate the state court's judgments, which is prohibited by *Rooker-Feldman*. *Id.* We acknowledged that the Bauers had alleged

corruption in the state court, but we held that *Rooker-Feldman* still blocked their federal suit because, unlike in *Nesses* and *Loubser*, the Bauers did not "allege that a widespread conspiracy undermined the entirety of the state-court proceedings." *Id.* at 867. Instead, the Bauers "merely challenge[d]" two decisions of the state court. *Id.*

As Judge Sykes observed in her separate opinion in *Loubser*, the *Nesses* corruption exception "could consume the *Rooker–Feldman* rule if interpreted too broadly," though she did not disagree with that portion of the majority opinion. *Loubser*, 440 F.3d at 444 (Sykes, J., concurring in part and dissenting in part). Hadzi-Tanovic's case provides the opportunity for us to reconsider the corruption language in *Nesses* and to clarify the law in this circuit. For the reasons set out below, we conclude that *Nesses* and its progeny were incorrect in allowing allegations of state court corruption to defeat application of the *Rooker-Feldman* doctrine.

First and foremost, the Supreme Court has not even hinted that *Rooker-Feldman* is subject to such a corruption exception, and that exception opens up a sizable loophole in this important jurisdictional doctrine. Recall that an injury is not independent for purposes of *Rooker-Feldman* if it is "effectuated" by the state court judgment, *Swartz*, 940 F.3d at 391, or if the plaintiff's claim essentially requires the federal court to review the state court's decision, *Jakupovic*, 850 F.3d at 902. When a plaintiff alleges that she was injured by judicial bias or corruption in state court proceedings, both of those grounds for the doctrine can apply.

Imagine that Judge Johnson was indeed biased against Hadzi-Tanovic, but he did not enter any orders against her. How would she be injured? To be sure, Hadzi-Tanovic has a

*right* to a fair and unbiased trier of fact that is independent of her right to familial association. But *Rooker-Feldman* looks not to rights but to injuries. Hadzi-Tanovic was not harmed by alleged bias on the part of Judge Johnson until he entered the June 13, 2018 order mandating that her parenting time be supervised. Because her alleged injury was "effectuated" by the state court judgment, *Rooker-Feldman* should still block her federal suit.

As Judge Tharp observed in the district court, trying Hadzi-Tanovic's allegations of corruption would require a federal court to review the state court's decisions. Her complaint invites the district court to ferret out the judge's supposed bias by examining the state court proceedings. She insists that the "post-trial transcripts in this case provide overwhelming proof that Associate Judge Johnson used the auspices of his office as judge to aid and abet the civil conspiracy plan" of Pasulka and Pavlovich. And she alleges that Judge Johnson's rulings, including his evidentiary and scheduling decisions, reveal "outrageous, unconstitutional, intentional bias."

We express no views on the merits of those allegations. The problem here is that the only way a federal court could determine the merits of those allegations would be to review the state court's handling of the case from top to bottom, substantively and procedurally. If the state court's decisions appeared to be well-grounded in law and fact and reached through fair procedures, a federal court would presumably conclude they were not rooted in bias or corruption. If the federal court found factual, legal, or procedural errors, the court would have to consider whether the errors were ordinary errors of a fallible human institution or instead the product of

corruption. Yet *Rooker-Feldman* is supposed to prohibit lower federal courts from engaging in what amounts to appellate review of state court decisions in this manner. See *Sykes*, 837 F.3d at 742 ("interlocutory orders entered prior to the final disposition of state court lawsuits are not immune from the jurisdiction-stripping powers of *Rooker-Feldman*"); *Harold v. Steel*, 773 F.3d 884, 887 (7th Cir. 2014) (*Rooker-Feldman* forbids lower federal courts from reviewing "evidence that state judges consider" or procedures they "use to reach decisions").

We are not unsympathetic to the argument, expressed in *Nesses*, that our holding here means that "there would be no federal remedy for a violation of federal rights whenever the violator so far succeed[s] in corrupting the state judicial process as to obtain a favorable judgment." 68 F.3d at 1005. But we ultimately think this concern in *Nesses* was misplaced.

First, the essence of the *Rooker-Feldman* doctrine is that "no matter how wrong a state court judgment may be under federal law," lower federal courts do not have jurisdiction to review it. *Sykes*, 837 F.3d at 742. The Supreme Court acknowledged in *Rooker* itself that state courts will sometimes err when interpreting federal law. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923) (holding that even if state court incorrectly decided constitutional issues, "no court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors of that character"); see also *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983) (federal district courts do not have jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional"). Even if important federal rights have been violated,

that does not give lower federal courts jurisdiction to review state court judgments where Congress has not provided it.

Second, we are not convinced that overruling this circuit's corruption exception to *Rooker-Feldman* will actually deprive plaintiffs of a federal remedy they would otherwise have. Our review of cases in this circuit persuades us that even if *Rooker-Feldman* did not bar Hadzi-Tanovic's suit, claims like hers would almost certainly founder on other grounds. Plaintiffs alleging injuries arising from corruption in state court proceedings face a dense thicket of obstacles that prevent their claims from proceeding to the merits. See *Nesses*, 68 F.3d at 1006 (claim dismissed on res judicata and immunity grounds); *Loubser*, 440 F.3d at 442–43 (defendant judges dismissed on immunity grounds); *Parker*, 757 F.3d at 706 (claim dismissed on Eleventh Amendment and immunity grounds). We have found no cases in this circuit in which a federal court actually undertook a merits review of a state court divorce proceeding.

We see similar results in other circuits. Only one circuit, the Third, has joined us in recognizing a corruption exception to *Rooker-Feldman*. But the plaintiff in that case likewise failed to progress to a review of its claims on the merits. In *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 162 (3d Cir. 2010), Great Western tried unsuccessfully to vacate an arbitration award in state court on grounds of improper failure to disclose potential conflicts of interest. Great Western then sued in federal court, alleging that its state court opponents conspired with state court judges to engineer its loss. *Id.* at 171. Great Western charged that the state court's decisions were predetermined before the hearing, forcing it to "litigate in a rigged system." *Id.* Citing *Nesses*, the Third

Circuit held that Great Western alleged an independent injury for purposes of *Rooker-Feldman*. *Id.* at 172–73. After finding jurisdiction, however, the Third Circuit affirmed dismissal of Great Western's claims after concluding that it had failed to sufficiently plead a conspiracy among defendants. *Id.* at 178–79.

For the reasons outlined above, we respectfully disagree with *Great Western* insofar as it recognizes a corruption exception to the *Rooker-Feldman* doctrine. We must stress, however, that we expect rejection of that exception to produce little if any change in the outcomes of cases. In cases where plaintiffs try to avoid *Rooker-Feldman* by alleging that corruption infected their state court proceedings, federal courts rarely if ever reach the merits of the federal claims.

These practical concerns also persuade us that we should overrule the *Nesses* corruption exception rather than only try to limit its reach, as we did in *Bauer*. In *Bauer*, we chose not to follow *Nesses* and *Loubser*, distinguishing them on the ground that the Bauers had not alleged a "widespread conspiracy." 951 F.3d at 867. Upon further consideration, we think that the standard provided by *Bauer* will prove unduly difficult to apply and does not come to grips with the real tension between the exception and *Rooker-Feldman*. District courts will be called upon, at the pleading stage, to decide whether the plaintiff has alleged enough of a conspiracy, measuring each complaint against the allegations in *Nesses*, *Loubser*, and *Bauer*. The standard would also give plaintiffs incentives to plead ever more fantastic allegations of state court corruption to escape *Rooker-Feldman*. Finally, and most important, limiting *Nesses* to cases involving widespread corruption in the state court proceedings would still call on federal courts to review

and evaluate state court judgments. As discussed above, this task is inconsistent with the foundation of the *Rooker-Feldman* doctrine. We agree with the result in *Bauer* but do not follow further the approach taken in that case.

We must note two significant limits of our holding today. First, we recognize that a handful of decisions from this court have held that *Rooker-Feldman* does not apply where plaintiffs seek damages for injuries caused not by state court corruption but by the fraudulent conduct of state court opponents. See *Brokaw v. Weaver*, 305 F.3d 660, 665 (7th Cir. 2002) (holding that *Rooker-Feldman* did not bar plaintiff's claim that "defendants conspired—prior to any judicial involvement—to cause false child neglect proceedings to be filed, resulting in her removal from her home"); *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014) (explaining that *Rooker-Feldman* does not bar federal suits seeking damages for fraud or other unlawful conduct that misled the state court into issuing a judgment adverse to federal plaintiff); but see *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 604–05 (7th Cir. 2008) (plaintiffs' claims that they were injured by defendants' fraudulent representations and requests for attorneys' fees—but not by the state court's order to pay—were barred by *Rooker-Feldman*; because defendants needed to prevail in state court to capitalize on their alleged fraud, adjudicating plaintiffs' claims would require federal court to review the state court's order); *Harold*, 773 F.3d at 886 (*Rooker-Feldman* barred plaintiff's claim that defendant debt collector violated Fair Debt Collection Practices Act by making false statements during state garnishment proceeding; plaintiff was not injured until state court issued its order).

These decisions relied on the corruption language in *Nesses*, but they presented a different issue than that posed here. Hadzi-Tanovic alleges that defendants, including Judge Johnson, conspired to interfere with her right to a fair and unbiased trier of fact, so we have focused on whether claims based on alleged judicial corruption or bias can avoid the *Rooker-Feldman* doctrine. Because the issue is not before us, this decision does not speak to whether or under what circumstances allegations of fraud by state court opponents (acting without the participation of the state court) escape *Rooker-Feldman*.

Second, in *Nesses*, we justified our conclusion that *Rooker-Feldman* did not bar plaintiff's claims of corruption in state court, in part, by observing that holding otherwise would be "inconsistent" with cases in which law enforcement officers are sued under § 1983 for fabricating evidence in state criminal trials. 68 F.3d at 1005. As we acknowledged in *Nesses*, however, individuals seeking damages for constitutional violations resulting from their state criminal convictions or sentences may sue under § 1983 only after their convictions or sentences have been set aside. *Id.*, citing *Heck v. Humphrey*, 512 U.S. 477 (1994). Such cases under § 1983 do not require a federal court to review a final state court judgment.

*Nesses* also cited *Dennis v. Sparks*, 449 U.S. 24 (1980), in support of its corruption exception to *Rooker-Feldman*. In *Dennis*, the federal plaintiffs sued a state court judge and their state court opponents under § 1983, alleging that they had corruptly conspired to obtain and issue a state court order enjoining plaintiffs from mining minerals in accordance with oil leases they owned. The question before the Supreme Court was whether the plaintiffs' claims against the private parties

could proceed after the state court judge was dismissed from the case. 449 U.S. at 26–27. *Dennis*—in which the Court never hinted that the district court lacked jurisdiction—would thus seem at first glance to support *Nesses*' conclusion that allegations of state court corruption evade *Rooker-Feldman*. In *Dennis*, however, the state appellate court had dissolved the injunction as illegally issued before plaintiffs filed their suit in federal court. *Id.* at 25. As a result, the federal lawsuit did not call on the federal courts to review and possibly to reverse the judgment of a state court.

Hadzi-Tanovic's case does not present—and so we need not decide—the question whether *Rooker-Feldman* would bar her claim if she filed her federal lawsuit after first obtaining an order setting aside the relevant state court judgment. We are not at all certain that suits alleging violations of federal rights arising from state court civil proceedings that have later been invalidated would call on us to "review and reject[ ]" final state court judgments. See *Exxon Mobil Corp.*, 544 U.S. at 284. But this case does not present that issue, so we reserve it for another day.[4]

### C.  *Reasonable Opportunity to Raise in State Court*

Last, we must assess whether Hadzi-Tanovic had a reasonable opportunity to raise her federal issues in state court. In determining whether a plaintiff had a reasonable opportunity

---

[4] Because this opinion overrules portions of *Nesses*, *Loubser*, and *Parker*, we have circulated this opinion among all active circuit judges pursuant to Circuit Rule 40(e). A majority of active circuit judges voted not to rehear the case en banc. Judges St. Eve and Kirsch voted in favor of rehearing en banc. Judge Pryor did not participate in consideration of the rehearing question.

to bring her claim, "we focus on difficulties caused not by opposing parties, but by state-court rules or procedures." *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007).

Hadzi-Tanovic has not argued that state law or procedures prevented her from raising her federal constitutional issues in state court. Parties may raise procedural and substantive due process challenges to custody orders in Illinois state court. E.g., *In re Marriage of Bates*, 819 N.E.2d 714, 724–25 (Ill. 2004) (mother appealed from trial court's order granting father sole custody on grounds that admitting child representative's recommendation without allowing her to cross-examine the representative violated her right to procedural due process); *In re Custody of T.W.*, 851 N.E.2d 881, 882–83 (Ill. App. 2006) (on appeal, father argued that trial court's order awarding grandparents custody violated his constitutional right to parent his child). Accordingly, all the elements needed for applying *Rooker-Feldman* are present here.

## Conclusion

Hadzi-Tanovic claims injuries caused by a final state court judgment, she does not allege injuries independent of the state court judgment, and she had a reasonable opportunity to present her claims in state court. For these reasons, *Rooker-Feldman* bars her suit.

We understand the high stakes of this case—and of all divorce and custody cases. The serious but as yet unproven allegations against guardian ad litem Pasulka remind us of the potential consequences of genuine corruption in a court system. Nevertheless, we may not exercise jurisdiction where Congress has not provided it. The state courts of Illinois,

including their attorney disciplinary processes, are capable of considering and resolving Hadzi-Tanovic's arguments and the allegations against Pasulka.[5]

The district court's judgment dismissing the action without prejudice is AFFIRMED.

---

[5] In the disciplinary proceeding, the Supreme Court of Illinois suspended Pasulka from the practice of law as of December 15, 2020, pending further order of that court. His disciplinary proceeding is still pending. *In re Pasulka*, No. 2020PR00052 (Ill. Dec. 15, 2020), available at http://www.iardc.org (last visited March 14, 2023).

KIRSCH, *Circuit Judge*, with whom ST. EVE, *Circuit Judge*, joins, dissenting from the denial of rehearing *en banc*. I disagree with the decision to overrule *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006), and *Parker v. Lyons*, 757 F.3d 701 (7th Cir. 2014). Far from creating any exception to the *Rooker-Feldman* doctrine, those cases correctly recognized that *Rooker-Feldman* is inapplicable to federal suits alleging civil rights conspiracies that result in a state court judgment, so long as the plaintiff does not seek reversal of that judgment. Today's decision holds, however, that *Rooker-Feldman* applies to such claims if a state court judgment caused a plaintiff's injuries, even when the plaintiff does not seek to overturn the state court judgment. The effect is to broaden, rather than narrow, *Rooker-Feldman*'s application. Because this approach is inconsistent with the statutory source of the doctrine, 28 U.S.C. § 1257, and Supreme Court precedent, I respectfully dissent from the denial of rehearing en banc.

I

Federal and state courts generally enjoy concurrent jurisdiction. The *Rooker-Feldman* doctrine is one of the statutory exceptions to that general rule. Through 28 U.S.C. § 1257, Congress vested the Supreme Court with federal appellate jurisdiction over final state court judgements: "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." By implication, lower federal courts lack appellate jurisdiction over state court judgments.

*Rooker-Feldman* simply enforces this statutory rule. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), after a state court entered a judgment against him in a contract dispute,

Rooker asked a federal court to declare that judgment "null and void." *Id*. at 414. The Supreme Court held that § 1257's precursor deprived lower federal courts of jurisdiction to "entertain a proceeding to reverse or modify" the state court judgment because doing so "would be an exercise of appellate jurisdiction." *Id*. at 416.

Many years later, in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the D.C. Court of Appeals upheld the denial of Feldman's bar application, so he sued in federal district court to overturn that decision. *Id*. at 466–68. The Supreme Court held that the lower federal courts had "no authority to review final judgments of a state court in judicial proceedings," so if Feldman challenged the decision in his particular case, the federal district court lacked jurisdiction. *Id*. at 482. But, if Feldman sought to challenge the rules that the D.C. Court applied in his case, his challenge could go forward because it did "not require review of a final state court judgment in a particular case." *Id*. at 486–87.

After *Feldman*, the rule was simple, its reach limited. As we put it in *GASH Associates v. Village of Rosemont*, 995 F.2d 726 (7th Cir. 1993):

> The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*Id.* at 728 (citing David P. Currie, *Res Judicata: The Neglected Defense,* 45 U. Chi. L. Rev. 317, 321–25 (1977)).

Not since *Feldman* has the Supreme Court applied *Rooker-Feldman* to dismiss a suit for lack of subject-matter jurisdiction. Instead, the Court has highlighted its exceedingly limited application. In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Court held that "*Rooker-Feldman* did not prevent the District Court from exercising jurisdiction" when a federal plaintiff "plainly ha[d] not repaired to federal court to undo the [state court] judgment in its favor." *Id.* at 293–94. The Court also admonished lower courts to stop enlarging the doctrine: "Variously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Id.* at 283.

The Court further clarified that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. At the same time, § 1257 does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party …, then there is jurisdiction and state law determines whether the

defendant prevails under principles of preclusion.'" *Id.* at 293 (quoting *GASH*, 995 F.2d at 728).

*Exxon* clarified that *Rooker-Feldman* is inapplicable—and thus federal courts retain jurisdiction—unless all four criteria are met:

1. The federal case is brought by a state-court loser;

2. The plaintiff complains of an injury caused by the state court judgment;

3. The state court judgment was rendered before the federal proceeding began; *and*

4. The plaintiff is not asking the federal court to merely disagree with, but to review and reject—that is, to overturn or undo—the state court judgment.

## II

### A

Despite *Exxon*'s command to rein in *Rooker-Feldman*, our circuit's application of the doctrine has only grown. The source of this bloat, it seems, has been our singular focus on whether the plaintiff's injury was caused by the state court judgment—step 2 of *Exxon*. By stopping our inquiry there, we never get to step 4 and ask whether the relief the plaintiff seeks would reverse or undo the state court judgment. *Exxon* is unambiguous that both steps are necessary for *Rooker-Feldman* to divest a federal court of jurisdiction and eject plaintiffs from federal court. Yet we regularly treat the former as sufficient. See, e.g., *Swartz v. Heartland Equine Rescue*, 940 F.3d 387 (7th Cir. 2019); *Sykes v. Cook County Court Probate Division*, 837

F.3d 736 (7th Cir. 2016); *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 607 (7th Cir. 2008). By elevating step 2 and ignoring step 4, we have turned *Rooker-Feldman* into a substitute for preclusion law—the exact thing *Exxon* told us not to do. See, e.g., *Jakupovic v. Curran*, 850 F.3d 898, 903–04 (7th Cir. 2017) (applying *Rooker-Feldman* to bar claims that "d[id] not directly seek to set aside the state trial court's judgments" because such claims were "inextricably intertwined with the state court's judgments" and plaintiff "had a reasonable opportunity to present [them] to the state court").

The black letter law we have crafted now sets forth a two-part test:

> To determine whether the *Rooker-Feldman* doctrine bars jurisdiction, we apply a two-step analysis. First, we consider whether a plaintiff's federal claims are "independent" or, instead, whether they "either 'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Swartz*, 940 F.3d at 391. If they are "independent" claims, the *Rooker-Feldman* doctrine does not preclude federal courts from exercising jurisdiction over them. But if they "directly" challenge or are "inextricably intertwined" with a state-court judgment, then we move on to … determine whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings.

*Andrade v. City of Hammond*, 9 F.4th 947, 950 (7th Cir. 2021) (cleaned up). "Inextricably intertwined," we said, means "there must be no way for the injury complained of by the plaintiff to be separated from the state court judgment." *Id.*

(cleaned up); see also *Sykes*, 837 F.3d at 742 ("[E]ven federal claims … that do not on their face require review of a state court's decision, may still be subject to *Rooker-Feldman* if those claims are inextricably intertwined with a state court judgment.").

By omitting step 4 altogether, we have expanded the scope of *Rooker-Feldman* to encompass any claim that alleges an injury that is "inextricably intertwined" with a state court judgment. Missing from all of this is any consideration of *Exxon*'s final requirement—whether the federal plaintiff asks us to reject the state court judgment. But that is the sine qua non of *Rooker-Feldman*, which applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced *and inviting district court review and rejection of those judgments*." *Exxon*, 544 U.S. at 284 (emphasis added). Only by asking us to exercise appellate jurisdiction—to "undo" or "overturn [the] state-court judgment"—does a plaintiff collide with § 1257. *Id.* at 287 n.2, 293.

Rather than dig further in search of daylight, we should realign our law with *Exxon*. Only if a plaintiff seeks to vacate relief awarded or to obtain relief denied by the state court—to undo or overturn the state court judgment—does *Rooker-Feldman* bar her claim. If she seeks another form of relief that does not ask the district court to overturn a state court judgment, then her claim is well within a district court's power to adjudicate.

B

The panel's opinion takes us further in the wrong direction. Rather than answer how Aneta Hadzi-Tanovic seeks to

undo the state court judgment in her federal lawsuit, it asks only "whether the district court is essentially being called upon to review the state court decision." Ante at 8 (quoting *Jakupovic*, 850 F.3d at 902, and relying on the *Sykes*, *Swartz*, and *Andrade* line of cases). But that is not what *Exxon* requires: a district court must be asked to both "review and reject" the state court judgment before *Rooker-Feldman* applies. 544 U.S. at 284.

Because Hadzi-Tanovic does not ask the federal court to undo the state court custody order, *Rooker-Feldman* does not bar her claim. The state court judgment will remain secure no matter the outcome of her federal suit. Even if Hadzi-Tanovic prevails on her damages claim, a federal judgment in her favor would have no impact on the validity of the state judgment. Whether Hadzi-Tanovic seeks to relitigate issues decided by the state court is a question of state preclusion law, but *Rooker-Feldman* "is not a substitute for claim or issue preclusion." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 408 (6th Cir. 2020) (Sutton, J., concurring).

The panel reframes *Nesses* (and the cases that follow it) as creating an unfounded "exception" to *Rooker-Feldman* that must be overruled. But *Nesses* created no exception—a term that appears nowhere in *Nesses* itself—and overruling it only widens *Rooker-Feldman*'s scope. *Nesses* correctly recognized that *Rooker-Feldman* is inapplicable to claims like Hadzi-Tanovic's, where a plaintiff in federal court does not seek to overturn a state court judgment. Labeling *Nesses* an exception suggests that *Rooker-Feldman* broadly bars federal courts from hearing federal claims implicating terminated state court proceedings. But that turns the limited nature of *Rooker-Feldman* on its head, and there is no presumption that claims involving

state court judgments trigger *Rooker-Feldman* unless some "exception" applies. To the contrary, the Supreme Court has repeatedly reminded us that the doctrine is limited and rarely applies. See *Exxon*, 544 U.S. at 287. *Exxon* therefore validated *Nesses*'s reasoning when it told lower courts to stop conflating *Rooker-Feldman* with preclusion and reaffirmed that a plaintiff who "presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," is not barred by *Rooker-Feldman*. 544 U.S. at 293 (cleaned up) (quoting *GASH*, 995 F.2d at 728); see also *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1290 (11th Cir. 2018) (Newsom, J., concurring) (*Exxon* clarified "that *Rooker-Feldman* does *not* bar a federal-court suit simply because it relitigates a 'matter' previously argued—or even 'denies a legal conclusion' previously reached—in a state-court action."). Under both *Nesses* and *Exxon*, *Rooker-Feldman* requires not only a federal plaintiff with an injury caused by a state court judgment, but also—in every case—that the plaintiff asks the federal court to "undo" or "overturn" that judgment. By overruling *Nesses*, the panel discards the key inquiry into the relief a plaintiff seeks from a federal court.

The panel labels *Nesses* as out of step with our more recent caselaw. On this front, I agree. But it is our recent caselaw that is out of step with *Exxon*, not *Nesses*. The last thing we're supposed to do is broaden the universe of cases kept out of court by *Rooker-Feldman*, "a doctrine that has produced nothing but mischief for [40] years." *Lance v. Dennis*, 546 U.S. 459, 468 (2006) (Stevens, J. dissenting); see *Skinner v. Switzer*, 562 U.S. 521, 531 (2011) ("[T]he *Rooker-Feldman* doctrine has been applied by this Court only twice, *i.e.,* only in the two cases from which the doctrine takes its name."); *VanderKodde*, 951 F.3d at

405 (Sutton, J., concurring) ("One could be forgiven for think-ing, as I and others did, that, unless your name was Rooker or Feldman, this supposed limit on the jurisdiction of the federal courts applied to no one."). But by discarding *Exxon*'s (and *Nesses*'s) requirement that a plaintiff seek "review and rejec-tion" of a state court judgment, that is exactly what the panel does.

## III

Today's decision does not simply bar Hadzi-Tanovic's suit and overrule *Nesses*, *Loubser*, and *Parker*. The panel says its de-cision does not overrule *Brokaw v. Weaver*, 305 F.3d 660 (7th Cir. 2002), but that decision has no leg to stand on without *Nesses*. *Brokaw* held that *Rooker-Feldman* did not bar civil rights claims alleging that the defendants defrauded a state court into terminating custody rights. *Id.* at 663, 668. The panel says that *Brokaw* is different because that plaintiff alleged fraud while Hadzi-Tanovic alleges corruption. But the only distinc-tion between due process claims that allege fraud in state pro-ceedings and those that allege corruption is that, in the latter scenario, the state judge participates in the constitutional vio-lation. When it comes to federal jurisdiction, that is a distinc-tion without a difference, so the legal rule of *Brokaw*—which relies almost exclusively on *Nesses*'s reasoning—is now ex-cised from our law. Any plaintiff who alleges corruption or fraud during a completed state proceeding is now without a federal forum.

The panel's extension of *Rooker-Feldman* also casts doubt on other cases that correctly found the doctrine inapplicable. See, e.g., *Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018) (recognizing that plaintiffs who do not seek "alteration of a state court's judgment" are not barred from federal court by

*Rooker-Feldman*); *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014) (holding that *Rooker-Feldman* "does not bar a federal suit that seeks damages for a fraud that resulted in a judgment adverse to the plaintiff. … Such a suit does not seek to disturb the judgment of the state court, but to obtain damages for the unlawful conduct that misled the court into issuing the judgment."). It is hard to see how any of these cases remain after today.

There are external consequences as well. To bolster its case for expanding *Rooker-Feldman* even further, the panel says that no one else (save the Third Circuit) recognizes a corruption exception. Ante at 21–22 (citing *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 158 (3d Cir. 2010)). I respectfully disagree. While other courts may not term the *Nesses* rule an "exception"—because it's not—nomenclature is irrelevant. What matters is that nearly every other circuit has applied the rule *Nesses* lays out. See *Dorce v. City of New York*, 2 F.4th 82, 107–08 (2d Cir. 2021); *Great W. Mining*, 615 F.3d at 171–73; *Hulsey v. Cisa*, 947 F.3d 246, 250–52 (4th Cir. 2020); *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 383 (5th Cir. 2013); *McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006); *MSK EyEs Ltd. v. Wells Fargo Bank, N.A.*, 546 F.3d 533, 539 (8th Cir. 2008); *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1143 (9th Cir. 2021); *Mayotte v. U.S. Bank N.A.*, 880 F.3d 1169, 1174–75 (10th Cir. 2018); *Behr v. Campbell*, 8 F.4th 1206, 1209 (11th Cir. 2021).

Take the Eleventh Circuit's decision in *Behr*, for example. There, a father sued his "ex-wife, her partner, an employee of Child Protective Services, the principal at [his daughter's] school, the Palm Beach County School District, and the Palm Beach County Department of Children and Families, among others" alleging that they "conspired to deprive [him] of

custody through state child custody proceedings." *Behr*, 8 F.4th at 1208–09. He alleged that "procedural due process violations resulted 'from the use of falsified and/or coerced information as a basis for the proceedings and decisions'" and from "the restriction of access to the courts and denial of adequate legal counsel" during a state custody battle over their children. *Id*. at 1213. But because the federal plaintiff did not seek to "undo the state court's child custody decision" and sought "money damages for constitutional violations[,]" his claims fell "outside *Rooker-Feldman*'s boundaries." *Id*. I see no flaw in *Behr*'s understanding of *Rooker-Feldman*, and the panel points to none.

The panel "expect[s] rejection of [the *Nesses*] exception to produce little if any change in the outcomes of cases." Ante at 22. I agree, but so what? *Rooker-Feldman* is a jurisdictional doctrine. A plaintiff's prospects for recovery tell us nothing about a federal court's power to hear her claim. That other doctrines might ultimately bar recovery does not mean we can disclaim federal jurisdiction. And I disagree with the panel's conclusion that eliminating the so-called exception is necessary to stop plaintiffs from making "ever more fantastic allegations of state court corruption": Federal Rules of Civil Procedure 8 and 11 solve that problem, and cases with state court antecedents enjoy no monopoly on fantastical allegations.

Rather than expand our *Rooker-Feldman* doctrine and overrule good law, we should refocus our inquiry on whether the plaintiff seeks to "review and reject"—to "undo" or "overturn"—a state court judgment. Unless she does, we have a duty to hear her out.

I respectfully dissent.