No. 22-1037

IN THE

# United States Court of Appeals
# for the Seventh Circuit

———————————

MICHELLE R. GILBANK,
Plaintiff-Appellant,

v.

WOOD COUNTY DEPARTMENT OF HUMAN SERVICES ET AL.,
Defendants-Appellees.

———————————

Appeal from the U.S. District Court for the Western District of Wisconsin,
No. 3:20-cv-601-jdp, Chief Judge James D. Peterson

———————————

## APPELLANT'S SUPPLEMENTAL BRIEF

———————————

JOSEPH S. DIEDRICH
  *Counsel of Record*
AJ FABIANCZYK
KIRSTEN A. ATANASOFF
ALYSSA M. LEROY
HUSCH BLACKWELL LLP
33 E. Main St., Suite 300
Madison, WI 53703
(608) 255-4440
joseph.diedrich@huschblackwell.com

*Counsel to Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ............................................................................ 1

ANSWERS TO QUESTIONS ............................................................ 3

I. Under *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), what difference, if any, is there between "complaining of injuries caused by state-court judgments" and "inviting district court review and rejection of those judgments"? ............................................................ 3

II. Whether the custody judgment in this case is moot, and if so, whether that has an impact on the *Rooker-Feldman* analysis?............................................. 8

III. Whether other circuits have answered either of the above questions after *Exxon Mobil*?.................................................................... 10

IV. Where a federal plaintiff claims she was injured by injunctive relief erroneously issued by a state court, whether application of the *Rooker-Feldman* doctrine should depend on whether she confines her prayer for relief in federal court to a damages award? ........................................ 10

V. Where a federal plaintiff claims she was injured by injunctive relief erroneously issued by a state court, whether application of the *Rooker-Feldman* doctrine should depend on the reasons the state-court judgment was allegedly erroneous?...................................................... 13

CONCLUSION.............................................................................. 14

CERTIFICATE OF COMPLIANCE........................................................ 16

CERTIFICATE OF SERVICE............................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Andrade v. City of Hammond,*
  9 F.4th 947 (7th Cir. 2021) ...................................................... 1, 2, 4, 5

*Barrow v. Hunton,*
  99 U.S. 8083 (1878) .................................................................. 6

*Behr v. Campbell,*
  8 F.4th 1206 (11th Cir. 2021) ............................................ 5, 6, 11

*Brokaw v. Weaver,*
  305 F.3d 660 (7th Cir. 2002) ................................................ 7, 11

*Chathas v. Local 134 IBEW,*
  233 F.3d 508 (7th Cir. 2000) ................................................ 5, 13

*D.C. Ct. of Appeals v. Feldman,*
  460 U.S. 462 (1983) .................................................................. 6

*Ernst v. Child & Youth Servs. of Chester Cnty.,*
  108 F.3d 486 (3d Cir. 1997) ........................................................ 11

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
  544 U.S. 280 (2005) ........................................................... passim

*GASH Assocs. v. Vill. of Rosemont,*
  995 F.2d 726 (7th Cir. 1993) ................................................ 7, 14

*Graff v. Aberdeen Enterprizes, II, Inc.,*
  65 F.4th 500 (10th Cir. 2023) ............................................ 3, 7, 12

*Green v. Mattingly,*
  585 F.3d 97 (2d Cir. 2009) ................................................ 8, 9, 11

*Hadzi-Tanovic v. Johnson,*
  62 F.4th 394 (7th Cir. 2023) .............................................. passim

*Hohenberg v. Shelby Cnty.,*
  68 F.4th 336 (6th Cir. 2023) .............................................. passim

*Holloway v. Brush,*
  220 F.3d 767 (6th Cir. 2000) ...................................................... 11

*Hunter v. McMahon*,
    75 F.4th 62 (2d Cir. 2023).................................................................................. 3, 5

*In re Repository Techs., Inc.*,
    601 F.3d 710 (7th Cir. 2010)............................................................................ 4, 13

*Iqbal v. Patel*,
    780 F.3d 728 (7th Cir. 2015)..................................................................... 2, 5, 13

*Johnson v. De Grandy*,
    512 U.S. 997 (1994)................................................................................................ 4

*Johnson v. Pushpin Holdings*,
    748 F.3d 769 (7th Cir. 2014)................................................................................ 5

*Kougasian v. TMSL, Inc.*,
    359 F.3d 1136 (9th Cir. 2004)............................................................................. 6

*Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*,
    606 F.3d 301 (6th Cir. 2010)................................................................... 9, 10, 11

*Lance v. Dennis*,
    546 U.S. 459 (2006)............................................................................................... 4

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ......................................................................... 1, 7

*Milchtein v. Chisholm*,
    880 F.3d 895 (7th Cir. 2018).............................................................................. 2

*Moy v. Cowen*,
    958 F.2d 168 (7th Cir. 1992).............................................................................. 4

*Richardson v. Koch L. Firm, P.C.*,
    768 F.3d 732 (7th Cir. 2014).............................................................................. 2

*Rooker v. Fid. Tr. Co.*,
    263 U.S. 413 (1923)............................................................................................... 6

*Target Media Partners v. Specialty Mktg. Corp.*,
    881 F.3d 1279 (11th Cir. 2018)........................................................................ 12

*VanderKodde v. Mary Jane M. Elliott, P.C.*,
    951 F.3d 397 (6th Cir. 2020).......................................................................... 5, 6

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.*,
    535 U.S. 635 (2002)............................................................................................... 4

*Webb as next friend of K.S. v. Smith*,
936 F.3d 808 (8th Cir. 2019) .................................................................. 6, 7, 11

## **Statutes, Rules, and Constitutional Provisions**

U.S. Const. Art. III § 1 ............................................................................ 1

28 U.S.C. § 1257 ........................................................................... passim

28 U.S.C. § 1291 .................................................................................. 4

Fed. R. Civ. P. 41(b) ........................................................................... 13

## **Other Authorities**

*Jurisdiction: Appellate Jurisdiction*, Black's Law Dictionary (11th ed. 2019) ....... 1, 7

## INTRODUCTION

The U.S. Constitution creates the Supreme Court and authorizes Congress to create inferior courts. *See* U.S. Const. Art. III § 1. By statute, Congress has given the Supreme Court appellate jurisdiction over "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had." 28 U.S.C. § 1257(a). Although Congress has also created inferior trial and appellate courts, it has not authorized those courts to hear appeals from state-court judgments. From Congress's omission arises a "narrow[ ]" "negative implication" grounded in ordinary statutory interpretation: inferior federal courts lack subject-matter jurisdiction over appeals from state courts. *Andrade v. City of Hammond*, 9 F.4th 947, 952 (7th Cir. 2021) (Sykes, C.J., concurring); *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005).

Section 1257's negative implication means the *Rooker-Feldman* doctrine should only—and can only—apply when a federal plaintiff tries to invoke *appellate jurisdiction* over a "*[f]inal judgment or decree*" rendered by a *state court*. § 1257(a) (emphases added).

Appellate jurisdiction is "[t]he power of a court to review *and revise* a lower court's decision." *Jurisdiction: Appellate Jurisdiction*, Black's Law Dictionary (11th ed. 2019) (emphases added). "It is the essential criterion of appellate jurisdiction"— as distinguished from original jurisdiction—"that it *revises and corrects* the proceedings in a *cause already instituted*, and does not create that cause." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 175 (1803) (emphases added)). To that end, "§ 1257(a)'s negative implication requires" both "a challenged 'judgment' in the new action" and

"an effort to . . . 'undo' or 'overturn' it in the new action." *Hohenberg v. Shelby Cnty.*, 68 F.4th 336, 340 (6th Cir. 2023) (quoting *Exxon*, 544 U.S. at 284, 287 n.2). In other words, "[o]nly by asking [a federal court] to exercise appellate jurisdiction—to 'undo' or 'overturn [the] state-court judgment'—does a plaintiff collide with § 1257." *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 411 (7th Cir. 2023) (Kirsch, J., dissental, joined by St. Eve, J.) (quoting *Exxon*, 544 U.S. at 287 n.2).

Sitting en banc with full authority to reconsider its past decisions, this Court should ensure that its *Rooker-Feldman* framework adheres to § 1257's central question: Is the federal plaintiff seeking to invoke *appellate jurisdiction* over a *state-court judgment*? In doing so, the Court "should realign [its] law with *Exxon*." *Id.* Properly understood, the *Exxon* framework simply adds meat to the bones of § 1257's central question.

As part of "stick[ing] to the *Exxon* standard," the Court also should "avoid the 'inextricably intertwined' framing." *Andrade*, 9 F.4th at 954 (Sykes, C.J., concurring). That framing "has the potential to blur [*Rooker-Feldman*'s] boundary" and "should not be used as a ground of decision." *Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018); *accord Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015); *Richardson v. Koch L. Firm, P.C.*, 768 F.3d 732, 734 (7th Cir. 2014).

The Court should reverse the district court's *Rooker-Feldman*-based dismissal and vacate the remainder of its judgment, as Gilbank has advocated. *See generally* Gilbank Reply (Dkt. 62). In doing so, the Court should clarify that all prior decisions extending *Rooker-Feldman* beyond its proper bounds are abrogated.

**ANSWERS TO QUESTIONS**

**I. Under *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), what difference, if any, is there between "complaining of injuries caused by state-court judgments" and "inviting district court review and rejection of those judgments"?**

"Complaining of injuries caused by state-court judgments" and "inviting district court review and rejection of those judgments" are two distinct elements under *Exxon*, both necessary predicates for an invocation of appellate jurisdiction. The following explains the significance of each *Exxon* element.

*Exxon* clarified that *Rooker-Feldman* applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284.

Many circuits have adopted *Exxon*'s language wholesale as a four-element test. *See, e.g.*, *Hunter v. McMahon*, 75 F.4th 62, 68 (2d Cir. 2023); *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 514 (10th Cir. 2023); Gilbank Reply 2–3 (Dkt. 62). Each of the four *Exxon* elements plays a necessary role in analyzing whether a federal plaintiff seeks to invoke *appellate jurisdiction* over a *state-court judgment*. *Rooker-Feldman* applies only if all four elements are present. If any element is lacking, *Rooker-Feldman* does not apply, and subject-matter jurisdiction exists.

*(1) The federal plaintiff is a state-court loser.* By its text, § 1257 concerns only state-court decisions. It follows that § 1257 does not concern—and its negative implication does not extend to—decisions from any place else. It does not apply to federal-court decisions. Nor does it apply to "executive action, including determina-

tions made by a state administrative agency." *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002); *see Andrade*, 9 F.4th at 953 (Sykes, C.J., concurring).

***(2) The state court rendered judgment before the plaintiff commenced federal proceedings.*** Under § 1257, the Supreme Court has appellate jurisdiction over "[f]inal judgments or decrees" of state courts. Absent such a final judgment or decree, then, § 1257's negative implication is not triggered. This makes sense: without a final judgment, appellate jurisdiction is typically understood to be lacking. *Cf.* 28 U.S.C. § 1291.

***(3) The federal plaintiff complains of injuries caused by the state-court judgment.*** *Exxon*'s third and fourth elements get at what it means to invoke appellate jurisdiction. The third element tests whether the federal plaintiff was injured for appellate purposes and whether the injury complained of is traceable only to the judgment itself (as opposed to other sources).

First, for appellate jurisdiction to exist, a party must be aggrieved by a judgment. *See Moy v. Cowen*, 958 F.2d 168, 170 (7th Cir. 1992). For this reason, *Rooker-Feldman* does not apply when a federal plaintiff was not a party to the state-court judgment. *See Lance v. Dennis*, 546 U.S. 459, 466 (2006); *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). Similarly, *Rooker-Feldman* does not apply when a federal plaintiff challenges a statement in a state-court opinion but not the judgment itself. *See In re Repository Techs., Inc.*, 601 F.3d 710, 718 (7th Cir. 2010) (explaining that

judgments, not statements in opinions, are the basis for appellate jurisdiction); *Chathas v. Local 134 IBEW*, 233 F.3d 508, 512 (7th Cir. 2000) (similar).

Second, because § 1257's negative implication is about jurisdiction—not preclusion, *Exxon*, 544 U.S. at 293—it extends *only* to situations where the injury complained of was "caused by the judgment *itself*," *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021) (emphasis added). The injury element is satisfied only when there is "*no way* for the injury complained of . . . to be separated from the state court judgment." *Andrade*, 9 F.4th at 950 (cleaned up) (emphasis added).

Indeed, the injury must be strictly caused *by the judgment*—not by the defendant's conduct. *E.g.*, *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 403 (6th Cir. 2020). It does not matter if the defendant's conduct was ratified—or left uncorrected—by the state-court judgment. *See Andrade*, 9 F.4th at 952–53 (Sykes, C.J., concurring) (quoting *Iqbal*, 780 F.3d at 730) ("[I]f a plaintiff contends that out-of-court events have caused injury that the state judiciary failed to detect and repair, then a district court has jurisdiction."); *Johnson v. Pushpin Holdings*, 748 F.3d 769, 773 (7th Cir. 2014) ("[*Rooker-Feldman*] does not bar a federal suit that seeks damages for a fraud that resulted in a judgment adverse to the plaintiff."); *see also Hunter*, 75 F.4th at 72 ("The state-court judgment did not *produce* this alleged earlier-in-time conduct, though it may have adjudicated the legitimacy of the conduct after the fact."). Nor does it matter if the defendant's conduct occurred during, or as part of, the state-court proceedings. *See Hohenberg*, 68 F.4th at 340 (holding that *Rooker-Feldman* did not apply where "[c]laimants challenge the allegedly wrongful

5

actions and omissions that led to their judgments"—including conduct that was *part of* the state-court proceedings—"not the judgments themselves"); *Behr*, 8 F.4th at 1213 (holding that *Rooker-Feldman* did not apply to parent's claims that "constitutional rights were violated during the proceedings," including by defendants' use of "falsified and/or coerced information" in custody proceeding); *Webb as next friend of K.S. v. Smith*, 936 F.3d 808, 813, 817 (8th Cir. 2019) (holding that *Rooker-Feldman* did not apply to parents' claims that individual social workers unconstitutionally seized their children by, among other things, filing petitions containing false allegations); *VanderKodde*, 951 F.3d at 403 (holding that injury element is not met when a "plaintiff claims he was injured by the defendant when the defendant filed a false affidavit in court" (cleaned up)); *cf. Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004) (quoting *Barrow v. Hunton*, 99 U.S. 80, 82–83 (1878)).

**(4) The federal plaintiff invites review and rejection of the state-court judgment.** *Exxon*'s fourth element is also concerned with appellate jurisdiction. To invoke appellate jurisdiction, a party must *necessarily* be seeking appellate *relief*— some change to the state-court judgment itself, such as reversal, vacatur, or modification.[1] This fourth element is the "sine qua non of *Rooker-Feldman*." *Hadzi-Tanovic*, 62 F.4th at 411 (Kirsch, J., dissental).

---

[1] *Rooker* and *Feldman*—the only two cases in which the Supreme Court has applied the doctrine to deny jurisdiction—involved requests for appellate relief. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 414–15 (1923) (holding that it was "plainly not within the District Court's jurisdiction" to "declare[ ]" a state-court judgment "null and void"); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 469 n.3 (1983) (holding that, where state court had denied applicant's admission to the bar, federal court lacked

By definition, appellate jurisdiction is "[t]he power of a court to review *and revise* a lower court's decision." *Jurisdiction: Appellate Jurisdiction*, Black's Law Dictionary (11th ed. 2019) (emphasis added). "It is the essential criterion of appellate jurisdiction, that it *revises and corrects* the proceedings in a cause already instituted, and does not create that cause." *Marbury*, 5 U.S. at 175 (emphasis added)).

As other circuits have correctly recognized, "§ 1257(a)'s negative implication requires" "an effort to . . . 'undo' or 'overturn' [the state-court judgment] in the new action." *Hohenberg*, 68 F.4th 336, 340–41 (6th Cir. 2023) (quoting *Exxon*, 544 U.S. at 284, 287 n.2); *see Graff*, 65 F.4th at 515 (explaining that for *Rooker-Feldman* "[t]o apply," the federal plaintiff's claim "must specifically seek to *modify* or *set aside* a state court judgment" (emphases added)). Indeed, "[o]nly by asking [a federal court] to exercise appellate jurisdiction—to 'undo' or 'overturn [the] state-court judgment'—does a plaintiff collide with § 1257." *Hadzi-Tanovic*, 62 F.4th at 411 (Kirsch, J., dissental) (quoting *Exxon*, 544 U.S. at 287 n.2).

A party does not seek appellate relief simply because the federal lawsuit would "den[y] a legal conclusion that a state court has reached." *Exxon*, 544 U.S. at 293 (quoting *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)); *see Brokaw v. Weaver*, 305 F.3d 660, 666 (7th Cir. 2002). Along similar lines, if a plaintiff were to "succeed[ ] on every element of every cause of action" pleaded in federal court, but "absolutely nothing would change about the[ ] underlying [state-court] judgment[ ]," then the plaintiff does not request appellate relief. *Graff*, 65 F.4th at

---

jurisdiction over applicant's subsequent claim "request[ing] an order requiring the defendants to admit him to the bar").

518; *cf. Webb*, 936 F.3d at 816 ("An important consideration for a court confronted with the issue of whether *Rooker-Feldman* applies is to analyze the effect the requested federal relief would have on the state court judgment." (cleaned up)).

Ultimately, because of what it means to invoke *appellate jurisdiction*, "[o]nly if a plaintiff seeks to vacate relief awarded or to obtain relief denied by the state court—to undo or overturn the state court judgment—does *Rooker-Feldman* bar her claim." *Hadzi-Tanovic*, 62 F.4th at 411 (Kirsch, J., dissental).

## II. Whether the custody judgment in this case is moot, and if so, whether that has an impact on the *Rooker-Feldman* analysis?

Yes. The custody judgment is moot. This impacts the *Rooker-Feldman* analysis.

In this case, social workers and police officers took T.E.H. away from Gilbank. A state court later ratified their actions and kept mother and child separated. Then, over a year later, the state court adjudicated custody in Gilbank's favor in a different, superseding proceeding. App.22; R.41:6; App.36; R.6:8; App.10; R.131:9. Only *after* being reunited with T.E.H. did Gilbank bring this federal lawsuit. Gilbank has had custody of T.E.H. ever since.

Any custody dispute is therefore moot. Gilbank did not and is not asking the federal judiciary to adjudicate custody. She has no reason to: she *has* custody of T.E.H., and she had it *before* this federal case began.

Mootness impacts the *Rooker-Feldman* analysis with respect to *Exxon*'s fourth element: Gilbank does not invite review and rejection of the state-court custody order. She resembles the plaintiffs in two cases involving similar facts, both of which held that *Rooker-Feldman* did not apply: *Green v. Mattingly*, 585 F.3d 97, 102 (2d

Cir. 2009), and *Kovacic v. Cuyahoga County Department of Children & Family Services*, 606 F.3d 301 (6th Cir. 2010).

In *Green*, a state court entered an order removing a child from the mother's custody. *See* 585 F.3d at 99–100. That court then entered another order returning the child to the mother. *Id.* The mother later sued in federal court, claiming that multiple defendants violated her federal constitutional rights by "making false statements to the [state court]," "petitioning for the removal of [the child] without probable cause," and engaging in malicious prosecution, among other things. *Id.* at 100. Rejecting a *Rooker-Feldman* argument, the Second Circuit reasoned that the mother's claims did not "invite district court review and rejection" because the child had already "been returned to [the mother]." *Id.* at 102. The child's return had rendered "the question of the validity of the temporary order of removal [ ] likely moot." *Id.* The core reason for that court's decision not to apply *Rooker-Feldman*—that the plaintiff was not "seeking the return of her child"—holds true here. *Id.* at 103. Just like in *Green*, Gilbank's "child has been returned to her, and thus she 'plainly has not repaired to federal court to undo the [state-court] judgment.'" *Id.* (quoting *Exxon*, 544 U.S. at 284).

And in *Kovacic*, the plaintiffs sought "compensatory damages for alleged unconstitutional conduct by a government agency, not injunctive or other equitable relief, because any action concerning their return to their mother's custody became moot when they were reunited with their mother in January 2003 and the Juvenile Court complaint was dismissed in 2005." 606 F.3d at 310. Like the *Kovacic* plaintiffs, Gil-

bank has no need to seek injunctive relief—and indeed does not seek injunctive re-lief—because there is nothing in the state-court order to enjoin; "any action concern-ing [T.E.H.'s] return to [her] mother's custody became moot when [she was] reunit-ed with" Gilbank. *Id.*

In short, Gilbank would have no reason to, never has, and emphatically does not seek appellate relief from the state-court custody order in federal court. Gilbank therefore is not invoking appellate jurisdiction, the fourth *Exxon* element fails, and § 1257's negative implication is not triggered.

### III.    Whether other circuits have answered either of the above questions after *Exxon Mobil*?

Yes. Many circuits have addressed Question I after *Exxon*. The above answer cites to some of these cases, *see supra* Answer I; Gilbank's briefing and supple-mental-authority letters do, too.

Yes. At least two other circuits have addressed Question II after *Exxon*: the Sec-ond in *Green* and the Sixth in *Kovacic*. *See supra* Answer II.

### IV. Where a federal plaintiff claims she was injured by injunctive relief erroneously issued by a state court, whether application of the *Rooker-Feldman* doctrine should depend on whether she confines her prayer for relief in federal court to a damages award?

Yes. Where a federal plaintiff claims she was injured by injunctive relief errone-ously issued by a state court, *Rooker-Feldman*'s application should depend on whether she confines her prayer for relief in federal court to a damages award.

To begin with, the Court's question presumes that "a federal plaintiff claims she was injured by injunctive relief erroneously issued by a state court." Gilbank does not, however, make such a claim here. Gilbank Br. 30–36 (Dkt. 45); Gilbank Reply

8–15 (Dkt. 62). She is not "seeking to get out from under a state-court judgment" but instead "trying to obtain damages from state actors who allegedly violated [her] rights." *Webb as next friend of K. S. v. Smith*, 936 F.3d 808, 817 (8th Cir. 2019). And "[b]ecause *Rooker-Feldman* bars only claims that invite a district court's review and rejection of a state court judgment, claims that seek only damages for constitutional violations of third parties—not relief from the judgment of the state court—are permitted." *Behr*, 8 F.4th at 1214 (cleaned up).[2]

Yet even for the Court's hypothetical federal plaintiff claiming injury from injunctive relief erroneously issued by a state court, the result is the same. That plaintiff is *not* asking a federal court to "undo," "overturn," reverse, vacate, or modify the state-court judgment. *Hohenberg*, 68 F.4th at 340 (quoting *Exxon*, 544 U.S. at 284, 287 n.2). She is thus *not* seeking appellate relief, *not* invoking appellate jurisdiction, and *not* "collid[ing] with § 1257." *Hadzi-Tanovic*, 62 F.4th at 411 (Kirsch, J., dissental). "[A] complaint demanding 'compensatory damages' does not 'seek review or reversal' of a court order awarding relief not measured by money." *Hohenberg*, 68 F.4th at 341 (quoting *Kovacic*, 606 F.3d at 309–10). Even if the hypothetical plaintiff—or Gilbank, for that matter—"succeeded on every element of every cause of ac-

---

[2] *See also Kovacic*, 606 F.3d at 310 (rejecting *Rooker-Feldman*'s applicability when federal claims sought monetary damages from agency involved in removal of child, but "[did] not seek review or reversal of the decision of the juvenile court to award temporary custody to the state"); *Green*, 585 F.3d at 101–03 (similar); *Brokaw*, 305 F.3d at 665–66 (similar); *Holloway v. Brush*, 220 F.3d 767, 779 (6th Cir. 2000) (en banc) (similar); *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 491–92 (3d Cir. 1997) (similar).

tion," "absolutely nothing would change about their underlying judgments." *Graff*, 65 F.4th at 518.

To be sure, the hypothetical plaintiff's suit would face other obstacles. If she sues the state court itself or the state-court judge, her claims would likely be barred by sovereign immunity, by judicial immunity, or for failure to state a claim under § 1983 (for failure to sue a "person"). But critically, those are immunity and sub-stantive-law issues—not jurisdictional issues under § 1257. Alternatively, if she sues other officials or private individuals, her claims may be barred by res judicata or collateral estoppel. But those are preclusion issues, and "[p]reclusion . . . is not a jurisdictional matter." *Exxon*, 544 U.S. at 293. Her allegations may also simply fail to state a claim under Rules 8 and 12. And Rule 11, for its part, guards against par-ticularly "fantastical" allegations. *Hadzi-Tanovic*, 62 F.4th at 414 (Kirsch, J., dis-sental).

That the hypothetical plaintiff's suit would likely fail does not excuse any *Rook-er-Feldman* sloppiness. Grounded in § 1257's negative implication, *Rooker-Feldman* is strictly about federal subject-matter jurisdiction. Preclusion, by contrast, is a state-law matter. Allowing *Rooker-Feldman* to do preclusion's work improperly "ju-risdictionalize[s]" and "federalizes" state preclusion law, thereby "undermin[ing] federalism interests." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1292 (11th Cir. 2018) (Newsom, J., concurring) (cleaned up). Moreover, whereas dismissals for lack of subject-matter jurisdiction are without prejudice,

dismissals based on immunity, preclusion, or failure to state a claim are all on the merits and with prejudice. *See* Fed. R. Civ. P. 41(b); Gilbank Reply 19 (Dkt. 62).

Finally, Gilbank does not suggest that a request for monetary damages *categorically* precludes *Rooker-Feldman*'s application. As Gilbank explained in her briefing, courts must compare the relief awarded in the state-court judgment to the relief sought in federal court. Gilbank Br. 24–28 (Dkt. 45); Gilbank Reply 6–8 (Dkt. 62).

## V. Where a federal plaintiff claims she was injured by injunctive relief erroneously issued by a state court, whether application of the *Rooker-Feldman* doctrine should depend on the reasons the state-court judgment was allegedly erroneous?

No. Where a federal plaintiff claims she was injured by injunctive relief erroneously issued by a state court, *Rooker-Feldman*'s application should not depend on the reasons the state-court judgment was allegedly erroneous.

This Court has expressly said as much: "The *Rooker–Feldman* doctrine is concerned not with *why* a state court's judgment might be mistaken . . . but with *which federal court* is authorized to intervene." *Iqbal*, 780 F.3d at 729 (emphases in original). Appellate jurisdiction exists (or does not exist) with respect to a *judgment*, not a court's reasoning and not the would-be appellant's reasons for invoking it. *See Repository Techs.*, 601 F.3d at 718; *Chathas*, 233 F.3d at 512. "The reason a litigant gives for contesting the state court's decision cannot endow a federal district court with authority; that's what it means to say that the *Rooker–Feldman* doctrine is jurisdictional." *Iqbal*, 780 F.3d at 729.

Put differently, *Rooker-Feldman* "applies *only* when a state-court loser seeks 'review and rejection' of a specific prior judgment"—even if "his victory would under-

mine a judgment's legal underpinnings," *Hohenberg*, 68 F.4th at 341, or "den[y] a legal conclusion" reached by the state court, *Exxon*, 544 U.S. at 293 (quoting *GASH*, 995 F.2d at 728). Section 1257 does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 282. Because *Rooker-Feldman* is unconcerned with *whether* the state-court judgment was erroneous, the doctrine similarly is indifferent to the litigant's possible reasons for *why* the state-court judgment was erroneous.

As a last point, the Court's question again presumes that "a federal plaintiff claims she was injured by injunctive relief erroneously issued by a state court." Gilbank is not making such a claim. Gilbank Br. 30–36 (Dkt. 45); Gilbank Reply 8–15 (Dkt. 62). And even if she were, the result would be the same.

## CONCLUSION

The Court should reverse the district court's judgment dismissing Gilbank's claims for lack of subject-matter jurisdiction; vacate the remainder of the district court's summary-judgment decision; and remand for further proceedings consistent with this Court's opinion.

Dated: October 3, 2023

/s/ Joseph S. Diedrich

JOSEPH S. DIEDRICH
   *Counsel of Record*
AJ FABIANCZYK
KIRSTEN A. ATANASOFF
ALYSSA M. LEROY
HUSCH BLACKWELL LLP
33 E. Main St., Suite 300
Madison, WI 53703
(608) 255-4440
joseph.diedrich@huschblackwell.com

   *Counsel to Appellant*

**CERTIFICATE OF COMPLIANCE**

Under Federal Rule of Appellate Procedure 32(g), I certify the following:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c)—as well as this Court's Order of September 12, 2023, Federal Rule of Appellate Procedure 40, and Circuit Rule 40—because this brief contains 3773 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

Dated: October 3, 2023

/s/ Joseph S. Diedrich

JOSEPH S. DIEDRICH
    *Counsel of Record*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2023, I filed the foregoing brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: October 3, 2023

/s/ Joseph S. Diedrich
JOSEPH S. DIEDRICH
*Counsel of Record*

17